In The District Court of the United States for the Middle District of Alabama   RECEIVED
Montgomery, Alabama

| | |
George D. McCarley                    |                    2006 FEB 17  A 9: 47
        Plaintiff                      |          Case No. <u>3:06-cv-0091-MEF</u>
        v.                             |                    DEBRA P. HACKETT CLK
                                       |          RE:  3:06CV93-MHT  U.S. DISTRICT COURT
Household Finance Corporation III     |               (Order dated 02/06/2006)    MIDDLE DIST.
        Defendant                      |


Comes now George D. McCarley and files the following in response to Judges order identified as (Case 3:06-cv-00093-MEF-VPM, Document 5), dated 02-06-2006. In compliance with Judges order, the following shall serve as an amended complaint (page 2-14) which specifically sets forth the following and which comply with the following requirements:

    1.    The names of the individual(s) whom McCarley claims violated his statutory or constitutional rights and a current mailing address where the individual(s) can be served; (page 15)

    2.  The statutes, regulations, or constitutional provisions which were violated; (page 21)

    3.  A description of the actions which violated the plaintiff's rights; (page 36)

    4.  The specific dates or time period(s) when the violations occurred; (page 36)

    5.  Whether McCarley has sought relief from any governmental agency, and if so, the name of the agency, the date of the claim, and the result of the investigation of the claim; and

    6.  The specific relief that McCarley seeks, that is, the precise action that McCarley wishes for the court to take against each defendant in response to his complaint. (page 44)

    7.  If the claim is pursuant to a statute, a recitation of the statutory provision that authorizes the relief requested. (page 45)

    8.  McCarley will eliminate from his amended complaint any references to referrals to the United States Attorney or to any acts that allegedly violate criminal laws.

In compliance with this order, McCarley will construct a amended complaint and then each numbered section ordered above will be supplemented with a specifically detailed and appropriately voluminous corresponding subsection.

## AMENDED COMPLAINT

George D. McCarley files this original action lawsuit to recover damages McCarley sustained as a direct result of Household Finance Corporation III Breach of McCarley Due Process Civil Rights, Breach of Contract and acts of statutory and Common Law Fraud. George D. McCarley is a real person with residence at 216B Chestnut Street, Roanoke, Alabama 36274 and is in Randolph County.

George D. McCarley further attests as follows:

1. That Household Finance Corporation III (HFC III) did continually violate the Due Process Civil Rights of George D. McCarley via a pattern not limited to Breach of Contract, Statutory Fraud, and obstructionist practices leading to Common Law Fraud. That Household Finance Corporation III became a corporate entity as a result of the Merger(s) between Household Finance Corporation (HFC), Household International, Inc. (HI) and The Hong Kong and Shanghai Banking Company (HSBC). Said merger resulted in the closure of the HFC business unit executing a contract with George D. McCarley, and that (HFC III) gained responsibility for the McCarley contract as a result of said merger(s). HFC III may be served at HSBC corporate headquarters near Chicago, and/or at their Corporate Registration Agent listed by the Illinois Secretary of State (duplicate service is recommended practice by Chicago law professionals). Those addresses are:

| Headquarters | Illinois Corporate Registration Agent |
|---|---|
| Household Finance Corporation III | Household Finance Corporation III |
| Thomas M. Detelich, President | N.J. Bromley, Secretary |
| 2700 Sanders Road | c/o C.T. Corporation System |
| Prospect Heights, Il 60070 | 208 So LaSalle St, Suite 814 |
| | Chicago, Illinois 60604-1101 |
| | File Number: 53644376 |

See Subsection 1 for further important details.

2. That HFC III injured George D. McCarley by their violation of the CONTRACT CLAUSE, THE DUE PROCESS CLAUSE, and Breach of Contract as defined by case citations contained in 17 American Jurisprudence 2d, section on Contracts, and specifically §§701, 702, 703, 716, 717, 718; HFC III also violated Consumer Protection (TILA and RESPA) and Alabama Mini Code (§5-19) and Alabama Code Sections 5, 8, and 10. That during performance of the contract, McCarley was injured by HFC III continually breaching the following statutes:

HFC III violates 12 USC and 15 USC civil statutes with regularity in this matter. Also violated are a set of 18 USC statutes that are not civil, although one set of fines and penalties are governed by 12 USC §1833a. McCarley prays this Court will interpret those 18 USC violations as a civil matter and process same within this Civil Lawsuit. The timeless SCOTUS case Marbury v Madison, 5 US 137, 177, opines that where there is an injury there is a right to redress. McCarley injuries appear to demand the redress indicated by identified by civil interpretation of 18 USC statutes.

a) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama 36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by; i) attempting to Force Place Insurance in Breach of Contract and; ii)a) that HFC III did violate 12 USC §2605 by failing to tender written response to McCarley inquiry within 20 days and by further failing to reconcile the issue within 60 days, while also charging late fees prior to completion of 60 day guideline of §2605; and; b) that HFC III did further violate 15 USC §1601 by charging fees not agreed or disclosed by the mortgage contract; iii)  that HFC III violations originated by telephone and mail in the Brandon, Florida operations center while McCarley was located at 211 Chestnut Street Roanoke Alabama; iv) that HFC III violated §§2605 and 1601 on seven (7) different occasions, July 2000, December 2000, July 2001, December 2001, July 2002, December 2002, July 2003; v) that McCarley injuries include a)Mental anxiety, b)health related problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of working at a high professional level, g)

3

legal and court costs; vi) that compensation for statutory penalties and punitive and compensatory damages and costs are authorized by §§2605 and 1601 along with 17 Am Jur 2d §716; and, vii) that George D. McCarley prays this court will provide redress so that he may recover damages and costs for his loss, along with compensatory penalties.

b) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama 36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by a pattern of obstruction that breached contract; i) charging fees in excess of those disclosed by contract, therefore in Breach of Contract and; ii)a) that HFC III did violate 12 USC §2605 by failing to tender written response to McCarley inquiry within 20 days and by further failing to reconcile the issue within 60 days, thus obstructing McCarley performance of conditions precedent by forcing conditions of lateness; and; b) that HFC III did further violate 15 USC §1601 by charging fees not agreed or disclosed by the mortgage contract; iii)  that HFC III violations originated by telephone and mail in the Brandon, Florida operations center while McCarley was located at 211 Chestnut Street Roanoke Alabama; iv) that HFC III violated §§2605 and 1601 on fifteen (15) different occasions; September 2001, October 2001, November 2001, December 2001, January 2002, February 2002, March 2002, April 2002 (4 violations), May 2002, June 2002, July 2002 (3 violations), August 2002 (4 violations) September 2002, October 2002, November 2002, December; v) that McCarley injuries include a)Mental anxiety, b)health related problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of working at a high professional level, g) legal and court costs; vi) tha statutory penalties, punitive and compensatory damages and costs are authorized by§§2605 and 1601 along with 17 Am Jur 2d §716; and, vii) George D. McCarley prays this court will provide redress so he may recover damages and costs for his loss, along with compensatory penalties.

c) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama 36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by; i) diverting payments into

4

Escrow account(s) forbidden by contract, therefore in Breach of Contract and; ii)a) that HFC III did violate 12 USC §2605 by failing to tender written response to McCarley inquiry within 20 days and by further failing to reconcile the issue within 60 days; and; b) that HFC III did further violate 15 USC §1601 by charging Escrow account fees not agreed or disclosed by the mortgage contract; iii) that forbidden Escrow fees were assessed in the Brandon, Florida operations center while McCarley was located at 211 Chestnut Street Roanoke Alabama without notice to McCarley; iv) that HFC III violated §§2605 and 1601 on seven (7) different occasions, November 2001, January 2002, April 2002, May 2002, July 2002, August 2002, and that other similar charges will emerge upon full discovery; v) that McCarley injuries include a)Mental anxiety, b)health related problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of working at a high professional level, g) legal and court costs; vi) that compensation for statutory penalties and punitive and compensatory damages and costs are authorized by§§2605 and 1601 along with 17 Am Jur 2d §716; and, vii) that George D. McCarley prays this court will provide redress so that he may recover damages and costs for his loss, along with compensatory penalties.

d) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama 36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by; i)a) theft or misapplication of funds, charging fees never disclosed and failing to record those fees on official billing summary, b) providing incomplete official billing summary with more than $1000 in payments improperly accounted for, and; ii) that HFC III did violate 18 USC §656 by their act of theft or misapplication of funds not agreed or disclosed by the mortgage contract; iii) that misapplication took place in the Brandon, Florida operations center while McCarley was located at 211 Chestnut Street Roanoke Alabama without notice to McCarley; iv) that HFC III violated 18 USC §656 in February 2002 and again in February 2004; v) that McCarley injuries include a)Mental anxiety, b)health related problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of

working at a high professional level, g) legal and court costs; vi) that compensation for statutory penalties and punitive and compensatory damages and costs are authorized by18 USC §656 and 12 USC §1833a; and, vii) that George D. McCarley prays this court will provide redress so that he may recover damages and costs for his loss, along with compensatory penalties.

e) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama 36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by; i) falsifying reports, making or writing, publishing or uttering false statements or reports, and; ii) that HFC III did violate 18 USC §1001, §1005, §1010, §1014 by their act of fraud and false statements; iii)  that fraud and false statements were initiated by the Brandon, Florida operations center while McCarley was located at 211 Chestnut Street Roanoke Alabama without notice to McCarley; iv) that HFC III violated 18 USC § 1001, §1005, §1010, §1014 in each and every quarterly and annual reporting cycle throughout the term of the McCarley mortgage, beginning with third quarter 2000 and ending with fourth quarter 2003, encompassing 14 quarterly financial and other reports along with 4 annual reports; v) that McCarley injuries include a)Mental anxiety, b)health related problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of working at a high professional level, g) legal and court costs; vi) that compensation for statutory penalties and punitive and compensatory damages and costs are authorized by 18 USC § 1001, §1005, §1010, §1014and 12 USC §1833a; and, vii) that George D. McCarley prays this court will provide redress so that he may recover a portion of those regulatory penalties to compensate for his losses.

f) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama 36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by; i) making false acknowledgement by oath, before a competent tribunal, officer, or person while reporting falsely, issuing false reports, and enacting default or foreclosure oaths with knowledge of falsehood, and; ii) that HFC III did violate 18 USC §1016, §1621, by their act of fraud and false statements and perjury;

iii) that fraud and false statements and perjury were initiated by the Brandon, Florida operations center while McCarley was located at 211 Chestnut Street Roanoke Alabama without notice to McCarley; iv) that HFC III violated 18 USC § 1016, §1621 in each and every quarterly and annual reporting cycle throughout the term of the McCarley mortgage, beginning with third quarter 2000 and ending with fourth quarter 2003, encompassing 14 quarterly financial and other reports along with 4 annual reports, concluding with perjurious default declaration in November 2003; v) additional to improperly disseised property, McCarley injuries include a)Mental anxiety, b)health related problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of working at a high professional level, g) legal and court costs; vi) that compensation for statutory penalties and punitive and compensatory damages and costs are authorized by 18 USC §1016, §1621 and 12 USC §1833a; and, vii) that George D. McCarley prays this court will provide redress so that he may recover a portion of those regulatory penalties to compensate for his losses.

g) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama 36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by; i) concealing assets in official reports to regulatory agencies, said concealment disguising assets, tax issues and federally required capitalization monies, and; ii) that HFC III did violate 18 USC §1032, by their act of ongoing concealment of assets securing McCarley mortgage contract, said concealment accomplished by cloaking McCarley "depreciable" assets in uncertainty with false and inaccurate principle versus interest payment recorded; iii) that said concealment was initiated by the Brandon, Fl operations center, approved by corporate headquarters while McCarley was located at 211 Chestnut Street Roanoke Alabama without notice to McCarley; iv) that HFC III violated 18 USC § 1032 in each and every quarterly and annual reporting cycle throughout the term of the McCarley mortgage, beginning third quarter 2000 and ending fourth quarter 2003, encompassing 14 quarterly financial and other reports along with 4 annual reports; v) that McCarley injuries include a)Mental anxiety, b)health related

problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of working at a high professional level, g) legal and court costs; vi) that statutory penalties and punitive and compensatory damages and costs are authorized by 12 USC §1833a; vii) George D. McCarley prays this court provide redress so he may recover a portion of those regulatory penalties to compensate his losses.

h) George D. McCarley, of 216B Chestnut Street, Roanoke, Al  36274, charges Household Finance Corporation III (HFC III) did injure McCarley by; i)a) failing to audit or maintain objective and accurate Accounting standards and practices, b) by failing to make prompt corrective actions to insure fiscal soundness of deposit insurance funds, and; ii) that HFC III did violate 12 USC §1831n, §1831o, by their failed audit, accounting policies and practices; iii)  that failed accounting practices were initiated by the Brandon, Florida operations center and approved by corporate headquarters and independent auditors while McCarley was located at 211 Chestnut Street Roanoke, Al without notice to McCarley; iv) that HFC III violated 12 USC §1831n, §1831o in each and every quarterly and annual reporting cycle throughout the term of McCarley mortgage, beginning third quarter 2000 and ending fourth quarter 2003, encompassing 14 quarterly financial or other reports plus 4 annual reports; v) additional to improperly disseised property, McCarley injuries are a)Mental anxiety, b)health problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation due to credit black marks, f) reduced chances of maintaining professional standing, g) legal and court costs; vi) compensation for statutory penalties, punitive and compensatory damages and costs are authorized by 12 USC §1831n, §1831o and 12 USC §1833a; and, vii) George D. McCarley prays this court provide redress so he may recover a portion of those regulatory penalties to compensate for his losses.

i) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama  36274, charges that Household Finance Corporation III (HFC III) did injure McCarley by; i) a fortiori, a complete breach of contract by obstructing performance, injecting undue duress, ending in a fraudulent default

declaration, and that HFC III did attempt to profit from their nonperformance and; ii) that HFC III did violate Common Law Breach of Contract as defined by 17 Am Jur 2d, §§701-716, and, 15 Am Jur 2d §30, by their fortiori; iii)  that said pattern of obstruction was initiated by the Brandon, Florida operations center and approved by corporate headquarters while McCarley was located at 211 Chestnut Street Roanoke Al without notice to McCarley; iv) that HFC III Breached Contract the final time in November 2003; v) that McCarley injuries include a)Mental anxiety, b)health related problems, c)advanced aging, d) loss of income, e)loss of professional standing and reputation, f) reduced chances of working at a high professional level, g) legal and court costs, h) improperly disseised property; vi) that compensation for statutory penalties and punitive and compensatory damages and costs are authorized by Marbury v Madison, 5 US 137, 177 (1803) along with case citations of 17 Am Jur 2d §701-716; and, vii) that George D. McCarley prays this court will provide redress so that he may recover punitive and compensatory damages to compensate for his losses.

j) George D. McCarley, residing at 216B Chestnut Street, Roanoke, Alabama  36274, charges that Household Finance Corporation III (HFC III) and partner HSBC entities did injure McCarley by; i) failing to disclose their being penalized for Iraq Sanctions; ii) that HFC III did violate18 USC §2382 Misprision of Treason and 15 USC §1601 by their failure to disclose penalties; iii)  that said Misprision involved HSBC/HFC III entities moving Iraq money to Sudan, Cuba, Libya, was approved by corporate headquarters while McCarley was located at 211 Chestnut Street Roanoke Alabama without disclosure to McCarley; iv) that HSBC/HFC III committed §2382 on August 06, 2001 and attempted to hide this injurious fact; v) that McCarley injuries include mental anxiety and hypertension as a result; vi) that punitive and compensatory damages and costs are authorized by Marbury v Madison, 5 US 137, 177 (1803) along with case citations of 17 Am Jur 2d §701-716; and, vii) that George D. McCarley prays this court will provide redress so that he may recover damages to compensate for his losses.

See Subsection 2 for broader description of each statute

3. That HFC III developed an intentional and deliberate pattern designed to obstruct or prevent McCarley from properly satisfying the conditions precedent of the contract. That HFC III failed to satisfy their contractual conditions precedent, thus breaching contract. That HFC III continually, intentionally and deliberately committed statutory fraud, and that HFC III continually breached the terms and conditions of The Truth in Lending Act, and The Real Estate Settlement Procedures Act. That the many violations of HFC III occurred on an almost monthly basis throughout the life of this contract. See Subsection 3 and 4 for specific description of each act, along with names, where appropriate, and dates of each individual and/or corporate violation.

4. That George D. McCarley entered a Mortgage Contract in May 2000 that was acquired by HFC III by acts of contract purchase, merger and acquisition. That HFC III violated the many common law and statutory violations indicated above on an almost monthly basis, ending in December 2003. In December 2003, HFC III fraudulently declared McCarley in default and sold mortgage to an Assignee. McCarley has filed appeals against the Assignee.[1] Subsection 3 and 4 will provide a very specific charge for each infraction, including offender names, and dates or time periods involved with each.

That as of this date, HFC III through their partner business unit HSBC Mortgage Services, Inc. continues to list a judgment against McCarley equal to the face value of broken contract, and, in addition to false credit agency filings, therefore the Statute of Limitations has not commenced.

5. As the timeline of activity and extensive court filings suggest, McCarley sought any and all solutions, even risking Circuit Court "ire" via Writs of Mandamus. McCarley discovered that FARMERS HOME ADMINISTRATION (FHA) operates a pre-foreclosure prevention and assistance division. Discussions with the FHA headquarters in Atlanta revealed that McCarley mortgage did not qualify for FHA assistance. No other such assistance was discovered. McCarley sought this assistance beginning in November 2003 and continuing throughout 2004. No claims were filed. These were

telephone questions submitted to the Opelika FHA operations center and then referred to Atlanta regional office and again, telephone conversations were involved. (There is no Subsection 5)

6. George D. McCarley seeks redress for the many injuries inflicted by HFC III. McCarley seeks to reclaim any and all court costs and attorney fees in this complaint and subsequent litigation.

HFC III act to disseise McCarley ancestral property of 73 years has created emotional distress and Mental Anxiety. The fact that HFC III is convicted for moving Saddam Hussein's money to Cuba, Sudan, and Libya and that they have now illegally disseised a property occupied by a family of US Military Veterans who served in World War's I and II, Korea, Vietnam, Kosovo; plus having a family member to complete missionary duty in Albania, MonteNegro and Kosovo while serving in four war zones, creates an extreme set of emotions that lead to advanced aging, high blood pressure, and other health problems. Then consider those veterans spent 73 years establishing an irreplaceable cul-de-sac complete with dramatic year-round blooming landscape, a landscape that will take another 73 years to duplicate, and you see the life-span draining emotional distress created by the act of HFC III.

HFC III illegal act has caused a total stoppage of the otherwise brilliant career of George D. McCarley. An accomplished Bankruptcy and Turnaround Management professional, McCarley has not worked since the illegal default declaration. Understand that such a professional lifestyle requires a liberal credit line in order to negotiate extreme travel expenses. Diners Club actually canceled McCarley charge card upon noting HFC III intent on credit bureau statements.

Today's professional is under greater scrutiny than ever before. McCarley ability to earn key bankruptcy and turnaround contracts requires a personal background review that is perhaps more stringent than a National Security Credential Review. The illegal black mark placed against McCarley by HFC III has effectively ended a McCarley career that was surely bound for selection as CEO or Board member of a major corporation – a fact backed by evidence of such correspondence.

---

[1] Presently docketed by The Supreme Court of the United States as case number 05-8143.

McCarley had also developed a strong political following in Washington, DC via his pro bono lobbyist activities for high profile special causes. Testimony will prove that McCarley led efforts that resulted in two major changes of direction in the United States Senate. And now, as a direct result of the actions of HFC III, such activity of McCarley has been forced to an end.

George McCarley is developing a serious set of medical problems as a direct result of HFC III malfeasance. It has been three years since he has been able to afford expensive treatment for a blinding Glaucoma condition. His Gastric Reflux disease has likewise gone unchecked for three years. Developing male-related problems need to be treated before it becomes too late. Actuarial tables indicate that a personal catastrophe such as foreclosure can reduce lifespan by 3-10 years.

McCarley seeks Punitive and Compensatory relief for Emotional Distress style pain and suffering caused by HFC III throughout this case. The property involved has little dollar value due to depressed Real Estate values in Roanoke, Alabama. However, the property has been home to three generations of a proud family of American Soldiers who shed blood to protect Freedom, and includes one missionary who endured 4 war zones. The simple knowledge that a bank that supported Saddam Hussein[2] will now profit from fraud at the expense of three generations of patriots is a heavy load to shoulder. A Jury will have to put a value on this issue.

While a Jury will decide punitive and compensatory damages, they should be instructed that McCarley is a native Alabamian who was bound for a multi-million dollar CEO position with a major corporation. In deliberations, they should be left with the thought that the CEO of HSBC earns around $10 million per year. That McCarley has coached one CEO who earned over $50 million in 2005. The Jury should consider awarding McCarley 7 year's compensation equal to the level of pay of the HSBC CEO and clearly equal to the pay of the Presidents sued in this case.

---

[2] HSBC was fined $1 million by US Treasury Dept. for their act of moving IRAQ money to Suddan, Cuba, Libya.

The damages, costs, and statutory penalties and punitive and compensatory damages payable to George D. McCarley by the several statutes invoked in this case equal $18, 035,000. Judge and Jury has discretion over much of this amount. Of even greater impact are the corresponding Regulatory penalties chargeable to HFC III invoked by this case and payable to the United States government. These considerable "continuing violation" fines and penalties equal $635,000,000; an amount subject to "WhistleBlower" compensation. (See subsection 6 for details)

McCarley has filed fifteen lawsuits in this action, counting six (6) major corporations and nine (9) CEO's, Presidents and corporate executives with responsibility for these actions. The Jury should be charged to review the McCarley claim and evidence and then to determine just punitive and compensatory awards in light of the extreme injuries to McCarley. The Jury can then determine a pro rata share of the total McCarley award plus penalties to be shouldered by each of the fifteen. In consideration of the fact nine corporate executives conspired to end the career of another leading executive, each of the nine should face a career ending financial penalty.

