RECEIVED

In The District Court of the United States for the Middle District of Alabama
Montgomery, Alabama

2006 MAR 14 A 9: 17

| | |
|---|---|
| George D. McCarley<br>216b Chestnut Street<br>Roanoke, Al 36274<br>    Plaintiff<br>v.<br><br>HSBC (consolidated 15 cases)<br>2700 Sanders Road<br>Prospect Heights, Ill<br>    Defendant | Case No. <u>3:06-cv-0091-MEF</u><br><br><br><br><br>**Motion to Overturn** Foreclosure<br>as Result of Obvious Errors Supported<br>by Case Citations |

Comes now George D. McCarley and presents the following Motion to Overturn Foreclosure as a result of obvious creditor errors and illegalities supported by the following enumerated paragraphs and clear evidence of *Stare Decisis* presented by case citations contained herein.

HSBC and 15 consolidated cases (HSBC), have committed the following violations of law and clear errors leading to this Summary Judgment Motion to Overturn:

1. HSBC wholly failed to respond to consumer complaint and correct creditor mistakes.
2. HSBC failed to present evidence in support of default and foreclosure allegations
3. McCarley was not given opportunity to present evidence
4. HSBC and banks inexplicably failed to record deeds or mortgage position in Randolph Co.
5. *Stare Decisis* indicates neither Bank nor Assignee may purchase mortgage at their own sale.
6. HSBC failed to disclose Unitemized charges, violating modern statute and *stare decisis*.

### POINT ONE

HSBC and other named defendants in this consolidation of 15 cases have been granted ample opportunity to obey law and admit their mistake and thus comply with statutes demanding they correct their errors (15 USC 1607), remit overcharges to George McCarley (Alabama §5-19-19), and thus right their wrongs (12 USC 2605). At each and every opportunity, they have failed to recognize, acknowledge or rebut the many allegations presented by George McCarley. Failure to respond to consumer complaint is not an option granted by any statute contained in RESPA, TILA, FCRA, or UCC. HSBC and named defendants heard McCarley complaints on a continual basis

1

prior to default and foreclosure. HSBC and named defendants were further apprised of their errors and failures at law before Alabama Courts, where they continued to ignore same. (see record of Randolph County CV 04-041) As a direct result of the ongoing failure of this multi-headed defendant, this Court holds ample grounds to overturn this improper and illegal foreclosure on the facts of violations contained in POINT ONE. We offer the following case citations in support:

### POINT ONE:

"It is generally accepted that a court of equity has the power to relieve a mortgagor from the effects of an operative acceleration clause in a mortgage where the default of the mortgagor was the result of some unconscionable or inequitable conduct of the mortagee" (55 Am Jur 2d §375 footnote 4)

Johnson v. Gore, 224 Miss 600, 80 So2d 731
Freund v. Weisman, 101 NJ Eq 245, 137 A 885, 53 ALR 522
Weyand v. Park Terrace Co., 202 NY 231, 95 NE 723
Hale v. Patton, 60 NY 223
Murphy v. Fox, (Okla) 278 P2d 820
Weinberg v. Naher, Wash 591, 99 P 736

Annotation in support of citations above
Annotation 70 ALR 993 (67 cases)

"Some courts go further and relieve a mortgagor from the effect of the acceleration clause where the default was caused by accident, or a mistake of the mortgagor, who was acting in good faith, or unusual circumstances beyond his control" (footnote 5)

Woodard v. Elrod, 154 Ala 340, 45 So 647
Console v. Torchinsky, 97 Conn 353, 116 A 613
Germania L. Ins. Co., v. Potter, 124 AppDiv. 814, 109 NYS 436
Murphy v. Fox, (Okla) 278 P2d 820
Lawton v. Lincoln, 200 Okla 182, 191 P2d 926

"Or simply where the court is confronted with genuinely equitable grounds for relief"

Bison v. Sax, 175 Cal app 2d 714, 346 P2d 814

Notes to the US Code for 15 USC 1601 *et seq* provide the following citations in support of the case citations above:

2

Twelve (12) cases are noted under the §1601 note entitled LIBERAL CONSTRUCTION.

> "Construction is to be liberally construed in favor of borrowers."
> Allen v. Beneficial Finance Co., D.C.Ind, 1975, 393 F.Supp.1382, affirmed 531 F.2d 797
> (Beneficial Finance Co., now shuttered, was former business unit of
> Household International/ HSBC)

Notes to the §1601 entitled PURPOSE GENERALLY provide the following applicable citations:

> "This chapter is designed to prevent unscrupulous and predatory creditor practices"
> Littlefield v. Walt Flanagan & Co., C.A. Colo 1974, 498 F.2d 1133.

