IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GEORGE D. MCCARLEY,          )
                              )
         Plaintiff,           )
                              )
v.                            )          CIVIL ACTION NO. 3:06CV91-MEF
                              )                 Lead Case
HOUSEHOLD FINANCE             )
CORPORATION III              )
                              )
         Defendant.           )

## ORDER AND RECOMMENDATION
## OF THE MAGISTRATE JUDGE

This is the lead case in a consolidation of 15 lawsuits filed by the *pro se* plaintiff,

GEORGE D. MCCARLEY ["McCarley"] on 31 January 2006 (See Doc. # 3).[1]  The court's

preliminary review of the lawsuits revealed that McCarley's complaints appeared to have

arisen from the same operative nucleus of fact, were grounded in the same or similar

allegations of wrongdoing, and included prayers for the same or similar relief.  In several

instances, the lawsuits identified the same alleged wrongdoers.[2]  Thus, in response to the

_____

[1]McCarley is the sole plaintiff in actions numbered 3:06CV91-MEF through
3:06CV105-MEF.

[2]In its order directing McCarley to file an Amended Complaint, the court advised
him that he had not given any of the defendants adequate notice of his claims.  The court
further advised him that adequate notice must include (1) the names and positions of the
person(s)  who committed the act(s), (2) the acts or behavior that constituted the
wrongdoing, (3) the names and positions of the person(s) injured or damaged, (4) an
explanation of the injury or damage inflicted, (5) the constitutional or statutory provision
that was violated, and (6) the specific relief that the plaintiff requests from the court.
Thus he was required in his Amended Complaint to set forth:  The names of the
individual(s) who violated his statutory or constitutional rights and a current mailing

court's order, McCarley filed an Amended Complaint on 17 February 2006 Doc. # 5).  The cases were consolidated on 8 February 2006, and the court entered an order setting the case for a status conference on 3 March 2006 (Doc. # 6).

The purpose of the status conference was (1) to identify the specific claims, (2) to determine the relatedness of the claims in the several cases, and (3) to facilitate management of the 15 actions.  At the time of the status conference, only one defendant, Gary Esposito ["Esposito"], in Civil Action 3:06CV100-MEF, had been served.

Present at the status conference were McCarley and George Parker, Esq., counsel for Gary Esposito.[3]  Because the matters discussed and preliminarily resolved at the scheduling conference warranted a stay in the proceedings, the court entered an order on 17 March 2006 directing McCarley to refrain from filing other separate lawsuits challenging the adverse action which is the subject of the instant consolidated case and to refrain from filing any further pleadings in the instant case (Doc. # 15).  No further proceedings in any of the

---

address where the individual(s) can be served;  The statutes, regulations, or constitutional provisions which were violated; A description of the actions which violated his rights; The specific dates or time period when the violations occurred; Whether he has sought relief from any governmental agency, and if so, the name of the agency, the date of the claim, and the result of the investigation of the claim; and The specific relief that he seeks, that is, the precise action that he wishes for the court to take against each defendant in response to his complaint.  Finally, the court admonished McCarley that if a claim is asserted pursuant to a statute, he must include a recitation of the statutory provision that authorizes the relief requested.

[3]The court specifically directed Esposito to appear at the status conference, with the understanding that neither he nor his counsel waived any challenges to the court's jurisdiction or any equitable remedies available to him.  Their presence was designed to facilitate responses to the court's factual inquiries.

consolidated actions have occurred since that date.

In the interim, the court has reviewed McCarley's several complaints and considered his representations at the status conference and pleadings in this case. The function of this Recommendation is to clarify the claims in this consolidated case, facilitate the dismissal of unnecessary parties and/or parties against whom McCarley admits he has no claim, and set forth a schedule which permits the case to proceed.

Based upon the foregoing, and for good cause, the Magistrate Judge recommends that the claims against the defendants be dismissed specifically in the manner set forth in the conclusion of this Recommendation.

