IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2006 NOV -6 A 9: 37

George D. McCarley
    Plaintiff

v.

Household Finance Corporation III
    Defendant

Civil Action No.  3:06-CV-0091-MEF
Lead Case

Jury Trial Demand

P. HACKETT, CL
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Comes now George D. McCarley and files the following **PROPOSED TRIAL BRIEF**.

A Jury Trial of this case will require introduction of numerous legal documents as filed for all Mortgages. Given the fact that few lawyers or Judges ever practice the Consumer Protection statutes of this case, it will be necessary to introduce the statutes carefully, using expert witness. We believe the subject matter is necessarily complicated that two Court procedures may be justified

Procedure One will be case introduction through presentation of evidence of law violations. At the close of this procedure, we believe the jury should deliberate and take a vote on the merits of the evidence and convict the defendants of violations at that point.

Procedure Two would then move to damages along with an ultimate Jury Award to Plaintiff. Discussion of damages applicable in this instance is complicated and may require expert witness.

This is the case of George McCarley versus a vast Chinese banking empire[1]. McCarley executed a mortgage with this bank in May 1, 2000, (exhibit 1). The bank quickly began to engage in abuse, intimidation, harassment, and other serious violations of federal and state law. McCarley continually complained about their breaches of law and instead of correcting their mistake, The Bank declared foreclosure illegally and took the ancestral home of this American veteran.

Weight of the evidence against The Bank is considerable. As a result of our investigation, we will demonstrate to the jury, motive of the bank as well as how they manufacture opportunity (foreclosure in their view). The trial will not only prove the guilt of The Bank against McCarley; but will also prove a pattern of practice of illegal methods leading to the highest credit losses[2] of any major bank in America; further evidence that said credit losses are converted into a tax advantage

_____

[1] 43 Identities begin page 26 below
[2] Exhibits 67, 68, 69

G. McCarley
334 863 6489

1

that makes them the highest profit bank in America( footnote above). This same evidence will indicate they are engaged in the greatest Tax Scam in human history[3].

Our evidence will prove McCarley discovered the more sinister activities of the tax scam very early in the mortgage[4]. He complained to the Alabama Attorney General[5] and proved with records of the Secretary of State, the bank was not authorized to do business in Alabama[6]. The Bank then set about to do anything in their power to discredit McCarley, -- and what better way than with a foreclosure. The evidence will, for example, prove that McCarley was fully paid up[7] on the day the bank named an "Assignee." McCarley will further prove he was fully paid up[8] after 30 months, and that when he ordered the bank to correct their illegal billing practices, they moved to foreclosure, violating federal law in the process. The evidence will prove unacceptable accounting practices[9] and extreme dis-organization of this major bank[10]. Our evidence also proves The Bank is engaged in a constantly evolving "shell game" – that they utilized over 43 different identities[11] in the short life of this mortgage and legal action – fully in violation of Federal disclosure laws.

We will prove (1) the Banks channeled McCarley payments into nondisclosed Escrow accounts[12], without ever reporting this to McCarley – (2) that the Bank billing statements were so filled with error that no individual could be sure where money was being applied[13], (3) that the Bank constantly charged amounts never before disclosed (ex 37), as required by law, (4) that the bank failed to account for certain payments on any medium presented to McCarley, (5) that the sum total of violations in this paragraph resulted in payment being applied everywhere except principal and interest(ex 37) and this is the condition the Bank has attempted to convert into a default declaration. In fact, during one month alone (5 days), the bank electronically debited McCarley checking account (ex 55), without authorization, four monthly payments (ex 55) – obviously wrecking that account.

We will prove with preponderance of the evidence that the one and only business goal of this banking empire is to foreclose any and all mortgages, as they have mastered the tricks required to build higher profits via foreclosure. Our comparison in Exhibits 67,68,69 make it clear the foreclosure rate of this bank is 10 times the norm, yet their profits are among the highest.

We will prove extreme damage[14] to the person of McCarley, as he was on course to become CEO of a major corporation (exhibit 61, 62, 64) and that the actions of this bank prevented that goal; then McCarley suffered severe financial losses, has not worked professionally since their illegal act named an assignee in 2002 (ex 24) (when he was fully[15] paid)(ex 37), suffered severe emotional and mental distress, while experiencing medical conditions that could have easily been remedied given the ability to pay for medical care, -- an ability blocked by the actions of the bank.

Our evidence makes it clear, bank actions against McCarley violate Federal Continuing Violation penalties, as per *12 USC §1833a  Civil Penalties with Special Rule for Continuing Violations*

---

[3] see exhibit 24 indicating several entities claiming same asset and same tax write-off when asset foreclosed
[4] Letter to Ala. Attorney General, exhibits 51, 52, 53, 54
[5] Ala AG letter of April 16, 2001 suggests McCarley get a lawyer or take the issue to Small Claims.Court
[6] Exhibits 26 thru exhibit 33 – plus expert witness from those offices
[7] See Billing Statement from Household
[8] Ibid
[9] Exhibits 37, 46-50, and 55
[10] 43 Identities beginning page 27
[11] Ibid
[12] Exhibits 8, 4, 12
[13] Exhibits 38, 46, 47, 48, 49, 50
[14] Exhibits 61 thru 66
[15] discussion on page 16

(2) Special rule for continuing violations --In the case of a continuing violation, the amount of the civil penalty may exceed the amount described in paragraph (1) but may not exceed the lesser of $1,000,000 per day or $5,000,000.

(c) Violations to which penalty is applicable
This section applies to a violation of, or a conspiracy to violate—
(1) section <u>215</u>, <u>656</u>, <u>657</u>, <u>1005</u>, <u>1006</u>, <u>1007</u>, <u>1014</u>, or <u>1344</u> of title <u>18</u>;
(2) section <u>287</u>, <u>1001</u>, <u>1032</u>,<sup>[1]</sup> <u>1341</u> or <u>1343</u> of title <u>18</u> affecting a federally insured financial institution; or
(3) section <u>645</u> <u>(a)</u> of title <u>15</u>.

Primary evidence documents in this case are found at exhibit(s) 24 and 37.

What McCarley will prove with official documents as evidence:

1. The Banks Lied on Disclosure at mortgage inception
2. The Banks violated disclosure almost monthly throughout the mortgage
3. The Banks never complied with most important Disclosure requirements
4. That Lies and Disclosure violations rise to level of Fraud, Perjury, and criminal continuing violations as defined by FDIC, FHA, HUD, etc.
5 The Banks Lied about default, that billing statements prove there was no default.
6. The Banks never intended to allow McCarley to payoff his mortgage, that they conspired from inception to create conditions that would force McCarley to foreclose and prevent his ability to fight the foreclosure.
7. The Banks inflicted extreme damage to McCarley as a result, ruining his life and career.

Evidence will be introduced consisting of officially recorded deeds, mortgages, Secretary of State Corporate documentation, and HFC billing records that will uphold the 7 points above, while proving the following:

A. The Banks all lied instead of Disclosing information properly. (cross to most exhibits)
B. Bank lies were intended to cover their attempts to hide assets. (ex 24) plus identities p. 27
C. Bank lies were intended to reduce their tax liability by maintaining high foreclosure rates.
D. Homesense Financial lied on day one, as McCarley was signing the mortgage. The law required that they disclose the name or identity of any subsequent creditors or servicers. They actually merged with another organization within that first week and did not disclose same. This is part of their continuing efforts to hide assets and tax liability. (ex 26,27)
E. HFC/HSBC never at any time recorded their presence or their claim to deeds or mortgages at the Randolph County Courthouse or any place else, therefore having no standing before courts. (ex 24)
F. HFC never disclosed that they were the lender. (all documents bearing name)
G. HFC never disclosed any of the required information whatsoever. HSBC never disclosed any information whatsoever. (from evidence of total package and testimony)
H. It is important to this proceeding to establish whether either HFC or HSBC holds any factual status as lender or servicer. Proper determination of this point might well result in criminal theft charges being filed against either HFC or HSBC or both. (cross examine HSBC personnel)
I. Escrow accounts were expressly forbidden by this mortgage. That will be proven by several paragraphs of the actual mortgage contract. Despite this fact, HFC/HSBC followed a practice of

3

charging monies to escrow AND NEVER NOTIFIED GEORGE MCCARLEY, thus channeling money away from principal so as to make it appear McCarley had not paid in full. (ex 18, 37)
J. Certain payments of McCarley never appear on the billing summary.
K. As many 77 DISCLOSURE VIOLATIONS appear on the billing summary for the FINAL 15 MONTHS ALONE. These will be tendered as evidence in detail. (ex 37)
L. Monthly billing statements in evidence will prove none of The Banks had any intention of being honest. Instead, they can't even construct credible billing statements. (ex 46 to 50)
M. An attempt to force place insurance is in evidence, although McCarley had his own insurance and that documentation was in evidence by Homesense and on several documents. (ex 8,9, 15,16,17)
N. That The Banks never corrected any mistakes while mistakes were being complained of on a monthly basis. Failure to correct exposes The Bank to RESPA liability. (see statute)
O. An inescapable conclusion begins to develop now, that HFC/HSBC/Homesense are involved in a deliberate pattern of deceit, lies and conspiracy intended to make McCarley look like a bum so that he does not have the resources to fight the ongoing atrocities committed by these banks.
P. The bank conspiracy extends to their acts of, (1) hiding assets, (2) attempting to foreclose huge numbers of people to keep their "write-offs" high and their tax liability low.
Q. What else would anyone expect from the preferred bank of Saddam Hussein.

