IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

George D. McCarley
    Plaintiff
                            Civil Action No. 3:06-CV-0091-MEF
v.                                              Lead Case

Household Finance Corporation III
    Defendant                            Jury Trial Demand

**Brief In Support of Plaintiff Summary Judgment Motion**

A Plaintiff Summary Judgment motion was presented to the court on 3/19/2007 (doc. 38). Upon the courts advice that ministerial error had contributed to certain of plaintiff's summary judgment charges, plaintiff requested leave and was granted permission to file this Brief In Support of Summary Judgment. While said ministerial error forgives certain summary judgment charges of plaintiff, others become magnified, as this brief will make certain.

    Plaintiff Summary Judgment Brief in Support will detail the following:

    I. Uncontested Facts
    II. Contested Facts
    III. Defendant Failure to Appoint Counsel for Corporate units charged.
    IV. Issue of Unserved Order versus RESPA response
    V. One Year to Trial Request of Defense
    VI. Bad Faith Failure to Respond to Calls
    VII. Bad Faith Defendant Address Issue
    VIII. Defense has Never Requested to View Plaintiff Materials
    IX. Documents Included for Consideration of Court

**I. Uncontested Facts[1]:**
1. McCarley has been pursuing various levels of court litigation against HSBC or affiliates since 2004 foreclosure date.
2. McCarley original action was filed in Middle District of Alabama (ALMD) on 1-31-2006.
3. 15 defendants were charged on 1-31-2006, including 9 HSBC corporate executives.
4. Only one of the 15 defendants has been represented by legal counsel prior to 2/16/2007.
5. Charges against the single represented individual and nine other defendants have been dismissed.
6. Remaining five (5) HSBC corporate entities charged were not represented by legal counsel for the first 13 months of this action, until 2/16/2007.

---
[1] Uncontested facts verified by Pacer docket evidence. Insufficient time allowed for defense concurrence attempted

1

7. Twenty-eight (28) documents in this case were logged onto Pacer in the first thirteen months of the case and while none of the 5 corporate entities were represented by legal counsel.

8. Magistrate Judge McPherson's order of 10/10/2006 followed the exchange and service of some 16 Pacer documents yet no defense counsel was appointed or noticed to this court.

9. Judge McPherson's order of 10/10/2006 was exposed to public Pacer display for five months.

10. Never in the history of this series of legal actions, beginning with 2004 foreclosure, has HSBC or counsel requested to view any plaintiff materials, as if their FRCP Rule 26 right.

11. Five HSBC defendant corporate units are major elements of a $72 billion international giant corporation having a huge internal litigation staff and contracting numerous additional law firms.

12. Defendant has requested one additional year to prepare for trial, thus extending the total time span of this series of actions beyond four years.

13. Plaintiff pre-discovery request included a paragraph "guide" to assist HSBC analysis of evidence intended to assist HSBC to realize their "guilt".

14. HSBC has failed to provide a "live" address for service of process. Mail is delivered to a completely different zip code than that provided in the address of the collective case file.

## II. Contested Points:

A. Order of Judge McPherson was published on Pacer on 10/10/2006 in very plain English. Given a defense organization the size of HSBC, a high degree of *bad faith* is indicated when such an order is flatly ignored for five months. This case had been in progress in ALMD for some 9 months at the time of the 10/10/2006 Pacer posting. That sixteen (16) documents had been posted to Pacer in that time span should have served as a strong indication to responsible litigation counsel that action was required.

B. McCarley did follow-up 10/10/2006 order with telephone calls to the court and to HSBC litigation counsel in Chicago at two different locations. While the secretary at each location quickly located this case file, no telephone calls were ever returned and McCarley had no ability to query HSBC lack of action to any degree. Said telephone records are available albeit by subpoena as required by "calling card" companies.

