IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| George D. McCarley | |
| Plaintiff | Civil Action No. 3:06-CV-0091-MEF |
| v. | Lead Case |
| Household Finance Corporation | |
| Defendant | Jury Trial Demand |

RECEIVED 2007 APR -3 A 9:14
[stamp] A P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**Brief In Support of Charges for Violation of 12 USC 1833a and Referenced 18 USC Statutes against remaining defendants in this Consolidated Case**

This Brief in Support is a result of discussion following the Rule 26(f) scheduling conference on March 23, 2007. Plaintiff requested discussion and guidance relative to the charge and statutes referenced in this brief. The Court advised plaintiff should provide this court a brief in support. In original[1] and amended[2] complaints, plaintiff also filed charges against a set of 18 USC Banks and Banking charges that are criminal. Also in Doc 5, pages 21, 30, and 38, plaintiff identified and invoked 12 USC 1833a as being a civil application version of the 18 USC statutes. The court, in reply to original complaint ordered that plaintiff refrain from making criminal charges in this matter. The 12 USC 1833a charges have not been ruled upon by the court, thus this "brief in support".

Plaintiff Brief in Support will detail the following:

    I.   The Facts
    II.  Contested Facts
    III. Legal Treatise governing injury and redress of same
    IV. Argument and Citations in support of 18 USC charges
    V.  Argument and Citations in support of 12 USC 1833a
    VI. Enabling Legislation for 12 USC 1833a
    VII. Inconsistent points between Statutes and Enabling Legislation
    VIII. Recital of Charges and Damages invoking 12 USC 1833a
    IX. Recommendation

---

[1] Doc 1, filed on 1-31-2006
[2] Doc 5 filed on 2/17/2006

1

## I. The Facts

Legal Code and Public Law invoked in McCarley complaint

1. In his initial and amended complaint, McCarley invoked the following:

    a) The Real Estate Settlement Procedures Act found at
        12 USC 2601 through 2617
    b) The Truth in Lending Act found at 15 USC 1601 through 1640
    c) 18 USC Banks and Banking statutes
    d) 12 USC 1833a Civil Penalties with special rule for continuing violations

2. 12 USC §1833a reproduced completely in appendix of same title. These are the salient portions of this statute to be argued and decided.

### 12 USC §1833a Civil Penalties with Special Rule for Continuing Violations

Release date: 2005-07-21
(a) In general
Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section.
(c) Violations to which penalty is applicable
This section applies to a violation of, or a conspiracy to violate—
(1) section __215__, __656__, __657__, __1005__, __1006__, __1007__, __1014__, or __1344__ of title __18__;
(2) section __287__, __1001__, __1032__,[III] __1341__ or __1343__ of title __18__ affecting a federally insured financial institution; or

3. 18 USC statutes reproduced completely in appendix of same title. These are the salient portions of this statute to be argued and decided.

    18 USC §656. Theft, embezzlement, or misapplication by bank officer or employee
    18 USC §1001 Fraud and False Statements or entries generally
    18 USC §1005 Fraud by Bank Officer
    18 USC §1010 Fraud and False Statements to influence actions of Bank[3]
    18 USC §1014 Fraud and False Statements on Loan
    18 USC §1016 False Acknowledgement by Oath
    18 USC §1032 Concealment of Assets - - from FDIC

4.     We find that both RESPA and TILA were enacted by CRANSTON GONZALEZ act and amended several times, most recently in 2005. The 18 USC statutes have been a part of the legal code for almost 100 years, appearing in a previous legal code before being consolidated into 18

---

[3] Invoked by Mortgage Contract and not by 1833a

2

USC. Lastly, that 12 USC 1833a was enacted as an element of sweeping banking reforms authored by Congressman Henry Gonzalez in an act called H.R. 1278, The Financial Reform, Recovery, and Enforcement Act of 1989 (FIRREA) (became Public Law 101-73). FIRREA is best known for establishing The Resolution Trust Corporation which dealt heavily with the failed Savings and Loan banks in the public debacle known as the S & L Crisis.

The Exhibit entitled H.R.1278 makes it clear that FIRREA granted broad and expanded enforcement powers to Federal Banking Regulatory agencies as well as the Attorney General, while also expanding the types of banking operations covered by these laws. The 12 USC 1833a was constructed to serve as a FIRREA "bridge" expanding 12 USC and 18 USC enforcement.