Jury Trial Demand is claimed by McCarley as such is established and documented by FEDERAL PRACTICE & PROCEDURE by Wright, Miller, Cooper.

> Liens & Encumbrances, Foreclosure Jury Trial  §2316
> Property Rights Due Process Protection       §4030

Rule 38 declares matters of Law and Equity are granted Jury Trials.

Subsection 6 will deliver highly specific redress demands, in support of the following categories of compensatory and punitive relief demanded.

> Expense recovery related to HFC III actions
> a) Return of disseised ancestral property
> b) Compensation for Lost Income
> c) Compensation for Court Costs
> d) Compensation for legal fees
> e) Compensation for costs of preparation of court filings and research

<u>Compensatory Damages recovery</u>
f) Compensation for Mental Anxiety
g) Compensation for Emotional Distress
h) Compensation for added Medical Costs, present and future
i) Compensation for Damages to disseised property
j) Correction of false Credit reports
k) Removal of monetary damage charges against McCarley
l) Statutory Compensation awarded per state and federal statutes

<u>Punitive Damages to be Assessed by Jury</u>
m) seven years of future income
n) medical insurance policy paid
o) 7 years of CEO level income
p) that HFC III shall pay the full tax burden of any and all monetary awards
q) that punitive sanctions on HFC III be sufficient to insure they cease and desist
   fraudulent and breach of contract activity
r) order HFC III (HSBC) disclose their Iraq Sanctions to present/future customers.

<u>Regulatory Fines Assessed</u>
s) $1 to $5 million fine for false reports for each instance identified
t) regulatory review of consumer banking fitness of HFC III and HSBC et.al.

Subsection 6 will provide a worksheet that makes it clear HFC III violated §2605 and §1601 so many times that they owe McCarley over $264,000 in statutory penalties. Therefore, how is it possible they were allowed to declare default for the paltry amount of $26,000. Only an intentional due process violation can allow such travesty to happen in the US court system.

7. Subsection 7 will provide a recitation of the full table of statutory provisions authorizing relief, along with a table of case citations upholding relief.

George D. McCarley prays this Court will provide redress so that he may recover the many damages inflicted by HFC III. I affirm that the foregoing is a true and complete statement of fact.

*G. McCarley*

George D. McCarley
February 16, 2006
216B Chestnut Street
Roanoke, Al 36274
334-863-6503 (6489)

14

## PROOF OF SERVICE

I, <u>George D. McCarley</u>, do swear or declare that on this date, February 16, 2006, as required by Supreme Court Rule 29 I have served the enclosed COMPLAINT on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing envelope containing the above documents in the United States mail properly addressed to each of them and with first class postage prepaid, or by delivery to a third-party commercial carrier for delivery within 3 calendar days.

The name and address of those served are as follows:

Household Finance Corporation III
2700 Sanders Road
Prospect Heights, Il 60070
706-882-xxxx

The Clerk
Middle District of Alabama, Eastern Division
One Church Street, PO Box 711
Montgomery, Al 36101-0711
334-954-3600

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 16, 2006

G. McCarley

George D. McCarley

### SUBSECTION 1

The names of the individual(s) whom the McCarley charges violated his statutory or constitutional rights and a current mailing address where the individual(s) can be served.

It is important this Court understand the nature of defendant McCarley charges with violations of law. HFC III is a business entity of a Foreign Corporation[3] known as HSBC. McCarley charges the several mortgage banking entities of HSBC with violations of law, along with the key individuals who manage and oversee the business of HSBC and respective entities. The violations involved are, in fact, corporate violations. McCarley had interface with between 30 and 60 lower echelon representatives and officers of the protracted HSBC corporation, while the violations occurred. Almost all contact originated in the HFC/HSBC operations center in Brandon, Florida. Given the problem of corporate employee turnover, most of those individuals will have departed the corporation. In addition, the pattern of obstruction that will be identified in subsection 3 indicate the illegal actions to be fully

planned and coordinated by higher echelon officers throughout the extended corporation known today as HSBC. Therefore, the list of 15 individual and corporate entities McCarley has charged.

It is also important this Court understand the shell game of corporate registration played by HSBC since 2000. It would appear that about every two years, the entity presently known as HSBC undergoes metamorphosis and emerges as a newly organized entity. The following list of corporate entities involved in the McCarley contract are elaborated below.

1. Mortgage was originated by Mortgage broker d.b.a. Homesense Financial Services (Homesense), having Vestavia Hills address. They immediately sold McCarley mortgage to Household Financial Services and six months later had ceased all business activity. Homesense appeared to be a credible organization – were properly registered with the Alabama Secretary of State and the Alabama State Banking Authority. McCarley files no charges against this entity.

2. Household Financial Services (HFS) acquired the McCarley contract in June 2000; one month after inception. HFS is adivision of Household Finance Corporation (HFC). HFS admitted to McCarley they were not properly registered with either the Alabama Secretary of State or the Alabama State Banking Authority. By November 2000, HFS was closed and merged into HFC.

3. HFC was not properly registered with both Alabama statutory agencies. Then in August 2003, Household International, the parent of HFC, merged with HSBC and closed HFC outright. Somehow, in November 2003, an elected Alabama Judge allowed an HFC, defunct for four months, to declare McCarley in default. HFC was also allowed to sell McCarley contract to an Assignee called MERS[4], not charged in these filings due to SCOTUS activity.

4. HSBC has never notified McCarley of their presence. HSBC has never been properly registered by the Alabama Secretary of State or the State Banking Authority. This is important to a state court because the failure to register with The Banking Authority results in all interest rates being declared

---

[3] HSBC was formed in China and now registered in London as well.

illegal, as found in Alabama §5-19-6 and 5-19-19, upheld by Alabama Supreme Court in *Derico v*

*Duncan, 410 So. 2d 27 (Ala 1982)*, and *Johnson v Alabama Power Co., 664 So.2d 877 (Ala 1995)*.

Failure to register with the Alabama Secretary of State brings designation as "Foreign Corporation" and

thus a denial of protection of Alabama Courts, as found in Ala §10-2b-15.02 and upheld by Alabama

Supreme Court in *Brown v Pool Depot, No. 1011032 (Ala Dec 20, 2002)*.  Therefore, all these entities

involved in the buildup to HSBC were statutorily denied the protection of Alabama Courts.

HSBC reorganized the total US and International holdings into several entities involved with the

Consumer Mortgage market.  Therefore, it has been necessary that McCarley charge all HSBC entities

involved with Home Mortgages to insure we capture and charge the entities that have "flow through"

responsibility for violations exercised against McCarley in an earlier "life" of HSBC/HFC, et.al.

| Mortgage Banking Entities Charged | (Case) | Respective Officer Charged | (Case) |
|---|---|---|---|
| Household Finance Corporation III | (93) | Thomas Detelich | (97) |
| HSBC-Gr.Corp | (102) | J.D. O'Toole | (94) |
| HSBC Mortgage Services, Inc. | (104) | Gary R. Esposito | (100) |
| HSBC Finance Corporation | (101) | Siddharth N. (Bobby) Mehta | (98) |
| Household International, Inc. | (103) | William F. Aldinger III | (99) |

| Independent Auditor of Record | | | |
|---|---|---|---|
| KPMG International | (91) | Tim Flynn, Chairman | (92) |

| Bank Entity | Officer Charged | Responsibility at Corporation | (Case) |
|---|---|---|---|
| HSBC Finance Corporation | Siddharth Mehta | CEO | (98) |
| | Kenneth H.Robin | Chief Legal Counsel | (95) |
| | Alan W. Jebson | Chief Operating Officer | (96) |
| | David Dew | Senior VP, Group Audit | (105) |

**The Entities Charged**

It is important the Court understand the apparent organizational relationship of the entities charged.

HSBC Gr. Corp appears to be the US corporate umbrella reporting directly to HSBC International.
HSBC Finance Corporation appears to be the entity with primary responsibility for mortgages.
HSBC Finance Corp appears subordinate to HSBC Gr. Corp.
HSBC Mortgage Services Inc., and HFCIII appear subordinate to HSBC Finance Corp.

---

[4] McCarley opponent in SCOTUS case 05-8143.

Household International was sunset at the time of the August 2003 merger that yielded the present group of companies d.b.a. HSBC. The Court will appreciate that all major mergers establish contingency funds to be used in remediation of "flow through" problems during the transition from old corp. to new corp. Discovery should identify such a fund in place at the present HSBC et.al.

KPMG is the independent auditor of record for HSBC, et.al., signing the "statement of good health" in each HSBC Financial Report submitted to stockholders and Securities and Exchange Commission. KPMG is charged for failing to identify and report the many organization related accounting irregularities that lead to the fraud and breach of contract against McCarley.

**The Individuals Charged**

It is important the Court understand why McCarley charges the individuals named. In constructing these charges, McCarley sought to identify the top corporate officer responsible for the major professional disciplines that would and should prevent the illegalities McCarley suffered. If we had chosen to charge each individual responsible throughout the chain of command we would have hundreds of cases. Those subordinate individuals who actually performed the illegal actions would simply testify they were following orders and were following corporate policy and procedure. Therefore, it is necessary to charge those responsible for formulating, administering, and adjusting the policies and procedure that insure legal operations at all times. Therefore the list of names of those charged as being the top corporate officers resident in the United States. There is another set of officers that should be charged at International level. However, International officers superior to these charged will be found to have international residence in England and/or China, therefore posing added difficult to serve and prosecute. We cover this realm by charging both individuals and the corporate entities.

William F. Aldinger III was CEO and Chairman of Household International at the time of Merger with HSBC. He is the individual singly most responsible for the illegalities perpetrated against McCarley. Mr. Aldinger is now retired at the age of 56 yet cannot be released from these proceedings.