> "Intent of the legislature when enacting this chapter was to provide the consumer with legal protection when applying for credit."
> Carrier Emp. Fed Credit Union v. McCullough, 1977, 400 NY.2d 206

Notes to §1601 entitled PROTECTION FROM FALSE CHARGES apply equally in this case.

> " . . . it is also a "disclosure law" intended to protect the public from false and fictitious charges and to thus avoid the uninformed use of credit"
> White v. Arlen Realty & Development, C.A.*Md1975*, 540 F.2d 645

### POINT TWO and POINT THREE

HSBC has never until this date, presented evidence of default or foreclosure. They have simply recited mere allegations without ever presenting evidence as required by *stare decisis* found in the following citations and notes from 55 Am Jur 2d:

Evidence (Am Jur footnotes)

§584. Generally; burden of proof.

> The rules and principles of evidence applicable in civil actions generally[4] are ordinarily applicable in actions to foreclose mortgages.[5] As in any other civil action, the burden of proof of any particular issue rests upon the party who, under the pleadings, asserts the affirmative of that issue.[6] Thus the burden . . . rests upon the complainant in a foreclosure action;[7] and when the defendant pleads payment as a defense, the burden is upon him to establish it by a preponderance of the evidence.[8]

[4]See 29 and 30 Am Jur 2d, Evidence
[5]As to evidence of proof in equity cases generally, see
    27 Am Jur 2d Equity §§236, 237
[6]Wittenbrock v. Parker, 102 Cal 93, 36 P 374
[7]Kapalczynski v. Sitniski, 91 NJ Eq 524, 111 A 24

3

> (Annotation 76 ALR 574, 591)
> [8]Drake Lumber Co. v. Semple, 100 Fla 1757, 130 So 577, 75 ALR 687, reh den 100 Fla 1771, 130 So 582, 75 ALR 694

The foregoing citations make it clear, the many banks involved in the McCarley foreclosure were required to demonstrate their case by showing evidence and not mere unsupported allegations. Likewise, these citations make it equally clear, McCarley should have been allowed to demonstrate his case eith evidence in a court of competent jurisdiction.

The following citation again demands EVIDENCE:

> It has also been held that the production in court of the outstanding secured bonds is not necessary to the rendition of a decree of foreclosure of a corporate mortgage where the evidence is sufficient to prove that the bonds are valid and are outstanding obligations, but that after a sale under such decree, the bonds have to be brought into court for payment and cancellation.[12]
>
> [12] Dickerman v. Northern Trust Co., 176 US 181, 44 L Ed 423, 20 S Ct 311
>
> §586. Evidentiary effect of recitals in instruments.
>
> According to some decisions, if a mortgage or trust deed recites indebtedness, nonpayment thereof is presumed and such presumption can be rebutted only by affirmative proof of payment.[14] On the other hand, there is authority that if the execution and genuineness of notes secured by mortgage sought to be foreclosed are denied, the mere recital of their execution and delivery in the mortgage is insufficient after the maturity of the notes to prove the existence of the indebtedness secured by the mortgage, and that in the absence of the production of such notes by the person claiming under them, they will be presumed to have been paid[15].
>
> [14]Rabinovitz v. Marcus, 100 Conn 86, 123 A 21; Graham v. Anderson, 42 Ill 514
> [15]Bruce v. Wanzer, 18 SD 155, 99 NW 1102

As we've said before and continue to charge, no evidence was presented by creditor and McCarley was never allowed to present evidence of proof of payment as required by footnote 14. McCarley will continue to deny that the conditions of the contract were executed and delivered as required by the contract and therefore, as per footnote 15, until such time as the bank(s) deliver factual evidence to support their claim, the McCarley mortgage "should be presumed to have been paid," as per

4

footnote 15. Continued failure of the many banks in regard to case citations presented appear to provide this Court a prime opportunity to overturn this illegitimate foreclosure action.

## POINT FOUR

HSBC and banks inexplicably failed to record deeds or mortgage position in Randolph County giving rise to continued questions related to "concealment of assets" and "fraud action." None of the four(4) banking companies involved were ever recorded as holding deed or mortgage at the Randolph County Courthouse Probate Office. The Mortgage Broker (Homesense Financial Services) who arranged the mortgage remained the official mortgage holder for almost two years. During that two year period, McCarley made payments to first Household Financial Services and then Household Finance Corporation. The order of succession of the mortgage deed then passed from the Mortgage Broker directly to an Assignee (MERS). HSBC never disclosed their presence and never appears on a recorded instrument in Randolph County, although continuing to list a judgment against McCarley for $26,000. This raises "a whole nother" set of "what if" questions. What if the house burned down? How long would it take the insurer to determine the factual interests present? Obviously McCarley would suffer in the interim. What if IRS had chosen to audit McCarley or any of the banks allegedly present in this situation. Who factually controlled the assets? Did the mortgage broker as well as four banks all claim equity in the McCarley mortgage? Considering the mortgage broker controlled the "paper" recorded in Randolph County Probate Court, why didn't the mortgage broker declare default? How is it possible any of the other banks could declare default or foreclose, when their presence is never recorded?