## I.   DISCUSSION

### A.   *The Nature of the Lawsuits*

#### 1.   The Parties and the Issues

In many ways, McCarley's Amended Complaint was as unclear as his initial complaint with respect to specific claims and allegations. It appeared, however, to allege the following (the alphabetized paragraphs below correspond with McCarley's numbered paragraphs in his Amended Complaint):

a.      Household Finance Corporation III ["HFC III"] violated his due process rights by breach of contract, statutory fraud, and obstructionist practices; by merging with Household International, Inc., HFC III

gained responsibility for McCarley's (mortgage) contract;[4]

b.      HFC III violated the Contract Clause and the Due Process Clause of the

        Constitution and breached his contract; it also violated the Truth In

        Lending Act and RESPA;[5]

c.      HFC III breached his contract and "committed statutory fraud" by

        continually breaching the terms and conditions of the TILA and the

        RESPA;

d.      HFC III violated his mortgage contract by selling the mortgage to an assignee;

Significantly, McCarley did specifically declare that it was his intention to "eliminate

from his amended complaint any references to referrals to the United States Attorney or to

any acts that allegedly violate criminal laws".[6]  Thus, the court deems all of his current

allegations in his complaints to refer solely to violations of civil law, whether common law,

constitutional, or statutory.

For all of the violations alleged, McCarley seeks compensatory and punitive damages,

specifically, "7 year's compensation equal tot he level of pay of the HSBC CEO", which

McCarley represented to be "around $10 million per year" (Doc. # 5, p. 12).  In addition, he

claims statutory damages of $18,035.00,  "WhistleBlower" compensation in the amount of

$635,000,000, and reimbursement for certain expenses, court costs, and legal fees.

---

[4]McCarley admitted said that the merger

[5]He also alleged the violation of unnamed sections of Titles 12, 15, and 18 of the
United States Code.  The court makes no attempt here to define these claims further.

[6]Doc. # 5, p. 1.

Named as defendants in these consolidated cases are the following 15 entities and persons:

- *KPMG International*, an international LLC or corporation auditing and accountancy with headquarters in New York City (sued because of its "failure to . . . .audit, advise, or prevent illegal activity" of HSBC (Doc. # 1, p. 2))

- *Tim Flynn*, Chairman or President of KPMG and auditor for HSBC

- *Household Finance Corporation III*, which merged with HSBC, sued for failing to advise McCarley of the merger, in violation of TILA and RESPA

- *J. D. O'Toole*, Presidet of HSBC Gr. Corp.

- *Kenneth H. Robin*, legal counsel for HSBC Finance Corporation

- *Alan W. Jebson*, Group Chief Operating Officer for HSBC Finance Corporation

- *Thomas M. Detelich*, President of HSBC Mortgage Services Inc.

- *Siddarth N. (Bobby) Mehta*

- *William F. Aldinger, III*

- *Gary R. Esposito*

- *HSBC Finance Corporation, or Honk Kong and Shanghai Banking Company*, a company that ultimately merged with Household Finance Corporation (sued for foreclosing his property and maintaining "illegal procedures", leading to fraud against McCarley)

- *HSBC Gr. Corp.*

- *Household International, Inc.*

- *HSBC Mortgage Services Inc.*

- *David Dew,* Senior Vice President of Group Audit for HSBC Finance Corporation

## 2.    Factual Background

At the status conference on 3 March 2006, McCarley acknowledged that all of his lawsuits have a common nucleus of fact, namely a mortgage foreclosure that cost him residential real property which had been in his family for more than 70 years.  He owned the home located at 211 Chestnut Street,  Roanoke, Alabama, in Randolph County.  It was appraised for approximately $44,000.  The wood-frame, 1800 square foot house sets on 6/10 of an acre.

McCarley purchased the home from his grandparents' estate and mortgaged it to Household Finance Corporation in May 2000.[7]  HSBC, a subsequent mortgagee, foreclosed on the mortgage in February 2004 because of default in payment when the remaining mortgage was $25,000.[8]  HFC later merged with HSBC, and the latter company became the owner of the premises in August 2003.[9]  Before McCarley filed the instant lawsuits, the property was sold, but he retains a mechanic's lien on the house.