### OUTLINE BRIEF FOR TRIAL

PROCEDURE ONE

I.  Introduction of McCarley 12 USC 2605 charges and case description
    Introduction of Plaintiff and Defendants along with Legal Counsel
II. How and Why McCarley Mortgage was Initiated
    Introduce McCarley Mortgage

III. How Banks and Parties are Involved
    Identification, Location, and History of Banks and Parties
    Discussion of Lenders vs. Servicers vs. Assignee vs. Debtor
    (Defendant may be allowed to present the Parties)
    (Expert Witness "Alabama State Banking Department" may be utilized to explain Lenders vs. Servicers, etc.)
    Corporate Registration Disclosure violations per South Carolina, Alabama, Illinois Secretary of State Records (Expert Witness from Alabama Secretary of State office)
IV. Disclosure Laws Required at Inception and Throughout Mortgage
    (Expert Witness, Professor Eugene Marsh)
    Bridge to Truth in Lending
    Bridge to 24 CFR 3500.5 Regulation X Model Disclosure instructions
    Bridge to 18 USC Banks and Banking Violations (Important to Damages)[16]
    Bridge to 12 USC Banks and Banking Violations (Important to Damages)[17]
V.  Violations, Actual Chronology of each instance, location of evidence
    Violation at inception by Homesense Financial
        Violations at inception by HFC

---

[16] Civil application of Criminal violations not barred by Judges order of 10/10/2006
[17] ibid

      Deed Registration Violations by Parties (Ex Wit, Probate Judge George Diamond)
      Foreclosure Bar due to Deed Registration failures
      Cross-exam to prove failure of Disclosure of most basic identities of Parties, thus
            ongoing faulty and illegal actions of defendant parties
      Civil Violations invoked by disclosure failures
      Civil Violations invoked by registration failures
      Statutory Penalties invoked in each instance
      Points of Law specified by Bank in Mortgage Contract
      Define Key Parameters related to Bank disclosure violations
      Monthly ongoing servicer violations of disclosure, billing and practice violations
      Statutory Penalties invoked in each instance

VI  Cross Exam and Recross – Rebuttal as appropriate
VII Jury Charge and deliberation to determine guilt of parties


PROCEDURE TWO
Damages Phase

VIII Theory of Damages as appropriate to this case, Expert Witness either former
      Alabama Supreme Court Chief Justice Perry Hooper, Sr., or Dr. Sam Gambrel.
IX   Damages claimed by McCarley
      Statutory Penalties
      Court Costs
      Time and Effort (possibly Attorney Fees)
      Personal Losses
         Ancestral Homeplace return
         Professional Income Loss (considerable documentation to support)
         Mental Anguish
         Medical Costs
      Federal Regulatory Fines chargeable to Banks due to Mortgage violations and to be
            imposed by Court on Bank Parties    (McCarley whistle blower share)
X   Cross exam and recross – Rebuttal as appropriate
XI  Jury Charge and deliberation


THE EXPERT WITNESSES

Alabama State Banking Department - - will serve as a point of reference on the History and Identity
of the Bank Parties Defendant. All such banks are expected to be registered with this state office as
a precondition to doing business in Alabama.

Office of Corporate Registration, Alabama Secretary of State (SOS)- - certain points of evidence in
this case are matters of official record at this office, as well as the similar office in states of South
Carolina and Illinois. Respective corporate records will be indicated herein, to which, a professional
representative of the SOS office will be asked to serve as expert witness so as to interpret the
documents indicating irregularities, and illegalities with the Bank Parties. (ex 26 thru 32)

Plaintiff will solicit compelling testimony from both offices indicated above concerning the "shady" background and class action settlements adjudged against defendant. Defendant will likely produce defendant expert witness to counter plaintiff allegations. Defendant will be compelled to counter our allegations of illegal activity of "shell game" of bank openings and mergers or closings, thus presenting a constantly changing landscape of banks or mortgage brokers supplying new mortgages to HFC, and further increasing the myriad disclosure violations present.

Professor Eugene Marsh, JD, University of Alabama School of Law - - Prof. Marsh is a legal expert on consumer protection legislation. He was appointed to Alabama Governor Fob James "Mini-Code" commission. The commission was a "blue ribbon panel" composed of notable individuals from Law, Academia, and Business. Purpose of this commission was to compose and then modify Alabama's fledgling Consumer Protection Code, which in actuality duplicates the federal consumer protection codes known as TILA and RESPA. The commission worked several years in construction and adoption of the "mini-code." Prof Marsh has served as an expert witness for this purpose in other consumer protection cases. He has also served as legal consultant to consumer lending corporations to assist their construction of operating manuals and employee training.

Plaintiff will question the experts so as to cast great doubt on the integrity and admissibility of the Bank Parties "Billing Statement" supplied in this case. Certain monthly billing documents will be produced by Plaintiff that have never appeared on the official billing summary. Defense will be compelled to produce a Bank Party Accounting Officer in order to dispute plaintiff allegations. Plaintiff will cross-exam this defense witness thus impeaching witness and Bank credibility and testimony.

Randolph County Probate Judge George Diamond - - is the second generation of his family to occupy the office of Probate Judge. In Alabama, the Office of Probate serves as the repository of titles and deeds and is the official point at which an individual is expected to record title papers. He will provide evidence as to the methodology of recordation submittal utilized by defendant and other associated parties to this proceeding.

Chief Justice Perry Hooper, Sr., (retired) Alabama Supreme Court - - Justice Hooper retired in 2000. As Chief Justice, he adjudicated many appeals of Consumer Protection cases, to include award of damages and penalty provisions. He is an acknowledged expert on many areas of Law and will serve as expert witness for testimony and discussion of the theory of "damages" and a discussion of what areas of damages are appropriate in this case.

Dr. Sam Gambrel, JD. Dr. Gambrel was formerly Dean of the University of Alabama School of Law, where he continues in the capacity of Professor. He has written widely on The Theory of Damages and recently published his newest work on same, co-authored by Mrs. Eugene Marsh.

As this case proceeds to trial, we reserve the right to add or remove other expert witnesses as appropriate to the developing case.

Plaintiff has spoken with these individuals and agencies but awaits a firm docket date prior to establishing firm agreements to serve as expert witness.

6

DISCOVERY

A very limited round of discovery will be appropriate.  Certain issues of evidence require closer definition as pertains to various positions of "the parties" with regard to their status in these proceedings.   The Mortgage initiator, Homesense Financial, disappeared short months after mortgage inception. They may have merged with another South Carolina institution, which has also dropped out of sight. These points are matters of record within the South Carolina Secretary of State Corporation Office.  It would be appropriate that Homesense be added as a party defendant, except it seems they no longer exist.  Plaintiff intends to attempt to locate a contact person by working with the previous Corporate Registration Agent for Homesense.

A legal representative for HFC must be deposed to identify the relationship between Homesense Financial and HFC, as well as the method in which HFC employs and deploys the status of "servicer" versus "lender" versus "assignee."  On courtroom examination of this witness, Plaintiff will demonstrate the seriously faulty method with which deeds and titles were recorded on behalf of bank parties that had ceased to exist.  The person who submits a document for official recording, when representing a non-existent party, and then causes to be recorded a document on behalf of that non-existent party, commits perjury, and worse, and also continues the record of this case as regards failure to disclose pertinent facts and identities.

Discovery will be sought from an Accounting Expert representing the Bank Parties.  The expert must defend the Bank supplied Billing Summary of the McCarley mortgage.  That billing summary is fault filled and quite loaded with almost monthly instances of Disclosure violations. The "header" of the billing summary also contains charges never disclosed by the mortgage contract, thus failing the disclosure requirement of RESPA.   Of particular concern is the fact HFC provided a summary statement that left off the first 15 months of the mortgage.  Even greater evidence of illegality is present in that the official billing summary wholly neglects to record the monthly amount charged.

**PROCEDURE ONE**

**I.   Introduction of McCarley 12 USC 2605 charges and case description
Introduction of Plaintiff and Defendants along with Legal Counsel**

Reading of charges and statutes invoked.