C. An unacceptable five (5) month delay did occur as a direct result of failure of HSBC to either appoint counsel to this case or to exercise simple Pacer record review. The ministerial error reported by the court, in which Judge McPherson order was not served, is a human clerical error that will occur in the best organizations. However, plaintiff argues with vehemence that responsible professionals are fully expected to exercise initiative and to mitigate such human errors. Further, unless responsible professionals seize such initiatives, they should be faced with a loss of said professional status and privileges. Such failure of professionalism would be met with disciplinary actions in most professional settings, thus the charge for sanctions or summary judgment of this motion.

D. Defense response to RESPA charges was not in evidence on their official response to Judge Capel 1/26/ 2007 order (see Pacer entries for 2/16/2007). Instead, they seemed to defend a foreclosure action. It is RESPA violations found at 12 USC §2601 to §2617 that are the charge(s) of this case.

E. Plaintiff conducted a search of Pacer records in late 2004 and found there were 1294 cases documented on Pacer in which Household Finance Corporation (the foreclosing entity in this case acquired by HSBC immediately prior to foreclosure) was defendant. Of those total 1294 cases, some 675 cases would be lodged between 1/1/2000 and 11/31/2004. Therefore, HSBC is heavily practiced in the art of defending such cases as McCarley. There insistence that one additional year is required

2

to prepare McCarley case for trial is quite simply ridiculous given there extreme level of practice. The court is reminded that Beethoven wrote his some of his most loved works in minutes, and that Handel wrote "The Messiah" in about three weeks[2]. Surely a huge litigation group such as HSBC, coupled with their Alabama counsel status as the state's largest can take this pro se plaintiff to trial in a far shorter period[3]. HSBC one year insistence should be considered *prima facie* proof that they have no legal justification for their foreclosure action, they never had a legitimate case for foreclosure, they have no ability to disprove McCarley before trial, and they will take every opportunity to stretch their impending defeat in hopes McCarley will "go away".

F. A huge issue of *manifest injustice* has been percolating along with this case. Certain evidentiary documents have been on record for quite some time that make clear to all those who view said documents that McCarley is innocent of any and all default or foreclosure allegations. Those documents and locations on the record will be identified in evidentiary appendix. Given the extensive evidence of *bad faith* in this ALMD case, the court would appear correct in considering such documents in light of judicial economy and administration of justice.

## ARGUMENT

### III. Defendant Failure to Appoint Counsel for Corporate units charged

In the first thirteen months of this case, only one of fifteen defendants charged had been represented by defense counsel (Gary Esposito, Pacer Doc 8). Then came a gap of about three months as evidenced by Pacer in which none of the defendants were represented. Documents on Pacer verify that Defense Attorney George Parker was terminated on 11/16/2006. It was not until Doc 28 on 2/16/2007 that the remaining defendants were ever represented by counsel. Plaintiff contends this is a flagrant act of the defendant that has no other tactic than to delay administration of justice in this case. This defendant wishes to delay because it is so readily apparent from any cursory review of evidence that they never had a bona fide case against McCarley and now being further clear they will not have a case one year from now. Twenty-eight (28) documents in this case were logged onto Pacer in the first thirteen months of the case and while none of the 5 corporate entities were represented by legal counsel. Magistrate Judge McPherson's order of 10/10/2006 followed the exchange and service of some 16 Pacer documents yet no defense counsel was

---

[2] Documented by any respectable music reference work dealing with Classical Music.
[3] Plaintiff acknowledges the court calendar cannot accommodate this case prior to the one year date. However, this defense group has the requisite repetitions of said case to get there in weeks.

3

appointed or noticed to this court. Judge McPherson's order of 10/10/2006 was exposed to public Pacer display for five months, at a time when no defendant legal counsel was assigned. <u>This failure to appoint counsel is the reason for the interminable delay, and this defendant will only seek further means of delay.</u> The following two citations indicate other courts have dealt harshly upon failure to appoint or substitute counsel. Obviously issues of due diligence and the defendant carelessness require action as per the following:

Rule 55 Note 121 Change of Counsel

"In view of the fact that defendants have been unrepresented since mid june 1981 (in case citation) and no justification was asserted for their having failed to obtain substitute counsel in (. . .) period that elapsed thereafter, in view of their failure to defend with due diligence and to comply with Rule, courts standing order and amended order, and failure to prosecute counterclaims with due diligence, . . . order of default was entered against both defendants, . . . "See Bonner Nat. Life Ins. Co., v. Continental Nat. Corp., D.C. Ill. 1981, 91 F.R.D. 448.