FIRREA added a new enforcement provision in which the many statutes of FIRREA were endowed with "whistleblower" provisions to both protect and empower bank employees to provide evidence to be used against their banks and/or their supervisors.

Civil Enforcement of certain 18 USC criminal statutes (for the first time) was authorized by Congress as a means of vastly expanded enforcement powers.

**II. Contested Points**:

1.   Whether a private individual is allowed to prosecute charges under 18 USC Banks and Banking statutes, or, under 12 USC 1833a?

**III. Legal Treatise governing injury and redress of same**

In Doc 24, page 3, numbered point 12, plaintiff provided the following argument in response to the courts questioning application of 12 USC 1833a:

> Plaintiff has asked the court to consider four options for the pursuit of prosecution under this statute. This statute seems to invoke Attorney General authority for a set of statutes, whereas the individual 18 USC statutes do not require Attorney General jurisdiction. As noted, the statute does not contain specific methods for notification of Attorney General. Therefore, this court appears to be required "per **Marbury v.**

3

      **Madison**[4]" to provide Judicial oversight and either review the matter and then refer to Attorney General, or else refer the matter without review, consistent with **Marbury v. Madison** which directs the court to fix the meaning of conflicting law.

It is important to establish a key precept in moving forward. That is, that an injury has occurred. Therefore, given the injury, we must determine means of redress. In Marbury, Chief Justice Marshall delivered opinion of the court. His opinion took the form of three (3) questions, of which question #2 has direct bearing on redress available to McCarley.

> "In the order in which the Court has viewed this subject, the following questions have been considered and decided.
>
>     1. Has the applicant a right to the commission he demands?
>
>     2. If he has a right, and that right has been violated, do the laws of his country afford him a remedy?
>
>     3. If they do afford him a remedy, is it a mandamus issuing from this court?
>
> This brings us to the second inquiry, which is:
>
> 2. If he has a right, and that right has been violated, do the laws of his country afford him a remedy? [p163]
>
> The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws whenever he receives an injury. One of the first duties of government is to afford that protection. In Great Britain, the King himself is sued in the respectful form of a petition, and he never fails to comply with the judgment of his court.
>
> In the third volume of his Commentaries, page 23, Blackstone states two cases in which a remedy is afforded by mere operation of law."
>
>> "In all other cases," he says, "it is a general and indisputable rule that where there is a legal right, there is also a legal remedy by suit or action at law whenever that right is invaded."

---

[4] Marbury v. Madison 5 U.S. 137 (page 22 of 25 for majority opinion) If two laws conflict with each other, the Courts must decide on the operation of each. [p178]

So, if a law be in opposition to the Constitution, if both the law and the Constitution apply to a particular case, so that the Court must either decide that case conformably to the law, disregarding the Constitution, or conformably to the Constitution, disregarding the law, the Court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.

4

And afterwards, page 109 of the same volume, he says,

> "I am next to consider such injuries as are cognizable by the Courts of common law. And herein I shall . . . remark that all possible injuries whatsoever that did not fall within the exclusive cognizance of either the ecclesiastical, military, or maritime tribunals are, for that very reason, within the cognizance of the common law courts of justice, for it is a settled and invariable principle in the laws of England that every right, when withheld, must have a remedy, and every injury its proper redress.
>
> The Government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation if the laws furnish no remedy for the violation of a vested legal right.
>
> If this obloquy is to be cast on the jurisprudence of our country, it must arise from the peculiar character of the case.

The argument above, from an historic opinion of one who has been called "the greatest Chief Justice" would seem to make it clear that the injury suffered by McCarley is due to be redressed and toward that end, plaintiff has identified cognizable legal statutes that are clearly violated by defendant, consistent with both 12 USC 1833a as well as 18 USC statutes cross-referenced in 1833a. Our task now would appear to choose the legal code providing most appropriate redress.