All HSBC corporations and individuals may be served at both the following addresses:

Kenneth H. Robin, Chief Legal Counsel
Household Finance Corporation III
2700 Sanders Road
Prospect Heights, Illinois 60070

Corporate Registration Agent
File Number 53644376
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois 60604-1101

Thomas M. Detelich, President
Household Finance Corporation III
2700 Sanders Road
Prospect Heights, Illinois 60070

Corporate Registration Agent
File Number 53644376
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois 60604-1101

Kenneth H. Robin, Chief Legal Counsel
HSBC-Gr. Corp.
2700 Sanders Road
Prospect Heights, Illinois 60070

Corporate Registration Agent
File Number 57713054
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois 60604-1101

J.D. O'Toole, President
HSBC-Gr. Corp.
2700 Sanders Road
Prospect Heights, Illinois 60070

Corporate Registration Agent
File Number 57713054
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois 60604-1101

Kenneth H. Robin, Chief Legal Counsel
HSBC Mortgage Services, Inc.
2700 Sanders Road
Prospect Heights, Illinois 60070

Corporate Registration Agent
File Number 56720707
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois 60604-1101

Gary R. Esposito, President
HSBC Mortgage Services, Inc.
2700 Sanders Road
Prospect Heights, Illinois 60070

Corporate Registration Agent
File Number 56720707
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois 60604-1101

Kenneth H. Robin, Chief Legal Counsel
Household International, Inc.
2700 Sanders Road
Prospect Heights, Illinois 60070

Corporate Registration Agent
File Number 52375592
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois 60604-1101

William F. Aldinger, III
Household International, Inc.
2700 Sanders Road
Prospect Heights, Illinois  60070

Corporate Registration Agent
File Number 52375592
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois  60604-1101

Siddharth N. (Bobby)Mehta, Chair, CEO
HSBC Finance Corporation
2700 Sanders Road
Prospect Heights, Illinois  60070

Corporate Registration Agent
File Number 63225398
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois  60604-1101

Kenneth H. Robin, Chief Legal Counsel
HSBC Finance Corporation
2700 Sanders Road
Prospect Heights, Illinois  60070
(For Corporate Service)

Corporate Registration Agent
File Number 63225398
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois  60604-1101

Kenneth H. Robin, Chief Legal Counsel
HSBC Finance Corporation
2700 Sanders Road
Prospect Heights, Illinois  60070
(For service of individual)

Corporate Registration Agent
File Number 63225398
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois  60604-1101

Alan W. Jebson, Chief Operating Officer
HSBC Finance Corporation
2700 Sanders Road
Prospect Heights, Illinois  60070

Corporate Registration Agent
File Number 63225398
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois  60604-1101

David Dew, Senior VP Audit
HSBC Finance Corporation
2700 Sanders Road
Prospect Heights, Illinois  60070

Corporate Registration Agent
File Number 63225398
C.T. Corporation System
208 So Lasalle Street
Chicago, Illinois  60604-1101

Chief Legal Counsel
KPMG (Executive Offices)
757 Third Avenue
New York, NY  10017
212-909-5600

Tim Flynn, Chairman
KPMG (Executive Offices)
757 Third Avenue
New York, NY  10017
212-909-5600

## SUBSECTION 2

2. The statutes, regulations, or constitutional provisions which were violated;

That HFC III injured George D. McCarley by their violation of the CONTRACT CLAUSE, THE DUE PROCESS CLAUSE, and Breach of Contract as defined by case citations contained in 17 American Jurisprudence 2d, section on Contracts, and specifically §§701, 702, 703, 716, 717, 718.

Stare Decisis governing this case is provided by Historic decisions of The Alabama Supreme Court as well as The Supreme Court of the United States. Contract Law is primarily a Common Law practice and as such the primary citations relied upon for this case come from Case Precedents of Alabama and Federal courts, including Supreme Court of The United States.

HFC III has continually violated Consumer Protection (TILA and RESPA) and Alabama Mini Code (§5-19) and Alabama Code Sections 5, 8, and 10, and the following US and Alabama statutes:

.17 Am Jur 2d    CONTRACTS

§701    Contracts Generally   (14 Cases cited in Addendum) (Jury Instructions)
§702    Prevention of Performance Generally   (11 Cases cited in Addendum)
§703    Preventing or Causing Nonperformance   (8 Cases cited in Addendum)
§716    Breach Generally   (9 Cases cited in Addendum)
§717    Prevention of Performance as Breach
§718    Obstructing Other Party

## STATUTORY CHARGES LISTED AGAINST DEFENDANT

12 USC §2605—Servicing of Mortgage Loans and Escrow Accounts
15 USC §1601 et. Seq. – Mortgage Disclosure violations
24 CFR pt. 3500 Mortgage Disclosure violations (duplicates 1601)
18 USC §656. Theft, embezzlement, or misapplication by bank officer or employee
18 USC §1001 Fraud and False Statements or entries generally
18 USC §1005 Fraud by Bank Officer
18 USC §1010 Fraud and False Statements to influence actions of Bank
18 USC §1014 Fraud and False Statements on Loan
18 USC §1016 False Acknowledgement by Oath
18 USC §1032 Concealment of Assets - - from FDIC
18 USC §1621 Perjury Generally
12 USC §1831b Disclosure re: certain Federally related Mortgage Loans
12 USC §1831n  Accounting objectives, standards, requirements
12 USC §1831o. Prompt corrective action
12 USC §1833a Civil Penalties with Special Rule for Continuing Violations

12 USC §2803  Maintenance of Public Records
18 USC Chapter 115 §2382  Misprision of Treason.

**Recitation of Statute**

12 USC §2605—Servicing of Mortgage Loans and Escrow Accounts
CHAPTER 27--REAL ESTATE SETTLEMENT PROCEDURES

(a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing
(b) Notice by transferor of loan servicing at time of transfer (c) Notice by transferee of loan servicing at time of transfer (d) Treatment of loan payments during transfer period (e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general
 If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request
For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a      payment coupon or other payment medium supplied by the servicer, that--
 (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

22

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating
During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).

(f) Damages and costs
    Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals
    In the case of any action by an individual, an amount equal to the sum of--
(A) any actual damages to the borrower as a result of the failure; and
(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

(2) Class actions
    In the case of a class action, an amount equal to the sum of—
(A) any actual damages to each of the borrowers in the class as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--
(i) $500,000; or
(ii) 1 percent of the net worth of the servicer.

(3) Costs

    In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

(4) Nonliability

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

(g) Administration of escrow accounts

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

15 USC §1601 et. Seq. – Mortgage Disclosure violations

Release date: 2005-08-01
(a) Informed use of credit
The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.


15 USC § 1611. Criminal liability for willful and knowing violation

Release date: 2005-08-01
Whoever willfully and knowingly
(1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder,
(2) uses any chart or table authorized by the Board under section 1606 of this title in such a manner as to consistently understate the annual percentage rate determined under section 1606 (a)(1)(A) of this title, or
(3) otherwise fails to comply with any requirement imposed under this subchapter,
shall be fined not more than $5,000 or imprisoned not more than one year, or both.


18 USC §656. Theft, embezzlement, or misapplication by bank officer or employee

Release date: 2005-08-03
Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) [1] of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or

24

employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization or holding company or any moneys, funds, assets or securities intrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; "insured bank" includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation; and the term "branch or agency of a foreign bank" means a branch or agency described in section 20 (9) of this title. For purposes of this section, the term "depository institution holding company" has the meaning given such term in section 3 of the Federal Deposit Insurance Act.

18 USC §1001  Fraud and False Statements or entries generally

Release date: 2005-08-03
(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.
(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.
(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to—
(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or
(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

18 USC §1005 Fraud by Bank Officer Bank entries, reports and transactions

Release date: 2005-08-03
Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) [1] of the Federal Reserve Act, without

authority from the directors of such bank, branch, agency, or organization or company, issues or puts in circulation any notes of such bank, branch, agency, or organization or company; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank, company, branch, agency, or organization with intent to injure or defraud such bank, company, branch, agency, or organization, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, company, branch, agency, or organization, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, company, branch, agency, or organization, or the Board of Governors of the Federal Reserve System; or

Whoever with intent to defraud the United States or any agency thereof, or any financial institution referred to in this section, participates or shares in or receives (directly or indirectly) any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such financial institution—

Shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank or trust company, which has become a member of one of the Federal Reserve banks; "insured bank" includes any state bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation; and the term "branch or agency of a foreign bank" means a branch or agency described in section 20 (9) of this title. For purposes of this section, the term "depository institution holding company" has the meaning given such term in section 3(w)(1) of the Federal Deposit Insurance Act.

## 18 USC §1010 Fraud and False Statements to influence actions of Bank

Sec. 1010. Department of Housing and Urban Development and
Federal Housing Administration transactions

Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Department, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such department, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined under this title or imprisoned not more than two years, or both.

## 18 USC §1014 Fraud and False Statements on Loan

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Farm Credit Administration, Federal Crop Insurance Corporation or a company the Corporation reinsures, the Secretary of

Agriculture acting through the Farmers Home Administration or successor agency, the Rural Development Administration or successor agency, any Farm Credit Bank, production credit association, agricultural credit association, bank for cooperatives, or any division, officer, or employee thereof, or of any regional agricultural credit corporation established pursuant to law, or a Federal land bank, a Federal land bank association, a Federal Reserve bank, a small business investment company, as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. 662), or the Small Business Administration in connection with any provision of that Act, a Federal credit union, an insured State-chartered credit union, <u>any institution the accounts of which are insured by the Federal Deposit Insurance Corporation</u>, the Office of Thrift Supervision, any Federal home loan bank, the Federal Housing Finance Board, <u>the Federal Deposit Insurance Corporation</u>, the Resolution Trust Corporation, the Farm Credit System Insurance Corporation, or the National Credit Union Administration Board, a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978), or an organization operating under section 25 or section 25(a) \1\ of the Federal Reserve Act, upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, <u>shall be fined not more than $1,000,000</u> or imprisoned not more than 30 years, or both. The term ``State-chartered credit union'' includes a credit union chartered under the laws of a State of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States.

<u>18 USC §1016 False Acknowledgement by Oath</u>

Release date: 2005-08-03

Whoever, being an officer authorized to administer oaths or to take and certify acknowledgments, knowingly makes any false acknowledgment, certificate, or statement concerning the appearance before him or the taking of an oath or affirmation by any person with respect to any proposal, contract, bond, undertaking, or other matter submitted to, made with, or taken on behalf of the United States or any department or agency thereof, concerning which an oath or affirmation is required by law or lawful regulation, or with respect to the financial standing of any principal, surety, or other party to any such proposal, contract, bond, undertaking, or other instrument, <u>shall be fined under this title</u> or imprisoned not more than two years, or both.

<u>18 USC §1032 Concealment of Assets - - from FDIC</u>

§ 1032. Concealment of assets from conservator, receiver, or liquidating agent of financial institution

Release date: 2005-08-03

Whoever—

<u>(1) knowingly conceals or endeavors to conceal an asset or property</u> from the Federal Deposit Insurance Corporation, acting as conservator or receiver or in the Corporation's corporate capacity with respect to any asset acquired or liability assumed by the Corporation under section 11, 12, or 13 of the Federal Deposit Insurance Act, the Resolution Trust Corporation, any conservator appointed by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, or the National Credit Union Administration Board, acting as conservator or liquidating agent;

(2)<u>corruptly impedes or endeavors to impede the functions of such Corporation, Board, or conservator;</u> <u>or</u>

(3) corruptly places or endeavors to place an asset or property beyond the reach of such Corporation, Board, or conservator, shall be fined under this title or imprisoned not more than 5 years, or both.