These many questions should begin to make clear just why Congress has so carefully mandated certain parameters of disclosure. This demonstrates precisely why statutory penalties for

5

failure to disclose are so high. This explains why the present Congress is in process of doubling statutory penalty amounts. This is precisely why the very first line of 15 USC 1638 reads as follows:

**Sec. 1638. - Transactions other than under an open end credit plan**

(a) Required disclosures by creditor

For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable:

<u>(1) The identity of the creditor required to make disclosure</u>.

US Code notes to section 1638 make the *stare decisis* impact of failure to disclose blatantly clear as may be seen in the following rendition of a SUMMARY JUDGMENT decision going against a business unit of the former Household International/HSBC.

> "In view of the determination that lender violated this subchapter by failing to disclose terms in its statement of disclosure fairly and conspicuously and in meaningful sequence, further proceedings were not necessary with respect to borrowers contention that they were entitled to summary judgment on claim that lender violated this subchapter by failing to disclose . . . "  Conrad v. Beneficial Finance Co. of New York Inc., 1977, 394 NYS2d 923.

Considering this series of lenders would so blatantly fail the test of disclosure that they failed to identify themselves to McCarley, and further, that they would fail to record their interest as mortgage holder or deed holder or title holder, as required by law, it should be blatantly clear to this court that HSBC has wholly failed any test of legality and further proceedings are not necessary..

How is it possible that "paper" could be passed from a broker directly to an assignee? Brokers are not authorized to make assignment and the banks servicing the mortgage were never recorded. It was the responsibility of "the bank" to file charges with evidence. Neither the broker nor the assignee held evidence of default or other factual matter in this case. McCarley dealt with "the bank" for the life of this mortgage. Only the bank could provide evidence of default. The assignee held mere allegations of default provided by a bank that has worn out the US Court system.

It is simply impossible that any entity could legally be allowed to foreclose a property when they are not, nor have they ever been recorded as a controlling interest in that property. Therefore, McCarley prays this court will execute a summary judgment decree and return his ancestral property, while continuing other Court actions regarding the matter of damages.

The intent of Congress is further upheld by the Courts as evidenced by the following opinions found in US Code notes upholding 15 USC 1640.

> "Congress sought in this section to vest considerable enforcement power in **"private attorneys general,"** individual borrowers who by suing lenders for alleged violations could achieve widespread compliance without government intervention." Bizier v. Globe Financial Services, Inc., C.A.Mass 1981, 654 F.2d 1.

> "Provision of this section that any creditor who fails in connection with any consumer credit transaction to disclose required information shall be liable . . ." Kelly v. Beneficial Finance Co. of Alabama, Ala.CivApp. 1979, 374 So2d 338, writ denied 374 So2d 340

### POINT FIVE

*Stare Decisis* indicates neither Bank nor Assignee may purchase mortgage at their own sale. Confirming testimony is available from courthouse employees to indicate no "sale on the courthouse steps" took place in this matter. Therefore, as the following case citations make clear, this alleged "sale" was not conducted under necessary jurisdiction of law. Further, McCarley will offer additional witness testimony that other people intended to bid on the property and were prevented. These points of testimony notwithstanding, the following case citations offer this Court ample opportunity to correct justice and overturn this foreclosure.

55 Am Jur 2d §§701, 702 provides the following case citations in support of above:

> "Some authorities maintain that a trustee or mortgagee selling under a power of sale must in person supervise and watch over the sale of the property[6], . . ."
> Although mortgages with power of sale are not looked upon with as much disfavor as they once were, courts of equitable jurisdiction will guard the rights of the mortgagor with jealous care, and the rule generally prevails that a mortgagee with power to sell is a trustee[14], and, as such, is not, in the absence of agreement[15] or statutory provision[16] to the contrary, allowed to bid or purchase directly at his own sale, so as

7

to render the sale binding or cut off the equity of redemption. The mortgagee cannot be both vendor and purchaser, and if he purchases at his own sale, he is still a trustee for the mortgagor.[17]

[6] Barksdale v. Strickland, 220 Ala 86, 124 So 234 (3 other cases)
14 §§698, 699 supra
15 §703 infra
16 §704 infra
17 Williams v. Wilson, 205 Ala 119, 87 So 549;
American Freehold Land & Mortg. Co., v. Sewell, 92 Ala 163, 9 So 143
Imboden v. Hunter, 23 Ark 622
Niagara F. Ins. Co., v. Scammon, 144 Ill 490, 28 NE 919, 32 NE 914
Houston v. National Mut. Bldg & L. Asso., 80 Miss 31, 31 So 540
Mills v. Mutual Bldg & L. Asso. 216 NC 664, 6 SE2d 549
Shew v. Call, 119 NC 460, 26 SE 33

Cases and notes below, again from 55 Am Jur 2d, indicate this type of sale that blocked outside parties bidding clearly violates stare decisis as indicated by the following notes and citations.