McCarley's main complaints are (a) the mortgage was foreclosed, then (b) later sold to HSBC, thus costing him the ownership of the home, damage to his credit reputation, and

---

[7]The mortgage was recorded in the Randolph County Probate Judge's Office in Roanoke at MORT 403, page 122.  No one else had an interest in the property when the mortgage was recorded.

[8]McCarley purchased the home from the estate of his maternal grandparents.  The amount of the original mortgage was $26,000, thus McCarley apparently paid only $1,000 of the principal.

[9]McCarley alleges that HSBC forclosed his property improperly and caused him to suffer "great injury".

litigation expenses, including attorney fees, in his attempts to redeem or recover the property.

McCarley acknowledges that he has litigated the foreclosure in the Alabama state courts,

through the Alabama Supreme Court.  At the status conference, he represented that the

United States Supreme Court had denied his petition for certiorari.  Thus, the primary issue

of the legitimacy of the foreclosure appears to have been resolved.

The current litigation   - in this court, and if it is still extant, in the state courts -  is

premised upon ancillary issues, to wit, contract, statutory, and constitutional issues inherent

in the legitimacy of the movement of the McCarley mortgage from one entity to another, and

the injury or damage caused him as a result.  McCarley readily acknowledged at the status

conference that all of the lawsuits have a common nucleus of fact.

**B.    *McCarley's Representations at the Status Conference***

The status conference was extensive.[10]  The court engaged McCarley in a thorough

discussion of his claims against the corporate and individual defendants and his knowledge

of the existence or non-existence of facts which support his allegations against them.   The

following representations made by the plaintiff at the conference are critical to the

conclusions reached in this Recommendation:

1.    HSBC does not have an address in the continental United States; its addresses
     are in London and Hong Kong.

---

[10]Though repetitive, the court had set for McCarley's representations regarding the
individual defendants in an itemized format because (a) that is the manner in which the
representations were solicited, and (b) each representation is the basis of a specific
Recommendation to the court.

2.      McCarley has no evidence that **Tim Flynn** ["Flynn"] even knew that McCarley had a mortgage or that Tim Flynn did anything to damage him (Record, at 2:37:45, 2:37:53).

NOTE: Flynn was sued individually as the Chairman or President of KPMG in **Civil Action No. 3:06CV92-MEF.** In the seven-page complaint, Flynn's name appears only on page one. McCarley makes no allegations against Flynn. Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Flynn's name does not appear in that document .

3.      McCarley has no evidence that **J. D. O'Toole** ["O'Toole"] even knew that McCarley had a mortgage or that O'Toole did anything to damage him (Record, at 2:41:28).

NOTE: O'Toole was sued individually as the President of HSBC Gr. Corp in **Civil Action No. 3:06CV94-MEF**. In the eight-page complaint, O'Toole's name appears only on page one. McCarley makes no allegations against O'Toole. Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and O'Toole's name does not appear in that document.

4.      McCarley has no evidence that **Kenneth H. Robin [**"Robin"] even knew that McCarley had a mortgage or that Robin did anything to damage him (Record, at 2:41:26).

NOTE: Robin was sued individually as legal counsel for HSBC Finance Corporation in **Civil Action No. 3:06CV95-MEF**. In the seven-page complaint, Robin's name appears only on page one. McCarley makes no allegations against Robin. Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Robin's name does not appear in that document.

5.      McCarley has no evidence that **Alan W. Jebson** ["Jebson"] even knew that McCarley had a mortgage or that Jebson did anything to damage him (Record, at 2:41:26).

NOTE: Jebson was sued individually as the Group Chief Operating Officer for HSBC Finance Corporation in **Civil Action No. 3:06CV96-MEF**. In the seven-page complaint, Jebson's name appears only on page one. McCarley makes no allegations against Jebson. Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Jebson's name does not appear in that document.

6.      McCarley has no evidence that **Thomas M. Detelich** ["Detelich"] even knew that McCarley had a mortgage or that Detelich did anything to damage him (Record, at 2:41:20).