The charges filed by McCarley relate to violation of disclosure laws found in Real Estate Settlement Procedures and Truth in Lending Act.  We will define "DISCLOSURE" as the concept is applied in Consumer Protection Law.  Next we will provide testimony related to; (a) what is expected to be disclosed, (b) what form should disclosure take, (c) who should disclose, (d) how should disclosure be revealed, (e) when must disclosure take place, (f) why must creditors disclose. (g) what was the actual performance of The Banks relative to disclosure. Point (g) transitions to intro of the mortgage and the beginning of numerous evidence documents detrimental to The Bank.

A. McCarley Mortgage was fully paid up on the day HFC assigned the mortgage. (ex 23,24,25)

7

B. McCarley Mortgage was fully paid at end of 30 months.  Official records only record paid up status to 28 months.(ex 37)  McCarley will prove HFC mis-appropriated money and then set about trying to discredit McCarley and cover their illegality by continuing to process his foreclosure.

## II.  How and Why McCarley Mortgage was Initiated
### Introduce McCarley Mortgage

McCarley mortgaged his family home of 70 years in order to provide money for his third Mayoral race in his hometown of Roanoke, Alabama.  In two previous runs, friendly competitors had agreed to help him with business following the election.  When McCarley could not come up with this guarantee on the third try, he mortgaged his home.

The mortgage was for the principal amount of $26,400 on a 20 year term, having the following properly disclosed payment required, along with penalty provision for late charges. (Exhibit 2,5,12)

| | |
|---|---|
| Payment Monthly | $290.51 |
| Late Charges | 14.53 |
| Total Payment if Late | $305.04 |

No other charges were disclosed by the Mortgage.  Escrow amounts were forbidden (ex 18) by the mortgage as will be proven by attached Mortgage Contract documentation (ex 4,7).

## III. How Banks and Parties are Involved (Total 43 banking entities, listed beginning page 27)
### Identification, Location, and History of Banks and Parties

> Homesense Financial Services, South Carolina, Alabama
> Household Financial Services
> Household Finance Corporation (HFC)
> Household International, Inc.  (The original corporate entity)
> Household Mortgage Services
> Mortgage Electronic Registration Systems (MERS)
> Hong Kong and Shang Hai Banking Corporation
> > HSBC Group Cr
> > HSBC Finance Corporation
> > HSBC Mortgage Services, Inc
> > Household Finance Corporation, III (HFC, III)
> > Household International, Inc.  (Contingency Fund)

With the exception of the Homesense Financial Services in South Carolina, the balance of these banking entities reside in Prospect Heights, Illinois, outside Chicago.  (see beginning page 28)

Homesense Financial Services will be described by affidavit from South Carolina Secretary of State sources, as this entity is now defunct.  They appear to be a "shell game" mortgage broker who appears and then disappears after creating problems. (ex 26,27,28)

The entities above whose name begins with "Household" are various branches of the bank known as Household International. They seem to change names about every three or four years. You may recall their leading role in the largest class action settlement in history, in which they admitted their wrong and paid out over $700 million to mortgage holders they had improperly foreclosed. All these entities are now closed after merging with the International Banker known as HSBC. (ex 34,35)

HSBC has a background that no Alabamian could like. They admit to being formed on the riches of the Opium trade (ex 59). They made so much money selling Opium that they had to build a bank to protect their money. Why did they charter that bank in Hong Kong and Shanghai, China? Then a few year ago, they were caught in the act of moving the money of Saddam Hussein (ex 57) (FOI) around the world. They were about to be convicted for moving Saddam's money to Cuba, Sudan, Libya. Instead, they brokered a deal with the US Justice Department and paid a small million dollar fine. Then their press releases (ex 58) claims it was all an innocent mistake. And McCarley asks how innocent it could be if they moved Saddam's money to our most hated enemies?

**Discussion of Lenders vs. Servicers vs. Assignee vs. Debtor**
**(Defendant may be allowed to present the Parties)**
**(Expert Witness "Alabama State Banking Department" may be utilized to explain**
**Lenders vs. Servicers, etc.)**

Discussion of the language of Mortgages involved. (Provided by text from 12 USC 2601 et seq)

Creditor
Debtor
Lender
Servicer
Assignee

Determination based upon examination of records and cross examination of HSBC witness

Who is the Lender
Who is the Servicer
Who is the Assignee

When are the above designations determined and how and why they are to be recorded?

**Corporate Registration Disclosure violations per South Carolina, Alabama, Illinois**
**Secretary of State Records (Expert Witness from Alabama Secretary of State office)**

Records have been obtained from the Illinois Secretary of State's office of Corporate Registration to prove that the Household entities above Merged into the HSBC entities (ex 70). Particular emphasis will be devoted to an evidentiary discussion of (1) the dates of those mergers, (2) the dates the old Household units ceased to exist, (3) unexplained timing of McCarley foreclosure by entities that had ceased to exist at or long before the time of the foreclosure.

Records have been obtained from the South Carolina Secretary of State's office of Corporate Registration (ex 26,27,28)to prove Homesense Financial Services ceased to exist before properly recording McCarley mortgage. Evidence will be discussed of (1) date of inception of the mortgage, (2) dates the old Homesense ceased to exist, (3) unexplained timing of McCarley foreclosure by entities that had ceased to exist at or long before time of the foreclosure.

Records have been obtained from the Alabama Secretary of State's office of Corporate Registration (ex 28) to prove Homesense Financial Services ceased to exist before properly recording McCarley mortgage. Particular emphasis will be devoted to evidentiary discussion of (1)date of inception of the mortgage, (2) the dates the old Homesense ceased to exist, (3) unexplained timing of McCarley foreclosure by entities that had ceased to exist at or long before the time of the foreclosure.

Documents on record in Office of Probate, Randolph County Alabama will be introduced to prove that Homesense Financial ceased to exist 8 days following McCarley act of signing the Mortgage, (ex 1) and, Homesense could not sell or assign the mortgage due to timing of their closure.

A fraudulent recording of a transfer of McCarley mortgage to another entity is recorded 18 months later (ex 23, 24), with no legally binding document in evidence to prove that Homesense transferred the mortgage to that entity. All the while, McCarley continued to make timely mortgage payments as will be proven by the billing history (ex 37).

**IV. Disclosure Laws Required at Inception and Throughout Mortgage**
   **(Expert Witness, Professor Eugene Marsh)**
   **Bridge to Truth in Lending**
   **Bridge to 24 CFR 3500.5 Regulation X Model Disclosure instructions**
   **Bridge to 18 USC Banks and Banking Violations (Important to Damages)**
   **Bridge to 12 USC Banks and Banking Violations (Important to Damages)**

US Congress instituted laws in 1974 designed to help consumers and penalize shoddy bank practices that increased the cost of credit. We will read the opening language of RESPA and TILA to illustrate this point.

**12 USC 2601** Congressional Findings

> "The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . ."

**15 USC 1601.** - Congressional findings and declaration of purpose

(a) Informed use of credit

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a

10

meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

## WHAT INFORMATION IS REQUIRED TO BE DISCLOSED
### Bridge to 24 CFR 3500.5 Regulation X Model Disclosure instructions

US Congress decreed that the Secretary of Housing and Urban Development would establish a model disclosure statement to satisfy RESPA and that decree is found in 12 USC 2603.

**Discuss 24 CFR 3500 Model Disclosure form and instructions for same.**

Testimony/discussion of how and why 24 CFR part 3500 applies to this case, as it is required by RESPA and how this Code of Federal Regulations impacts disclosure of all information.

### Bridge to 18 USC Banks and Banking Criminal Violations (Important to Damages)
### Bridge to 12 USC Banks and Banking Criminal Violations (Important to Damages)

**15 USC § 1611**. Criminal liability for willful and knowing violation

Release date: 2005-08-01

Whoever willfully and knowingly
(1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder,
(2) uses any chart or table authorized by the Board under section 1606 of this title in such a manner as to consistently understate the annual percentage rate determined under section 1606 (a)(1)(A) of this title, or
(3) otherwise fails to comply with any requirement imposed under this subchapter, shall be fined not more than $5,000 or imprisoned not more than one year, or both.

**18 USC §656**. Theft, embezzlement, or misapplication by bank officer or employee
Release date: 2005-08-03
Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization or holding company or any moneys, funds, assets or securities intrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank and

11

trust company which has become a member of one of the Federal Reserve banks; "insured bank" includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation; and the term "branch or agency of a foreign bank" means a branch or agency described in section 20 (9) of this title. For purposes of this section, the term "depository institution holding company" has the meaning given such term in section 3 of the Federal Deposit Insurance Act.

## 18 USC §1001  Fraud and False Statements or entries generally
Release date: 2005-08-03

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2) makes any materially false, fictitious, or fraudulent statement or representation; or

(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.