Rule 55 Note 120 Default of Party

"Default was proper sanction for defendants failure to obtain substitute counsel, . . . . defendants were personally responsible for the failure because they were aware of the courts orders, . . . there were indications of bad faith on the part of the defendants in causing counsel to withdraw, . . . " See Hoxworth v. Blinder, Robinson & Co., Inc., C.A. 3 (Pa.) 1992, 980 F. 2d 912.

**IV Issue of Unserved Order versus RESPA response**

The court is directed to the argument contained in CONTESTED POINTS A through F. As further evidence of defendant delay tactics, consider that a Judges Order was exposed for all to see on Pacer for some five months without action. McCarley initiated several telephone calls to both the court and to HSBC corporate counsel, with no response from HSBC. A responsible professional such as an officer of the court (in any other walk of life) would immediately exercise initiative by a simple act of a courtesy telephone call to a court clerk to inquire about the unserved order. Instead, the failure to serve became yet another in the defendant delay tactic. Said delay casts serious doubt

4

on the requisite due diligence required of such weighty matters and further underscores the default declarations evident in Supra <u>Bonner Nat. Life Ins. Co., v. Continental Nat. Corp.</u> and in Supra <u>Hoxworth v. Blinder, Robinson & Co., Inc</u>. And now we direct the courts attention to the substance of the defense response to the Amended Respa complaint (Doc 22). The court will find a very slim response that fails to respond to RESPA or Disclosure violations yet attempts further delay by seeming to defend a foreclosure action. That was not the intent of the court in Doc 22. This court would be equally well served to consider a default declaration against the defense for this instance.

**V. One Year to Trial Request of Defense**

In view of the fact no defense counsel has been appointed until 2/16/2007, and whereas thirteen months passed in the present case without defense counsel, it should come as no surprise that the defense feels they require yet another year to build their case. They have already sat silently and watched a valid judges order gather dust. They will only seek other methods of delay. The spirit of stare decisis appears to demand this court issue sanctions against this defendant consistent with Supra <u>Bonner Nat. Life Ins. Co., v. Continental Nat. Corp.</u> and in Supra <u>Hoxworth v. Blinder, Robinson & Co., Inc.</u>

**VI. Bad Faith Failure to Respond to Calls**

Courts review of Contested Point B makes it clear McCarley has exercised necessary diligence in attempting to contact defendant to make inquiries during the five month delay following Judge McPhersons order of 10/10/2006. Their failure to respond in any manner should serve as key evidence of failure to exercise diligence required and indicated in the case citations above. It has become an established edict of Federal Rules of Civil Procedure that the parties must communicate and attempt to continue to move cases forward. And now, one of the greatest offenders of judicial economy on the planet refuses to return simple phone calls. (contested point E above.)

5

## VII. Bad Faith Defendant Address Issue

While serving the Amended Respa complaint found at Doc 22, plaintiff mail tracking would provide evidence that the defendant has failed to provide a "live" and functioning address for service. The attached exhibit makes it clear that United States Postal Service delivers defendant mail to a completely different zip code. How is it possible that defendant that withstands such a huge wave of litigation as demonstrated in contested point E could be allowed to utilize a false mailing address? This serves as proof positive of yet further delay tactics that should result in sanctions if not summary judgment against defendant.

## VIII. Defense has Never Requested to View Plaintiff Materials

Federal Rules of Civil Procedure 26 grants both litigants the right to view the materials of the other prior to trial. Plaintiff again directs the courts attention to his charge that in the more than three years of this series of court actions, there has never been a request by HSBC to view plaintiff materials. Plaintiff charges again, this is yet another delay tactic intended to further HSBC goal of not responding to McCarley evidence. In fact, the very "pre-discovery" request of McCarley can be interpreted as a "guide" by which HSBC may closely review McCarley request and come to the realization HSBC is wrong and McCarley is right. McCarley has made every possible attempt to bring closure while no HSBC attempt is in evidence, and therefore, the ultimate sanctions are demanded by the failure to act of HSBC.