**IV.  Argument and Citations in support of 18 USC charges[5]**

There exists a question in this case concerning whether plaintiff McCarley may rightfully file complaints under the 18 USC legal code. Our task with the following analysis is to indicate the private plaintiff means with which the cross-referenced statutes have been applied. The following case citations indicate that many private individuals, corporations, or entities have filed plaintiff charges under 18 USC Banks and Banking:

18 USC 1001, Note 34 to USCS – "Employee refusal to conceal environmental activities, . . ."
Bell v. Ashland Petroleum Co., Inc., S.D.W.Va. 1993, 816 F. Supp 639

18 USC 1001, Note 86 to USCS – "In order to be convicted of federal felony, . . ."
Lee v. Denro Inc., Md App. 1992, 605 A.2d 1017, 91 Md App. 822

---

[5] We do not invoke these court rulings, but instead indicate private individuals have prosecuted this code.

5

18 USC 1001, Note 86 to USCS – "Fraudulent intent not necessary element, . . ."
Nilson Van & Storage Co., v. Marsh, C.A.S.C. 1985, 755 F. 2d 362

18 USC 1001, Note 89 to USCS – "Evidence supported finding that employer's false statements, . . ." Holmes v. General Dynamics Corp., Cal.App. 4 Dist 1993

18 USC 1001, Note 89 to USCS – "False representation under statute prohibiting, . . ."
Martin Marietta Corp v. Lorenz, Colo. 1992, 823 P.2d 100

18 USC 1001, Note 122 Estoppel to USCS –
Brown v. U.S., 524 F.2d 693

18 USC 1001, Note 122 to USCS – "Turkish resident who used U.S. resident, . . ."
Ersan Resources, Inc. v. Kiratli, E.D.Va. 1993, 810 F.Supp 718

18 USC 1005, Note 64 to USCS – "Material issues of fact, . . ."
First National Bank of Louisville v. Lustiq, C.A.5 (La.) 1992, 961 F.2d 1162

18 USC 1005, Note 101 Jurisdiction to USCS – "A prosecution based on unlawful issuance, . . ."
Simpson v. U.S., Idaho 1916, 229 F. 940, 144 C.C.A. 222, cert.denied 36 S.Ct. 552, 241 U.S. 668

18 USC 1005, Note 107 to USCS – "Where an indictment against national bank cashier, . . ."
Richardson v. U.S., Pa. 1990, 188 F.1, 104 C.C.A. 69

18 USC 1014, Note 3a to USCS – "Where a number of people knew, . . ."
C. Douglas Wilson & Co., v. Insurance Co. of North America, Philadelphia, Pa., D.C.S.C. 1977, 464 F.Supp. 1, affirmed 590 F.2d 1275, cert denied 100 S.Ct. 59, 444 U.S. 831, 62 L.Ed. 2d 39

Now and in consideration of the foregoing citations, it would appear that plaintiff McCarley, an injured individual may properly invoke the protections and penalty provisions of those 18 USC statutes cross-referenced, and that plaintiff McCarley appears correct to invoke those as criminal penalties. The several private entities indicated as plaintiff in case styling above provide precedent.

### V.   Argument and Citations in support of 12 USC 1833a

Congress vast act broadening the enforcement of Banks and Banking law by authorizing civil enforcement (FIRREA) in 1989 for the first time makes it clear that Congress intended that Banks and other financial institutions be penalized when they violate law. There is an inconsistency between enabling legislation found in FIRREA and the statutory construction of 1833a, as relates to

Attorney General authority. The subparagraph called Jurisdiction indicates the Attorney General is authorized to "commence" action. This is a weak jurisdictional statement compared to others. The court must consider that AG jurisdiction in this seldom cited statute has not prohibited other individuals in other courts from commencing action, as the following case citation makes clear.

"Former Vice President of a Savings and Loan Association . . ."[6]
Hicks v. Resolution Trust Corporation, N.D.Ill 1991, 767 F.Supp 167

Hicks is a confusing case where an individual and/or his bank had been convicted of discriminatory hiring practices under 12 USC 1831j, of which the decision indicates this was a retaliatory act. See Hicks v. Resolution Trust Corp., N.D.Ill 1990, 738 F.Supp 279. (notes to 12 USC 1831j) This proves a private individual was allowed to prosecute an 1833a charge and so should McCarley.

## VI.   Enabling Legislation for 12 USC 1833a

We direct the court to review the THE FACTS at numbered point 4. Additionally, an appendix named H.R. 1278 provides Congressional Record summary.