18 USC §1621  Perjury Generally

Release date: 2005-08-03
Whoever—
(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

12 USC §1831n   Accounting objectives, standards, requirements

Release date: 2005-07-21
(a) In general
(1) Objectives
Accounting principles applicable to reports or statements required to be filed with Federal banking agencies by insured depository institutions should—
(A) result in financial statements and reports of condition that accurately reflect the capital of such institutions;
(B) facilitate effective supervision of the institutions; and
(C) facilitate prompt corrective action to resolve the institutions at the least cost to the insurance funds.
(2) Standards
(A) Uniform accounting principles consistent with GAAP
Subject to the requirements of this chapter and any other provision of Federal law, the accounting principles applicable to reports or statements required to be filed with Federal banking agencies by all insured depository institutions shall be uniform and consistent with generally accepted accounting principles.
(B) Stringency
If the appropriate Federal banking agency or the Corporation determines that the application of any generally accepted accounting principle to any insured depository institution is inconsistent with the objectives described in paragraph (1), the agency or the Corporation may, with respect to reports or statements required to be filed with such agency or Corporation, prescribe an accounting principle which is applicable to such institutions which is no less stringent than generally accepted accounting principles.
(3) Review and implementation of accounting principles required
Before the end of the 1-year period beginning on December 19, 1991, each appropriate Federal banking agency shall take the following actions:
(A) Review of accounting principles
Review—

(i) all accounting principles used by depository institutions with respect to reports or statements required to be filed with a Federal banking agency;

(ii) all requirements established by the agency with respect to such accounting procedures; and

(iii) the procedures and format for reports to the agency, including reports of condition.

(B) Modification of noncomplying measures

Modify or eliminate any accounting principle or reporting requirement of such Federal agency which the agency determines fails to comply with the objectives and standards established under paragraphs (1) and (2).

(C) Inclusion of "off balance sheet" items

Develop and prescribe regulations which require that all assets and liabilities, including contingent assets and liabilities, of insured depository institutions be reported in, or otherwise taken into account in the preparation of any balance sheet, financial statement, report of condition, or other report of such institution, required to be filed with a Federal banking agency.

(b) Uniform accounting of capital standards

(1) In general

Each appropriate Federal banking agency shall maintain uniform accounting standards to be used for determining compliance with statutory or regulatory requirements of depository institutions.

(2) Transition provision

Any standards in effect on December 19, 1991, under section 1833d [1] of this title shall continue in effect after December 19, 1991, until amended by the appropriate Federal banking agency under paragraph (1).

(c) Reports to banking committees

(1) Annual reports required

The Federal banking agencies shall jointly submit an annual report to the Committee on Banking, Finance and Urban Affairs of the House of Representatives and the Committee on Banking, Housing, and Urban Affairs of the Senate containing a description of any difference between any accounting or capital standard used by any such agency and any accounting or capital standard used by any other agency.

(2) Explanation of reasons for discrepancy

Each report submitted under paragraph (1) shall contain an explanation of the reasons for any discrepancy between any accounting or capital standard used by any such agency and any accounting or capital standard used by any other agency.

(3) Publication

Each report under this subsection shall be published in the Federal Register.


12 USC §1831o. Prompt corrective action


Release date: 2005-07-21

(a) Resolving problems to protect deposit insurance funds

(1) Purpose

The purpose of this section is to resolve the problems of insured depository institutions at the least possible long-term loss to the deposit insurance fund.

(2) Prompt corrective action required

Each appropriate Federal banking agency and the Corporation (acting in the Corporation's capacity as the insurer of depository institutions under this chapter) shall carry out the purpose of this section by taking prompt corrective action to resolve the problems of insured depository institutions.

(b) Definitions

For purposes of this section:
(1) Capital categories
(A) Well capitalized
An insured depository institution is "well capitalized" if it significantly exceeds the required minimum level for each relevant capital measure.
(B) Adequately capitalized
An insured depository institution is "adequately capitalized" if it meets the required minimum level for each relevant capital measure.
(C) Undercapitalized
An insured depository institution is "undercapitalized" if it fails to meet the required minimum level for any relevant capital measure.
(D) Significantly undercapitalized
An insured depository institution is "significantly undercapitalized" if it is significantly below the required minimum level for any relevant capital measure.
(E) Critically undercapitalized
An insured depository institution is "critically undercapitalized" if it fails to meet any level specified under subsection (c)(3)(A) of this section.

(Balance of this chapter deals with capitalization requirements for banks. Said capital requirements are designed to flag dangerous situations for bank health in the event of officer malfeasance.)

<u>12 USC §1833a  Civil Penalties with Special Rule for Continuing Violations</u>

Release date: 2005-07-21
(a) In general
Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section.
(b) Maximum amount of penalty
(1) Generally
The amount of the civil penalty shall not exceed $1,000,000.
(2) Special rule for continuing violations
In the case of a continuing violation, the amount of the civil penalty may exceed the amount described in paragraph (1) but may not exceed the lesser of $1,000,000 per day or $5,000,000.
(3) Special rule for violations creating gain or loss
(A) If any person derives pecuniary gain from the violation, or if the violation results in pecuniary loss to a person other than the violator, the amount of the civil penalty may exceed the amounts described in paragraphs (1) and (2) but may not exceed the amount of such gain or loss.
(B) As used in this paragraph, the term "person" includes the Bank Insurance Fund, the Savings Association Insurance Fund, and the National Credit Union Share Insurance Fund.

**(c) Violations to which penalty is applicable**
**This section applies to a violation of, or a conspiracy to violate—**
**(1) section <u>215</u>, <u>656</u>, <u>657</u>, <u>1005</u>, <u>1006</u>, <u>1007</u>, <u>1014</u>, or <u>1344</u> of title <u>18</u>;**
**(2) section <u>287</u>, <u>1001</u>, <u>1032</u>,<u>[1]</u> <u>1341</u> or <u>1343</u> of title <u>18</u> affecting a federally insured financial institution; or**
(3) section <u>645</u> <u>(a)</u> of title <u>15</u>.
(d) Effective date

This section shall apply to violations occurring on or after August 10, 1984.
(e) Attorney General to bring action
A civil action to recover a civil penalty under this section shall be commenced by the Attorney General.
(f) Burden of proof
In a civil action to recover a civil penalty under this section, the Attorney General must establish the right to recovery by a preponderance of the evidence.
(g) Administrative subpoenas
(1) In general
For the purpose of conducting a civil investigation in contemplation of a civil proceeding under this section, the Attorney General may—
(A) administer oaths and affirmations;
(B) take evidence; and
(C) by subpoena, summon witnesses and require the production of any books, papers, correspondence, memoranda, or other records which the Attorney General deems relevant or material to the inquiry. Such subpoena may require the attendance of witnesses and the production of any such records from any place in the United States at any place in the United States designated by the Attorney General.
(2) Procedures applicable
The same procedures and limitations as are provided with respect to civil investigative demands in subsections (g), (h), and (j) of section 1968 of title 18 apply with respect to a subpoena issued under this subsection. Process required by such subsections to be served upon the custodian shall be served on the Attorney General. Failure to comply with an order of the court to enforce such subpoena shall be punishable as contempt.
(3) Limitation
In the case of a subpoena for which the return date is less than 5 days after the date of service, no person shall be found in contempt for failure to comply by the return date if such person files a petition under paragraph (2) not later than 5 days after the date of service.
(h) Statute of limitations
A civil action . . . may not be commenced later than 10 years after the cause of action accrues.

## 12 USC §2803  Maintenance of Public Records

TITLE 12 > CHAPTER 29 > § 2803Prev | Next
Release date: 2005-07-21
(a) Duty of depository institutions; nature and content of information
(1) Each depository institution which has a home office or branch office located within a primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas, as defined by the Department of Commerce shall compile and make available, in accordance with regulations of the Board, to the public for inspection and copying at the home office, and at least one branch office within each primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas in which the depository institution has an office the number and total dollar amount of mortgage loans which were
(A) originated (or for which the institution received completed applications), or
(B) purchased by that institution during each fiscal year (beginning with the last full fiscal year of that institution which immediately preceded the effective date of this chapter).
(2) The information required to be maintained and made available under paragraph (1) shall also be itemized in order to clearly and conspicuously disclose the following:

(A) The number and dollar amount for each item referred to in paragraph (1), by census tracts for mortgage loans secured by property located within any county with a population of more than 30,000, within that primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas, otherwise, by county, for mortgage loans secured by property located within any other county within that primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas.

(B) The number and dollar amount for each item referred to in paragraph (1) for all such mortgage loans which are secured by property located outside that primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas.

For the purpose of this paragraph, a depository institution which maintains offices in more than one primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas shall be required to make the information required by this paragraph available at any such office only to the extent that such information relates to mortgage loans which were originated or purchased (or for which completed applications were received) by an office of that depository institution located in the primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas in which the office making such information available is located. For purposes of this paragraph, other lending institutions shall be deemed to have a home office or branch office within a primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas if such institutions have originated or purchased or received completed applications for at least 5 mortgage loans in such area in the preceding year.

(b) Itemization of loan data

Any item of information relating to mortgage loans required to be maintained under subsection (a) of this section shall be further itemized in order to disclose for each such item—

(1) the number and dollar amount of mortgage loans which are insured under title II of the National Housing Act [12 U.S.C. 1707 et seq.] or under title V of the Housing Act of 1949 [42 U.S.C. 1471 et seq.] or which are guaranteed under chapter 37 of title 38;

(2) the number and dollar amount of mortgage loans made to mortgagors who did not, at the time of execution of the mortgage, intend to reside in the property securing the mortgage loan;

(3) the number and dollar amount of home improvement loans; and

(4) the number and dollar amount of mortgage loans and completed applications involving mortgagors or mortgage applicants grouped according to census tract, income level, racial characteristics, and gender.

(c) Period of maintenance

Any information required to be compiled and made available under this section, other than loan application register information under subsection (j) of this section, shall be maintained and made available for a period of five years after the close of the first year during which such information is required to be maintained and made available.

(d) Duration of disclosure requirements

Notwithstanding the provisions of subsection (a)(1) of this section, data required to be disclosed under this section for 1980 and thereafter shall be disclosed for each calendar year. Any depository institution which is required to make disclosures under this section but which has been making disclosures on some basis other than a calendar year basis shall make available a separate disclosure statement

containing data for any period prior to calendar year 1980 which is not covered by the last full year report prior to the 1980 calendar year report.

(e) Format for disclosures

Subject to subsection (h) of this section, the Board shall prescribe a standard format for the disclosures required under this section.

(f) Data disclosure system; operation, etc.

The Federal Financial Institutions Examination Council, in consultation with the Secretary, shall implement a system to facilitate access to data required to be disclosed under this section. Such system shall include arrangements for a central depository of data in each primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas. Disclosure statements shall be made available to the public for inspection and copying at such central depository of data for all depository institutions which are required to disclose information under this section (or which are exempted pursuant to section 2805 (b) of this title) and which have a home office or branch office within such primary metropolitan statistical area, metropolitan statistical area, or consolidated metropolitan statistical area that is not comprised of designated primary metropolitan statistical areas.

(g) Exceptions

The requirements of subsections (a) and (b) of this section shall not apply with respect to mortgage loans that are—

(1) made (or for which completed applications are received) by any mortgage banking subsidiary of a bank holding company or savings and loan holding company or by any savings and loan service corporation that originates or purchases mortgage loans; and

(2) approved (or for which completed applications are received) by the Secretary for insurance under title I or II of the National Housing Act [12 U.S.C. 1702 et seq., 1707 et seq.].