It has been intimated, however, that a mortgagor may, even in the absence of statutory provision, purchase at a sale under his mortgage to protect his own interest[1] or to avoid a loss to himself by a sale to a third person at a price below the mortgage debt,[2] . . .
[1] Heighe v. Evans, 164 Md 259, 164 A 671, 93 ALR 81.
[2] Bergen v. Bennett (NY) 1 Caines Cas 1.

The simple fact that the assignee closely controlled location and activity of the "sale" and prevented persons known to McCarley from bidding, along with the simple fact the sale failed to produce enough money to cover the meager mortgage principal, should make it clear this court is justified in executing a summary judgment overturn the foreclosure.

## POINT SIX

HSBC and predecessor banks included in the consolidation of 15 cases failed to disclose Unitemized charges, violating modern statute and *stare decisis*. The fullest extent of creditor failure to disclose may be found on the face of the 3 page billing summary provided this court in earlier filings. The most elementary review of amounts charged make it clear the creditor violated disclosure on almost a monthly basis. Then, coupled with the creditor's failure to notify the debtor

8

of the true identity of creditor, the case for summary judgment overturn of foreclosure becomes clearly justified. Please note the following Court opinions:

From §1605,

> "If not itemized and disclosed, creditor needs to include that item in the computation of finance charge, even if the item is not a charge for credit."
> Dalton v. Bob Neil Pontiac, D.C.N.C. 1979, 476 F.Supp. 789, affirmed 628 F.2d 1348

> "it is also a "disclosure law" intended to protect the public from false and fictitious charges and to thus avoid the uninformed use of credit"
> White v. Arlen Realty & Dev , C.A.Md 1975, 540 F.2d 645

> "This chapter refers to a transition in Congressional policy from a policy of let-the-buyer-beware to one of let-the-seller-disclose"
> Allen v. Beneficial Finance, D.C.Ind, 1975, 393 F.Supp.1382, affirmed 531 F.2d 797

## SUMMARY

Appropriate summarization of motion may be found in the following two notes and case citations:

> In general, foreclosure must be in compliance with terms of the contract and is not available where there has been no default. (55 Am Jur §554)
> Sallinger v. Lincoln Natl Ins Co (Ca8) 52 F2d 1080, 80 ALR 242

Key Citation from notes to US Code 15 USC 1601 *et seq*:

> "Failing to inform consumers about the cost of credit is the evil which this chapter was designed to prevent." Ecenrode v. Household Finance Corp. of South Dover, D.C.Del.1976, 422 F.Supp. 1327

McCarley has charged and will continue to charge that HSBC and the group of 15 defendants have never been in compliance with the terms of the contract and therefore, no condition of default or foreclosure can possibly be deemed just. Citation from US Code for 15 USC 1638 (TILA)

> "In view of the determination that lender violated this subchapter by failing to disclose terms in its statement of disclosure fairly and conspicuously and in meaningful sequence, further proceedings were not necessary with respect to borrowers contention that they were entitled to summary judgment on claim that lender violated this subchapter by failing to disclose . . . " Conrad v. Beneficial Finance Co. of New York Inc., 1977, 394 NYS2d 923.

9

Quite frankly, HSBC and the 15 associated cases have "spit in the face" of law and order. Any of the numbered points provide ample justification to overturn. Resulting from the considerable weight of case citations in support of the six points, George D. McCarley is due a summary judgment overturning this foreclosure, thus allowing this Court to concentrate on the more difficult issue of damages.

I affirm that the foregoing is a true and complete statement of fact.

George D. McCarley
March 13, 2006
216B Chestnut Street
Roanoke, Al 36274
334-863-6503 (6489)

## PROOF OF SERVICE

I, George D. McCarley, do swear or declare that on this date, March 13, 2006, as required by Supreme Court Rule 29 I have served the enclosed Motion to Overturn on each party to the above proceeding or that party's counsel as required by the IN FORMA PAUPERIS status of the case, and on every other person required to be served, by depositing envelope containing the above documents in the United States mail properly addressed to each of them and with first class postage prepaid, or by delivery to a third-party commercial carrier for delivery within 3 calendar days.

The name and address of those served are as follows:

| | |
|---|---|
| The Clerk<br>Middle District of Alabama, Eastern Division<br>One Church Street, PO Box 711<br>Montgomery, Al 36101-0711<br>334-954-3600 | Not Served:<br>Bradley Arant, Attny George Parker<br>Alabama Center for Commerce<br>401 Adams Ave, Suite 780<br>Montgomery, Al 36104<br>334-956-7700 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 13, 2006

George D. McCarley