NOTE: Detelich was sued individually as President of HSBC Mortgage Services, Inc. in **Civil Action No. 3:06CV97-MEF**.[11]  In the seven-page complaint, Detelich's name appears only on page one.  McCarley makes no allegations against Detelich.  Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Detelich's name does not appear in that document.

7.      McCarley has no evidence that **Siddarth N. (Bobby) Mehta** ["Mehta"] even knew that McCarley had a mortgage or that Mehta Flynn did anything to damage him (Record, at 2:41:11).

NOTE: Mehta was sued individually as Chairman and CEO of HSBC Finance Corporation in **Civil Action No. 3:06CV98-MEF**.  In the seven-page complaint, Mehta's name appears only on page one.  McCarley makes no allegations against Mehta.  Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Mehta's name does not appear in that document.

8.      McCarley has no evidence that **William F. Aldinger, III** ["Aldinger"] even knew that McCarley had a mortgage or that Aldinger did anything to damage him (Record, at 2:41:43).

NOTE: Aldinger was sued individually as former Chairman and CEO of HSBC Finance Corporation in **Civil Action No. 3:06CV99-MEF**.  In the seven-page complaint,[12] Aldinger's name appears only on page one.  McCarley makes no allegations against Aldinger.  Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Aldinger's name does not appear in that document.

9.      McCarley has no evidence that **Gary R. Esposito** ["Esposito"] even knew that McCarley had a mortgage or that Esposito did anything to damage him (Record, at 2:40:45).

---

[11]The docket sheet incorrectly reflects the defendant's name in Civil Action No. 3:06CV97 as "Flynn".  That lawsuit actually names Detelich as the defendant.

[12]McCarley misnumbered the pages by skipping page seven.  Although the last page of the complaint is numbered "8", the complaint actually consists of seven pages.

NOTE: Esposito was sued individually as President of HSBC Mortgage Services, Inc. in **Civil Action No. 3:06CV100-MEF**. In the seven-page complaint, Esposito's name appears only on page one. McCarley makes no allegations against Esposito. Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Esposito's name does not appear in that document.

10.  McCarley has no evidence that **David Dew** ["Dew"] even knew that McCarley had a mortgage or that Dew did anything to damage him (Record, at 2:45:29).

NOTE: Dew was sued individually as Senior Vice President of Group Audit for HSBC Finance Corporation in **Civil Action No. 3:06CV105-MEF**. In the seven-page complaint, Dew's name appears only on page one. McCarley makes no allegations against Dew. Moreover, the court has meticulously reviewed the 14-page Amended Complaint, and Dew's name does not appear in that document.

11.  McCarley said that "considering the continual turnovers" in these organizations, he wasn't "sure who in that organization would know that anyone had a mortgage".

12.  In all of his lawsuits  - against all of the defendants -  McCarley alleged violations of his Due Process rights and violations of the Fifth, Seventh, and Fourteenth Amendments. He based his allegations on a theory called "non-judicial foreclosure". **He acknowledged, however, that he does not contend in any of his lawsuits that the State of Alabama took any action against him or that the named defendants acted on behalf of the State of Alabama**.

13.  McCarley stated that none of these lawsuits included state law claims.

14.  The status conference also included the following exchange:

COURT: If your mortgage had not been foreclosed in early 2004, would you be in court against any of these defendants?[13]

MCCARLEY: Not Likely.[14]

---

[13]Record, at 2:51:55.

[14]Record, at 2:51:54.

> COURT: Other than the foreclosure of your mortgage, is there any act for which you are holding these entities responsible?[15]

> MCCARLEY: No M'am.[16]

15.    McCarley attempted to overthrow the foreclosure in the Randolph County Circuit Court in February 2004, as soon as the foreclosure occurred (Record, at 3:14:51).