(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to—

(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

## 18 USC §1005  Fraud by Bank Officer Bank entries, reports and transactions
Release date: 2005-08-03

Whoever, being an officer, director, agent or employee of any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or section 25(a) [1] of the Federal Reserve Act, without authority from the directors of such bank, branch, agency, or organization or company, issues or puts in circulation any notes of such bank, branch, agency, or organization or company; or

Whoever, without such authority, makes, draws, issues, puts forth, or assigns any certificate of deposit, draft, order, bill of exchange, acceptance, note, debenture, bond, or other obligation, or mortgage, judgment or decree; or

Whoever makes any false entry in any book, report, or statement of such bank, company, branch, agency, or organization with intent to injure or defraud such bank, company, branch, agency, or organization, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such bank, company, branch, agency, or organization, or the Comptroller of the Currency, or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such bank, company, branch, agency, or organization, or the Board of Governors of the Federal Reserve System; or

Whoever with intent to defraud the United States or any agency thereof, or any financial institution referred to in this section, participates or shares in or receives (directly or

indirectly) any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of any such financial institution—

Shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
As used in this section, the term "national bank" is synonymous with "national banking association"; "member bank" means and includes any national bank, state bank, or bank or trust company, which has become a member of one of the Federal Reserve banks; "insured bank" includes any state bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation; and the term "branch or agency of a foreign bank" means a branch or agency described in section 20 (9) of this title. For purposes of this section, the term "depository institution holding company" has the meaning given such term in section 3(w)(1) of the Federal Deposit Insurance Act.

### 18 USC §1010 Fraud and False Statements to influence actions of Bank
Sec. 1010. Department of Housing and Urban Development and
Federal Housing Administration transactions

Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Department of Housing and Urban Development for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Department, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such department, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined under this title or imprisoned not more than two years, or both.

### 18 USC §1014 Fraud and False Statements on Loan
Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Farm Credit Administration, Federal Crop Insurance Corporation or a company the Corporation reinsures, the Secretary of Agriculture acting through the Farmers Home Administration or successor agency, the Rural Development Administration or successor agency, any Farm Credit Bank, production credit association, agricultural credit association, bank for cooperatives, or any division, officer, or employee thereof, or of any regional agricultural credit corporation established pursuant to law, or a Federal land bank, a Federal land bank association, a Federal Reserve bank, a small business investment company, as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. 662), or the Small Business Administration in connection with any provision of that Act, a Federal credit union, an insured State-chartered credit union, any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, the Office of Thrift Supervision, any Federal home loan bank, the Federal Housing Finance Board, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the Farm Credit System Insurance Corporation, or the National Credit Union Administration Board, a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978), or an organization operating under section 25 or section 25(a) \1\ of the Federal Reserve Act, upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of

13

security therefor, <u>shall be fined not more than $1,000,000</u> or imprisoned not more than 30 years, or both. The term ``State-chartered credit union'' includes a credit union chartered under the laws of a State of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States.

## 18 USC §1016 False Acknowledgement by Oath
Release date: 2005-08-03
Whoever, being an officer authorized to administer oaths or to take and certify acknowledgments, knowingly makes any false acknowledgment, certificate, or statement concerning the appearance before him or the taking of an oath or affirmation by any person with respect to any proposal, contract, bond, undertaking, or other matter submitted to, made with, or taken on behalf of the United States or any department or agency thereof, concerning which an oath or affirmation is required by law or lawful regulation, or with respect to the financial standing of any principal, surety, or other party to any such proposal, contract, bond, undertaking, or other instrument, <u>shall be fined under this title</u> or imprisoned not more than two years, or both.

## 18 USC §1032 Concealment of Assets - - from FDIC

§ 1032. Concealment of assets from conservator, receiver, or liquidating agent of financial institution    Release date: 2005-08-03

Whoever—
<u>(1) knowingly conceals or endeavors to conceal an asset or property</u> from the Federal Deposit Insurance Corporation, acting as conservator or receiver or in the Corporation's corporate capacity with respect to any asset acquired or liability assumed by the Corporation under section 11, 12, or 13 of the Federal Deposit Insurance Act, the Resolution Trust Corporation, any conservator appointed by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, or the National Credit Union Administration Board, acting as conservator or liquidating agent;
(2)<u>corruptly impedes or endeavors to impede the functions of such Corporation, Board, or conservator; or</u>
<u>(3) corruptly places or endeavors to place an asset or property beyond the reach of such Corporation</u>, Board, or conservator, <u>shall be fined under this title</u> or imprisoned not more than 5 years, or both.

## 18 USC §1621  Perjury Generally

Release date: 2005-08-03
Whoever—
(1) <u>having taken an oath before a competent tribunal</u>, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section <u>1746</u> of title <u>28,</u> United States Code, <u>willfully subscribes as true any material matter</u> which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, <u>be fined under this title</u> or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

14

## 12 USC §1833a  Civil Penalties with Special Rule for Continuing Violations

Release date: 2005-07-21

(a) In general

Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section.

(b) Maximum amount of penalty

(1) Generally

The amount of the civil penalty shall not exceed $1,000,000.

(2) Special rule for continuing violations

In the case of a continuing violation, the amount of the civil penalty may exceed the amount described in paragraph (1) but may not exceed the lesser of $1,000,000 per day or $5,000,000.

(3) Special rule for violations creating gain or loss

(A) If any person derives pecuniary gain from the violation, or if the violation results in pecuniary loss to a person other than the violator, the amount of the civil penalty may exceed the amounts described in paragraphs (1) and (2) but may not exceed the amount of such gain or loss.

(B) As used in this paragraph, the term "person" includes the Bank Insurance Fund, the Savings Association Insurance Fund, and the National Credit Union Share Insurance Fund.

(c) Violations to which penalty is applicable

This section applies to a violation of, or a conspiracy to violate—

(1) section 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of title 18;

(2) section 287, 1001, 1032,[1] 1341 or 1343 of title 18 affecting a federally insured financial institution; or

(3) section 645 (a) of title 15.

(d) Effective date

This section shall apply to violations occurring on or after August 10, 1984.

(e) Attorney General to bring action

A civil action to recover a civil penalty under this section shall be commenced by the Attorney General.

(f) Burden of proof

In a civil action to recover a civil penalty under this section, the Attorney General must establish the right to recovery by a preponderance of the evidence.

(g) Administrative subpoenas

(1) In general

For the purpose of conducting a civil investigation in contemplation of a civil proceeding under this section, the Attorney General may—

(A) administer oaths and affirmations;

(B) take evidence; and

(C) by subpoena, summon witnesses and require the production of any books, papers, correspondence, memoranda, or other records which the Attorney General deems relevant or material to the inquiry. Such subpoena may require the attendance of witnesses and the production of any such records from any place in the United States at any place in the United States designated by the Attorney General.

(2) Procedures applicable

The same procedures and limitations as are provided with respect to civil investigative demands in subsections (g), (h), and (j) of section 1968 of title 18 apply with respect to a subpoena issued under this subsection. Process required by such subsections to be served

15

upon the custodian shall be served on the Attorney General. Failure to comply with an order of the court to enforce such subpoena shall be punishable as contempt.
(3) Limitation
In the case of a subpoena for which the return date is less than 5 days after the date of service, no person shall be found in contempt for failure to comply by the return date if such person files a petition under paragraph (2) not later than 5 days after the date of service.
(h) Statute of limitations
A civil action . . . may not be commenced later than 10 years after cause of action accrues.

## V.  Violations, Actual Chronology of each instance, location of evidence
### Violation at inception by :
#### Homesense Financial
#### Deed Registration Violations (Ex Wit, Probate Judge George Diamond)

Homesense Financial Services solicited McCarley refinance by mail.  McCarley decided to do business with them and set the long running problem in motion.  On May 1, 2000, McCarley signed the mortgage with Homesense (ex 1).  On May 9, 2000, Homesense ceased to exist (ex 26) and merged with another SC company called Homegold (ex 27).  Homegold no longer exists.  These records are provided by the South Carolina Secretary of State (SoS) Corporate Registrations.

Further, records of the Alabama SoS indicate that Homesense closed their Alabama office and registration on October 9, 2000.  (ex 28)

RESPA Regulation X Model Disclosure makes it clear that Homesense should have disclosed the presence of the pending merger and they did not, nor have they ever informed anyone of that merger and ceasation of Homesense.

Now Homesense takes a more illegal step.  They failed to record title to the McCarley mortgage and property for some 26 months. (ex 24)  This date is 25 months after dissolution, clearly in violation of statute of limitations.  (Discussed by expert witness Probate Judge George Diamond.)

Further evidence of some type of fraud or perjury is the fact they made an assignment of this mortgage to another company.  On the very day McCarley signed the mortgage, Homesense filled out the paperwork to make assignment (ex 24) to another company who would foreclose the property.   AGAIN, ON THE VERY DAY MORTGAGE WAS SIGNED, HOMESENSE ASSIGNED THE PROPERTY TO THE ULTIMATE FORECLOSURE AGENT.  Did they set McCarley up for foreclosure on the very day of inception?  The evidence suggests that is the case.