## IX. Documents Included for Consideration of Court

Also, according to the Federal Rules of Civil Procedure 10(c), "A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes." The Seventh Circuit has interpreted "written instrument" as including loan documentation and correspondence between parties. N. Ind. Gun & Outdoor Shows v. City of South Bend, 163 F.3d 449, 453 (7th Cir. 1998).

Accordingly, in ruling on this plaintiff motion, it is appropriate for the court to consider the attached "HSBC billing statement" in concert with the "Assignment of Security Instrument" as Exhibits A and B See Egert v. FT Mort. Cos., No 99 C 313, 1999 WL 528517 at *1 n. 2 (N.D. Ill. July 19, 1999) (considering loan documentation attached on defendant's motion to dismiss in ruling on the motion.) Now the courts review of these two documents will indicate that at the time McCarley was declared in default, (July 2002) HSBC billing records make it clear McCarley was actually $190 overpaid. How is it possible that a default can be binding in such an instance? The answer is that the alleged default is not a default at all, so much as something between a lie and fraud. Given the presence of such admissible evidence[4] on this submittal and the case citations contained, this court is clearly empowered to declare summary judgment in favor of plaintiff McCarley while making a strong statement in favor of improved administration of justice as per infra Repass v. Vreland.

The courts cursory review of Exhibits A and B should make it clear, a judgment against Defendant HSBC based upon unconscionable or inequitable conduct is fully supported by case citations below:

> "It is generally accepted that a court of equity has the power to relieve a mortgagor from the effects of an operative acceleration clause in a mortgage where the default of the mortgagor was the result of some unconscionable or inequitable conduct of the mortagee" (55 Am Jur 2d §375 footnote 4)
>
> Johnson v. Gore, 224 Miss 600, 80 So2d 731
> Freund v. Weisman, 101 NJ Eq 245, 137 A 885, 53 ALR 522
> Weyand v. Park Terrace Co., 202 NY 231, 95 NE 723
> Hale v. Patton, 60 NY 223
> Murphy v. Fox, (Okla) 278 P2d 820
> Weinberg v. Naher, Wash 591, 99 P 736

> "Or simply where the court is confronted with genuinely equitable grounds for relief"    Bison v. Sax, 175 Cal app 2d 714, 346 P2d 814

---

[4] Just two of several "smoking guns" evidence in this entire matter

## ARGUMENT SUMMATION

Plaintiff incorporates the following citation from document 42, page 4 of this court: ("There is a strong public policy in favor of resolving lawsuits by a trial on the merits") (citing <u>Dolphin Plumbing Co., of Fla. V. Fin. Corp. of N. Am.</u>, 508 F 2d 1326 (5th Cir. 1975)). Plaintiff concurs fully that defendant HSBC and affiliates charged should receive a very public trial on these matters. However, certain points addressed in this summary judgment brief should make clear that *manifest injustice* is in process as a result of (i) the defendant strategy of delay evident in the failure to appoint counsel, and, (ii) lack of professional initiative demonstrated by their act of ignoring for five months a posted judicial order, and, (iii) their less than genuine response to the 1/26/2007 order to respond to RESPA charges of plaintiff[5] in which they appear to respond with a foreclosure defense instead of RESPA defense, and (iv) that certain evidence documents contained in this submittal along with location of same on Pacer should make it clear HSBC has been caught in a blatantly obvious illegal act of foreclosure and as such the very administration of justice might be better served by such a harsh verdict as opined by summary judgment, as per following case citation:

> 28 USCA Rule 56 note 259 (p.361) Interest of Justice
> "District Courts power to enter partial summary judgment should be used only in the infrequent harsh case as instrument for improved administration of justice." <u>See Repass v. Vreland</u>, C.A.N.J. 1966, 357 F. 2d 801

Continuing the argument in paragraph above, plaintiff incorporates a paragraph from Rule 56(g) damages in order to demonstrate more fully the rightfulness of a "delay" judgment being assessed to HSBC and affiliates:

<u>Rule 56(g) Damages</u>

Rule 56(g) of the Federal Rules of Civil Procedure states, that

---

[5] We beg to differ with Judge Capel opinion found in Doc 42 page 2 and 3. Plaintiff argues that if defendants were not required to respond to Judge McPherson order then they likewise were not required to respond to Judge Capel.