## VII.  Inconsistent points between Statutes and Enabling Legislation

The courts review of exhibit marked H.R.1278 provides a strong flavor of the sense of Congress relative to the legal violations that occur at Bank level. Further, the strong whistleblower provision indicates Congress intended the strongest possible reporting mechanism be in place in order to properly inform Attorney General of violations of law. McCarley poses the question, "What if the whistleblowers fail to report violations"? How will the AG be informed of such violations as those perpetrated against McCarley and thousands of others on a daily basis? It is clear that HSBC employees have not reported these violations. Thus injured debtors must be allowed to serve as plaintiff to satisfy the enhanced enforcement function, thus leading to redress of injuries sustained.

---

[6] We make no attempt to apply this court ruling, -- but instead to indicate private individuals have prosecuted code

7

Your review of the exhibit and details of McCarley case should make it clear that key inconsistencies occur between "sense of Congress" and the wording of 1833a. FIRREA ((Sec.101, (9), (10)) intended 1833a to provide <u>enhanced</u> civil enforcement of 18 USC penalty. Limited public access to the Attorney General only serves to limit, not enhance enforcement.

It should be clear that our Attorneys General of the past three (3) presidents have been faced with the broadest set of AG challenges in history. The AG wages the War on Terror along with broadened Federal Wire Tap, and "politics as usual". In closing this argument, McCarley suggests it may be some years before we can command the attention of the Attorney General for bank law enforcement, thus a major impediment to FIRREA goal of enhanced enforcement. Given the courts knowledge of case citations herein, the correct route to redress for the injured McCarley is clearly via the courts granting permission to pursue justice via 18USC statutes linked to 12 USC 1833a.

## VIII.  Recital of Charges and Damages invoking 12 USC 1833a

George D. McCarley entered a mortgage contract with a banking company later acquired in a string of acquisitions by The Hong Kong and Shanghai Banking Company (HSBC). HSBC also acquired any and all general liability and creditor liability for the mortgage contract of George D. McCarley. HSBC executed an illegal foreclosure of George McCarley Mortgage, while being advised of HSBC error inherent in the foreclosure.

Beginning in May 2000 and continuing to the present, HSBC and its Bank Officers did engage in an ongoing pattern of illegal actions against George D. McCarley that resulted in extreme financial damages and injury to the person and reputation of George D. McCarley; said illegal actions by HSBC also resulted in ongoing property damages, physical injury, a lowered state of health, discomfort, mental anxiety and emotional distress, public scorn and ridicule.

HSBC pattern of actions doing injury to George D. McCarley includes but is not limited to: (i)false uttering, writing, publication, legal instruments; (ii)theft, embezzlement, or misapplication by bank officer or employee; (iii)Fraud and False Statements or entries generally; (iv)Fraud by Bank Officer; (v)Fraud and False Statements to influence actions of Bank; (vi)Fraud and False Statements on Loan; (vii)False Acknowledgement by Oath; (viii)Concealment of Assets - - from FDIC.

Injury is proven by the Mortgage Contract, Assignment, false Default declaration and illegal Foreclosure filed and recorded against George D. McCarley. Records of the initiation, administration and foreclosure of said mortgage provide all the evidence required to prove all these charges contained; and further to prove that HSBC engages in daily actions that further defraud and injure George D. McCarley and all of civil society. George D. McCarley charges that HSBC did violate 12 USC 1833a. McCarley incorporates by reference and invokes the protections of 12 USC 1833a and charges HSBC should be assessed maximum continuing violation penalties prescribed for violation of 18 USC Banks and Banking statutes contained in and invoked by 12 USC 1833a.

The Financial damage claim of George D. McCarley is before the court in the Amended Complaint found at Document 5, pages 6, 46 and 50. The court should note that the extremely high damage penalty identified by McCarley is due and payable to different Banking Regulatory agencies and not McCarley. The whistleblower provision of FIRREA prescribes a portion of the statutory penalty designed to be paid to individuals providing evidence or making claims.

The court holds evidence of all these violations of law and may view same at McCarley Brief in Support of Summary Judgment Motion and exhibits of Billing Summary Statement and Assignment of Security Instrument. The Billing Summary makes it clear there was no default on the day claimed, thereby HSBC is in violation of most of the 12 USC 1833a statutes claimed. Further, the dates contained on the Assignment of Security Instrument makes it clear that at least three

corporations listed on the face of the Security Instrument give themselves simultaneous license to claim the McCarley property as both asset and/or liability. Hidden from the court is the fact several mergers and acquisitions would occur thus giving between seven and ten corporation's simultaneous license to claim McCarley title as both asset and liability; obviously violating the remaining 12 USC 1833a statutes, obviously concealing assets, and obviously risking violation of Generally Accepted Accounting Principles (GAAP), Tax Law and Securities and Exchange Law.