(h) Submission to agencies

The data required to be disclosed under subsection (b)(4) of this section shall be submitted to the appropriate agency for each institution reporting under this chapter. Notwithstanding the requirement of subsection (a)(2)(A) of this section for disclosure by census tract, the Board, in cooperation with other appropriate regulators, including—

(1) the Office of the Comptroller of the Currency for national banks and Federal branches and Federal agencies of foreign banks;

(2) the Director of the Office of Thrift Supervision for savings associations;

(3) the Federal Deposit Insurance Corporation for banks insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), mutual savings banks, insured State branches of foreign banks, and any other depository institution described in section 2802 (2)(A) of this title which is not otherwise referred to in this paragraph;

(4) the National Credit Union Administration Board for credit unions; and

(5) the Secretary of Housing and Urban Development for other lending institutions not regulated by the agencies referred to in paragraphs (1) through (4),

shall develop regulations prescribing the format for such disclosures, the method for submission of the data to the appropriate regulatory agency, and the procedures for disclosing the information to the public. These regulations shall also require the collection of data required to be disclosed under subsection (b)(4) of this section with respect to loans sold by each institution reporting under this chapter, and, in addition, shall require disclosure of the class of the purchaser of such loans. Any reporting institution may submit in writing to the appropriate agency such additional data or explanations as it deems relevant to the decision to originate or purchase mortgage loans.

(i) Exemption from certain disclosure requirements

The requirements of subsection (b)(4) of this section shall not apply with respect to any depository institution described in section 2802 (2)(A) of this title which has total assets, as of the most recent full fiscal year of such institution, of $30,000,000 or less.

(j) Loan application register information

(1) In general

In addition to the information required to be disclosed under subsections (a) and (b) of this section, any depository institution which is required to make disclosures under this section shall make available to the public, upon request, loan application register information (as defined by the Board by regulation) in the form required under regulations prescribed by the Board.

(2) Format of disclosure

(A) Unedited format

Subject to subparagraph (B), the loan application register information described in paragraph (1) may be disclosed by a depository institution without editing or compilation and in the format in which such information is maintained by the institution.

(B) Protection of applicant's privacy interest

The Board shall require, by regulation, such deletions as the Board may determine to be appropriate to protect—

(i) any privacy interest of any applicant, including the deletion of the applicant's name and identification number, the date of the application, and the date of any determination by the institution with respect to such application; and

(ii) a depository institution from liability under any Federal or State privacy law.

(C) Census tract format encouraged

It is the sense of the Congress that a depository institution should provide loan register information under this section in a format based on the census tract in which the property is located.

(3) Change of form not required

A depository institution meets the disclosure requirement of paragraph (1) if the institution provides the information required under such paragraph in the form in which the institution maintains such information.

(4) Reasonable charge for information

Any depository institution which provides information under this subsection may impose a reasonable fee for any cost incurred in reproducing such information.

(5) Time of disclosure

The disclosure of the loan application register information described in paragraph (1) for any year pursuant to a request under paragraph (1) shall be made—

(A) in the case of a request made on or before March 1 of the succeeding year, before April 1 of the succeeding year; and

(B) in the case of a request made after March 1 of the succeeding year, before the end of the 30-day period beginning on the date the request is made.

(6) Retention of information

Notwithstanding subsection (c) of this section, the loan application register information described in paragraph (1) for any year shall be maintained and made available, upon request, for 3 years after the close of the 1st year during which such information is required to be maintained and made available.

(7) Minimizing compliance costs

In prescribing regulations under this subsection, the Board shall make every effort to minimize the costs incurred by a depository institution in complying with this subsection and such regulations.

(k) Disclosure of statements by depository institutions

(1) In general

In accordance with procedures established by the Board pursuant to this section, any depository institution required to make disclosures under this section—

(A) shall make a disclosure statement available, upon request, to the public no later than 3 business days after the institution receives the statement from the Federal Financial Institutions Examination Council; and

(B) may make such statement available on a floppy disc which may be used with a personal computer or in any other media which is not prohibited under regulations prescribed by the Board.

(2) Notice that data is subject to correction after final review

Any disclosure statement provided pursuant to paragraph (1) shall be accompanied by a clear and conspicuous notice that the statement is subject to final review and revision, if necessary.

(3) Reasonable charge for information

Any depository institution which provides a disclosure statement pursuant to paragraph (1) may impose a reasonable fee for any cost incurred in providing or reproducing such statement.

(l) Prompt disclosures

(1) In general

Any disclosure of information pursuant to this section or section 2809 of this title shall be made as promptly as possible.

(2) Maximum disclosure period

(A) 6- and 9-month maximum periods

Except as provided in subsections (j)(5) and (k)(1) of this section and regulations prescribed by the Board and subject to subparagraph (B), any information required to be disclosed for any year beginning after December 31, 1992, under—

(i) this section shall be made available to the public before September 1 of the succeeding year; and

(ii) section 2809 of this title shall be made available to the public before December 1 of the succeeding year.

(B) Shorter periods encouraged after 1994

With respect to disclosures of information under this section or section 2809 of this title for any year beginning after December 31, 1993, every effort shall be made—

(i) to make information disclosed under this section available to the public before July 1 of the succeeding year; and

(ii) to make information required to be disclosed under section 2809 of this title available to the public before September 1 of the succeeding year.

(3) Improved procedure

The Federal Financial Institutions Examination Council shall make such changes in the system established pursuant to subsection (f) of this section as may be necessary to carry out the requirements of this subsection.

(m) Opportunity to reduce compliance burden

(1) In general

(A) Satisfaction of public availability requirements

A depository institution shall be deemed to have satisfied the public availability requirements of subsection (a) of this section if the institution compiles the information required under that subsection at the home office of the institution and provides notice at the branch locations specified in subsection (a) of this section that such information is available from the home office of the institution upon written request.

(B) Provision of information upon request

Not later than 15 days after the receipt of a written request for any information required to be compiled under subsection (a) of this section, the home office of the depository institution receiving the request

shall provide the information pertinent to the location of the branch in question to the person requesting the information.
(2) Form of information
In complying with paragraph (1), a depository institution shall, in the sole discretion of the institution, provide the person requesting the information with—
(A) a paper copy of the information requested; or
(B) if acceptable to the person, the information through a form of electronic medium, such as a computer disk.

18 USC Chapter 115 §2382  Misprision of Treason.
Release date: 2005-08-03
Whoever, owing allegiance to the United States and having knowledge of the commission of any treason against them, conceals and does not, as soon as may be, disclose and make known the same to the President or to some judge of the United States, or to the governor or to some judge or justice of a particular State, is guilty of misprision of treason and shall be fined under this title or imprisoned not more than seven years, or both.

## SUBSECTION 3 AND 4

3. A description of the actions which violated the plaintiff's rights;

4. The specific dates or time period(s) when the violations occurred;

George D. McCarley has charged that HFC III developed and practiced a PATTERN OF OBSTRUCTION designed to obstruct or prevent McCarley from satisfying his conditions precedent to the mortgage contract.  That HFC III failed to satisfy their contractual conditions precedent, thus breaching contract, as defined by case citations contained in 17 American Jurisprudence 2d, section on Contracts, and specifically §§701, 702, 703, 716, 717, 718.  That HFC III continually, intentionally and deliberately committed statutory fraud, and that HFC III continually breached the terms and conditions of The Truth in Lending Act, 15 USC §1601 et.seq, and, that HFC III continually breached The Real Estate Settlement Procedures Act, 12 USC §§2601-2617.  The many violations of HFC III occurred on an almost monthly basis throughout the life of this contract.

4. That George D. McCarley entered a Mortgage Contract in May 2000 that was acquired by HFC III by acts of contract purchase, merger and acquisition.  That HFC III violated the many common law and statutory violations indicated above on an almost monthly basis, ending in December 2003.  In December 2003, HFC III fraudulently declared McCarley in default and sold mortgage to an Assignee.

McCarley has filed a set of appeals against the Assignee, presently docketed by The Supreme Court of the United States as case number 05-8143. Subsection 3 and 4 will provide a very specific charge for each infraction, and will including offender names, and dates or time periods involved with each.

That as of this date, HFC III through their partner business unit HSBC Mortgage Services, Inc. continues to list a judgment against McCarley equal to the face value of broken contract, and, in addition has filed false credit agency reports, therefore the Statute of Limitations has not commenced.

THE PATTERN OF OBSTRUCTION

George D. McCarley charges that HFC III violated law in obstruction of McCarley by a pattern intended to constantly cause McCarley to risk late payment by contacting HFC III and raise questions related to non-contracted amounts McCarley was billed. That HFC III would take over 20 days to reply to McCarley in each contested instance, in violation of 12 USC§2605, thus creating a condition in which McCarley was close to the point of lateness in further HFC III violation of 12 USC§2605, also serving to obstruct McCarley performance in violation of 17 Am Jur 2d §§701, 702, 703, 716, 717, 718. By this HFC III pattern of obstruction McCarley charges that when HFC III would demand non disclosed fee based electronic payment or else Western Union quick pay in order to avoid lateness (violating 15 USC§1601et.seq.). That McCarley was illegally billed fees that were never disclosed in any literature or billing statements produced by HFC III, in violation of 15 USC§1601et.seq.; and further, HFC III failed to record said illegal fees in their standard billing summary provided to McCarley, therefore invoking 18 USC§656. McCarley charges that in every instance in which HFC III bills an amount not agreed by contract, they effectively breach contract.

McCarley further charges that HFC III, with each violation noted in paragraph above, simultaneously violated the following, as any suggestion of McCarley lateness and any official documentation, report, statement, or billing summary suggesting McCarley lateness, especially in light of the malfeasance of HFC III officials and officers noted above, creates accounting irregularities that

skew any and all Securities and Exchange financial reports and correspondingly violates statutory:

fraud, perjury, malfeasance, and penalty provisions contained in the following:

18 USC §1001 Fraud and False Statements or entries generally
18 USC §1005 Fraud by Bank Officer
18 USC §1010 Fraud and False Statements to influence actions of Bank
18 USC §1014 Fraud and False Statements on Loan
18 USC §1016 False Acknowledgement by Oath
18 USC §1032 Concealment of Assets - - from FDIC
18 USC §1621 Perjury Generally
12 USC §1831n  Accounting objectives, standards, requirements
12 USC §1831o. Prompt corrective action
12 USC §1833a Civil Penalties with Special Rule for Continuing Violations
12 USC §2803 Maintenance of Public Records


## Detailed Charges, Dates, Chronology, Pattern of Continuing Violations

George D. McCarley mortgaged the home his family occupied for 73 years, in May 2000 to

initiate the warchest for his Mayoral campaign[5]. He made the first payment to the mortgage broker

initiating the contract. The broker sold mortgage to Household Financial Services (HFS), a division of

Household Finance Corporation (HFC). Thus began a 30 month nightmare in which McCarley and "the

bank" (HFC, et.al.) contested billing or other irregularities on nearly a monthly basis.

a) The very first illegality would occur in June 2000. Mortgage Broker sold the mortgage and

supplied McCarley with full disclosure information. The problem was, HFS was unable to locate the

McCarley mortgage on their computer for the next two months, thus the first HFC III violation of