## C.    *The Applicable Law*

### 1.    **Constitutional Violations**

To allege that the corporate and individual defendants have violated the Fifth, Seventh, and Fourteenth Amendments to the Constitution, McCarley is essentially invoking 42 U.S.C. § 1983.   Those amendments are made applicable to the states, but not to individuals or corporate entities.  Thus,  to maintain an action under 42 U.S.C. § 1983, the conduct complained of must have been committed by a person acting under color of state law.  ***Parratt v. Taylor***, 451 U.S. 527 (1981); ***American Mfrs. Mut. Ins. Co. v. Sullivan***, 526 U.S. 40, 49 (1999) (To "state a claim for relief in an action brought under §1983, [the plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Like the state-action requirement of the Fourteenth Amendment, the under-color-of-law element of §1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.").  ***See also Focus on the Family v. Pinellas Suncoast Transit***

---

[15]Record, at 2:52:10.

[16]Record, at 2:52.17.

*Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003).[17]

The actions about which McCarley complains were not committed by persons acting under color of state law.  They were instead committed, if at all, by entirely private actors acting to advance or protect purely private entities.  As aforestated, McCarley acknowledged at the status conference in March 2006 that he does not contend in any of his lawsuits that the State of Alabama took any action against him or that the named defendants acted on behalf of the State of Alabama.

Therefore, the constitutional claims presented in this case lack an arguable basis and are therefore due to be dismissed upon application of 28 U.S.C. § 1915(e)(2)(B)(I).  *Neitzke v. Williams*, 490 U.S. 319 (1989).

## 2.    The Truth In Lending Act

The Truth in Lending Act includes provisions for private enforcement.  However, by filing his lawsuits on 31 January 2006 in response to a foreclosure which occurred in February 2004, McCarley has waited too late.  The operative provision of the act provides:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year from the date of the occurrence of the violation*. This subsection does not bar a person from asserting a violation of this title [15 USCS §§ 1601 et seq.] in an action to collect the debt which was brought more than one year

---

[17]*See Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2769-70, 73 L. Ed. 2d 418 (1982) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." (quoting *United States v. Price*, 383 U.S. 787, 794 n.7 (1966)).

from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 129 [15 USCS § 1639] may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs. The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under section 108 [15 USCS § 1607] and shall provide the agency with a copy of the complaint. If prior notice is not feasible, the[18] State attorney general shall provide notice to such agency immediately upon instituting the action.

15 U.S.C. § 1640.

McCarley freely acknowledged that it was the foreclosure of his property which brought him to court.  Clearly, he alleges other, more specific acts against the corporate defendants, but all of them are precedent to the foreclosure.  Citing no authority whatsoever, McCarley asserted at the status conference that "so long as there is a credit ding on George McCarley's credit record that HSBC or any of their entities placed there, the statute of limitations has not, and cannot commence" (Record, at 3:03:45).  His statement is meritless. The statute of limitations, as defined by the statute, is based upon the occurrence of the *violation*, not the occurrence of the *damage*.

Because McCarley's lawsuit followed the foreclosure by almost two years and is therefore untimely.  Thus, he cannot recover under the Truth In Lending Act.

---

[18]For example, he alleges that, but for the failure of KPMG to audit HSBC, HSBC would have violated the Contract Clause or the Due Process Clause or breached the contract.

### 3.    The Real Estate Settlement Procedures Act [RESPA]

It is true that RESPA requires every mortgage lender to make certain disclosures, including the transfer or assignment of loan servicing.  The pertinent statutory provision provides:

> Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

12 U.S.C. §2605.  Of course, it remains to be seen, through evidence, whether Household Finance, or the entity which made the loan to McCarley, actually disclosed in accordance with federal law.  It is also true that failure to make the required disclosures can lead to damages and costs.

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals. In the case of any action by an individual, an amount equal to the sum of--
>
> (A) any actual damages to the borrower as a result of the failure; and
>
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 1,000.
>
> .   .   .   .   .
>
> (3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

12 U.S.C. § 2605.

However, the right of action runs only to a person who "makes a federally related mortgage loan". None of the individual defendants made such loans to McCarley, and neither did KPMG. McCarley has consistently identified KPMG as "an international auditing and accountancy corporation" that acted as the auditor for HSBC. He further stated repeatedly that KPMG's wrongdoing was that it "failed to identify and corrct the many illegal procedures of HSBC et al.".