The evidence document for the above is on record at the Randolph County Probate Judge office and is reproduced here as exhibit 24.

The exhibit being discussed bears great evidence of fraud or perjury or both.  Further, this document claims to SELL the McCarley mortgage to Household Finance Corporation.  That sale event was not recorded until July 10, 2002, a time at which McCarley was fully paid (ex 37) up to date as further evidence will indicate.  Further, the entity recording this event had been out of business for two years.  The very same exhibit 24 makes it clear that HFC never recorded a deed, title, or any other

16

form or claim to the property covered by the McCarley mortgage, therefore, this entire question of foreclosure is moot, void, and wholly non-existent.

Now another huge disclosure violation enters. Homesense provided McCarley information they would not service his mortgage, that they would transfer that servicing to another firm. They actually transferred servicing to the Bank AKA Household Financial Services. Therefore we are immediately presented with a question of illegality on the part of the Banks AKA HFC. Is HFC the Servicer or is HFC the Lender? Why has there never been a Probate Court recording of the status of Household Financial Services versus Household Finance Corporation, versus the balance of the 43 entities described beginning page 28. When did HFC become the Lender? If Homesense went out of business or merged with another firm in May 2000, and HFC did not become the lender until July 2002, where did the McCarley payments go for 26 months?

Why would an Assignee be named on the very day Mortgage is signed? (see primary exhibit 24) Why would someone record/establish Assignee status when the mortgage is paid up completely? There is a clear evidence of conspiracy based upon this single piece of paper marked exhibit 24.

### Violations at inception by HFC
### Deed Registration Violations (Ex Wit, Probate Judge George Diamond)

HFC became the servicer of Homesense Financial on the first month of the mortgage. However, HFC never recorded a deed or title or anything else. They are never recorded as having any status whatsoever on this mortgage. Again, we charge that an act of fraud has occurred. There is no legal manner in which they could be allowed to process a foreclosure unless they are recorded as the rightful holder of titles, deeds, or mortgages.

Further, an incident took place in July 2000 in which McCarley attempted to change the conditions of the mortgage. He was unable to locate the HFC office having authority for servicing his mortgage. He ultimately wrote a letter of complaint to the Alabama Attorney General and still required until almost December 2000 to locate the proper office of HFC. None of their many offices had record of McCarley mortgage. Thereby further proving the point of fraud present in this transaction. No one could be sure if they were the servicer or the lender and they were never recorded in any capacity in the Probate Office in Randolph County. (See exhibits 51,52,53,54)

While investigating what he felt was a massive fraud, McCarley reviewed Corporate Registrations in the Al SoS. He found HFC had never been registered by that or any similar name[18]. (expert Witness)

### Foreclosure Bar due to Deed Registration failures (disclosure violation)

We now see evidence of a huge conflict at law. (1) Unless Deeds and Titles are registered, the Banks have no legal standing to take any action whatsoever. (2) This represents another form of disclosure violation. (Banks must register deeds in the name disclosed. Unless registered in that name, then disclosure is violated in that name. If banks merge then the new name must be disclosed and deeds/titles recorded in that name. If someone chose to find the owner of a certain piece of

---

[18] This procedure is time honored in all states. Massive databases at all SOS offices are available for this evidence

property, a logical starting point would be the record room at the Office of Probate. There does not appear to be an owner of the McCarley Mortgage to be found. (expert witness, Randolph County Probate Judge)

What would happen if the mortgaged property burned down? Who would the insurance company pay-off? The answer is that confusion would control and the insurance company would most likely refuse to pay until the rightful owner could be located. The insurance company would not know whether to pay the occupant, or a bank, or someone else.

To make a long story short – unless a mortgage is registered and recorded properly at the Office of Probate, THERE HAS BEEN NO DISCLOSURE COMPLIANCE.

### Cross-exam to prove failure of Disclosure of  basic identities of Parties, thus ongoing faulty and illegal actions of defendant parties

At this point in the process, Defendant counsel should wish to cross examine plaintiff witnesses or else to place his Bank witnesses and experts on the stand in order to dispute the assertions made above. The key to disclosure in this case is that no one has properly recorded their status as either Lender or Servicer or Assignee. Unless recorded properly to coincide with the same data of the Mortgage Contract, we have an instance of either Fraud or Perjury, or both.

### Civil Violations invoked by disclosure failures[19]
### Civil Violations invoked by registration failures[20]

McCarley has filed charges against 5 banking companies. The total financial institutions involved in this case is over 10, having 43 different identities (page 28). Now coupled with the evidence we provided that proves these institutions have failed to record deeds properly and have failed to disclose their presence properly, you must be asking serious questions as to the legitimate goals of these banks. Perhaps you believe they have criminal intent. You must surely see that they have failed to disclose identities and several are in position to stake a claim to the McCarley Mortgage.

Exhibit 24 raises questions as to which bank claimed the McCarley mortgage at what point in time. In fact, this exhibit makes it clear at least 4 banks have a claim to the McCarley mortgage.

Is it possible that all 4 claimed the Mortgage? If so, then 3 are guilty of fraud and perjury and of tax evasion. Is it possible that all 4 claimed the write-off when foreclosure was declared? If so, then 3 are guilty of fraud and perjury and of tax evasion.

Several Legal statutes found in Title 18 and Title 12 and Title 15 now come into play.

### 12 USC §1833a  Civil Penalties with Special Rule for Continuing Violations

Release date: 2005-07-21
(a) In general

---

[19] Judge did not bar the application of Civil Penalties for Criminal statutes violated.
[20] Ibid

18

Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section.
(b) Maximum amount of penalty
(1) Generally
The amount of the civil penalty shall not exceed $1,000,000.
(2) Special rule for continuing violations
**In the case of a continuing violation, the amount of the civil penalty may exceed the amount described in paragraph (1) but may not exceed the lesser of $1,000,000 per day or $5,000,000.**
(3) Special rule for violations creating gain or loss
(A) If any person derives pecuniary gain from the violation, or if the violation results in pecuniary loss to a person other than the violator, the amount of the civil penalty may exceed the amounts described in paragraphs (1) and (2) but may not exceed the amount of such gain or loss.
(B) As used in this paragraph, the term "person" includes the Bank Insurance Fund, the Savings Association Insurance Fund, and the National Credit Union Share Insurance Fund.

**(c) Violations to which penalty is applicable**
**This section applies to a violation of, or a conspiracy to violate—**
**(1) section 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of title 18;**
**(2) section 287, 1001, 1032,[1] 1341 or 1343 of title 18** affecting a federally insured financial institution; or

And now, because of the largest class-action settlement in history, of which Household International/HFC/HSBC admitted wrongdoing, coupled with continuing violations that occur in the life of the McCarley mortgage, plus the fact that 4 banks have claim to a single mortgage puts these institutions in line for the most severe civil penalties found in the legal statutes above. THE CONTINUING VIOLATION penalty which is a $5 million penalty.

Each and every time these banks publish their financial reports; which occur at least once per quarter, and each time said reports claim financial results in which McCarley mortgage is in the position you see today, then each financial institution has violated the $5 million penalty.

Specific laws to which the $5 million continuing violation civil penalty applies
15 USC § 1611. Criminal liability for willful and knowing violation
18 USC §656. Theft, embezzlement, or misapplication by bank officer or employee
18 USC §1001  Fraud and False Statements or entries generally
18 USC §1005 Fraud by Bank Officer Bank entries, reports and transactions
18 USC §1010 Fraud and False Statements to influence actions of Bank
18 USC §1014 Fraud and False Statements on Loan
18 USC §1016 False Acknowledgement by Oath
18 USC §1032 Concealment of Assets - - from FDIC
18 USC §1621  Perjury Generally

## Statutory Penalties invoked in each instance

Again, the penalty for a first commission of the offenses above is $1 million. The penalty for continuing violation is $5 million for each statute, for each commission. These penalties are invoked at least on a quarterly basis for every quarter since May 2000.

The total fine indicated by The Bank violations of these statutes adds up to more than $600,000,000 or $600 million. That should be an ample penalty even for the preferred bank of Saddam Hussein.

US Congress intended these penalties be applied by banking regulatory institutions such as FCIC and FHA and HUD. However, those statutes do not prevent a Federal Judge from assessing those penalties to guilty parties. The penalties are payable to those federal agencies, and not to McCarley. The Court in McCarley case did not allow McCarley to mount criminal charges, however, we have petitioned the court to consider and impose these penalties as a result of this trial, and then perhaps McCarley can be awarded a WHISTLEBLOWER compensation.

## Points of Law specified by Bank in Mortgage Contract

The Bank built in 3 of the statutes identified above into McCarley Mortgage. They are:

18 USC §1001 Fraud and False Statements or entries generally
18 USC §1010 Fraud and False Statements to influence actions of Bank
18 USC §1014 Fraud and False Statements on Loan

Considering that the bank included these statutes in the mortgage, we can be sure the bank will not be surprised when those clauses are assessed against them. However, there is no requirement that any of these statutes be included in the mortgage in question.