8

> "Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of reasonable expenses which the filing of the affidavits caused the other party to incur, . . ."

Again, in reference to the examples, case citations and statutes displayed, it would appear consistent with precedent that HSBC be charged on the grounds of delaying this proceeding for the reasons numbered above.

McCarley case will not be the first summary judgment assessed a HSBC business unit, as may be seen in the following rendition of a SUMMARY JUDGMENT[6] decision going against a business unit of the former Household International, now HSBC.

> "In view of the determination that lender violated this subchapter by failing to disclose terms in its statement of disclosure fairly and conspicuously and in meaningful sequence, further proceedings were not necessary with respect to borrowers contention that they were entitled to summary judgment on claim that lender violated this subchapter by failing to disclose . . . " <u>Conrad v. Beneficial Finance Co. of New York Inc.</u>, 1977, 394 NYS2d 923.

In summation, plaintiff recommends this court declare summary judgment as the many case citations contained herein would demand and justify. The fullest extent of damages claimed in the amended complaint are justified and should be awarded. (Doc 5, page 45) We believe the best interests of administration of justice and judicial economy will be far better served via this summary judgment[7], and then, this court could choose to apply the very same trial calendar for adjudication of the more onerous 12 USC 1833a violations[8] (brief in support forthcoming) as these violations would appear to better serve the interests of a broader cross section of society by bringing to justice the

---

[6] From 15 USC §1638 – This is the companion clause of TILA that matches the 12 USC 2605 disclosure clause contained in McCarley complaint.
[7] The court also appears to have as option, the declaration of summary judgment and then the utilization of jury to determine damages to be awarded.
[8] Document 5 page 21 and 49 for listing of statutes

higher level bank officers that allow such illegal acts as those contained in the broader McCarley complaint.

*G. McCarley*

Respectfully submitted

George D. McCarley, Pro Se
216B Chestnut Street
Roanoke, Al 36274
334-863-6489

## PROOF OF SERVICE

I, George D. McCarley, do swear or affirm that on this date, March 30, 2007, as required by Supreme Court Rule 29 I have served the enclosed ACTION on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing envelope containing the above documents in the United States Mail properly addressed to each of them, and with first class postage prepaid, or by delivery to a third party commercial carrier for delivery within 3 calendar days.

<u>The Clerk</u>
Middle District of Alabama, Eastern Division
One Church Street, PO Box 711
Montgomery, Al 36101-0711
334-954-3600

<u>Defendant Attorney</u>
Mr. George Parker
Bradley Arant Rose and White
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Al 36104
334-956-7671, 956-7700

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 30, 2007

*G. McCarley*
George D. McCarley

## INDEX[9]

| | |
|---|---|
| 2 | 12 USC §2601 to §2617 |
| 9 | 12 USC 1833a |
| 4 | 28 USCA Rule 55 Note 121 Change of Counsel |
| 4 | 28 USCA Rule 55 Note 120 Default of Party |
| 8 | 28 USCA Rule 56(g) Damages |