## IX. Recommendation

The intent of Congress is made clear first by Cranston Gonzalez and further by FIRREA and was upheld by the Courts as evidenced by the following opinions found in US Code notes upholding the Cranston Gonzalez RESPA/TILA "cousin statute" 15 USC 1640.

> "Congress sought in this section to vest considerable enforcement power in **"private attorneys general,"** individual borrowers who by suing lenders for alleged violations could achieve widespread compliance without government intervention." <u>Bizier v. Globe Financial Services, Inc.</u>, C.A.Mass 1981, 654 F.2d 1.

> "This section contemplates separate federal suits as **"private attorneys-general"** <u>Young v. Trailwood Lakes Inc.</u>, D.C. Ky. 1974, 61 F.R.D. 666

Precedent established by case citations herein clearly demonstrates that private individuals have successfully been plaintiff in both 18 USC criminal charges and in 12 USC 1833a charges. And now, along with the possible lack of consistency and conflict existing between HR1278 enabling legislation and 12 USC 1833a, McCarley has demonstrated the need for this court to "fix the meaning" of law and rule that McCarley may process the charges defined in this brief.

McCarley is an officer of a "different court." By virtue of his training and oath ". . . To protect and defend the Constitution of the United States against all enemies, . . ." his commission as an Officer in the United States Army was confirmed by Congress. McCarley will defend the title of **"private attorneys general"** with the same honor and integrity expected by his "different court."

*G. McCarley*

Respectfully submitted      George D. McCarley, Pro Se
216B Chestnut Street
Roanoke, Al 36274
334-863-6489

### PROOF OF SERVICE

I, George D. McCarley, do swear or affirm that on this date, April 2, 2007, as required by Supreme Court Rule 29 I have served the enclosed ACTION on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing envelope containing the above documents in the United States Mail properly addressed to each of them, and with first class postage prepaid, or by delivery to a third party commercial carrier for delivery within 3 calendar days.

<u>The Clerk</u>
Middle District of Alabama, Eastern Division
One Church Street, PO Box 711
Montgomery, Al 36101-0711
334-954-3600

<u>Defendant Attorney</u>
Mr. George Parker
Bradley Arant Rose and White
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Al 36104
334-956-7671, 956-7700

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 2, 2007     *G. McCarley*
George D. McCarley

### INDEX

| | |
|---|---|
| 2 | 12 USC §2601 to §2617 |
| 1,2,3,5,6,7,8,9,10 | 12 USC 1833a |
| 10 | 15 USC 1640 |
| 1,2,3,5,6,8,9 | 18 USC |
| 2,10 | TILA (Truth in Lending Act) |
| 2,10 | RESPA (Real Estate Settlement Procedures Act |
| 3,6,8,9,10 | FIRREA (Financial Institutions Reform, Recovery, and Enforcement Act of 1989) |
| 2,10 | Cranston Gonzalez |