§1601 et.seq. disclosure requirements. Obviously the mortgage company is required to keep adequate

records to service an account. Therefore, McCarley charges HFS (with flow-through to HFC III) with

violation of the first instance of 18 USC §1032 Concealment of Assets. Clearly, if the mortgage cannot

be located on the computer system, then the assets are not properly accounted for! Therefore, McCarley

charges HFC III with a clear violation of 12 USC §1831n  Accounting objectives, standards,

---

[5] Mortgage initiated one year past McCarley's return from Missionary duty to
Albania, MonteNegro, Kosovo, during the Milosevic conflagration.

requirements. Clearly HFS cannot maintain accounting objectives when they cannot account for assets within their system. McCarley charges HFC III is in clear violation of 12 USC §2803 Maintenance of Public Records, for the same reasons, continual disputed charges leads to continual accounting irregularities, thus the impossible task of maintaining public records . Most notably, McCarley charges this is the first instance of HFC III violation of 12 USC §2605—Servicing of Mortgage Loans and Escrow Accounts. Statute 2605 and Ala. § 5-19-19 allows banks and credit institutions 60 days to correct their errors, during which time no late fee may be charged. McCarley charges that HFC III violates §2605 on both counts, with each suggestion or billing of late fee, thus injuring McCarley in process. McCarley ultimately involved the Alabama Attorney General Office of Consumer Affairs. Correspondence with Barbara Armstrong at that office serves as evidence of the several months required for HFS to successfully locate the McCarley mortgage on their computer with consistency.

b. In July 2000, HFS first attempted to "force place insurance." HFS would contact McCarley by phone in late evening hours and inform him he was required to purchase insurance. They would ignore McCarley statements that they had a copy of his homeowners insurance and simply offer him a single billing or payment plan for HFS expensive insurance. This force placed insurance duress would happen in 7 different periods of the contract, beginning in July 2000, December 2000, July 2001, December 2001, July 2002. December 2002, July 2003. McCarley charges HFC III breaches contract by breaching these simple terms of the mortgage contract. They also charged a contractually forbidden Escrow account for the insurance at one point. McCarley charges each and every attempt to force place insurance by HFS (HFC III) violates §1601 disclosure and breaches contract yet again, in each instance.

Now the issue of obstruction occurs. At each period indicated, HFC III had a practice of duress by telephone. When that failed, a monthly charge for insurance would appear on a monthly billing statement. McCarley would call and dispute and this dispute would run longer than the §2605 20 and 60 day allowance to process. During this time, McCarley would be charged a late fee. The late fee was

39

wholly illegal as a result of the language of §2605 in which creditors are allowed 60 days to investigate and or correct and during which time no late fee is allowed. Each and every such instance would require two or three months to be sure the illegal late fees and illegal insurance payments were properly removed from billing statements. By statute §2605, time is not the option of the creditor. Penalty provisions payable to the debtor are triggered if the bank should fail to satisfy the 20 or 60 day stipulation. Therefore, HFC III not only breaches contract but chooses to ignore US law by declaring McCarley in default at a time when they are hopelessly and consistently in violation of §2605. At each instance, when McCarley approached the cutoff date for lateness, an HFC III rep would call informing McCarley by duress[6] tactic that he had to make the payment quickly in order to avoid late charges and credit dings. Typically, they ordered McCarley pay by electronic debit or else use the Western Union quick pay system. Both means of payment required extra fees that were never disclosed in HFC III literature and were never properly accounted on the Summary Billing statement for the account. McCarley charges HFC III used a pattern of duress to collect excess fees, said fees violating §2605 and §1601, said fees breaching contract, using obstructive collection methods in violation of 17 Am Jur 2d §§701, 702, 703, 716, 717, 718, thereby doing grievous financial harm to George D. McCarley.

**Notable Breach of Contract case citations from 17 Am Jur 2d:**

*§701 Generally*[7]
A party may not insist upon performance of a contract where he has brought about its breach. *Reiman v Saturday Evening Post Co. (SDNY) 464 Supp 214*

A plaintiff cannot prevail in an action for nonperformance of a contract if he alone is responsible for nonperformance. *Porto Rico v Title Guaranty & Surety Co., 227 US 382, 82 L. Ed 561, 33 S Ct 362;*

---

[6] 15 AmJur 2d Compromise and Settlement §30
        §30 Undue Influence
                Undue Influence consists of:
                        A person who is subject to influence;
                        Opportunity to exert undue influence;
                        Disposition to exert undue influence;
                        Result indicating undue influence. (fn 98-99)
(fn98)25 AmJur 2d Duress §§35-38;(fn99)Fisher v Bishop, 108 NY 25, 15 NE 331)
[7] Contains Jury Instructions and Practice Guide

*Lovell v St Louis Mutual Life Insurance Co., 111 US 264, 28 L. Ed 423, 4 S Ct 390; United States v Peck, 102 US 64, 26 L Ed 46*

A fortiori, a total breach by obligor on a contract excuses the oblige from the duty of further performance. *Melodies, Inc. v Mirabile, (3d Dept) 7 App Div 2d 783*

A provision in a contract forbidding its modification or change "except by entry thereon in writing signed by both parties", coupled with a provision that no court should relieve the plaintiff from a failure to comply strictly and literally with the contract, cannot be applied where the efficient cause of his failure to comply strictly and literally with the contract was the conduct of the other party. *Cheney v Libby, 134 US 68, 33 L. Ed 818, 10 S Ct 498*

A promisor is discharged from all liability when nonperformance . . . is caused by the act of the other contracting party. *Clearwater v. Meredith, 68 US 25, 17 L Ed 604*

Courts should not enforce an agreement where the party seeking enforcement has failed to perform his part. *Gray v Reynolds, (Ala) 553 So 79*

### §702 Prevention of Performance Genrally

It is an implied condition of every contract that one party will not prevent performance by the other party . . . *17 Am Jur § 380*

A party who prevents performance on his part or on the part of the adverse party cannot take advantage of nonperformance[8]. *Suter v Farmers Fertilizer Co., 100 Ohio St. 403, 126 NE 304*

. . . nonperformance of a promise in accordance with its terms is excused if performance is prevented by the conduct of the adverse party. *United States v Gleason, 175 US 588, 44 L Ed 284*

### §703 Preventing performance, or causing nonperformance of conditions

One who prevents or makes impossible the performance or happening of a condition precedent . . . cannot avail himself of nonperformance. *Lovell v St. Louis Mutual Life Ins Co., 111 US 264, 28 L Ed 423; Williams v Bank of the United States, 27 US 96, 7 L Ed 360*

### §716 Breach Generally

Damages are recoverable where a party fails or refuses to deliver property in accordance with the terms of the contract. *Plumme v Rigdon, 78 Ill 222; Brasher v Davidson, 31 Tex 190*

In an exchange transaction, the usual remedy for breach[9], . . . is by an action for damages. *Mason v Bohannon, 79 Ark 435, 96 SW 181*

---

[8] Jury Instructions: 7 Am Jur Pl& Pr Forms  Contracts Form 48

[9] Definition: "breach" as applied to contracts, is defined as failure without legal excuse to perform any promise which forms a whole or a part of a contract, including refusal of a party to recognize the existence of the contract or the doing of something inconsistent with its existence.

c. Next major series of HFC III violations is found in the summary billing statement by reconciling the number of months in which the payment billed is in violation of contract terms. This serves as both a breach of contract as well as a §1601 disclosure violation, and a §2605 servicing and 60 day violation, while also a corresponding violation of the 12 USC and 18 USC fraud statutes delineated above. McCarley mortgage contract bears only three normal monthly financial terms. Those terms are Principle, Interest, and Late fee. P&I payment is indicated on the front page correctly as $290.51. Late Fee is contracted at $14.53. Statutorily, by review of the disclosure statutes §1601 et.seq., any charge other than $290.51 or $305.04 violates disclosure and thus breaches statutes contract. Also, note that HFC III seems to plan to breach contract from inception due to two terms, ANCILLARY FEE and ESCROW on the billing summary and that neither are authorized by contract.

Review of monthly amounts billed versus contract

| Month | $Amount Billed | Contract Violation(s) | $ Escrow | Violations |
|---|---|---|---|---|
| Sept 01 | $290.51 | | | |
| Oct 01 | 290.51 | | | |
| Nov 01 | 290.51 | | 536.00 | 1 |
| Dec 01 | 290.51 | | | |
| Jan 02 | 335.18 | 1 | 44.67 | 1 |
| Feb 02 | 245.84 | 1 | 44.67 | 1 |
| Mar 02 | dispute | | | |
| Apr 02 | 1072.70(4 payment) | 4 | 44.67 | 1 |
| May 02 | 145.00 | 1 | 145.00 | 1 |
| June 02 | dispute | | | |
| July 02 | 696.84 | 3 | 25.13 | 1 |
| Aug 02 | 1360.94(4 payment) | 4 | 25.13 | 1 |
| Sept 02 | "dispute | | | |
| Oct 02 | after 4 | | | |
| Nov 02 | payments" | | | |
| Dec 02 | 312.00 | 1 | | |

HFC III contract violations of §1601 disclosure due to excess finance charges = 15
HFC III non disclosed fee billings in violation of contract =                 15
HFC III Escrow violations, strictly forbidden via contract =                 7

McCarley charges that in the month of April 2002, HFC III violated §1001 Fraud and False Statements or entries generally, §1005 Fraud by Bank Officer, §1010 Fraud and False Statements to influence actions of Bank, §1621 Perjury Generally, and, §1831n Accounting objectives, standards, requirements, by their perjurious and fraudulent actions that convinced McCarley's bank to remit four payments, without authorization[10] from McCarley, thus doing grievous injury to George D. McCarley.

> 18 USC §1001 Fraud and False Statements or entries generally
> 18 USC §1005 Fraud by Bank Officer
> 18 USC §1010 Fraud and False Statements to influence actions of Bank
> 18 USC §1621 Perjury Generally
> 12 USC §1831n Accounting objectives, standards, requirements

Neither TILA nor RESPA deal with such unauthorized payments, however, the statutory fraud charges and Breach of Contract statutes outlined apply fully in this instance:

From official billing data, and further audit of McCarley Bank Statements, McCarley will prove to a Jury that HFC III violated many statutes. That when confronted with their malfeasance, they wholly failed to correct the error, thus violating §1601 and §2605 on the dates noted. Due to their pattern, they have breached the statute of continuing violations, §1833a, invoking $5 million fines.

HFC III did knowingly establish a pattern of violation of §1601 disclosure by charging many other fees than those agreed by contract. HFC III did knowingly fail to correct their billing errors within the 60 day allowance of §2605. That George D. McCarley charges HFC III with violation of statutes 1601 and 2605 thus breaching contracted disclosure terms and further breaching contract by applying funds to contractually forbidden escrow account during the months of January 2002, February 2002, April 2002, May 2002, July 2002, August 2002 and December 2002. That same violations continued during 2000, 2001, and 2003. That McCarley is attempting to utilize HFC III official billing statement and said statement is so frought with errors as to be indistinguishable. McCarley makes the present charges and demands that HFC III provide a more concise and complete billing summary.