Thus, while McCarley may arguably retain a cause of action against the actual lender or person who made the loan to him, he has no private right of action under RESPA against KPMG. McCarley's claims against KPMG should therefore be dismissed.


### 4.    The Contract Claims

McCarley's "contract" claims against the corporate entities, claims which necessarily arise from the foreclosure, are meritless.

First, McCarley has no contract claims against the individual defendants or KMPG. Indeed, he has not even alleged a contract or privity with any of the individual defendants or with KMPG. Again, McCarley responded unequivocally affirmatively at the status conference that to the court's proposition that, "[o]ther than the foreclosure of [his] mortgage", he did not hold any of the defendants responsible for any acts of wrongdoing.

Clearly, the individual defendants and KMPG did not lend him any money on his property or foreclose on his mortgage. Thus, his breach of contract claims against the

individual defendants and KMPG must be dismissed.

Second, McCarley is estopped from asserting any contract claims arising from the foreclosure against the other corporate entities (HSBC Finance Corporation, HSBC Gr. Corp, Household International, Inc., and HSBC Mortgage Services, Inc.) pursuant to the doctrine of *res judicata*.

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.

*San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 332 (2005).  The essence of the contract claims in this case is whether the foreclosure was legitimately and whether it was properly conducted.  An Alabama state court has already made that determination.[19]

Following the foreclosure on his home, McCarley refused to vacate.  On 15 March 2006, the purchaser at the foreclosure sale, Mortgage Electronic Registration Systems, Inc. ["MERS"] filed a Complaint for Ejectment in the Randolph County Circuit Court.[20] Charging that McCarley had "failed and refused to deliver possession of the Premises upon demand", MERS requested judgment "for the immediate recovery of the Premises".[21]  After a full and contentious litigation, the action concluded on 2 September 2006 with an Order

---

[19]The court has secured the record of McCarley's state court litigation from the Alabama Court of Civil Appeals and hereby attaches that record to this Recommendation as Exhibit A.  Reference to those documents will be made by bates stamp number.

[20]MERS v. McCarley, Civil Action No. CV-2004-041.

[21]Exhibit A, pp. 03-04.

from the court granting summary judgment to MERS.   The court specifically found as

follows:

> The court finds that the foreclosure on the property owned by
> George D. McCarley was done properly and there is no genuine
> issue as to any material fact and the Plaintiff is entitled to the
> judgment as a matter of law.  Accordingly the Plaintiff is hereby
> awarded possession of the subject property as described in the
> foreclosure proceedings and the Defendant is order [sic] to
> remove himself and his belongings from the said premises
> immediately.   In the event the Defendant has not removed
> himself and his belongings from the premises within five (5)
> days from the date of this order the Plaintiff herein may advise
> the Sheriff of Randolph County and the Sheriff is hereby
> authorized and directed to forcibly remove the Defendant and
> his belongings from the said premises and to place the Plaintiff
> in possession of the premises promptly.

Exhibit A, p. 106.[22]  McCarley's subsequent petition for certiorari to the Alabama Supreme

---

[22]McCarley appealed to the Alabama Court of Civil Appeals (Civil Appeals Court
No. 2031142).   On 22 July 2005, the Court of Appeals affirmed the Randolph County
Circuit Court without opinion.   The court cited, and obviously relied upon, *Palmer v.
Resolution Trust Corp.*, 613 So.2d 373 (Ala. 1993)  The Alabama Supreme Court held
in that case, inter alia:

> Actions of ejectment, or those in the nature
> thereof, are determinable upon the legal, and not
> the equitable, title." *Lyons v. Taylor*, 231 Ala.
> 600, 602, 166 So. 15, 17 (1936). In cases such
> as this one, where the mortgagee  forecloses on
> the property under a power of sale in the
> mortgage, "the foreclosure deed executed by the
> mortgagee or his transferee, or the owner of the
> debt secured thereby, or his agent or attorney or
> personal representative, shall operate to convey
> the legal title to the lands sold to the purchaser
> at [the foreclosure sale]." § 35-10-5, Ala. Code
> 1975.