## Define Key Parameters and Conditions Precedent related to Bank disclosure violations

Exhibit entitled THE MORTGAGE identifies just a few key conditions that are required to be disclosed in literally all mortgages of any type. Violation of disclosure of these conditions lead to the fines identified herein.

Key Conditions violated:

| | |
|---|---|
| The Name of the Lender        (good question) | over 43 identities used and never disclosed |
| Contact Person at the Lender and/or Servicer | never provided |
| Contact Telephone for contact person | McCarley never able to make contact |
| Payment Amount | Disclosed but never followed |
| Late payment Fee | Disclosed but changed at will |
| Escrow | Forbidden by mortgage, although utilized |

Any dollar amount charged over and above the Payment and the Late Fee must be written into the Mortgage contract or else be disclosed prominently as a regular charge and displayed on the billing statement. Otherwise, if the monthly amount charged differs from the Payment Amount or Payment

plus late fee; a violation of both TILA and RESPA is present.  We will provide documentary evidence to prove the Bank had a practice of charging amounts never disclosed in any document.

The Mortgage of McCarley specifically excluded Escrow accounts and/or amounts.  Therefore, any imposition of escrow charges violates TILA and RESPA.

### Monthly ongoing servicer violations of disclosure, billing and practice violations

A review of the Billing Summary, marked as Exhibit APPENIX B will reveal the numbers of violations perpetrated by these banks.  However, the banks even got the billing statement wrong. They failed to provide a statement for the first 16 months of the mortgage.

For simplicity, violations have been circled on Billing Statement Exhibit.

1. In the header of this 3 page document we find the following violations:  (ex 37)
   a. Name           (different than disclosed – they used 43 different identities)
   b. Ancillary amount – (not disclosed in mortgage contract)
   c. Total Payment  (not correct due to accounting problems, disclosure breach)
   d. Paid to date   (not correct, therefore disclosure violation)
   e. fees           (not disclosed in mortgage contract)

A total of 5 violations of 12 USC 2605 are contained in the header of the document.

2. Within the body of the billing statement, which seems intended to track monthly payment information, we find the following violations.

   f. Total Amount Column shows 40 violations of disclosure of 12 USC 2605
      and 40 violations of both disclosure and excess finance charge of 15 USC 1601
   g. Escrow column shows 11 violations of disclosure of 12 USC 2605
      and 11 violations of both disclosure and excess finance charge of 15 USC 1601
   h. Fees column shows 14 violations of disclosure of 12 USC 2605
      and 14 violations of both disclosure and excess finance charge of 15 USC 1601

**Monthly Billing violations**

Evidence in presented by Exhibit BILLING MONTHLY. (ex 46 thru 50) These pieces of evidence provide a strong look at the inside of HFC and the joke accounting standards used by this bank.

The header in each case, indicates they have billed the correct monthly amount.  Then, upon looking further down the statement, we find many violations.  The stub the consumer is to remit with his check actually totals all the data incorrectly.  They include the total amounts paid in with the actual monthly payment, along with other nonsensical amounts never disclosed anywhere.  The result is a billing for several hundred dollars, whereas McCarley only owed the normal monthly payment.

Disclosure Billing Violations and Accountability Errors on Detail Review of 02/08/01

(a) Header charges a Late Fee never disclosed and therefore a disclosure violation.
(b) Bank electronic debited McCarley checking account for 4 months payments without authorization during this month.
(c) Two payments are reflected being reversed – why not 4
(d) Footer violations on slip designed to be returned with payment

| 02/08/01(exhibit bill 2) | | 02/14/01 (exhibit bill 3) |
|---|---|---|
| November Payment | 290.51 | 290.51 (correct disclosed payment amount) |
| Previous Payments | 1162.04 | 581.02 (adding in what already paid ????) |
| Unpaid Late Charges | 43.59 | 4.61 (nondisclosed, illegal late fees) |
| Other Fees | 27.00 | 27.00 (nondisclosed, illegal fees) |
| Total Due | 1523.14 | 903.14 (no way this is accurate. Who audits?????) |

Next, we note a late fee in the footer --not the same as the fee disclosed in the mortgage contract.

McCarley called HFC and complained of this illegal behavior on a regular basis. They would claim to fix the problem, and then the same problems were still there the very next month. Of great interest is the fact that these illegal charges cannot be traced to the billing summary. Therefore we have evidence of yet further disclosure violations.

### Statutory Penalties invoked in each instance

12 USC 2605 statutory penalty is $1000 for each instance, plus damages and costs
15 USC 1601 statutory penalty is $5000 for each instance, plus damages and costs plus double the finance charge of the mortgage.

**VI  Cross Exam and Recross – Rebuttal as appropriate**
**VII  Jury Charge and deliberation to determine guilt of parties**

**PROCEDURE TWO**
**Damages Phase**

**VIII Theory of Damages as appropriate to this case, Expert Witness either former**
        **Alabama Supreme Court Chief Justice Perry Hooper, Sr., or Dr. Sam Gambrel.**
**IX  Damages claimed by McCarley**
        **Statutory Penalties**
        **Court Costs**
        **Time and Effort (possibly Attorney Fees)**
        **Personal Losses**
            **Ancestral Homeplace return**
            **Professional Income Loss (considerable documentation to support)**
            **Mental Anguish**
            **Medical Costs**
        **Federal Regulatory Fines charged to Banks due to Mortgage violations and to be**
                **imposed by Court on Bank Parties  (McCarley whistle blower share)**

### SUBSECTION 7

7. If the claim is pursuant to a statute, a recitation of the statutory provision that authorizes relief.

McCarley seeks redress from injuries created by Household Finance Corporation III violations of statutory law and violations of common law. Injuries sustained by McCarley may be generally defined as: i)property damages, ii)court, attorney, legal, filing fees, iii)personal injuries for mental and emotional distress, iv)punitive and compensatory damages, v) regulatory fines assessed against HFC III (HSBC et.al.)

### Expense recovery related to HFC III actions

| | |
|---|---|
| a) Return of disseised ancestral property, | 26,000 |
| b) Compensation for Lost Income, (Four years at $100,000 = | 400,000 |
| c) Compensation for Court Costs, (Estimated at $10,000) | 10,000 |
| d) Compensation for legal fees, (Estimated at $5000) | 5,000 |
| e) Compensation for time preparation of court filings and research | 20,000 |
| | **461,000** |

### Compensatory Damages recovery

| | |
|---|---|
| f) Compensation for Mental Anxiety, | 200,000 |
| g) Compensation for Emotional Distress, | 200,000 |
| h) Compensation for added Medical Costs, present and future Lifetime Medical Insurance policy estimate | 200,000 |
| i) Compensation for Damages to disseised property, | 10,000 |
| j) Correction of false Credit reports, (HFC III effort) | |
| k) Removal of monetary damage charges against McCarley, (HFC III effort) | |
| l) Statutory Compensation awarded per state and federal statutes | 10,462,000 |
| | **11,072,000** |

### Punitive Damages to be Assessed by Jury

| | |
|---|---|
| m) 7 years of CEO level income, ($7,000,000) | 7,000,000 |
| n) that HFC III shall pay the full tax burden of any and all monetary awards estimate is $500,000 | 500,000 |
| | **7,500,000** |

### Regulatory Fines Assessed

| | |
|---|---|
| o) $1 to $5 million fine for false reports for each instance identified $653,000,000 (see worksheet for calculation) | **648,000,000** |

### TOTAL OF DAMAGES, FINES AND PENALTIES

| | |
|---|---|
| **McCarley seeks following** | **19,033,000** |
| **Fines to Regulatory** | **648,000,000** |

23

Agencies

### TOTAL          667,033,000

Statutory Provision That Authorizes Relief Requested

*12 USC §2605—Servicing of Mortgage Loans and Escrow Accounts (per violation)*
(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure; and
(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

(2) Class actions

(i) $500,000; or
(ii) 1 percent of the net worth of the servicer.

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

(4) Nonliability     (The Great Catch-all Clause)

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this subsection if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicers on procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

*15 USC §1601 et. Seq. – Mortgage Disclosure violations (per violation)*
(Penalty clause for §1601 contained in §1611

*§ 1611. Criminal liability for willful and knowing violation*
Release date: 2005-08-01

Whoever willfully and knowingly
(1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder,
(2) uses any chart or table authorized by the Board under section ⸱⸱ of this title in such a manner as to consistently understate the annual percentage rate determined under section ⸱⸱⸱⸱⸱⸱ of this title, or
(3) otherwise fails to comply with any requirement imposed under this subchapter,
shall be fined not more than $5,000 or imprisoned not more than one year, or both.

### *24 CFR pt. 3500 Mortgage Disclosure violations (Duplicates § 1601)*

### *18 USC §656. Theft, embezzlement, or misapplication by bank officer or employee*
(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)
Release date: 2005-08-03
Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section ⸱⸱ or section 25(a) ⸱⸱ of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization or holding company or any moneys, funds, assets or securities intrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the custody or care of any such agent, officer, director, employee or receiver, <u>shall be fined not more than $1,000,000</u> or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

### *18 USC §1001 Fraud and False Statements or entries generally*
(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)
Release date: 2005-08-03
(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; <u>shall be fined under this title</u> or imprisoned not more than 5 years, or both.

### *18 USC §1005 Fraud by Bank Officer*
(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)
<u>Whoever makes any false entry in any book, report, or statement of such bank,</u> company, branch, agency, or organization <u>with intent to injure or defraud</u> such bank, company, branch, agency, or organization, or any other company, body politic or corporate, <u>or any individual person,</u>

<u>Shall be fined not more than $1,000,000</u>

### *18 USC §1010 Fraud and False Statements to influence actions of Bank*
<u>Whoever knowingly makes any false statement or report</u>
<u>Shall be fined not more than $1,000,000</u>

### *18 USC §1014 Fraud and False Statements on Loan*
(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)
<u>Whoever knowingly makes any false statement or report,</u>

any institution the accounts of which are insured by the Federal Deposit Insurance Corporation,
Shall be fined not more than $1,000,000

**18 USC §1016** *False Acknowledgement by Oath*
Whoever, being an officer authorized to administer oaths or to take and certify acknowledgments, knowingly makes any false acknowledgment, certificate, or statement concerning the appearance before him or the taking of an oath or affirmation by any person with respect to any proposal, contract, bond, undertaking, or other matter submitted to, made with, or taken on behalf of the United States or any department or agency thereof, concerning which an oath or affirmation is required by law or lawful regulation, or with respect to the financial standing of any principal, surety, or other party to any such proposal, contract, bond, undertaking, or other instrument, shall be fined under this title or imprisoned not more than two years, or both.

**18 USC §1032** *Concealment of Assets - - from FDIC*
(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)
Whoever—
(1) knowingly conceals or endeavors to conceal an asset or property from the Federal Deposit Insurance Corporation  shall be fined under this title

**18 USC §1621** *Perjury Generally*
Whoever—
(1) having taken an oath before a competent tribunal,
, willfully subscribes as true any material
, be fined under this title

**12 USC §1831b** *Disclosure re: certain Federally related Mortgage Loans*
*(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)*

**12 USC §1831n** *Accounting objectives, standards, requirements*
*(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)*

**12 USC §1831o.** *Prompt corrective action*
*(Penalty amount guideline appears guided by 12 USC §1833a Civil Penalties)*

**12 USC §1833a** *Civil Penalties with Special Rule for Continuing Violations*
Release date: 2005-07-21
(a) In general
Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section.
(b) Maximum amount of penalty
(1) Generally
The amount of the civil penalty shall not exceed $1,000,000.
(2) Special rule for continuing violations
In the case of a continuing violation, the amount of the civil penalty may exceed the amount described in paragraph (1) but may not exceed the lesser of $1,000,000 per day or $5,000,000.

(c) Violations to which penalty is applicable
This section applies to a violation of, or a conspiracy to violate—
(1) section 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of title 18;
(2) section 287, 1001, 1032,[1] 1341 or 1343 of title 18 affecting a federally insured financial institution; or
(3) section 645 (a) of title 15.

26

STATUTORY AND REGULATORY PENALTY WORKSHEET

| Statute | Basis | Statutory Amount | Penalty pay to | occurrences | Penalty Total | Type |
|---|---|---|---|---|---|---|
| 2605 | each | 1000 | Plaintiff | 77 | 77,000 | statutory |
| 1601 | each | 5000 | Plaintiff | 77 | 385,000 | statutory |
| 656 | each | 5,000,000 | Plaintiff | tba | 5,000,000 | statutory |
| 1001 | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1005 | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1010 | per report | 1,000,000 | Regulatory | 18 | 18,000,000 | regulatory |
| 1014 | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1016 | per report | per jury | Regulatory | | | |
| 1032 | | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1621 | per default | 5,000,000 | Plaintiff | 1 | 5,000,000 | statutory |
| 1831b | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1831n | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 1831o | per report | 5,000,000 | Regulatory | 18 | 90,000,000 | regulatory |
| 2803 | no penalty | | | | | |
| | Total Statutory Penalties | | | | 10,462,000 | |
| | Total Regulatory Penalties | | | | 648,000,000 | |

Determination of number of occurrences

| | 2605 | 1601 |
|---|---|---|
| Force Place Insuran | 7 | 7 |
| Non Disclosed Data | 5 | 5 |
| Non Disclosed Fees | 54 | 54 |
| Forbidden Escrow | 11 | 11 |
| Fraud in Official Reports | quarterly 14 | |

**X    Cross exam and recross – Rebuttal as appropriate**
**XI   Jury Charge and deliberation**

## ADDRESSES UTILIZED BY THESE BANKS (43)

Household Mortgage Services        PO Box 2393        Brandon, Fl 33509-2393

      <u>Contains return envelope bearing following address</u>

Household Mortgage Services        PO Box 2678        Brandon, Fl 33509-2678

      <u>Return address on payment slip bears the following</u>

Household Mortgage Services        PO Box 5207        Carol Stream Il 60197-5207

      <u>Additional address on back of billing statement of 06/15/00</u>

| Household Financial Services-CPI | PO Box 1288 | Elmhurst, Il 60126-1288 |
|---|---|---|
| | PO Box 1097 | Elmhurst, Il 60126-1097 |
| | PO Box 8605 | Elmhurst, Il 60126-8605 |
| | PO Box 1097 | Elmhurst, Il 60126-1097 |

27

PO Box 7013            Anaheim, Ca 92850-7013
941 Corporate Center Dr  Pomona, Ca 91769

Bearing Irvine California postmark with return to Florida

Household Financial Services      PO Box 1997        Brandon, Fl 33509-1997

Additional address on back of billing statement of 02/08/01

Household Financial Services-CPI    PO Box 1997        Brandon, Fl 33509-1997

Household Financial Services      PO Box 2393        Brandon, Fl 33509-2393
Household Mortgage Services      PO Box 2393        Brandon, Fl 33509-2393

Addresses on back of 2/05/03 billing statement

Household Mortgage Services  PO Box 60113        City of Industry, Ca 91716-0113
Household Mortgage Services  636 Grand Regency Blvd  Brandon, Fl 33510-3942

www.householdmortgageservices.com  PO Box 2393     Brandon, Fl 33509-2393
                                    PO Box 2332     Brandon, Fl 33509-2332
                                    PO Box 11035    Orange, Ca 92856-8135
                                    PO Box 2369     Brandon, Fl 33509-2369
                                    PO Box 11062    Orange, Ca 92856-8162

Additional address on back of billing statement of 01/05/04

Household Mortgage Services      PO Box 3715        Brandon, Fl 33509-3715

Within Mortgage package

Household Finance Corporation III  961 Weigel Drive    Elmhurst, Il 60126
HFS-CPI                            PO Box 1288        Elmhurst, Il 60126
Household Mortgage Services  577 Lamont Rd. POBox 1247 Elmhurst, Il 60126

Morris Schneider & Prior, LLC      3300 NE Expressway Bldg 8  Atlanta, Ga 30341

Homesense Financial Corp. of Alabama  113 Reed Avenue Lexington, SC 29072

Title Source, Inc.        3 Office Park Cir #240  Birmingham, Al 35223

North American              9 Woodberry Way      Greenville, SC 29608
North American Financial Svcs, LLC  PO Box 3688   Greenville, SC 29608

Homesense Financial Corp.   ISAOA ATIMA  113 Reed Ave. Greenville, SC 29608

28

Homesense Financial Corp. of Alabama  113 Reed Ave.    Lexington, SC 29072
Homesense Financial Corp. of Alabama  3239 Sunset Blvd West Columbia, SC  29169

Mortgage Electronic Registration Systems, Inc.
                                    1595 Spring Hill Rd Ste 310  Vienna, Va  22182
MERSCORP INC                        1595 Spring Hill Rd Ste 310  Vienna, Va  2218
Mortgage Electronic Registration Systems, Inc G4318 Miller Rd POBox 2026 Flint, Mi 48501-2026
Household Finance Corporation        G4318 Miller Rd POBox 2026 Flint, Mi 48501-2026

### Addresses with Illinois Secretary of State

Household International, Inc.            2700 Sanders Road   Prospect Heights, Il  60070
Household Finance Corporation           2700 Sanders Road   Prospect Heights, Il  60070
Household Finance Corporation III       2700 Sanders Road   Prospect Heights, Il  60070
Household Finance Receivable Corp. II 2700 Sanders RoadProspect Heights, Il  60070
HSBC Mortgage Services, Inc.            2700 Sanders Road   Prospect Heights, Il  60070
HSBC Finance Corporation                2700 Sanders Road   Prospect Heights, Il  60070
HSBC GR CORP                            2700 Sanders Road   Prospect Heights, Il  60070
HSBC Holdings PLC                       2700 Sanders Road   Prospect Heights, Il  60070
HSBC North America Holdings Inc. 2700 Sanders Road   Prospect Heights, Il  60070

AKA – (Also Known As) (12)

Household Financial Services Corporation
Household Financial Services, Inc.
Household Financial Group, Ltd
HSBC Finance Corp
Household Capital Trust VII
Hong Kong and Shangai Banking Company (HSBC)
HSBC Bank Canada
HSBC Fin Corp
HSBC FINL DEP SHS
HSBC HLDGS PLC
HSBC USA INC
HSBC Bank, USA

Stock Market Aliases (21)    (see financial exhibit 67)

## MORTGAGE LIENS RECORDED IN RANDOLPH PROBATE OFFICE

| Holder | Date Recorded | Book | Page |
|---|---|---|---|
| Commercial Bank | 8 May 00 | 259 | 55-58 |
|  | 10 May 00 | 33 | 81 |
| George McCarley | 1 May 00 | 403 | 122 |
| MERS?HFX?HSBC | 10 Jul  02 | 430 | 550 |

| MERS | 26 FEB 04 | 306 | 706-707 |
| Fidelity National Title | | 430 | 551 |
| (described in ) | | 120 | 219 |
| (Source of title) | | 176 | 55 |

## EXHIBITS

| Number | Name | Purpose |
| --- | --- | --- |
| *Disclosure Points* | | |
| 1] 1-7 | McCarley Mortgage | Central Issue of Case Disclosure Violation points |
| 2] Loan App(HFC) | Uniform Residential Application | Disclosure Violation |
| 3] Loan App (Home) | Uniform Residential Application | Disclosure Violation |
| 4] Hud 1 | Settlement Statement | Disclosure Violation |
| 5] 15-16 | TILA/RESPA Disclosure Statement | Disclosure Violation |
| 6] 20 | Servicing Disclosure Statement | 12 USC 2605 invoked |
| 7] 25-28 | Supp Closing Instructions | Disclosure violations |
| *Insurance Evidence Disclosure Exhibits* | | |
| 8] 8 | Hazard Insurance Binder | Force Place violation |
| 9] 14 | Loss Payable Endorsement | Proof of Insurance |
| 10] 12 | Title Insurance | Proof of reg. of insurance |
| 11] 21 | Loan Proposal | More insurance proof |
| 12] 25-27 | Supp Closing Instructions | Hazard Insurance proof |
| 13] 31 | Itemization of Amount Finan. | More Hazard Proof |
| 14] 30 | Servicing Disclosure Statement | 12 USC invoked again |
| 15] Ins Record | Tax &Hazard Ins Record | Proof of Insurance |
| 16] Ins Order | HFS Order to Purchase Ins | Force place proof Disclosure Violation |
| 17] ACE | Evidence of Ins Placed | Proof of force placed |
| *Escrow Waiver* | | |
| 18] 28 | Initial Escrow Waiver | Proof no waiver approved |
| *18 USC Statutes Invoked within Mortgage Package* | | |
| 19] 34 | Occupancy Affadavit | 18 USC 1014 invoked |
| 20] Hud 1 | Settlement Statement | 18 USC 1001, 1010 invoked |
| 21] Loan App(HFC) | Uniform Residential Application | 18 USC 1001 invoked |
| 22] Loan App (Home) | Uniform Residential Application | 18 USC 1001 invoked |
| *Invalid Recorded or Referenced Deeds/Title – Disclosure Violation – Tax Scam* | | |
| 23] 44 | Assignment and Transfer of Lien | No Transferee named |
| 24] Deed ?? | Assignment of Security Instrument | Never Recorded Tax Scam evidence Disclosure Violation |

|   |   |   |
|---|---|---|
|   |   | Hidden Assets Violation |
|   |   | Foreclosure Planned on day of |
|   |   | Mortgage initiation |
|   |   | Foreclosure Bank does not exist |
|   |   | 4 entities can claim deed/tax writeoff |
| 25] Deed 2 | Mortgage Foreclosure Deed | Nonexistent entities represented |

Evidence of Identity Scam –Evidence of Disclosure Breach– Shell Game

|   |   |   |
|---|---|---|
| 26] SOSSC1 | Homesense Corp Reg | Proof closed biz, Disclosure breach |
|   |   | Proof merged 9 days after mort |
| 27] SOSSC2 | Homegold Corp | Proof closed biz, Disclosure breach |
|   |   | Proof merged 9 days after mort |
| 28] SOSAL1 | Homesense Al Corp withdrawal | Proof closed before recorded |
|   |   | Proof closed before assignment |
|   |   | Never recorded successor or assign |
| 29] SOSAL2 | HSBC Mort Ser Reg | Reg 8-30-04, disclosure breach |
| 30] SOSAL3 | MERS corp reg | Did not reg until 5-10-04, disclosure |
| 31] SOSAL4 | Household Int reg withdrawal | Out of biz on 12-31-04, disclosure |
| 32] NYS 1 | MERS (foreign Corp) | Registered as foreign corporation |
| 33] Cal 1 | Postmarked Irvine Ca with return address to Fl. |   |

M&A Evidence Not Disclosed

|   |   |   |
|---|---|---|
| 34] H1 | HSBC/HFC merger announcement | Proof disclosure breach |
|   |   | Proof HFC closed at foreclosure |
| 35] H2 | M&A announcement | Second Source for above |
| 36] H3 | Collection Letter using nondisclosed identity |   |

Fully Paid Evidence

|   |   |   |
|---|---|---|
| 37] Appendix B | Household provided billing | Proof paid up at time of assign |
|   |   | Fully paid at 30 months |

Incomplete Billing Statement in Breach of Disclosure

|   |   |   |
|---|---|---|
| 38] Appendix B | Household provided | left out first 15 months |

Confusing Scam Potential -- violating Disclosure

|   |   |   |
|---|---|---|
| 39] Scam 1 | HFS correspondence Dec 14, 00 |   |
| 40] Scam 2 | HFC III letter of Dec 6, 00 |   |
| 41] Scam 3 | HFC III document of Dec 5, 00 |   |
| 42] E1 | Envelope address | Identity confusion |
| 43] E2 | Envelope address | Identity Confusion |
| 44] E3 | Envelope address | Identity Confusion |
| 45] E4 | Postmark Irvine | Sent from Cal, return to Fl |

Monthly Bill Presented by Bank and Disclosure Violations

|   |   |   |
|---|---|---|
| 46] Bill 1 | 6/15/00 First Bill | Appears proper |
| 47] Bill 2 | 2/08/01 Bill | Multiple improper billing, disclosure |
| 48] Bill 3 | 2/14/01 Bill | 5 days later reduced $600 still wrong |

| 49] Bill 4 | 2/05/03 Bill | Amounts wrong, breach disclosure |
| 50] Bill 5 | 1/05/04 Bill | Amounts wrong, breach disclosure |

### Qualified Letter of Complaint to Attorney General

| 51] Letter 1 | To Ala AG    Jan 15, 2001 | Qualified complaint |
| 52] Letter 2 | To Ala AG    Feb 17, 2001 | Qualified complaint |
| 53] Letter 3 | From Ala AG to MCC 4/16/01 | Reply to Mcc |
| 54] Letter 4 | From HFS to Ala AG 27/03/01 | HFS reply to AG (HFS Lies) |

### McCarley Bank Statement

| 55] Statement 1 | For period 1/09/01 | 4 months billed in 5 days (theft) |
| | | Non-authorized electronic debit |
| 56] Statement 2 | March 1999 bank statement | demonstrates income potential |

### Saddam Connection – Failure to Disclose

| 57] FOI | Summary of HSBC penalties | For moving Saddam's money |
| 58] AP | AP news story of HSBC penalties | Only firm penalized twice, above |
| 59] Opium | History of HSBC and Opium trade | Demonstrates illegal activity |

### Evidence of Damages
60] Horizon Officer (Founders Trace resolution and Affadavit
61} Board of Director – CEO letters  (over 30) (held for court)
62] Email Notification of Interest
63] Diners Club letter (held for court)
64] Tom Libazzi email
65] Resume
66] 80% extensive background check (various sources)(held for court)

### Financial Statements of HSBC and Competitors indicating extreme Tax Scam
### Provision for Credit Losses

| 67] HSBC Financials | Demonstrates over 20% default rate |
| 68] NationsBank Financials | Demonstrates over 11% default Rate |
| 69] Wachovia Financials | Demonstrates normal 2% default rate |

CONTACT INFORMATION FOR GEORGE D. MCCARLEY
216B Chestnut Street
Roanoke, Alabama  36274
334-863-6489
submitted November 3, 2006

*G. McCarley*