---

[9] Document 5 page 21 and 49 for listing of statutes

| | |
|---|---|
| 8 | 28 USCA Rule 56 note 259 (p.361) Interest of Justice |
| 7 | 55 Am Jur 2d §375 footnote 4 |
| 6 | Federal Rules of Civil Procedure 10(c) |
| 7 | Bison v. Sax, 175 Cal app 2d 714, 346 P2d 814 |
| 4,5 | Bonner Nat. Life Ins. Co., v. Continental Nat. Corp., D.C. Ill. 1981, 91 F.R.D. 448. |
| 9 | Conrad v. Beneficial Finance Co. of New York Inc., 1977, 394 NYS2d 923 |
| 8 | Dolphin Plumbing Co., of Fla. V. Fin. Corp. of N. Am., 508 F 2d 1326 (5th Cir. 1975)) |
| 7 | Egert v. FT Mort. Cos., No 99 C 313, 1999 WL 528517 at *1 n. 2 (N.D. Ill. July 19, 1999) |
| 7 | Freund v. Weisman, 101 NJ Eq 245, 137 A 885, 53 ALR 522 |
| 7 | Hale v. Patton, 60 NY 223 |
| 4,5 | Hoxworth v. Blinder, Robinson & Co., Inc., C.A. 3 (Pa.) 1992, 980 F. 2d 912. |
| 7 | Johnson v. Gore, 224 Miss 600, 80 So2d 731 |
| 7 | Murphy v. Fox, (Okla) 278 P2d 820 |
| 6 | N. Ind. Gun & Outdoor Shows v. City of South Bend, 163 F.3d 449, 453 (7th Cir. 1998) |
| 7,8 | Repass v. Vreland, C.A.N.J. 1966, 357 F. 2d 801 |
| 7 | Weinberg v. Naher, Wash 591, 99 P 736 |
| 7 | Weyand v. Park Terrace Co., 202 NY 231, 95 NE 723 |

## EXHIBITS CONTAINED

Exhibit A. HSBC billing Statement for July 2002
Exhibit B. Assignment of Security Instrument (to compare date to above)
Exhibit C  Statement of "Calling Card" numbers used to contact HSBC corp counsel
~~Exhibit D  Pre-Discovery questions serve as Guide to Guilt of HSBC~~  (Delete) (GM)
Exhibit E  Address Problem evidence from USPS

11

Rule 55   FEDERAL RULES OF CIVIL PROCEDURE   70

respect to the motion in accordance with Rule 43(e) or Rule 78. The court may determine issues of liability for fees before receiving submissions bearing on issues of evaluation of services for which liability is imposed by the court. The court shall find the facts and state its conclusions of law as provided in Rule 52(a).

(D) By local rule the court may establish special procedures by which issues relating to such fees may be resolved without extensive evidentiary hearings. In addition, the court may refer issues relating to the value of services to a special master under Rule 53 without regard to the provisions of Rule 53(a)(1) and may refer a motion for attorneys' fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

(E) The provisions of subparagraphs (A) through (D) do not apply to claims for fees and expenses as sanctions for violations of these rules or under 28 U.S.C. §1927.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Apr. 17, 1961, eff. July 19, 1961; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 2002, eff. Dec. 1, 2002; Mar. 27, 2003, eff. Dec. 1, 2003.)

**Rule 55. Default**

(a) ENTRY. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

(b) JUDGMENT. Judgment by default may be entered as follows:

(1) *By the Clerk*. When the plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not an infant or incompetent person.

(2) *By the Court*. In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

(c) SETTING ASIDE DEFAULT. For good cause shown the court may set aside an entry of default and, if a judgment by default has

71         FEDERAL RULES OF CIVIL PROCEDURE         **Rule 56**

been entered, may likewise set it aside in accordance with Rule 60(b).

(d) PLAINTIFFS, COUNTERCLAIMANTS, CROSS-CLAIMANTS. The provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim. In all cases a judgment by default is subject to the limitations of Rule 54(c).

(e) JUDGMENT AGAINST THE UNITED STATES. No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987.)

### Rule 56. Summary Judgment

(a) FOR CLAIMANT. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) FOR DEFENDING PARTY. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) MOTION AND PROCEEDINGS THEREON. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

(d) CASE NOT FULLY ADJUDICATED ON MOTION. If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

(e) FORM OF AFFIDAVITS; FURTHER TESTIMONY; DEFENSE REQUIRED. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is com-