11

| | |
|---|---|
| 10 | GAAP |
| 6 | <u>Bell v. Ashland Petroleum Co., Inc.</u>, S.D.W.Va. 1993, 816 F. Supp 639 |
| 10 | Bizier v. Globe Financial Services, Inc., C.A.Mass 1981, 654 F.2d 1. |
| 6 | <u>Brown v. U.S.</u>, 524 F.2d 693 |
| 6 | <u>C. Douglas Wilson & Co., v. Insurance Co. of North America, Philadelphia, Pa.</u>, D.C.S.C. 1977, 464 F.Supp. 1, affirmed 590 F.2d 1275, cert denied 100 S.Ct. 59, 444 U.S. 831, 62 L.Ed. 2d 39 |
| 6 | <u>Ersan Resources, Inc. v. Kiratli</u>, E.D.Va. 1993, 810 F.Supp 718 |
| 6 | <u>First National Bank of Louisville v. Lustig</u>, C.A.5 (La.) 1992, 961 F.2d 1162 |
| 8 | <u>Hicks v. Resolution Trust Corp.</u>, N.D.Ill 1990, 738 F.Supp 279 |
| 8 | <u>Hicks v. Resolution Trust Corporation</u>, N.D.Ill 1991, 767 F.Supp 167 |
| 6 | <u>Holmes v. General Dynamics Corp.</u>, Cal.App. 4 Dist 1993 |
| 6 | <u>Lee v. Denro Inc.</u>, Md App. 1992, 605 A.2d 1017, 91 Md App. 822 |
| 4 | <u>Marbury v. Madison</u> 5 U.S. 137 |
| 6 | <u>Martin Marietta Corp v. Lorenz</u>, Colo. 1992, 823 P.2d 100 |
| 6 | <u>Nilson Van & Storage Co., v. Marsh</u>, C.A.S.C. 1985, 755 F. 2d 362 |
| 6 | <u>Richardson v. U.S.</u>, Pa. 1990, 188 F.1, 104 C.C.A. 69 |
| 6 | <u>Simpson v. U.S.</u>, Idaho 1916, 229 F. 940, 144 C.C.A. 222, cert.denied 36 S.Ct. 552, 241 U.S. 668 |
| 10 | <u>Young v. Trailwood Lakes Inc.</u>, D.C. Ky. 1974, 61 F.R.D. 666 |

**EXHIBITS CONTAINED**

H.R.1278     FIRREA Congressional Record summary
12 USC 1833a Statute
18 USC Banks and Banking Statutes printed in Doc 5 pages 24 through 36
H.R.1278 Prohibition against employment in Banking as penalty, page 2, Title IX (9)

# H.R.1278

**Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (Enrolled as Agreed to or Passed by Both House and Senate)**

## TITLE I--PURPOSES

## SEC. 101. PURPOSES.

The purposes of this Act are as follows:
(1) To promote, through regulatory reform, a safe and stable system of affordable housing finance.
(2) To improve the supervision of savings associations by strengthening capital, accounting, and other supervisory standards.
(3) To curtail investments and other activities of savings associations that pose unacceptable risks to the Federal deposit insurance funds.
(4) To promote the independence of the Federal Deposit Insurance Corporation from the institutions the deposits of which it insures, by providing an independent board of directors, adequate funding, and appropriate powers.
(5) To put the Federal deposit insurance funds on a sound financial footing.
(6) To establish an Office of Thrift Supervision in the Department of the Treasury, under the general oversight of the Secretary of the Treasury.
(7) To establish a new corporation, to be known as the Resolution Trust Corporation, to contain, manage, and resolve failed savings associations.
(8) To provide funds from public and private sources to deal expeditiously with failed depository institutions.
(9) To strengthen the enforcement powers of Federal regulators of depository institutions.
(10) To strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors.

**H.R.1278**
**Title:** To reform, recapitalize, and consolidate the Federal deposit insurance system, to enhance the regulatory and enforcement powers of Federal financial institutions regulatory agencies, and for other purposes.
**Sponsor:** Rep Gonzalez, Henry B. [TX-20] (by request) (introduced 3/6/1989)    Cosponsors (31)
**Related Bills:** H.RES.173, H.RES.222, H.J.RES.390, H.R.898, S.413, S.774
**Latest Major Action:** 8/9/1989 Became Public Law No: 101-73.

**SUMMARY AS OF:**
6/15/1989--Passed House amended.   (There are 3 other summaries)

Financial Institutions Reform, Recovery and Enforcement Act of 1989 - **Title I: Purpose** - Specifies the purposes of this Act, including regulatory reform, the establishment of an independent insurance agency to provide deposit insurance, and the provision of improved supervision and enhanced enforcement powers.

**Subtitle E: Civil Penalties for Violations Involving Financial Institutions** - Establishes maximum civil penalties for specified violations involving financial institutions. Requires the Attorney General to establish the right to recovery by clear and convincing evidence.

**Subtitle F: Criminal Law and Procedure** - Amends the Federal criminal code to increase the criminal penalties for specified criminal offenses affecting financial institutions. Increases the statute of limitations pertaining to such crimes from five years to ten years. Directs the U.S. Sentencing Commission to increase the current sentencing guidelines for serious banking related offenses. Establishes a criminal penalty for the disclosure by financial institution personnel to their customers that they are targets of a grand jury records subpoena if the intent of such disclosure is the obstruction of justice.

Provides for civil forfeiture and criminal forfeiture of any property derived from proceeds traceable to specified crimes affecting federally insured financial institutions.

Amends the Federal criminal code to allow the disclosure of certain matters occurring before a grand jury to certain Government attorneys to assist in the enforcement of Federal criminal or civil law and this Act. Allows certain other disclosures when permitted by a court.

Directs the Department of Justice to create regional offices of its Fraud Section in specified locations in Texas and California. Requires the Comptroller General to report to the Congress on the need for additional regional offices.

Authorizes appropriations for the Department of Justice to investigate and prosecute financial institution-related offenses and to provide status reports to the Congress. Authorizes appropriations to the Federal courts system to process the case load generated by this Act.

**Title IX: Regulatory Enforcement Authority and Criminal Enhancements - Enhanced Enforcement Powers Act of 1989 - Subtitle A: Expanded Enforcement Powers, Increased Penalties, and Improved Accountability** - Amends the Federal Deposit Insurance Act and the Federal Credit Union Act to define the scope of personnel liable for civil and criminal penalties for participating with knowing or reckless disregard with respect to: (1) any violation of any law or regulation; (2) any breach of fiduciary duty; or (3) any unsafe or unsound practice likely to cause an adverse effect upon an insured financial institution. Includes in the enforcement powers of banking regulatory agencies the authority to: (1) require restitution, reimbursement, indemnification, or guarantee against loss; (2) restrict the institution's growth; (3) dispose of any loan or asset; (4) rescind agreements or contracts; (5) require the employment of qualified personnel; (6) place restrictions upon an institution's activities; (7) apply enforcement actions to savings and loan affiliates and entities; (8) issue temporary orders with respect to incomplete or inaccurate recordkeeping by an insured financial institution; and (9) remove or prohibit certain personnel from engaging in banking activities on an industrywide basis. Sets forth a limitations period for enforcement proceedings against such personnel after separation from banking service. Establishes a tiered schedule of increased civil money penalties for violations by insured financial institutions or their personnel. Establishes a criminal penalty for participation in the affairs of either a bank holding company or a savings and loan holding company by individuals who are prohibited from engaging in the affairs of a financial institution. Increases the civil penalties for non-compliance with reporting requirements.

Authorizes the FDIC to take enforcement actions against savings associations if the DOTS has failed to take such action after being requested by the FDIC.

Requires banking regulatory agencies to publicly disclose final enforcement orders (or modifications thereof).

Requires certain financial institutions (including troubled institutions) to notify bank regulatory agencies before appointing senior executive personnel. Authorizes agencies to disapprove such appointments.

Requires Federal banking agencies and the National Credit Union Administration to report to the Congress the findings of a joint task force feasibility study regarding the delegation of investigation and enforcement authority to regional or district offices.

Requires annual agency reports to the Congress on all enforcement actions.

Amends the Federal Credit Union Act to mandate an outside, independent audit of insured credit unions experiencing certain deficiencies.

Prescribes guidelines under which the National Credit Union Administration Board shall function as conservator or liquidating agent of troubled credit unions.

**Subtitle C: Improving Early Detection of Misconduct and Encouraging Informants** - Amends the Federal Deposit Insurance Act and the Federal Credit Union Act to mandate that insured financial institutions furnish independent auditors with specified information. Provides employment protection remedies.




Search
Advanced Search

HOME | DEPOSIT INSURANCE | CONSUMER PROTECTION | INDUSTRY ANALYSIS | REGULATION & EXAMINATIONS | ASSET SALES | NEWS & EVENTS | ABOUT FDIC

Home > Regulation & Examinations > Laws & Regulations > FDIC Law, Regulations, Related Acts

# FDIC Law, Regulations, Related Acts

[Main Tabs]   [Table of Contents - 8000]   [Index]   [Previous Page]   [Next Page]   [Search]

## 8000 - FDIC Miscellaneous Statutes and Regulations

{{8-31-05 p.8581}}

### FINANCIAL INSTITUTIONS REFORM, RECOVERY AND ENFORCEMENT ACT OF 1989

AN ACT

To reform, recapitalize, and consolidate the Federal deposit insurance system, to enhance the regulatory and enforcement powers of Federal financial institutions regulatory agencies, and for other purposes.

 Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

* * * * *

*TITLE IX — REGULATORY ENFORCEMENT  
AUTHORITY AND CRIMINAL ENHANCEMENTS*

**SEC. 951. CIVIL PENALTIES.**

  (a) IN GENERAL--
   Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty in an amount assessed by the court in a civil action under this section.
  (b) MAXIMUM AMOUNT OF PENALTY--
   (1) GENERALLY--
   The amount of the civil penalty shall not exceed $1,000,000.
   (2) SPECIAL RULE FOR CONTINUING VIOLATIONS--
   In the case of a continuing violation, the amount of the civil penalty may exceed the amount described in paragraph (1) but may not exceed the lesser of $1,000,000 per day or $5,000,000.
   (3) SPECIAL RULE FOR VIOLATIONS CREATING GAIN OR LOSS--
   (A) If any person derives pecuniary gain from the violation, or if the violation results in pecuniary loss to a person other than the violator, the amount of the civil penalty may exceed the amounts described in paragraphs (1) and (2) but may not exceed the amount of such gain or loss.
   (B) As used in this paragraph, the term "person" includes the Bank Insurance Fund, the Savings Association Insurance Fund and the National Credit Union Share Insurance Fund.
  (c) Violations to which penalty is applicable

This section applies to a violation of, or a conspiracy to violate--
(1) section 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of Title 18; or
(2) section 287, 1001, 1032, 1341 or 1343 of Title 18 affecting a federally insured financial institution.
This section shall apply to violations occurring on or after August 10, 1984.

(d) ATTORNEY GENERAL TO BRING ACTION--
A civil action to recover a civil penalty under this section shall be commenced by the Attorney General.

(e) BURDEN OF PROOF--
In a civil action to recover a civil penalty under this section, the Attorney General must establish the right to recovery by a preponderance of the evidence.

(f) ADMINISTRATIVE SUBPOENAS--
(1) IN GENERAL--
For the purpose of conducting a civil investigation in contemplation of a civil proceeding under this section, the Attorney General may--
(A) administer oaths and affirmations;
(B) take evidence; and
(C) by subpoena, summon witnesses and require the production of any books, papers, correspondence, memoranda, or other records which the Attorney General deems
{{8-31-05 p.8582}}relevant or material to the inquiry. Such subpoena may require the attendance of witnesses and the production of any such records from any place in the United States at any place in the United States designated by the Attorney General.

(2) Procedures applicable
The same procedures and limitations as are provided with respect to civil investigative demands in subsections (g), (h), and (j) of section 1968 of Title 18 apply with respect to a subpoena issued under this subsection. Process required by such subsections to be served upon the custodian shall be served on the Attorney General. Failure to comply with an order of the court to enforce such subpoena shall be punishable as contempt.

(3) LIMITATION--
In the case of a subpoena for which the return date is less than 5 days of service, no person shall be found in contempt for failure to comply by the return date if such person files a petition under paragraph (2) not later than 5 days after the date of service.

(g) STATUTE OF LIMITATIONS--
A civil action under this section may not be commenced later than 10 years after the cause of action accrues.

[Codified to 12 U.S.C. § 1833a]

[Source: Section 951 of title IX of the Act of August 9, 1989 (Pub. L. No. 101-73; 103 Stat. 498; sections 2533 and 2596(d) of title XXV of the Act of November 29, 1990 (Pub. L. No. 101-647; 104 Stat. 4882 and 4908), effective November 29, 1990; section 330003(g) of title XXXIII of the Act of September 13, 1994 (Pub. L. No. 103-22; 108 Stat. 2141), effective retroactive to November 29, 1990]


**TITLE XI—REAL ESTATE APPRAISAL REFORM AMENDMENTS**

\* \* \* \* \*


**SEC. 1103. FUNCTIONS OF APPRAISAL SUBCOMMITTEE.**

(a) IN GENERAL.--The Appraisal Subcommittee shall--
(1) monitor the requirements established by States for the certification and licensing of individuals who are qualified to perform appraisals in connection with federally related transactions, including a code of professional responsibility;
(2) monitor the requirements established by the Federal financial institutions regulatory agencies and the Resolution Trust Corporation with respect to--
(A) appraisal standards for federally related transactions under their jurisdiction, and
(B) determinations as to which federally related transactions under their jurisdiction require the services of a State certified appraiser and which require the services of a State licensed appraiser;
(3) maintain a national registry of State certified and licensed appraisers who are eligible to