---

[10] McCarley closed this account with NationsBank as result.

McCarley will audit his personal bank records for purposes of Jury Trial display of the excess monies paid. However, the contract terms violated via demonstration above provide ample proof of malfeasance of HFC III on these critical contract terms.

### SUBSECTION 6

6. The specific relief that McCarley seeks, that is, the precise action that McCarley wishes for the court to take against each defendant in response to his complaint.

a) Each of fifteen named defendants shares responsibility for this travesty of justice, although for differing reasons. McCarley has identified potentially onerous statutory penalties, regulatory penalties and punitive and compensatory damages. It is possible to "parcel out" the responsibility by functional area. While corporations should pay the lion's share, corporate leaders must likewise be penalized to insure they take immediate action to cease these practices forever. Once a determination is reached as to what share the individuals should pay, we can determine logically which damages are attributable to the corporate Lawyers, which are attributable to the Auditors and which should be assigned to the Presidents and CEO's. While McCarley seeks redress for personal injuries, it remains imperative that a just conclusion insure that no further such cases should arise. Therefore, it is imperative the final judgment change the corporate culture and dynamic that creates cases such as this.

b) The issue of 18 USC § 2382, Misprision of Treason must be submitted to Jurist diligence. There exists a natural link between the §2382 demand that such activities be reported to authorities, and the disclosure requirement demanded by 15 USC §1601 et. Seq. The most rudimentary interpretation of disclosure statutes demands that any and all issues affecting a given situation must be disclosed to all the parties involved. Therefore, the very fact that HFC III via the extended parent HSBC has been penalized by US Treasury for actions with IRAQ in time of war should absolutely demand that HSBC entities fully inform their partners and customers of said §2382 violation. Otherwise they and their

customers are in possible violation of the same §2382 language(p.36) ", , , concealing, failing to disclose." This quote then provides the inextricable link to §1604 (p.24)consumer lending disclosure.

    c)  HFC III and all defendants must be ordered to produce an expanded billing summary statement of McCarley account that truly reproduces: i) amounts billed, ii) all fees billed, both hidden and non-hidden, disclosed and undisclosed, iii) statements to justify or explain any and all nondisclosed fees billed, iv) said statement must begin with May 2000 initiation point, whereas the statement they provided McCarley begins in Feb 2001, clearly failing the complete disclosure required; v) a more complete billing than was provided McCarley may have the effect of adding further dates, further instances of violation, and increased statutory penalties, damages and costs or monetary damage awards to George D. McCarley.


## SUBSECTION 7

7. If the claim is pursuant to a statute, a recitation of the statutory provision that authorizes relief.

    McCarley seeks redress from injuries created by Household Finance Corporation III violations of statutory law and violations of common law.  Injuries sustained by McCarley may be generally defined as: i)property damages, ii)court, attorney, legal, filing fees, iii)personal injuries for mental and emotional distress, iv)punitive and compensatory damages, v) regulatory fines assessed against HFC III (HSBC et.al.)

    Expense recovery related to HFC III actions

    a) Return of disseised ancestral property,  (Mortgage Value was $26,000)
    b) Compensation for Lost Income, (Three years at $100,000 = $300,000)
    c) Compensation for Court Costs, (Estimated at $10,000)
    d) Compensation for legal fees, (Estimated at $5000)
    e) Compensation for costs of preparation of court filings and research, ($20,000)

Compensatory Damages recovery

f) Compensation for Mental Anxiety, ($100,000)
g) Compensation for Emotional Distress, ($100,000)
h) Compensation for added Medical Costs, present and future
      Lifetime Medical Insurance policy estimate = $200,000
i) Compensation for Damages to disseised property, (Estimate $10,000)
j) Correction of false Credit reports, (HFC III effort)
k) Removal of monetary damage charges against McCarley, (HFC III effort)
l) Statutory Compensation awarded per state and federal statutes
      $10,264,000   (see worksheet for calculation)

Punitive Damages to be Assessed by Jury

m) seven years of future income, ($700,000 or CEO option)
n) medical insurance policy paid, (SEE h ABOVE)
o) 7 years of CEO level income, ($7,000,000)
p) that HFC III shall pay the full tax burden of any and all monetary awards
      estimate is $500,000
q) that punitive sanctions on HFC III be sufficient to insure they cease and desist
      fraudulent and breach of contract activity
r) order HFC III (HSBC) disclose their Iraq Sanctions to present/future customers.

Regulatory Fines Assessed

s) $1 to $5 million fine for false reports for each instance identified
      $653,000,000   (see worksheet for calculation)
t) regulatory review of consumer banking fitness of HFC III and HSBC et.al.


Statutory Provision That Authorizes Relief Requested

*12 USC §2605—Servicing of Mortgage Loans and Escrow Accounts (per violation)*

(f) Damages and costs

    Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

    In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure; and
(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

(2) Class actions

In the case of a class action, an amount equal to the sum of—
(A) any actual damages to each of the borrowers in the class as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--

(i) $500,000; or
(ii) 1 percent of the net worth of the servicer.

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

*15 USC §1601 et. Seq. – Mortgage Disclosure violations (per violation)*
(Penalty clause for §1601 contained in §1611

*§ 1611. Criminal liability for willful and knowing violation*

Release date: 2005-08-01
Whoever willfully and knowingly
(1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder,
(2) uses any chart or table authorized by the Board under section 1606 of this title in such a manner as to consistently understate the annual percentage rate determined under section 1606 (a)(1)(A) of this title, or
(3) otherwise fails to comply with any requirement imposed under this subchapter,
shall be fined not more than $5,000 or imprisoned not more than one year, or both.

*24 CFR pt. 3500 Mortgage Disclosure violations (Duplicates § 1601)*

*18 USC §656. Theft, embezzlement, or misapplication by bank officer or employee*
(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)

Release date: 2005-08-03
Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) [1] of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization or holding company or any moneys, funds, assets or securities intrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the

custody or care of any such agent, officer, director, employee or receiver, <u>shall be fined not more than</u> <u>$1,000,000</u> or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

*18 USC §1001  Fraud and False Statements or entries generally*
(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)

Release date: 2005-08-03
(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; <u>shall be fined under this title</u> or imprisoned not more than 5 years, or both.

*18 USC §1005  Fraud by Bank Officer*
(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)

<u>Whoever makes any false entry in any book, report, or statement of such bank,</u> company, branch, agency, or organization <u>with intent to injure or defraud</u> such bank, company, branch, agency, or organization, or any other company, body politic or corporate, <u>or any individual person,</u>

<u>Shall be fined not more than $1,000,000</u>

*18 USC §1010 Fraud and False Statements to influence actions of Bank*

<u>Whoever knowingly makes any false statement or report</u>
<u>Shall be fined not more than $1,000,000</u>

*18 USC §1014 Fraud and False Statements on Loan*
(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)

<u>Whoever knowingly makes any false statement or report,</u>
<u>any institution the accounts of which are insured by the Federal Deposit Insurance Corporation,</u>
<u>Shall be fined not more than $1,000,000</u>

*18 USC §1016 False Acknowledgement by Oath*

Whoever, being an officer authorized to administer oaths or to take and certify acknowledgments, knowingly makes any false acknowledgment, certificate, or statement concerning the appearance before him or the taking of an oath or affirmation by any person with respect to any proposal, contract, bond, undertaking, or other matter submitted to, made with, or taken on behalf of the United States or any department or agency thereof, concerning which an oath or affirmation is required by law or lawful regulation, or with respect to the financial standing of any principal, surety, or other party to any such

proposal, contract, bond, undertaking, or other instrument, <u>shall be fined under this title</u> or imprisoned not more than two years, or both.

*18 USC §1032 Concealment of Assets - - from FDIC*
(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)

<u>Whoever—</u>
<u>(1) knowingly conceals or endeavors to conceal an asset or property</u> from the Federal Deposit Insurance Corporation  <u>shall be fined under this title</u>

*18 USC §1621  Perjury Generally*

Whoever—
(1<u>) having taken an oath before a competent tribunal,</u>
, <u>willfully subscribes as true any material</u>
, <u>be fined under this title</u>

*12 USC §1831b  Disclosure re: certain Federally related Mortgage Loans*
*(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)*

*12 USC §1831n  Accounting objectives, standards, requirements*
*(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)*

*12 USC §1831o. Prompt corrective action*
*(Penalty amount guideline appears guided by 12 USC §1833a  Civil Penalties)*

*12 USC §1833a  Civil Penalties with Special Rule for Continuing Violations*

Release date: 2005-07-21
(a) In general
Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section.
(b) Maximum amount of penalty
(1) Generally
The amount of the civil penalty shall not exceed $1,000,000.
(2) Special rule for continuing violations
In the case of a continuing violation, the amount of the civil penalty may exceed the amount described in paragraph (1) but may not exceed the lesser of $1,000,000 per day or $5,000,000.

(c) Violations to which penalty is applicable
This section applies to a violation of, or a conspiracy to violate—
(1) section <u>215</u>, <u>656</u>, <u>657</u>, <u>1005</u>, <u>1006</u>, <u>1007</u>, <u>1014</u>, or <u>1344</u> of title <u>18</u>;
(2) section <u>287</u>, <u>1001</u>, <u>1032</u>,[1] <u>1341</u> or <u>1343</u> of title <u>18</u> affecting a federally insured financial institution; or
(3) section <u>645</u> <u>(a)</u> of title <u>15</u>.

## AUTHORIZATION FOR COMPENSATION FOR BREACH OF CONTRACT

17 Am Jur 2d §716 Breach Generally

Damages are recoverable where a party fails or refuses to deliver property in accordance with the terms of the contract.  Plumme v Rigdon, 78 Ill 222; Brasher v Davidson, 31 Tex 190

In an exchange transaction, the usual remedy for breach, . . . is by an action for damages.  Mason v Bohannon, 79 Ark 435, 96 SW 181

### STATUTORY AND REGULATORY PENALTY WORKSHEET

| Statute | Basis | Statutory Amount | Penalty pay to | occurrences | Penalty Total | Type |
|---------|-------|------------------|----------------|-------------|---------------|------|
| 2605 | each | 1000 | Plaintiff | 44 | 44,000 | statutory |
| 1601 | each | 5000 | Plaintiff | 44 | 220,000 | statutory |
| 656 | each | 5,000,000 | Plaintiff | tba | 5,000,000 | statutory |
| 1001 | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1005 | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1010 | per report | 1,000,000 | Regulatory | 18 | 18,000,000 | regulatory |
| 1014 | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1016 | per report | per jury | Regulatory | | | |
| 1032 | | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1621 | per default | 5,000,000 | Regulatory | 1 | 5,000,000 | statutory |
| 1831b | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1831n | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1831o | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 2803 | no penalty | | | | | |
| | | | | | 653,000,000 | |

Determination of number of occurrences

| | 2605 | 1601 |
|---|------|------|
| Force Place Insurar | 7 | 7 |
| Non Contract Fees | 15 | 15 |
| Late Fees | 15 | 15 |
| Forbidden Escrow | 7 | 7 |
| Fraud in Official Reports | quarterly 14 | |
| | annual 4 | |