613 So.2d at 374-375.  The Court also held that defenses to the purchaser's

Court was dismissed as untimely on 20 October 2005.[23]

Having lost his challenge to the foreclosure in the state courts, where state law governed, McCarley cannot now re-litigate that claim in this court, where state law would again govern.

> The general rule implemented by the full faith and credit statute-
> -that parties should not be permitted to relitigate issues that have
> been resolved by courts of competent jurisdiction--predates the
> Republic. n17.

***San Remo Hotel, L.P. v. City & County of San Francisco, supra***.


## II.    CONCLUSION

*A.    Recommendation*

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the court take the following action:

1.    Dismissal of McCarley's claims against Tim Flynn and Civil Action No. 3:06CV92-MEF, for failure to state a claim;

2.    Dismissal of McCarley's claims against J. D. O'Toole and Civil Action No. 3:06CV94-MEF, for failure to state a claim;

3.    Dismissal of McCarley's claims against Kenneth H. Robin and Civil Action No. 3:06CV95-MEF, for failure to state a claim;

---

right of possession which challenge  the underlying debt, cannot be raised against the holder of a foreclosure deed.

[23]Exhibit A, p. 1050107.

4.    Dismissal of McCarley's claims against Alan W. Jebson and Civil Action No. 3:06CV96-MEF, for failure to state a claim;

5.    Dismissal of McCarley's claims against Thomas M. Detelich and Civil Action No. 3:06CV97-MEF, for failure to state a claim;

6.    Dismissal of McCarley's claims against Siddarth N. Mehta and Civil Action No. 3:06CV98-MEF, for failure to state a claim;

7.    Dismissal of McCarley's claims against William F. Aldinger, III and Civil Action No. 3:06CV99-MEF, for failure to state a claim;

8.    Dismissal of McCarley's claims against Gary S. Esposito and Civil Action No. 3:06CV100-MEF, for failure to state a claim;

9.    Dismissal of McCarley's claims against David Dew and Civil Action No. 3:06CV105-MEF, for failure to state a claim;

10.    Dismissal of all of the federal constitutional claims against all defendants, for lack of subject-matter jurisdiction;

11.    Dismissal of all of McCarley's claims under the Truth In Lending Act against all defendants, as untimely;

12.    Dismissal of McCarley's claims under the Real Estate Settlement Procedures Act against KMPG, for failure to state a claim; and

13.    Dismissal of all of McCarley's state law contract claims against all defendants, pursuant to the doctrine of *res judicata*.

If the court adopts the Magistrate Judge's Recommendation, only five of the original 15 lawsuits will remain pending, to wit, Civil Actions No.

- 06-93 (Household Finance Corporation III);

- 06-101 (HSBC Finance Corporation);

- 06-102 (HSBC Gr. Corp.);

- 06-103 (Household International, Inc.); and

- 06-104 (HSBC Mortgage Services, Inc.

Moreover, if the Recommendation is adopted, the only claim remaining against those defendants will be McCarley's RESPA claim.[24]

**B.    *Order***

For good cause, it is ORDERED as follows:

1.    The Clerk of the court shall attach, though not scan, the referenced state court record to this Recommendation as Exhibit A.

2.    Upon a final order on this Recommendation, the Clerk shall effect service, based upon addresses provided by the plaintiff, upon the remaining defendants in the five remaining cases, as particularized above.

3.    The defendants in the five remaining cases shall file their Answers within 20 days of their receipt of the summons and complaint.

---

[24]Although the Magistrate Judge has declined to recommend dismissal of McCarley's RESPA claims against some of the corporate defendants, that action should not be construed as a finding that the RESPA claims are meritorious. The Recommendation, and the court's subsequent order, if the Recommendation is adopted, is authority merely for the proposition that the RESPA claims should not be dismissed as a matter of law. The plaintiff must still litigate those claims and ultimately present evidence that the remaining defendants committed acts which violated the federal statute.

4.    The Clerk shall cause a copy of this Recommendation (though not Exhibit A) to be served upon all defendants in this consolidated case.

5.    The parties shall file any objections to this Recommendation on or before **25 October 2006**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*).

DONE this 10th day of October, 2006.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE