IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GEORGE D. McCARLEY,      )
                           )
     Plaintiff,        )
                           )     **Civil Action No. 3:06-cv-00091-MEF**
v.                       )             **Lead Case**
                           )
HOUSEHOLD FINANCE     )
CORPORATION III, et al.,     )
                           )
     Defendants.     )

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

Defendants, Household Finance Corporation III, HSBC Finance Corporation, HSBC Gr. Corp., Household International, Inc., and HSBC Mortgage Services, Inc., respond to plaintiff's Motion for Summary Judgment [Docket Item 38] (to the extent a response is required) and request that this Court deny the plaintiff's motion. Further these defendants move this Court to strike the exhibits attached to plaintiff's Brief in Support of his Motion for Summary Judgment [Docket Item 49] and portions of the plaintiff's suggested uncontested facts contained therein. In support, defendants state as follows:

### Preliminary Statement

1.      As the United States Supreme Court stated in <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323 (1986) "a party seeking summary

judgment always bears the initial responsibility of informing the district court of the bases for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' which it believes demonstrate the absence of a genuine issue of material fact." Here, the plaintiff has not done this. Consequently, his motion for summary judgment is due to be denied.

2.    The plaintiff's motion and brief do not identify the elements of his RESPA claim, nor point to any evidence -- much less undisputed evidence -- allegedly supporting each element of his claim.[1]  The plaintiff's lack of specificity makes replying to his motion difficult at best. Rather, the plaintiff in his Motion for Summary Judgment requests that this Court grant the motion based on matters that are not material to the merits of his claim. Moreover, the attachments to plaintiff's brief are not properly proven, are hearsay, and do not provide any evidence to the Court that would entitle plaintiff to summary judgment.[2]  Of course, where the movant does not meet his initial burden on summary judgment, the burden never shifts to the non-movant to come forward

---

[1]  From a review of Magistrate Judge McPherson's October 10, 2006 Report and Recommendations at pp. 14-15, 20 [Docket Item 16], which Report and Recommendation was adopted by Judge Fuller's November 16, 2006, [Docket Item 21] the only remaining claim pending against these defendants is an alleged RESPA violation, as all of McCarley's other initial claims against these and other defendants were dismissed by the Court by the above referenced order adopting the Recommendation.

[2] The plaintiff in his brief fails to comply with this Court's order [Docket Item 45] which provides that any discussion of evidence in a brief must include the specific reference, by page and line, to where the evidence can be found in the supporting evidentiary appendix or in a court pleading or other filing.  As such it is impossible to determine to what the plaintiff refers in support of his motion.  Plaintiff has not submitted admissible evidence in support of his motion, and to the extent plaintiff attempts to rely upon any of his prior filings in this Court to establish facts to support his motion, defendants move to strike same as being inadmissible.

with any evidence. <u>Imaging Business Machines, LLC v. Banctec, Inc.</u>, 459 F. 3d 1186, 1190 (11th Cir. 2006).

### Statement Concerning Facts

3.    The plaintiff in his brief provides sections entitled "Uncontested Facts" and "Contested Facts". In his Uncontested Facts section in a footnote, the plaintiff advises that the "[u]ncontested facts are verified by Pacer docket evidence. Insufficient time was allowed for defense concurrence attempted (sic)". The defendants' counsel sent an email to the plaintiff on March 30, 2007 advising that, of the proposed Uncontested Facts, the only one the defendants believed to be material to the RESPA claim and appropriate to include in an agreed statement of material uncontested facts was the statement:

"Original action filed in almd on 1-31-2006".

Consequently, these defendants request that the Court strike plaintiff's uncontested facts, except for the uncontested fact concerning the date this matter was filed, in that the other facts are not appropriate to include in an agreed statement of material uncontested facts.

4.    As referenced above, the only material fact stated by the plaintiff in his brief as being uncontested is that the original action was filed on January 31, 2006 – and this would be material to defendants' statute of limitations

defense. While defendants do not believe that plaintiff has met his initial burden on his summary judgment motion, in an abundance of caution the defendants have attached an affidavit of Dana J. St.Clair-Hougman which, among other things, provides information about the entity that serviced the plaintiff's loan. As per the affidavit, in 2000, HSBC Mortgage Services, Inc., whose name was then Household Financial Services, Inc., began to service a mortgage (the "Mortgage") that secured a loan (the "Loan) that had been made to George McCarley by HomeSense Financial Corp. of Alabama. [St.Clair-Hougman Affidavit Para. 2] HSBC Finance Corporation, Household Finance Corporation III, Household International, Inc., and HSBC-GR Corp. did not make the Loan and have never owned or serviced the Loan or Mortgage. [St.Clair-Hougman Affidavit Para. 3]

## Discussion

5.    In his motion, the plaintiff seeks to challenge the foreclosure referred to at page 6 of Magistrate Judge McPherson's October 10, 2006 Report and Recommendations [Docket Item 16], which Report and Recommendation was adopted by Judge Fuller's November 16, 2006 Order [Docket Item 21]. The Report and Recommendations concludes at page 18 that "[h]aving lost his challenge to the foreclosure in the state courts, where state law governed, McCarley cannot now re-litigate the claim in this court...." The motion clearly attempts to continue to re-litigate this issue and any attempt to obtain summary judgment on this issue should be summarily denied.

6.    Additionally, plaintiff's motion is based on inaccurate assertions concerning the actions and obligations of the defendants, and Rule 55 provides no basis for entry of summary judgment. As previously pointed out in defendants' Response to Plaintiff's Motion for Default Judgment/Sanction [Docket Item 36], the October 10, 2007, Report and Recommendations [Docket Item 16] referred to in the plaintiff's motion merely required that any objections to the Report and Recommendations be filed by October 25, 2006. No action was required by one not wishing to object to the Report and Recommendations. Moreover, answers were filed following service being made on the defendants. The defendants, contrary to the plaintiff's contentions, have done nothing to delay any aspect of this matter. While the plaintiff in his brief provides the Court with a list of his apparent frustrations with the speed in which his case has moved through the court system, by citing to dates in which documents were marked as filed by the PACER system, his concerns in this regard certainly do not entitle him to summary judgment in his favor.

7.    Finally -- while as discussed above the plaintiff does not address the merits of the RESPA claim that he has been permitted to pursue pursuant to the October 10, 2006 Report and Recommendation at pp. 14-15, 20 [Docket Item 16] -- as demonstrated by the affidavit of Dana J. St.Clair-Hougham, plaintiff could have no RESPA claim against four of the defendants, HSBC Finance Corporation, HSBC-GR Corp., Household International, Inc., Household Finance Corporation III, because they did not make the Loan and have

never owned or serviced the Loan or Mortgage. [St.Clair-Hougman Affidavit Para. 3] 12 U.S.C. § 2605. Further, as HSBC Mortgage Services, Inc. did not make the Loan, they had no obligation to give a disclosure concerning the future assignment of the Loan when it was made. [St.Clair-Hougman Affidavit Para. 2] 12 U.S.C. § 2605. Moreover, any claim concerning the transfer of servicing to Household Financial Services, Inc., now known as HSBC Mortgage Services, Inc., in 2000, would be barred by the three-year statute of limitations. [St.Clair-Hougman Affidavit Para. 2] 12 U.S.C. § 2614.

Wherefore, for the reasons set forth above, the plaintiff's Motion for Summary Judgment should be summarily denied and this Court should strike the exhibits attached to plaintiff's Brief in Support of his Motion for Summary Judgment and portions of the plaintiff's uncontested facts.

Respectfully submitted this the 11th day of April, 2007.

/s/ George R. Parker
George R. Parker (PAR086)
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
(334) 956-7700

Attorney for Defendants
Household Finance Corporation III,
HSBC Finance Corporation,
HSBC Gr. Corp.,
Household International, Inc.,
and HSBC Mortgage Services, Inc.

OF COUNSEL:

BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
(334) 956-7700

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this the 11th day of April, 2007, served a correct copy of the foregoing upon the following by placing the same in the United States Mail, properly addressed and postage prepaid:

George D. McCarley
216B Chestnut Street
Roanoke, AL 36274

/s/ George R. Parker
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE D. McCARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:06-cv-00091-MEF |
| v. | ) | Lead Case |
| | ) | |
| HOUSEHOLD FINANCE | ) | |
| CORPORATION III, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## APPENDIX IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

1.    *Celotex Corporation v. Catrett,* 477 U.S. 317, 232 (1986);

2.    *Imaging Business Machines, LLC vs. Banctec, Inc.,* 459 F.3d 1186 (2006);

3.    12 U.S.C.A. § 2605 (1996);

4.    12 U.S.C.A. § 2614 (1996); and

5.    *Affidavit* of Dana J. St.Clair-Hougham.

Respectfully submitted this the 11th day of April, 2007.

/s/ George R. Parker
George R. Parker (PAR086)
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
(334) 956-7700

Attorney for Defendants
Household Finance Corporation III,
HSBC Finance Corporation,
HSBC Gr. Corp.,
Household International, Inc.,
and HSBC Mortgage Services, Inc.

OF COUNSEL:

BRADLEY ARANT ROSE & WHITE LLP
The Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
(334) 956-7700

## CERTIFICATE OF SERVICE

I hereby certify that I have, on this the 11th day of April, 2007, served a correct copy of the foregoing upon the following by placing the same in the United States Mail, properly addressed and postage prepaid:

George D. McCarley
216B Chestnut Street
Roanoke, AL 36274

/s/ George R. Parker
OF COUNSEL

Westlaw.

106 S.Ct. 2548                                                                    Page 1
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

▷

**Briefs and Other Related Documents**

Supreme Court of the United States
CELOTEX CORPORATION, Petitioner
v.
Myrtle Nell CATRETT, Administratrix of the Estate
of Louis H. Catrett,
Deceased.
**No. 85-198.**

Argued April 1, 1986.
Decided June 25, 1986.

Administratrix of estate of deceased worker brought action against asbestos manufacturer. The United States District Court for the District of Columbia granted manufacturer's motion for summary judgment and administratrix appealed. The Court of Appeals for the District of Columbia Circuit, 756 F.2d 181, reversed. The Supreme Court, Justice Rehnquist, held that: (1) Rule 56(c) mandates the entry of summary judgment after adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial; (2) there is no requirement that moving party support its motion with affidavits or other similar materials negating the opponent's claim; and (3) nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment.

Reversed and remanded.

Justice White filed an opinion concurring in the Court's opinion and judgment.

Justice Brennan filed a dissenting opinion in which Chief Justice Burger and Justice Blackmun joined.

Justice Stevens filed a dissenting opinion.

Opinion on remand, 826 F.2d 33.

West Headnotes

**[1] Federal Civil Procedure** ☜═➣**2466**

170Ak2466
Entry of summary judgment is mandated, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish that existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[2] Federal Civil Procedure** ☜═➣**2470**
170Ak2470
Where party will have burden of proof on an element essential to its case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmovant's case necessarily renders all other facts immaterial. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[3] Federal Civil Procedure** ☜═➣**2535**
170Ak2535
Party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[4] Federal Civil Procedure** ☜═➣**2536.1**
170Ak2536.1
(Formerly 170Ak2536)
There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[5] Federal Civil Procedure** ☜═➣**2536.1**
170Ak2536.1
(Formerly 170Ak2536)
Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may and should be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment set forth in Rule 56(c) is satisfied. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX
ONE

ALL-STATE LEGAL®

106 S.Ct. 2548                                                                    Page 2
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

**[6] Federal Civil Procedure** ☞**2536.1**
170Ak2536.1
            (Formerly 170Ak2536)
Where nonmoving party will bear burden of proof at
trial on a dispositive issue, summary judgment
motion may properly be made in reliance solely on
the pleadings, depositions, answers to interrogatories,
and admissions on file and such a motion, whether or
not accompanied by affidavits, will be "made and
supported as provided in this rule" so that the
nonmoving party must go beyond the pleadings to
show that there is a genuine issue for trial. Fed.Rules
Civ.Proc.Rule 56(e), 28 U.S.C.A.

**[7] Federal Civil Procedure** ☞**2545**
170Ak2545
Nonmoving party need not produce evidence in a
form that would be admissible at trial in order to
avoid summary judgment. Fed.Rules Civ.Proc.Rule
56(e), 28 U.S.C.A.

**[8] Federal Civil Procedure** ☞**2536.1**
170Ak2536.1
            (Formerly 170Ak2536)

**[8] Federal Civil Procedure** ☞**2544**
170Ak2544
Last two sentences of Rule 56(e) precluding a
nonmoving party from resting on its pleadings to
avoid summary judgment were added to disapprove a
line of cases allowing a party opposing summary
judgment to resist a properly made motion by
reference only to its pleadings and were not intended
to reduce the burden of the moving party or to add to
that burden.    Fed.Rules Civ.Proc.Rule 56(e), 28
U.S.C.A.

**[9] Federal Civil Procedure** ☞**2461**
170Ak2461
Summary judgment procedure is properly regarded
not a disfavored procedural shortcut but, rather, an
integral part of the federal rules as a whole, which are
designed to secure the just, speedy, and inexpensive
determination of every action.    Fed.Rules
Civ.Proc.Rules 1, 56, 28 U.S.C.A.

**[10] Federal Civil Procedure** ☞**2461**
170Ak2461
Rule 56 must be construed with due regard not only
for the rights of persons asserting claims and
defenses that are adequately based in fact to have
those claims and defenses tried to a jury but also for
the rights of persons opposing such claims and

defenses to demonstrate, in the manner provided by
the Rule prior to trial, that the claims and defenses
have no factual basis. Fed.Rules Civ.Proc.Rule 56, 28
U.S.C.A.

               ***2549 *317** *Syllabus*  [FN*]

       FN* The syllabus constitutes no part of the
       opinion of the Court but has been prepared
       by the Reporter of Decisions for the
       convenience of the reader.    See *United
       States v. Detroit Lumber Co.,* 200 U.S. 321,
       337, 26 S.Ct. 282, 287, 50 L.Ed. 499.

 In September 1980, respondent administratrix filed
this wrongful-death action in Federal District Court,
alleging that her husband's death in 1979 resulted
from his exposure to asbestos products manufactured
or distributed by the defendants, who included
petitioner corporation.    In September 1981,
petitioner filed a motion for summary judgment,
asserting that during discovery respondent failed to
produce any evidence to support her allegation that
the decedent had been exposed to petitioner's
products.    In response, respondent produced
documents tending to show such exposure, but
petitioner argued that the documents were
inadmissible hearsay and thus could not be
considered in opposition to the summary judgment
motion.    In July 1982, the court granted the motion
because there was no showing of exposure to
petitioner's products, but the Court of Appeals
reversed, holding that summary judgment in
petitioner's favor was precluded because of
petitioner's failure to support its motion with
evidence tending to *negate* such exposure, as
required by Federal Rule 56(e) of Civil Procedure
and the decision in *Adickes v. S.H. Kress & Co.,* 398
U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142.

 *Held:*

 1. The Court of Appeals' position is inconsistent with
the standard for summary ***2550** judgment set forth
in Rule 56(c), which provides that summary
judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of
law."  Pp. 2552-2559.

 (a) The plain language of Rule 56(c) mandates the
entry of summary judgment, after adequate time for
discovery and upon motion, against a party who fails
to make a showing sufficient to establish the
existence of an element essential to that party's case,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 S.Ct. 2548                                                                                    Page 3
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to *318 make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. Pp. 2552-2553.

(b) There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to the affidavits, "if any," suggests the absence of such a requirement, and Rules 56(a) and (b) provide that claimants and defending parties may move for summary judgment "with or without supporting affidavits." Rule 56(e), which relates to the form and use of affidavits and other materials, does not require that the moving party's motion always be supported by affidavits to show initially the absence of a genuine issue for trial. *Adickes v. S.H. Kress & Co., supra,* explained. Pp. 2553-2554.

(c) No serious claim can be made that respondent was "railroaded" by a premature motion for summary judgment, since the motion was not filed until one year after the action was commenced and since the parties had conducted discovery. Moreover, any potential problem with such premature motions can be adequately dealt with under Rule 56(f). Pp. 2554-2555.

2. The questions whether an adequate showing of exposure to petitioner's products was in fact made by respondent in opposition to the motion, and whether such a showing, if reduced to admissible evidence, would be sufficient to carry respondent's burden of proof at trial, should be determined by the Court of Appeals in the first instance. P. 2555.

244 U.S.App.D.C. 160, 756 F.2d 181, reversed and remanded.

REHNQUIST, J., delivered the opinion of the Court, in which WHITE, MARSHALL, POWELL, and O'CONNOR, JJ., joined. WHITE, J., filed a concurring opinion, *post,* p. ---. BRENNAN, J., filed a dissenting opinion, in which BURGER, C.J., and BLACKMUN, JJ., joined, *post,* p. ---. STEVENS, J., filed a dissenting opinion, *post,* p. ---.

*Leland S. Van Koten* argued the cause for petitioner.

With him on the briefs were *H. Emslie Parks* and *Drake C. Zaharris.*

*Paul March Smith* argued the cause for respondent. With him on the brief were *Joseph N. Onek, Joel I. Klein, James F. Green,* and *Peter T. Enslein.* *

* *Stephen M. Shapiro, Robert L. Stern, William H. Crabtree, Edward P. Good,* and *Paul M. Bator* filed a brief for the Motor Vehicle Manufacturers Association et al. as *amici curiae* urging reversal.

*319 Justice REHNQUIST delivered the opinion of the Court.

The United States District Court for the District of Columbia granted the motion of petitioner Celotex Corporation for summary judgment against respondent Catrett because the latter was unable to produce evidence in support of her allegation in her wrongful-death complaint that the decedent had been exposed to petitioner's asbestos products. A divided panel of the Court of Appeals for the District of Columbia Circuit reversed, however, holding that petitioner's failure to support its motion with evidence tending to *negate* such exposure precluded the entry of summary judgment in its favor. *Catrett v. Johns-Manville Sales Corp.,* 244 U.S.App.D.C. 160, 756 F.2d 181 (1985). This view conflicted with that of the Third Circuit in **2551*In re Japanese Electronic Products,* 723 F.2d 238 (1983), rev'd on other grounds *sub nom. Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). [FN1] We granted certiorari to resolve the conflict, 474 U.S. 944, 106 S.Ct. 342, 88 L.Ed.2d 285 (1985), and now reverse the decision of the District of Columbia Circuit.

> FN1. Since our grant of certiorari in this case, the Fifth Circuit has rendered a decision squarely rejecting the position adopted here by the District of Columbia Circuit. See *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (1986).

Respondent commenced this lawsuit in September 1980, alleging that the death in 1979 of her husband, Louis H. Catrett, resulted from his exposure to products containing asbestos manufactured or distributed by 15 named corporations. Respondent's complaint sounded in negligence, breach of warranty, and strict liability. Two of the defendants filed motions challenging the District Court's *in personam* jurisdiction, and the remaining 13, including

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

petitioner, filed motions for summary judgment. Petitioner's motion, which was first filed in September 1981, argued that summary judgment was proper because respondent had "failed to produce evidence that any [Celotex] product ... was the proximate cause of the injuries alleged within the jurisdictional *320 limits of [the District] Court." In particular, petitioner noted that respondent had failed to identify, in answering interrogatories specifically requesting such information, any witnesses who could testify about the decedent's exposure to petitioner's asbestos products. In response to petitioner's summary judgment motion, respondent then produced three documents which she claimed "demonstrate that there is a genuine material factual dispute" as to whether the decedent had ever been exposed to petitioner's asbestos products. The three documents included a transcript of a deposition of the decedent, a letter from an official of one of the decedent's former employers whom petitioner planned to call as a trial witness, and a letter from an insurance company to respondent's attorney, all tending to establish that the decedent had been exposed to petitioner's asbestos products in Chicago during 1970-1971. Petitioner, in turn, argued that the three documents were inadmissible hearsay and thus could not be considered in opposition to the summary judgment motion.

In July 1982, almost two years after the commencement of the lawsuit, the District Court granted all of the motions filed by the various defendants. The court explained that it was granting petitioner's summary judgment motion because "there [was] no showing that the plaintiff was exposed to the defendant Celotex's product in the District of Columbia or elsewhere within the statutory period." App. 217. [FN2] Respondent *321 appealed only the grant of summary judgment in favor of petitioner, and a divided panel of the District of Columbia Circuit reversed. The majority of the Court of Appeals held that petitioner's **2552 summary judgment motion was rendered "fatally defective" by the fact that petitioner "made no effort to adduce *any* evidence, in the form of affidavits or otherwise, to support its motion." *322244 U.S.App.D.C., at 163, 756 F.2d, at 184 (emphasis in original). According to the majority, Rule 56(e) of the Federal Rules of Civil Procedure, [FN3] and this Court's decision in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), establish that "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine

issues of material fact." 244 U.S.App.D.C., at 163, 756 F.2d, at 184 (emphasis in original; footnote omitted). The majority therefore declined to consider petitioner's argument that none of the evidence produced by respondent in opposition to the motion for summary judgment would have been admissible at trial. *Ibid.* The dissenting judge argued that "[t]he majority errs·in supposing that a party seeking summary judgment must always make an affirmative evidentiary showing, even in cases where there is not a triable, factual dispute." *Id.,* at 167, 756 F.2d, at 188 (Bork, J., dissenting). According to the dissenting judge, the majority's decision "undermines the traditional authority of trial judges to grant summary judgment in meritless cases." *Id.,* at 166, 756 F.2d, at 187.

> FN2. Justice STEVENS, in dissent, argues that the District Court granted summary judgment only because respondent presented no evidence that the decedent was exposed to Celotex asbestos products *in the District of Columbia.* See *post,* at 2560-2561. According to Justice STEVENS, we should affirm the decision of the Court of Appeals, reversing the District Court, on the "narrower ground" that respondent "made an adequate showing" that the decedent was exposed to Celotex asbestos products in Chicago during 1970-1971. See *Ibid.*
> Justice STEVENS' position is factually incorrect. The District Court expressly stated that respondent had made no showing of exposure to Celotex asbestos products "in the District of Columbia *or elsewhere.*" App. 217 (emphasis added). Unlike Justice STEVENS, we·assume that the District Court meant what it said. The majority of the Court of Appeals addressed the very issue raised by Justice STEVENS, and decided that "[t]he District Court's grant of summary judgment must therefore have been based on its conclusion that there was 'no showing that the plaintiff was exposed to defendant Celotex's product in the District of Columbia *or elsewhere* within the statutory period.' " *Catrett v. Johns-Manville Sales Corp.,* 244 U.S.App.D.C. 160, 162, n. 3, 756 F.2d 181, 183, n. 3 (1985) (emphasis in original). In other words, no judge involved in this case to date shares Justice STEVENS' view of the District Court's decision.

> FN3. Rule 56(e) provides:

106 S.Ct. 2548                                                          Page 5
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

[1][2] We think that the position taken by the majority of the Court of Appeals is inconsistent with the standard for summary judgment set forth in Rule 56(c) of the Federal Rules of Civil Procedure. [FN4] Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, *323 there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." **2553Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

FN4. Rule 56(c) provides:
"The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

[3][4][5] Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But unlike the Court of Appeals, we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if any*" (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment "*with or without supporting affidavits*" (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported *324 claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose. [FN5]

FN5. See Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745, 752 (1974); Currie, Thoughts on Directed Verdicts and Summary Judgments, 45 U.Chi.L.Rev. 72, 79 (1977).

[6] Respondent argues, however, that Rule 56(e), by its terms, places on the nonmoving party the burden

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 S.Ct. 2548
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
(Cite as: 477 U.S. 317, 106 S.Ct. 2548)

of coming forward with rebuttal affidavits, or other specified kinds of materials, only in response to a motion for summary judgment "made and supported as provided in this rule." According to respondent's argument, since petitioner did not "support" its motion with affidavits, summary judgment was improper in this case. But as we have already explained, a motion for summary judgment may be made pursuant to Rule 56 "with or without supporting affidavits." In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

[7] We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.

*325 The Court of Appeals in this case felt itself constrained, however, by language in our decision in Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There we held that summary judgment had been improperly entered in favor of the defendant restaurant in an action brought under 42 U.S.C. § 1983. In the course of its opinion, the Adickes Court said that "both the commentary on and the background of the 1963 amendment conclusively **2554 show that it was not intended to modify the burden of the moving party ... to show initially the absence of a genuine issue concerning any material fact." Id., at 159, 90 S.Ct. at 1609. We think that this statement is accurate in a literal sense, since we fully agree with the Adickes Court that the 1963 amendment to Rule 56(e) was not designed to modify the burden of making the showing generally required by Rule 56(c). It also appears to us that, on the basis of the showing before

the Court in Adickes, the motion for summary judgment in that case should have been denied. But we do not think the Adickes language quoted above should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, the burden on the moving party may be discharged by "showing"--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.

[8] The last two sentences of Rule 56(e) were added, as this Court indicated in Adickes, to disapprove a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its pleadings. While the Adickes Court was undoubtedly correct in concluding that these two sentences were not intended to reduce the burden of the moving party, it is also obvious that they were not adopted to add to that burden. Yet that is exactly the result which the reasoning of the Court of Appeals would produce; in effect, an amendment to Rule 56(e) designed to *326 facilitate the granting of motions for summary judgment would be interpreted to make it more difficult to grant such motions. Nothing in the two sentences themselves requires this result, for the reasons we have previously indicated, and we now put to rest any inference that they do so.

Our conclusion is bolstered by the fact that district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence. See 244 U.S.App.D.C., at 167-168, 756 F.2d, at 189 (Bork, J., dissenting); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2720, pp. 28-29 (1983). It would surely defy common sense to hold that the District Court could have entered summary judgment sua sponte in favor of petitioner in the instant case, but that petitioner's filing of a motion requesting such a disposition precluded the District Court from ordering it.

Respondent commenced this action in September 1980, and petitioner's motion was filed in September 1981. The parties had conducted discovery, and no serious claim can be made that respondent was in any sense "railroaded" by a premature motion for summary judgment. Any potential problem with such premature motions can be adequately dealt with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

under Rule 56(f), [FN6] which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery.

> FN6. Rule 56(f) provides:
> "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

In this Court, respondent's brief and oral argument have been devoted as much to the proposition that an adequate showing of exposure to petitioner's asbestos products was *327 made as to the proposition that no such showing should have been required. But the Court of Appeals declined to address either the adequacy of the showing made by respondent in opposition to petitioner's motion for summary judgment, or the question whether such a showing, if **2555 reduced to admissible evidence, would be sufficient to carry respondent's burden of proof at trial. We think the Court of Appeals with its superior knowledge of local law is better suited than we are to make these determinations in the first instance.

[9][10] The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1; see Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984). Before the shift to "notice pleading" accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient claims or defenses could be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources. But with the advent of "notice pleading," the motion to dismiss seldom fulfills this function any more, and its place has been taken by the motion for summary judgment. Rule 56 must be construed with due

regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*328 The judgment of the Court of Appeals is accordingly reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Justice WHITE, concurring.

I agree that the Court of Appeals was wrong in holding that the moving defendant must always support his motion with evidence or affidavits showing the absence of a genuine dispute about a material fact. I also agree that the movant may rely on depositions, answers to interrogatories, and the like, to demonstrate that the plaintiff has no evidence to prove his case and hence that there can be no factual dispute. But the movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.

A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery Rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case. It is the defendant's task to negate, if he can, the claimed basis for the suit.

Petitioner Celotex does not dispute that if respondent has named a witness to support her claim, summary judgment should not be granted without Celotex somehow showing that the named witness' possible testimony raises no genuine issue of material fact. Tr. of Oral Arg. 43, 45. It asserts, however, that respondent has failed in request to produce any basis for her case. Respondent, on the other hand, does not contend that she was not obligated to reveal her witnesses and evidence but insists that she has revealed enough to defeat the motion for summary judgment. Because the Court of Appeals found it unnecessary to address this aspect *329 of the case, I agree that the case should be remanded for further proceedings.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 S.Ct. 2548
Page 8
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

Justice BRENNAN, with whom THE CHIEF JUSTICE and Justice BLACKMUN join, dissenting.

This case requires the Court to determine whether Celotex satisfied its initial **2556 burden of production in moving for summary judgment on the ground that the plaintiff lacked evidence to establish an essential element of her case at trial.    I do not disagree with the Court's legal analysis.    The Court clearly rejects the ruling of the Court of Appeals that the defendant must provide affirmative evidence disproving the plaintiff's case.    Beyond this, however, the Court has not clearly explained what is required of a moving party seeking summary judgment on the ground that the nonmoving party cannot prove its case. [FN1] This lack of clarity is unfortunate:   district courts must routinely decide summary judgment motions, and the Court's opinion will very likely create confusion.    For this reason, even if I agreed with the Court's result, I would have written separately to explain more clearly the law in this area.    However, because I believe that Celotex did not meet its burden of production under Federal Rule of Civil Procedure 56, I respectfully dissent from the Court's judgment.

> FN1. It is also unclear what the Court of Appeals is supposed to do in this case on remand.  Justice WHITE--who has provided the Court's fifth vote--plainly believes that the Court of Appeals should reevaluate whether the defendant met its initial burden of production.    However, the decision to reverse rather than to vacate the judgment below implies that the Court of Appeals should assume that Celotex has met its initial burden of production and ask only whether the plaintiff responded adequately, and, if so, whether the defendant has met its ultimate burden of persuasion that no genuine issue exists for trial.   Absent some clearer expression from the Court to the contrary, Justice WHITE's understanding would seem to be controlling.   Cf. _Marks v. United States,_ 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977).

## *330 I

Summary judgment is appropriate where the Court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.Rule Civ.Proc. 56(c).  The burden of establishing the nonexistence

of a "genuine issue" is on the party moving for summary judgment.    10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727, p. 121 (2d ed. 1983) (hereinafter Wright) (citing cases); 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice ¶ 56.15 [3] (2d ed. 1985) (hereinafter Moore) (citing cases).  See also, _ante,_ at 2551;  _ante,_ at 2553 (WHITE, J., concurring).    This burden has two distinct components:    an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party;   and an ultimate burden of persuasion, which always remains on the moving party.    See 10A Wright, Miller & Kane § 2727.    The court need not decide whether the moving party has satisfied its ultimate burden of persuasion [FN2] unless and until the Court finds that the moving party has discharged its initial *331 burden of production.   _Adickes v. S.H. Kress & Co.,_ 398 U.S. 144, 157-161, 90 S.Ct. 1598, 1608-10, 26 L.Ed.2d 142 (1970);    1963 Advisory Committee's Notes on Fed.Rule Civ.Proc. 56(e), 28 U.S.C.App., p. 626.

> FN2. The burden of persuasion imposed on a moving party by Rule 56 is a stringent one.  6 Moore ¶ 56.15[3], pp. 56-466;   10A Wright, Miller & Kane § 2727, p. 124.  Summary judgment should not be granted unless it is clear that a trial is unnecessary, _Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 255, 106 S.Ct. 2505, ----, 91 L.Ed.2d 202 (1986), and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party, _Adickes v. S.H. Kress & Co.,_ 398 U.S. 144, 158-159, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970).    In determining whether a moving party has met its burden of persuasion, the court is obliged to take account of the entire setting of the case and must consider all papers of record as well as any materials prepared for the motion.  10A Wright, Miller & Kane § 2721, p. 44;   see, e.g., _Stepanischen v. Merchants Despatch Transportation Corp.,_ 722 F.2d 922, 930 (CA1 1983);   _Higgenbotham v. Ochsner Foundation Hospital,_ 607 F.2d 653, 656 (CA5 1979).   As explained by the Court of Appeals for the Third Circuit in _In re Japanese Electronic Products Antitrust Litigation,_ 723 F.2d 238 (1983), rev'd on other grounds _sub nom. Matsushita Electric Industrial Co. v. Zenith Radio Corp.,_ 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), "[i]f ... there is any evidence in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 S.Ct. 2548                                                                                          Page 9
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
(Cite as: 477 U.S. 317, 106 S.Ct. 2548)

record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment...." 723 F.2d, at 258.

**2557 The burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment. 10A Wright, Miller & Kane § 2727. The manner in which this showing can be made depends upon which party will bear the burden of persuasion on the challenged claim at trial. If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial. *Ibid.* Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. *Ibid.;* Fed.Rules Civ.Proc. 56(e), (f).

If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. See 10A Wright, Miller & Kane § 2727, pp. 130- 131; Louis, Federal Summary Judgment Doctrine: A Critical Analysis, 83 Yale L.J. 745, 750 (1974) (hereinafter Louis). If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, ----, 91 L.Ed.2d 202 (1986).

Where the moving party adopts this second option and seeks summary judgment on the ground that the nonmoving party--who will bear the burden of persuasion at trial--has *332 no evidence, the mechanics of discharging Rule 56's burden of production are somewhat trickier. Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. See *ante,* at 2551 (WHITE, J., concurring). Such a "burden" of production is no burden at all and would simply permit summary

judgment procedure to be converted into a tool for harassment. See Louis 750-751. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. *Ante,* at 2553. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the Court need not consider whether the moving party has met its ultimate burden of persuasion. Accordingly, the nonmoving party may defeat a motion for summary judgment that asserts that the nonmoving party has no evidence by calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party. In that event, the moving party must respond by making an attempt to demonstrate the inadequacy of this evidence, for it is only by attacking all the record evidence allegedly supporting the nonmoving party that a party seeking summary judgment satisfies Rule 56's burden of production. [FN3] Thus, if the record disclosed that the **2558 moving *333 party had overlooked a witness who would provide relevant testimony for the nonmoving party at trial, the Court could not find that the moving party had discharged its initial burden of production unless the moving party sought to demonstrate the inadequacy of this witness' testimony. Absent such a demonstration, summary judgment would have to be denied on the ground that the moving party had failed to meet its burden of production under Rule 56.

> FN3. Once the moving party has attacked whatever record evidence--if any--the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-00091-MEF-WC    Document 52    Filed 04/11/2007    Page 19 of 48

106 S.Ct. 2548                                                                                                Page 10
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

provided in Rule 56(f). See 10A Wright, Miller & Kane § 2727, pp. 138-143. Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial. See, e.g., First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

The result in Adickes v. S.H. Kress & Co., supra, is fully consistent with these principles. In that case, petitioner was refused service in respondent's lunchroom and then was arrested for vagrancy by a local policeman as she left. Petitioner brought an action under 42 U.S.C. § 1983 claiming that the refusal of service and subsequent arrest were the product of a conspiracy between respondent and the police; as proof of this conspiracy, petitioner's complaint alleged that the arresting officer was in respondent's store at the time service was refused. Respondent subsequently moved for summary judgment on the ground that there was no actual evidence in the record from which a jury could draw an inference of conspiracy. In response, petitioner pointed to a statement from her own deposition and an unsworn statement by a Kress employee, both already in the record and both ignored by respondent, that the policeman who arrested petitioner was in the store at the time she was refused service. We agreed that "[i]f a policeman were present, ... it would be open to a jury, in light of the sequence that followed, *334 to infer from the circumstances that the policeman and Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service." 398 U.S., at 158, 90 S.Ct., at 1609. Consequently, we held that it was error to grant summary judgment "on the basis of this record" because respondent had "failed to fulfill its initial burden" of demonstrating that there was no evidence that there was a policeman in the store. Id., at 157-158, 98 S.Ct., at 1608-1609.

The opinion in Adickes has sometimes been read to hold that summary judgment was inappropriate because the respondent had not submitted affirmative evidence to negate the possibility that there was a policeman in the store. See Brief for Respondent 20, n. 30 (citing cases). The Court of Appeals apparently read Adickes this way and therefore required Celotex to submit evidence establishing that

plaintiff's decedent had not been exposed to Celotex asbestos. I agree with the Court that this reading of Adickes was erroneous and that Celotex could seek summary judgment on the ground that plaintiff could not prove exposure to Celotex asbestos at trial. However, Celotex was still required to satisfy its initial burden of production.

II

I do not read the Court's opinion to say anything inconsistent with or different than the preceding discussion. My disagreement with the Court concerns the application of these principles to the facts of this case.

Defendant Celotex sought summary judgment on the ground that plaintiff had "failed to produce" any evidence that her **2559 decedent had ever been exposed to Celotex asbestos. [FN4] App. 170. Celotex supported this motion with a *335 two-page "Statement of Material Facts as to Which There is No Genuine Issue" and a three-page "Memorandum of Points and Authorities" which asserted that the plaintiff had failed to identify any evidence in responding to two sets of interrogatories propounded by Celotex and that therefore the record was "totally devoid" of evidence to support plaintiff's claim. See id., at 171-176.

> FN4. Justice STEVENS asserts that the District Court granted summary judgment on the ground that the plaintiff had failed to show exposure in the District of Columbia. He contends that the judgment of the Court of Appeals reversing the District Court's judgment should be affirmed on the "narrow ground" that it was "palpably erroneous" to grant summary judgment on this basis. Post, at 2561 (dissenting). The Court replies that what the District Court said was that plaintiff had failed to show exposure in the District of Columbia "or elsewhere." Ante, at 2560, n. 2. In my view, it does not really matter which reading is correct in this case. For, contrary to Justice STEVENS' claim, deciding this case on the ground that Celotex failed to meet its burden of production under Rule 56 does not involve an "abstract exercise in Rule construction." Post, at 2560 (STEVENS, J., dissenting). To the contrary, the principles governing a movant's burden of proof are straightforward and well established, and deciding the case on this basis does not require a new construction of Rule 56 at all; it simply

106 S.Ct. 2548
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

Page 11

entails applying established law to the particular facts of this case. The choice to reverse because of "palpable erro[r]" with respect to the burden of a moving party under Rule 56 is thus no more "abstract" than the choice to reverse because of such error with respect to the elements of a tort claim. Indeed, given that the issue of the moving party's burden under Rule 56 was the basis of the Court of Appeals' decision, the question upon which certiorari was granted, and the issue briefed by the parties and argued to the Court, it would seem to be the preferable ground for deciding the case.

Approximately three months earlier, Celotex had filed an essentially identical motion. Plaintiff responded to this earlier motion by producing three pieces of evidence which she claimed "[a]t the very least ... demonstrate that there is a genuine factual dispute for trial," *id., at 143:* (1) a letter from an insurance representative of another defendant describing asbestos products to which plaintiff's decedent had been exposed, *id., at 160;* (2) a letter from T.R. Hoff, a former supervisor of decedent, describing asbestos products to which decedent had been exposed, *id., at 162;* and (3) a copy of decedent's deposition from earlier workmen's compensation proceedings, *id., at 164.* Plaintiff also apparently indicated *\*336* at that time that she intended to call Mr. Hoff as a witness at trial. Tr. of Oral Arg. 6-7, 27-29.

Celotex subsequently withdrew its first motion for summary judgment. See App. 167. [FN5] However, as a result of this motion, when Celotex filed its second summary judgment motion, the record *did* contain evidence--including at least one witness--supporting plaintiff's claim. Indeed, counsel for Celotex admitted to this Court at oral argument that Celotex was aware of this evidence and of plaintiff's intention to call Mr. Hoff as a witness at trial when the second summary judgment motion was filed. Tr. of Oral Arg. 5-7. Moreover, plaintiff's response to Celotex' second motion pointed to this evidence--noting that it had already been provided to counsel for Celotex in connection with the first motion--and argued that Celotex had failed to "meet its burden of proving that there is no genuine factual dispute for trial." App. 188.

> FN5. Celotex apparently withdrew this motion because, contrary to the assertion made in the first summary judgment motion, its second set of interrogatories had not been served on the plaintiff.

On these facts, there is simply no question that Celotex failed to discharge its initial burden of production. Having chosen to base its motion on the argument that there was no evidence in the record to support plaintiff's claim, Celotex was not free to ignore supporting evidence that the record clearly contained. Rather, Celotex was required, as an initial matter, to attack the adequacy of this evidence. Celotex' failure to fulfill this simple requirement constituted a failure to discharge its initial *\*\*2560* burden of production under Rule 56, and thereby rendered summary judgment improper. [FN6]

> FN6. If the plaintiff had answered Celotex' second set of interrogatories with the evidence in her response to the first summary judgment motion, and Celotex had ignored those interrogatories and based its second summary judgment motion on the first set of interrogatories only, Celotex obviously could not claim to have discharged its Rule 56 burden of production. This result should not be different simply because the evidence plaintiff relied upon to support her claim was acquired by Celotex other than in plaintiff's answers to interrogatories.

*\*337* This case is indistinguishable from *Adickes.* Here, as there, the defendant moved for summary judgment on the ground that the record contained no evidence to support an essential element of the plaintiff's claim. Here, as there, the plaintiff responded by drawing . the court's attention to evidence that was already in the record and that had been ignored by the moving party. Consequently, here, as there, summary judgment should be denied on the ground that the moving party failed to satisfy its initial burden of production. [FN7]

> FN7. Although Justice WHITE agrees that "if [plaintiff] has named a witness to support her claim, summary judgment should not be granted without Celotex somehow showing that the named witness' possible testimony raises no genuine issue of material fact," he would remand "[b]ecause the Court of Appeals found it unnecessary to address this aspect of the case." *Ante,* at 2555-2556 (concurring). However, Celotex has admitted that plaintiff had disclosed her intent to call Mr. Hoff as a witness at trial before Celotex filed its second motion for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 S.Ct. 2548
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
(Cite as: 477 U.S. 317, 106 S.Ct. 2548)

summary judgment. Tr. of Oral Arg. 6-7. Under the circumstances, then, remanding is a waste of time.

Justice STEVENS, dissenting.

As the Court points out, *ante,* at 2551, petitioner's motion for summary judgment was based on the proposition that respondent could not prevail unless she proved that her deceased husband had been exposed to petitioner's products "within the jurisdictional limits" of the District of Columbia. [FN1] *338 Respondent made an adequate showing--albeit possibly not in admissible form [FN2]--that her husband had been exposed to petitioner's product in Illinois. [FN3] Although the basis of the motion and the argument had been the lack of exposure *in the District of Columbia,* the District Court stated at the end of the argument: "The Court will grant the defendant Celotex's motion for summary judgment there being no showing that the plaintiff was exposed to the defendant Celotex's product in the District of Columbia *or elsewhere* within the statutory period." App. 217 (emphasis added). The District Court offered no additional explanation and no written **2561 opinion. The Court of Appeals reversed on the basis that Celotex had not met its burden; the court noted the incongruity of the District Court's opinion in the context of the motion and argument, but did not rest on that basis because of the "or elsewhere" language. [FN4]

> FN1. See Motion of Defendant Celotex Corporation for Summary Judgment, App. 170 ("Defendant Celotex Corporation, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure moves this Court for an Order granting Summary Judgment on the ground that plaintiff has failed to produce evidence that any product designed, manufactured or distributed by Celotex Corporation was the proximate cause of the injuries alleged *within the jurisdictional limits of this Court*") (emphasis added); Memorandum of Points and Authorities in Support of Motion of Defendant Celotex Corporation for Summary Judgment, *id.,* at 175 (Plaintiff "must demonstrate some link between a Celotex Corporation product claimed to be the cause of the decedent's illness and the decedent himself. The record is totally devoid of any such evidence *within the jurisdictional confines of this Court*") (emphasis added); Transcript of Argument in Support of Motion of

Defendant Celotex Corporation for Summary Judgment, *id.,* at 211 ("Our position is ... there has been no product identification of any Celotex products ... that have been used *in the District of Columbia* to which the decedent was exposed") (emphasis added).

> FN2. But cf. *ante,* at 2553 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment").

> FN3. See App. 160 (letter from Aetna Life Insurance Co.) (referring to the "asbestos that Mr. Catrett came into contact with while working for Anning-Johnson Company" and noting that the "manufacturer of this product" was purchased by Celotex); *id.,* at 162 (letter from Anning-Johnson Co.) (confirming that Catrett worked for the company and supervised the installation of asbestos produced by the company that Celotex ultimately purchased); *id.,* at 164, 164c (deposition of Catrett) (description of his work with asbestos "in Chicago").

> FN4. See *Catrett v. Johns-Manville Sales Corp.,* 756 F.2d 181, 185, n. 14 (1985) ("[T]he discussion at the time the motion was granted actually spoke to venue. It was only the phrase 'or elsewhere,' appearing with no prior discussion, in the judge's oral ruling at the close of argument that made the grant of summary judgment even conceivably proper").

Taken in the context of the motion for summary judgment on the basis of no exposure in the District of Columbia, the *339 District Court's decision to grant summary judgment was palpably erroneous. The court's bench reference to "or elsewhere" neither validated that decision nor raised the complex question addressed by this Court today. In light of the District Court's plain error, therefore, it is perfectly clear that, even after this Court's abstract exercise in Rule construction, we should nonetheless affirm the reversal of summary judgment on that narrow ground. [FN5]

> FN5. Cf. n. 2, *supra.* The Court's statement that the case should be remanded because the Court of Appeals has a "superior knowledge of local law," *ante,* at 2555, is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 S.Ct. 2548                                                                                     Page 13
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024
**(Cite as: 477 U.S. 317, 106 S.Ct. 2548)**

bewildering because there is no question of local law to be decided. Cf. *Bishop v. Wood*, 426 U.S. 341, 345-347, 96 S.Ct. 2074, 2077-2079, 48 L.Ed.2d 684 (1976). The Court's decision to remand when a sufficient ground for affirmance is available does reveal, however, the Court's increasing tendency to adopt a presumption of reversal. See, *e.g., New York v. P.J. Video, Inc.*, 475 U.S. 868, 884, 106 S.Ct. 1610, 1619, 89 L.Ed.2d 871 (1986) (MARSHALL, J., dissenting); *Icicle Seafoods, Inc., v. Worthington*, 475 U.S. 709, 715, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986) (STEVENS, J., dissenting); *City of Los Angeles v. Heller*, 475 U.S. 796, 800, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (STEVENS, J., dissenting); *Pennsylvania v. Goldhammer*, 474 U.S. 28, 31, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985) (STEVENS, J., dissenting). As a matter of efficient judicial administration and of respect for the state and federal courts, I believe the presumption should be precisely the opposite.

 I respectfully dissent.

 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 54 USLW 4775, 4 Fed.R.Serv.3d 1024

**Briefs and Other Related Documents (Back to top)**

• 1986 WL 727833 (Appellate Brief) Reply Brief for Petitioner (Mar. 24, 1986)

• 1985 WL 669317 (Appellate Brief) Brief for Petitioner (Dec. 26, 1985)

• 1985 WL 669316 (Appellate Brief) Motion for Leave to File Brief Amicus Curiae and Brief for the Motor Vehicle Manufacturers Association and the Product Liability Advisory Council as Amici Curiae in Support of Petitioner (Dec. 23, 1985)

• 1985 WL 669318 (Appellate Brief) Brief for Respondent (Oct. Term 1985)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

459 F.3d 1186                                                                                    Page 1
459 F.3d 1186, 65 Fed.R.Serv.3d 1169, 80 U.S.P.Q.2d 1213, 19 Fla. L. Weekly Fed. C 945
(Cite as: 459 F.3d 1186)

C

**Briefs and Other Related Documents**

United States Court of Appeals,
Eleventh Circuit.
IMAGING BUSINESS MACHINES, LLC.,
Plaintiff-Appellant,
v.
BANCTEC, INC., Defendant-Appellee.
No. 05-10835.

Aug. 10, 2006.

**Background:** Manufacturer of high-speed document scanners brought action against competitor, alleging fraud and misappropriation of trade secrets. The United States District Court for the Northern District of Alabama, No. 04- 01104-CV-J-S, Inge Prytz Johnson, J., entered summary judgment in favor of competitor, and manufacturer appealed.

**Holdings:** The Court of Appeals, George, District Judge, sitting by designation, held that:
(1) genuine issue of material fact precluded summary judgment on manufacturer's fraud claim;
(2) court could not consider element of damage as to remaining claims *sua sponte*; and
(3) genuine issues of material fact precluded summary judgment on the misappropriation of trade secrets claim.
Affirmed in part, reversed in part, and remanded.

West Headnotes

**[1] Federal Civil Procedure** 2515
170Ak2515
Genuine issue of material fact as to whether manufacturer of high-speed document scanners was injured when it entered into a reseller agreement with another manufacturer based on that manufacturer's fraudulent representation that it was not developing a competing scanner precluded summary judgment on manufacturer's fraud claim under Alabama law.

**[2] Torts** 119
379k119
In Alabama, a party who commits a wrongful act is responsible for the injuries that the wrongful act causes to another.

**[3] Torts** 119
379k119
Under Alabama law, persons who perpetrate torts are, as a rule, responsible for the consequences of the wrongs they commit; that is, unless the tort be the proximate cause of the injury complained of, there is no legal accountability.

**[4] Torts** 119
379k119
Under Alabama law, "proximate cause" is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred.

**[5] Federal Civil Procedure** 2533.1
170Ak2533.1
District court may enter summary judgment *sua sponte* if the parties are given adequate notice that they must present all of their evidence. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[6] Federal Civil Procedure** 2533.1
170Ak2533.1
Mandatory character of notice required prior to entry of summary judgment also applies to a district court's *sua sponte* consideration of summary judgment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[7] Federal Civil Procedure** 2533.1
170Ak2533.1
District court could not consider *sua sponte* element of damage as to plaintiff's remaining claims after defendant's motion for summary judgment only raised issue of injury as to plaintiff's fraud claim; court was required to first notify plaintiff that it would be considering the issue of injury as to each of the remaining claims. . Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[8] Federal Civil Procedure** 2554
170Ak2554

**[8] Injunction** 158
212k158
District court could not rely on its finding that document scanner manufacturer was unlikely to succeed on merits of claim that it possessed a trade



APPENDIX
TWO

459 F.3d 1186                                                                                    Page 2
459 F.3d 1186, 65 Fed.R.Serv.3d 1169, 80 U.S.P.Q.2d 1213, 19 Fla. L. Weekly Fed. C 945
(Cite as: 459 F.3d 1186)

secret, made in connection with denial of manufacturer's motion for preliminary injunction on its misappropriation of trade secrets claim, in granting competitor's motion for summary judgment on that claim; in resolving each of those motions, district court was required to apply a substantially different standard in reviewing the evidence and resolving contested issues. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

[9] Injunction ☞138.1
212k138.1
District court may grant preliminary injunctive relief when the moving party shows that: (1) it has a substantial likelihood of success on the merits of the underlying case when the case is ultimately tried; (2) irreparable injury during the pendency of the suit will be suffered unless the injunction issues immediately; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

[10] Federal Civil Procedure ☞2515
170Ak2515
Genuine issues of material fact as to whether manufacturer's integration of various individual mechanical elements into a single high-speed document scanner constituted a trade secret under Alabama law and whether manufacturer made reasonable efforts to maintain the secrecy of its information precluded summary judgment on its trade secret misappropriation claim against competitor. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.
*1188 Joseph W. Letzer, Howard P. Walthall, Jr., Burr & Forman, LLP, Birmingham, AL, for Plaintiff-Appellant.

Daniel J. Burnick, Sandra L. Vinik, Sirote & Permutt, P.C., Birmingham, AL, for Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Alabama.

Before TJOFLAT and PRYOR, Circuit Judges, and GEORGE [FN*], District Judge.

FN* Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

GEORGE, District Judge:

Imaging Business Machines, LLC, produces high-speed document scanners. It alleges that Banctec, Inc. developed a competitive high-speed document scanner by copying trade secrets and confidential features of an Imaging Business Machines' scanner.

The district court orally denied Imaging Business Machine's motion for a preliminary injunction, finding a lack of evidence of damages. In so finding, the district court expressly discounted evidence that two customers purchased the infringing BancTec scanner rather than a newer model of Imaging Business Machines' scanner. In a written amendment, the district court further reasoned that Imaging Business Machines failed to show BancTec copied features that were trade secrets. Subsequently, the district court specifically limited discovery of damages to the scanner model that BancTec copied. The district court then granted BancTec's motion for summary judgment for essentially the same reasons that it denied the preliminary injunction. Imaging Business Machines appeals the grant of summary judgment. [FN1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse the grant of summary judgment.

FN1. Imaging Business Machines also appeals the denial of its motion for a preliminary injunction and the district court's order limiting discovery. Though the issue is close, we summarily find that the district court did not abuse its discretion in denying the preliminary injunction. By contrast, the district court plainly abused its discretion in limiting discovery.

I

In 1994, Imaging Business Machines began marketing the ImageTrac I, a high-speed, high-volume color document scanner. [FN2] Several years later, the company introduced the ImageTrac II to market, which model was both quicker and had a better camera. During this time, BancTec began marketing its own high-speed scanners, the S-Series. In general, however, the two product lines did not compete with each other. Indeed, BancTec's foreign subsidiaries purchased ImageTrac scanners for resale, which Imaging Business Machines re-labeled as BancTec scanners for the foreign subsidiaries.

FN2. Given the posture in which this matter comes before this panel, the facts we set forth are those most favorable to Imaging Business Machines.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-00091-MEF-WC     Document 52     Filed 04/11/2007     Page 25 of 48

459 F.3d 1186                                                                    Page 3
459 F.3d 1186, 65 Fed.R.Serv.3d 1169, 80 U.S.P.Q.2d 1213, 19 Fla. L. Weekly Fed. C 945
(Cite as: 459 F.3d 1186)

On March 15, 2000, Imaging Business Machines and BancTec entered into a two-year Reseller Agreement. The agreement required BancTec to refrain from copying or reverse engineering Imaging Business Machines' products. The reseller relationship between the two companies continued after March 2002. During 2002 and 2003, BancTec began development of a scanner that would directly compete with the ImageTrac scanners. BancTec developed its scanner by copying mechanical features of the ImageTrac II.

**\*1189** When Imaging Business Machines asked BancTec whether it was developing a scanner to compete with the ImageTrac scanners, BancTec falsely stated that it was not developing such a scanner. BancTec introduced its scanner to the market as the DocuScan 9000 in March 2004.

During the same time that BancTec developed the DocuScan 9000, Imaging Business Machines developed and introduced two updated versions of its ImageTrac scanners: the ImageTrac III and IV. The primary difference between the ImageTrac II and IV is that the latter has a higher speed camera that allows the scanner to run faster. Otherwise, the ImageTrac IV generally uses the same mechanical components of the ImageTrac II that BancTec copied and used to develop the DocuScan 9000.

BancTec has sold at least eleven DocuScan 9000s since its introduction. As to at least two of those sales, the customer purchased the DocuScan 9000 rather than an ImageTrac IV. Imaging Business Machines, however, did not offer evidence that the DocuScan 9000 specifically competed against an ImageTrac II for any particular sale, or that any customer purchased a DocuScan 9000 rather than an ImageTrac II.

## II

"We review the district court's grant of summary judgment de novo, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir.2005) (internal quotes and emphasis omitted). A grant of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## III

[1] We begin by examining whether summary judgment was appropriately granted as to Imaging Business Machines' claim for fraud because it failed to offer evidence supporting the element of injury. [FN3] **\*1190** In its motion for summary judgment, BancTec attacked Imaging Business Machines' claim for fraud solely on the basis that the plaintiff was not injured. We conclude that BancTec never met its initial burden on summary judgment.

> FN3. The element of injury is also often referenced as the element of damage. The district court, however, granted summary judgment based solely on its finding that Imaging Business Machines' failed to show damages rather than damage. As noted by the Alabama Supreme Court: "damage" (in the singular) refers to the loss or injury sustained by a plaintiff while "damages" (in the plural) refers to " 'a pecuniary compensation' for an injury or loss." *Boswell v. Liberty Nat. Life Ins. Co.*, 643 So.2d 580, 584 (Ala.1994).
> We recognize that the failure to offer evidence of damages may, in some circumstances, amount to a failure to offer evidence of an injury. See, *Mobile Building and Loan Ass'n v. Odom*, 232 Ala. 19, 166 So. 698 (Ala.1936). This, however, is not necessarily always true. For example, in *Maring-Crawford Motor Co. v. Smith*, 285 Ala. 477, 233 So.2d 484 (Ala.1970), the plaintiff sued the defendant for fraudulently selling her a used vehicle as if it was new. At trial, the plaintiff failed to establish her damages because she did not offer evidence of the value of the car if it had been new. Nevertheless, she had established that she suffered an injury since a jury could reasonably infer that a used car is less valuable than a new car. *Id.*, at 492. The plaintiff's failure to show damages (ie, the pecuniary difference in value between the new and used vehicle) merely precluded an award of compensatory damages for her injury. *Id.* She could however, recover nominal damages for that injury as Alabama permits an award of nominal damages for a claim of fraud where the plaintiff has established a breach of legal duty but has either not suffered damages or failed to prove damages. *Id.* Accordingly, a finding that a plaintiff failed to offer evidence of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-00091-MEF-WC    Document 52    Filed 04/11/2007    Page 26 of 48

459 F.3d 1186                                                                                        Page 4
459 F.3d 1186, 65 Fed.R.Serv.3d 1169, 80 U.S.P.Q.2d 1213, 19 Fla. L. Weekly Fed. C 945
**(Cite as: 459 F.3d 1186)**

damages does not, standing alone, permit the grant of summary judgment for failure to offer evidence of an injury.

[2][3][4] In Alabama, a party who commits a wrongful act is responsible for the injuries that the wrongful act causes to another. "It is well established by many decisions in [Alabama] that persons who perpetrate torts are, as a rule, responsible for the consequences of the wrongs they commit. That is, unless the tort be the proximate cause of the injury complained of, there is no legal accountability." *Louisville & N.R. Co. v. Maddox,* 236 Ala. 594, 183 So. 849, 852 (Ala.1938).

Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred. The requirement of foreseeability is imposed to preclude a finding of liability when the defendant's conduct was part of the causal chain of events leading to the injury but the resulting injury could not have been reasonably anticipated by the defendant. Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated.

*Thetford v. City of Clanton,* 605 So.2d 835, 840 (Ala.1992). In the context of a motion for summary judgment arguing a lack of injury, the defendant's initial burden is to show that a plaintiff lacks evidence regarding each injury alleged to be proximately caused by its wrong.

In this case, Imaging Business Machines alleged in its complaint that it continued to sell scanners to BancTec in reliance on the fraudulent representation that the latter was not developing a competing scanner. This allegation--that Imaging Business Machines lost the economic opportunity of altering its relationship with BancTec from reseller to future competitor--was plainly a sufficient allegation of an injury. Although BancTec correctly recited this allegation of injury in its motion, it nevertheless relied upon the district court's finding (first stated in the oral ruling denying the motion for a preliminary injunction) that Imaging Business Machines failed to show a loss of customers. The district court's finding regarding lost customers, however, was irrelevant to whether Imaging Business Machines lost the economic opportunity of altering its business relationship with BancTec. Further, BancTec did not offer any other argument suggesting that Imaging Business Machines could not offer evidence of the injury alleged in the complaint. Accordingly,

BancTec did not meet its initial burden on summary judgment and the burden never shifted to Imaging Business Machines to offer evidence of its injury resulting from the alleged fraud.

Although the burden never shifted to Imaging Business Machines to offer evidence that it suffered an injury, we note that it nevertheless offered sufficient evidence of several injuries proximately caused by the fraud to preclude a grant of summary judgment. First, Imaging Business Machines submitted the affidavit of its president, Gary Murphy, that the corporation would have ceased selling scanners to BancTec, thus limiting the latter's access to the market, if the latter had truthfully stated that it was developing a competing scanner. A fact-finder could readily infer that a manufacturer is injured when it loses an opportunity to timely react to a reseller's plans to become a **\*1191** competitor. Thus, Murphy's affidavit was sufficient evidence to create a triable issue of fact whether Imaging Business Machines' suffered the injury specifically alleged in the complaint.

Second, as recognized by the district court, Imaging Business Machines offered evidence that it lost two sales to BancTec's DocuScan 9000. Plainly the loss of a sale is an injury. The district court, however, summarily discounted this evidence (in its order denying the preliminary injunction) solely because the sales involved the ImageTrac IV rather than the ImageTrac II. The injured party, however, is not the ImageTrac II but is Imaging Business Machines. Thus, the relevant query is not limited to whether BancTec's conduct proximately caused injury to sales of the ImageTrac II, but whether that conduct proximately caused injury to Imaging Business Machines. In light of the record established below, whether BancTec's fraudulent representation proximately caused the loss of the two sales of the ImageTrac IV is an issue to be resolved by the fact-finder. Accordingly, the district court's grant of summary judgment as to Imaging Business Machines' claim for fraud was in error.

IV

[5][6] In moving for summary judgment, BancTec attacked the element of injury only as to Imaging Business Machines' claim for fraud. Thus, the district court's grant of summary judgment for failure to show injury as to the remaining claims was *sua sponte.* In so granting summary judgment, however, the district court procedurally erred by failing to give proper notice to Imaging Business Machines. "[A] district court may enter summary judgment sua

Case 3:06-cv-00091-MEF-WC    Document 52    Filed 04/11/2007    Page 27 of 48

459 F.3d 1186                                                              Page 5
459 F.3d 1186, 65 Fed.R.Serv.3d 1169, 80 U.S.P.Q.2d 1213, 19 Fla. L. Weekly Fed. C 945
(Cite as: 459 F.3d 1186)

sponte if the parties are given adequate notice that they must present all of their evidence." *Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc., 398 F.3d 1261, 1267 (11th Cir.2005)* (citing *Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).* "Consistent with the importance of the procedural protection afforded by Rule 56(c), courts have strictly enforced the requirement that a party threatened by summary judgment must receive notice and an opportunity to respond." *Massey v. Congress Life Ins. Co. 116 F.3d 1414, 1417 (11th Cir.1997).* The mandatory character of this notice also applies to a district court's *sua sponte* consideration of summary judgment. *Id.*

[7] BancTec's motion for summary judgment only raised the issue of injury as to Imaging Business Machine's claim for fraud. Imaging Business Machines responded on the issue of damage only as it pertained to its claim of fraud. Thus, the district court's consideration of the element of damage as to the remaining claims was *sua sponte.* As the district court did not comply with Rule 56(c), failing to notify Imaging Business Machines that it would be considering the issue of injury as to each of the remaining claims, the grant of summary judgment on the issue of injury as to these claims was procedurally improper and must be vacated.

### V

[8] Finally, we consider the district court's grant of summary judgment as to whether the information that BancTec appropriated from the ImageTrac II constituted a trade secret or confidence. In granting summary judgment, the district court ruled that it "has already found that the misappropriation of trade secret claim *must fail as a matter of law ....*" The district court then referenced its written amendment to the oral order denying Imaging *1192 Business Machines' motion for a preliminary injunction.

[9] "[A] district court may grant preliminary injunctive relief when the moving party shows that: (1) it has a substantial likelihood of success on the merits of the underlying case when the case is ultimately tried; (2) irreparable injury during the pendency of the suit will be suffered unless the injunction issues immediately; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1128 (11th Cir.2005).* The district court applied the first of these factors--that

the moving party show a substantial likelihood of success on the merits--to assess the evidence whether Imaging Business Machines had a trade secret in the components of its ImageTrac II scanner.

In contrast to the four-factor test applied on a motion for preliminary injunction, a motion for summary judgment requires the moving party to show the absence of any genuine issues of fact. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).* Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact. Fed. R. Civ. Pro. 56(e). As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex, 477 U.S. at 323-24, 106 S.Ct. 2548,* the court resolves any dispute in the evidence "in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).*

Plainly, Imaging Business Machines bore a significantly different burden in moving for preliminary injunction than it bore in opposing BancTec's motion for summary judgment. Further, and significantly, in resolving each of these motions, the district court was required to apply a substantially different standard in reviewing the evidence and resolving contested issues. In considering the motion for preliminary injunction, the district court could assess the likelihood that Imaging Business Machines' evidence would be persuasive to a fact-finder in light of BancTec's evidence. In resolving whether Imaging Business Machines would likely succeed on the merits, the district court could consider the credibility of witnesses and was not limited to resolving any disputed issues of fact in the light most favorable to Imaging Business Machines. The written amendment to the oral order denying a preliminary injunction indicates that the district court resolved the issue of whether Imaging Business Machines had a trade secret based on the strength and persuasiveness of BancTec's evidence, apparently discounting the contrary evidence presented by Imaging Business Machines.

In considering the motion for summary judgment, however, the district court had a duty to construe the evidence presented to it in the light most favorable to Imaging Business Machines, resolving any contested issue of fact in favor of Imaging Business Machines. The written amendment to the order denying the preliminary injunction, however, lacks any language suggesting that the district court applied this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-00091-MEF-WC    Document 52    Filed 04/11/2007    Page 28 of 48

459 F.3d 1186                                                                        Page 6
459 F.3d 1186, 65 Fed.R.Serv.3d 1169, 80 U.S.P.Q.2d 1213, 19 Fla. L. Weekly Fed. C 945
(Cite as: 459 F.3d 1186)

summary judgment standard to the evidence underlying BancTec's motion for summary judgment. Rather, the language of the written amendment to the order denying the preliminary injunction establishes the contrary; the district court discounted Imaging Business Machines' evidence, weighed it against evidence submitted by BancTec, and largely adopted *1193 BancTec's evidence in finding that Imaging Business was unlikely to succeed on the merits of whether it had trade secrets. The district court's order granting summary judgment lacks any indication that the district court reconsidered the evidence pursuant to the appropriate summary judgment standard. Rather, the record before this court establishes that, in granting summary judgment, the district court relied solely upon its prior finding that Imaging Business Machines lacked a trade secret, which finding was not the result of resolving all disputes and drawing all inferences in the light most favorable to Imaging Business Machines. Accordingly, the grant of summary judgment must be reversed on the issue of whether the information appropriated by BancTec was a trade secret or otherwise confidential.

[10] We would also note that, in light of the record before us, application of the appropriate summary judgment standard would require the denial of BancTec's motion for summary judgment on the issue of whether Imaging Business Machines had a protectible trade secret or otherwise confidential information. Construing disputed issues of fact in the light most favorable to Imaging Business Machines, the record raises genuine issues of material fact whether the information was generally known and whether the information was readily ascertained from publicly available information. A particularly acute issue of fact remains as to whether Imaging Business Machines' integration of the various individual mechanical elements into a single device constituted a trade secret. A genuine issue of fact also remains as to whether Imaging Business Machines made reasonable efforts to maintain the secrecy of its information.

### VI

Accordingly, we conclude that the district court erred in granting the motion for summary judgment.

REVERSED in part, AFFIRMED in part, and REMANDED.

459 F.3d 1186, 65 Fed.R.Serv.3d 1169, 80 U.S.P.Q.2d 1213, 19 Fla. L. Weekly Fed. C 945

**Briefs and Other Related Documents (Back to top)**

• 2005 WL 4930461 (Appellate Brief) Reply Brief of the Appellant (Redacted) (Sep. 15, 2005)

• 2005 WL 4930460 (Appellate Brief) Brief of the Appellant (Redacted) (Sep. 14, 2005)

• 05-10835 (Docket) (Feb. 17, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

12 USCA § 2605                                                                                          Page 1
12 U.S.C.A. § 2605

**c**

**Effective: September 30, 1996**

UNITED STATES CODE ANNOTATED
TITLE 12. BANKS AND BANKING
**CHAPTER 27--REAL ESTATE SETTLEMENT PROCEDURES**
    **§ 2605. Servicing of mortgage loans and administration of escrow accounts**

 (a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing

Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

(b) Notice by transferor of loan servicing at time of transfer

 (1) Notice requirement

Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.

 (2) Time of notice

  (A) In general

Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

  (B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

   **(i)** termination of the contract for servicing the loan for cause;

   **(ii)** commencement of proceedings for bankruptcy of the servicer; or

   **(iii)** commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

  (C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

 (3) Contents of notice

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

APPENDIX
THREE

ALL-STATE LEGAL®

The notice required under paragraph (1) shall include the following information:

**(A)** The effective date of transfer of the servicing described in such paragraph.

**(B)** The name, address, and toll-free or collect call telephone number of the transferee servicer.

**(C)** A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(D)** The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(E)** The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

**(F)** Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

**(G)** A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

(c) Notice by transferee of loan servicing at time of transfer

(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

**(i)** termination of the contract for servicing the loan for cause;

**(ii)** commencement of proceedings for bankruptcy of the servicer; or

**(iii)** commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

Any notice required under paragraph (1) shall include the information described in subsection (b)(3) of this section.

(d) Treatment of loan payments during transfer period

During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

**(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

**(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

**(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under <u>section 1681a of Title 15</u>).

(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of--

**(A)** any actual damages to the borrower as a result of the failure; and

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

(2) Class actions

In the case of a class action, an amount equal to the sum of--

**(A)** any actual damages to each of the borrowers in the class as a result of the failure; and

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--

**(i)** $500,000; or

**(ii)** 1 percent of the net worth of the servicer.

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

(4) Nonliability

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 USCA § 2605                                                                            Page 5
12 U.S.C.A. § 2605

requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

(g) Administration of escrow accounts

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

(h) Preemption of conflicting State laws

Notwithstanding any provision of any law or regulation of any State, a person who makes a federally related mortgage loan or a servicer shall be considered to have complied with the provisions of any such State law or regulation requiring notice to a borrower at the time of application for a loan or transfer of the servicing of a loan if such person or servicer complies with the requirements under this section regarding timing, content, and procedures for notification of the borrower.

(i) Definitions

For purposes of this section:

(1) Effective date of transfer

The term "effective date of transfer" means the date on which the mortgage payment of a borrower is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan.

(2) Servicer

The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The term does not include--

(A) the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823(c) of this title or as receiver or conservator of an insured depository institution; and

(B) the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Resolution Trust Corporation, or the Federal Deposit Insurance Corporation, in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(3) Servicing

The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 USCA § 2605
12 U.S.C.A. § 2605

any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

(j) Transition

(1) Originator liability

A person who makes a federally related mortgage loan shall not be liable to a borrower because of a failure of such person to comply with subsection (a) of this section with respect to an application for a loan made by the borrower before the regulations referred to in paragraph (3) take effect.

(2) Servicer liability

A servicer of a federally related mortgage loan shall not be liable to a borrower because of a failure of the servicer to perform any duty under subsection (b), (c), (d), or (e) of this section that arises before the regulations referred to in paragraph (3) take effect.

(3) Regulations and effective date

The Secretary shall, by regulations that shall take effect not later than April 20, 1991, establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2) of this section.

CREDIT(S)

(Pub.L. 93-533, § 6, as added Pub.L. 101-625, Title IX, § 941, Nov. 28, 1990, 104 Stat. 4405, and amended Pub.L. 102-27, Title III, § 312(a), Apr. 10, 1991, 105 Stat. 154; Pub.L. 103-325, Title III, § 345, Sept. 23, 1994, 108 Stat. 2239; Pub.L. 104-208, Div. A, Title II, § 2103(a), Sept. 30, 1996, 110 Stat. 3009-399.)

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1990 Acts. Senate Report No. 101-316 and House Conference Report No. 101- 943, see 1990 U.S. Code Cong. and Adm. News, p. 5763.

1994 Acts. Senate Report No. 103-169 and House Conference Report No. 103- 652, see 1994 U.S. Code Cong. and Adm. News, p. 1881.

Amendments

1996 Amendments. Subsec. (a). Pub.L. 104-208, § 2103(a), substituted provisions requiring each lender of a federally related mortgage loan to disclose to applicant whether servicing of such loan may be assigned, sold or transferred, for provisions which required each lender of a federally related mortgage loan to disclose to applicant whether servicing of such loan may be assigned, sold, or transferred, required disclosure of lender's history of assigning, selling, or transferring such loans, directed Secretary to develop model disclosure statement, and required signature of applicant on all such disclosure statements.

1994 Amendments. Subsec. (a)(1)(B). Pub.L. 103-325, § 345(l)(4), inserted introductory phrase "at the choice of the person making a federally related mortgage loan--" and designated existing text as cl. "(i) for each of the most recent"; redesignated as subcls. (i)(I) and (II) former cls. (i) and (ii), with appropriate indentation; substituted "or"

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for "and" at end of subcl. (i)(II); and cl. (ii), respectively.

1991 Amendments. Subsec. (j). Pub.L. 102-27 added subsec. (j).

Prior Provisions

A prior section 2605, Pub.L. 93-533, § 6, Dec. 22, 1974, 88 Stat. 1726, which related to advanced itemized disclosure of settlement costs by the lender and liability of the lender for failure to comply, was repealed by Pub.L. 94-205, § 5, Jan. 2, 1976, 89 Stat. 1158.

CROSS REFERENCES

"Services" defined as in this section for purposes of treatment of services, see 15 USCA § 1641.

LIBRARY REFERENCES

American Digest System

Consumer Credit 33.

Key Number System Topic No. 92B.

Corpus Juris Secundum

Real Estate Settlement Procedures Act, CJS Credit Reporting Agencies; Consumer Protection § 47.

RESEARCH REFERENCES

ALR Library

178 ALR, Fed. 367, What Constitutes "Net Worth" for Purposes of Fair Debt Collection Practices Act (15 U.S.C.A. § 1692k(A)(2)(B)).

142 ALR, Fed. 511, Construction and Application of Real Estate Settlement Procedures Act of 1974 (12 U.S.C.A. § 2601).

10 ALR 6th 669, Enforcement of Arbitration Agreement Contained in Real Estate Contract by or Against Nonsignatory Under State Law.

Encyclopedias

18 Am. Jur. Proof of Facts 3d 559, Mortgage Broker Liability.

Forms

Federal Procedural Forms § 61:1, Statutes of Limitation, and Other Time Limits, Within United States Code.

19 West's Legal Forms § 17.9, Servicing Disclosure Statement.

19 West's Legal Forms § 17.10, Notice of Assignment, Sale, or Transfer of Servicing Rights.

Treatises and Practice Aids

Newberg on Class Actions App IX-D, Appendix IX-D. Attorney Fees--Appellant's Opening Brief.

Restatement (Third) of Property (Mortgages) § 5.5, Effect of Performance to the Transferor After Transfer of an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Obligation Secured by a Mortgage.

West's Federal Administrative Practice § 2172, Real Estate Settlement Procedures Act.

NOTES OF DECISIONS

**Actual damages**

    **Actual damages - Generally 4**
      **Actual damages - Breach of duty of good faith 6a**
      **Actual damages - Economic loss 6**
      **Actual damages - Personal injury or emotional distress 5**
    **Breach of duty of good faith, actual damages 6a**
    **Construction with other laws 1/2**
    **Economic loss, actual damages 6**
    **Fees 1a**
    **Notice of assignment 7**
    **Notice of receipt of inquiry 2**
    **Personal injury or emotional distress, actual damages 5**
    **Punitive damages 6b**
    **Qualified written request 1**
    **Time for correction of errors 3**
    **Transfer of cancelled loans 8**

1/2. Construction with other laws

Remedial scheme in Bankruptcy Code for resolving dispute between debtor and loan servicer conflicted with Real Estate Settlement Procedures Act's (RESPA) remedial scheme, and thus debtor could not use RESPA's dispute resolution provisions to resolve disagreements over amount of servicer's claim under her Chapter 13 plan. In re Nosek, D.Mass.2006, 2006 WL 3262629. Bankruptcy ☞ 2923

1. Qualified written request

Mortgagor's allegation of five instances of her sending qualified written requests to servicer of federally related mortgage loans where she did not receive a response, and allegation that servicer provided information to a consumer reporting agency within 60 days of her sending a qualified written request, were sufficient to state a claim for a violation of Cranston-Gonzales Amendments to the Real Estate Settlement Procedures Act (RESPA). Ploog v. HomeSide Lending, Inc., N.D.Ill.2002, 209 F.Supp.2d 863.

Mortgagor's letter requesting information about validity of loan and mortgage documents, but which made no inquiry as to status of mortgagor's account balance did not relate to servicing of loan and, thus, was not covered by Real Estate Settlement Procedures Act (RESPA). MorEquity, Inc. v. Naeem, N.D.Ill.2000, 118 F.Supp.2d 885, reconsideration denied 2001 WL 1426518. Consumer Credit ☞ 30

Letters sent by mortgagors to mortgage servicer in response to notice of default, notifying servicer about mortgagors' payments to prior mortgage servicer were "qualified written requests," within meaning of Real Estate Settlement and Procedures Act (RESPA); letters referenced mortgagors' names and their account number and sufficiently stated mortgagors' reasons for their belief that their account was in error. Rawlings v. Dovenmuehle Mortg., Inc., M.D.Ala.1999, 64 F.Supp.2d 1156. Consumer Credit ☞ 33.1

Buyer of carpeting secured by second mortgage on home failed to state claim under Real Estate Settlement Procedures Act (RESPA); buyer did not allege he made a "qualified written request" to seller, as required to trigger obligations under RESPA. Walker v. Michael W. Colton Trust, E.D.Mich.1999, 47 F.Supp.2d 858. Consumer Credit ☞ 30

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Letter that was received by servicer of debtor's residential mortgage loan from foreclosure prevention counselor, in which counselor had requested itemized payoff figure for debtor's loan and identified loan by its loan number and address of mortgage property, was in nature of qualified request for information under Real Estate Settlement Procedures Act (RESPA), to which loan servicer was statutorily obligated to respond; though letter did not specifically identify counselor as agent of debtor, evidence was presented that, at time letter was received, loan servicer had in its files an authorization to release information to counselor on debtor's behalf. In re Maxwell, Bkrtcy.D.Mass.2002, 281 B.R. 101. Consumer Credit ☞ 30

Letters that debtor-mortgagor wrote to junior mortgagee, questioning its calculation of his remaining debt, constituted "qualified written requests" under Real Estate Settlement Procedures Act (RESPA), and triggered mortgagee's duty under RESPA to promptly acknowledge its receipt of letters, where each letter included debtor's name and account number, thereby enabling mortgagee to identify with specificity the account at issue, and where both letters included statement of debtor's reasons for believing that errors existed with respect to his loan account and provided sufficient detail to enable mortgagee to investigate debtor's complaints. In re Tomasevic, Bkrtcy.M.D.Fla.2001, 275 B.R. 103. Consumer Credit ☞ 30

  1A. Fees

Real Estate Settlement Procedures Act (RESPA) permitted mortgage servicer to charge fee for payoff statement in response to qualified written request on its website; statutory prohibition against fees for certain statements fairly implied, absent evidence to the contrary, that types of statements not enumerated were excluded from the prohibition. Watt v. GMAC Mortg. Corp., C.A.8 (Ark.) 2006, 457 F.3d 781. Consumer Credit ☞ 30

  2. Notice of receipt of inquiry

Mortgage servicer's actions, in violating Real Estate Settlement and Procedures Act (RESPA) by failing to provide notice to mortgagors within 20 days of receiving their qualified written request, failing to take timely appropriate action in response to request to correct error in mortgagors' account, and sending mortgagors several notices of default, did not constitute wantonness under Alabama law. Rawlings v. Dovenmuehle Mortg., Inc., M.D.Ala.1999, 64 F.Supp.2d 1156. Consumer Credit ☞ 61.1

  3. Time for correction of errors

Mortgage servicer's failure to correct error in mortgagors' account within 60 days after receiving mortgagors' qualified written request violated time requirements in Real Estate Settlement and Procedures Act (RESPA), even though servicer's failure to timely correct error was unintentional and was caused by servicer's need for information from mortgagors' prior servicer. Rawlings v. Dovenmuehle Mortg., Inc., M.D.Ala.1999, 64 F.Supp.2d 1156. Consumer Credit ☞ 30

  4. Actual damages--Generally

The Cranston-Gonzales Amendments to the Real Estate Settlement Procedures Act (RESPA) intended for individual statutory damages to be capped at $1,000 for proving a pattern or practice of noncompliance, and not $1,000 for each instance, but a mortgagor can recover actual damages from a servicer of a federally related mortgage loan for each violation of the Act. Ploog v. HomeSide Lending, Inc., N.D.Ill.2002, 209 F.Supp.2d 863.

Time spent and inconvenience suffered by borrower as result of lender's violations of Real Estate Settlement Procedures Act (RESPA) constituted "actual damages" that could be recovered under RESPA, insofar as borrower could establish actual pecuniary loss. Johnstone v. Bank of America, N.A., N.D.Ill.2001, 173 F.Supp.2d 809.

"Actual damages" that mortgagor may recover as result of mortgage servicer's failure to comply with Servicer Act do not include nonpecuniary losses. Katz v. Dime Sav. Bank, FSB, W.D.N.Y.1997, 992 F.Supp. 250. Mortgages ☞ 216

While servicer of debtor's residential mortgage loan twice violated requirements of Real Estate Settlement

Procedures Act (RESPA) by failing to respond to qualified requests for information regarding debtor's loan, these two violations, without more, did not rise to level of "pattern or practice" of RESPA violations, within meaning of damages provision of the Act. In re Maxwell, Bkrtcy.D.Mass.2002, 281 B.R. 101.

5. ---- Personal injury or emotional distress, actual damages

Actual damages under the Cranston-Gonzales Amendments to the Real Estate Settlement Procedures Act (RESPA) include recovery for emotional distress. Ploog v. HomeSide Lending, Inc., N.D.Ill.2002, 209 F.Supp.2d 863.

Borrower could recover actual damages for emotional distress resulting from lender's violations of Real Estate Settlement Procedures Act (RESPA). Johnstone v. Bank of America, N.A., N.D.Ill.2001, 173 F.Supp.2d 809.

Term "actual damages" in Real Estate Settlement and Procedures Act (RESPA) provision permitting recovery of "any actual damages to borrower" encompasses mental anguish damages. Rawlings v. Dovenmuehle Mortg., Inc., M.D.Ala.1999, 64 F.Supp.2d 1156. Consumer Credit ⬭ 61.1

Mortgagor was not entitled to recover damages for emotional distress or personal injury as part of "actual damages" awardable for any violation of Servicer Act arising from servicing agent's alleged breach of workout agreement. Katz v. Dime Sav. Bank, FSB, W.D.N.Y.1997, 992 F.Supp. 250. Mortgages ⬭ 216

6. ---- Economic loss, actual damages

Mortgagor could not recover economic loss damages for servicing agent's alleged breach of contract and violation of Servicer Act in failing to honor workout agreement in absence of proof of actual pecuniary loss, such as denial of credit based on inaccurate credit reports or inability to refinance or sell his home as a result of servicer's conduct; proof of economic loss that might have befallen mortgagor because of agent's actions was insufficient. Katz v. Dime Sav. Bank, FSB, W.D.N.Y.1997, 992 F.Supp. 250. Mortgages ⬭ 216

While junior mortgagee violated the Real Estate Settlement Procedures Act (RESPA) in failing to promptly acknowledge its receipt of, or to respond to one of, qualified written requests from debtor challenging mortgagee's calculation of his remaining debt, debtor was not entitled to damages award in his favor, where only damages established by debtor was in mortgagee's failure to properly credit certain payments; although mortgagee would be required to properly credit these payments, no monetary award would be entered in favor of debtor. In re Tomasevic, Bkrtcy.M.D.Fla.2001, 275 B.R. 103. Consumer Credit ⬭ 61.1

Debtor's costs for photocopying, postage, and telephone calls were not compensable under Real Estate Settlement Procedures Act (RESPA), even if he could have established violation of Act, since debtor failed to present viable claim for economic damages. In re Tomasevic, Bkrtcy.M.D.Fla.2002, 273 B.R. 682.

6A. ---- Breach of duty of good faith, actual damages

Under Illinois law, borrower could not recover from home mortgage lender for breach of duty of good faith as result of lender's violations of Real Estate Settlement Procedures Act (RESPA), where borrower did not allege separate breach of contract claim. Johnstone v. Bank of America, N.A., N.D.Ill.2001, 173 F.Supp.2d 809.

6B. Punitive damages

Debtor could not make claim for punitive damages under Real Estate Settlement Procedures Act (RESPA), since RESPA did not provide for punitive damages and debtor did not make common law fraud claim. In re Tomasevic, Bkrtcy.M.D.Fla.2002, 273 B.R. 682.

7. Notice of assignment

RESPA provision requiring disclosure of "whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time" mandated disclosure of negotiability prior to loan's closing, not notice of transfer after

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

closing. Catencamp v. Cendant Timeshare Resort Group-Consumer Finance, Inc., C.A.7 (Wis.) 2006, 471 F.3d 780. Consumer Credit ☜ 57

Small Business Administration's (SBA) sale or assignment of referred loan was permitted without consent of borrower under Puerto Rico law, since authorization and loan agreement, mortgage note, and mortgage deeds did not contain bar to creditors' right to assign, and language of contractual agreement expressly renounced right of notice, and, further, that waiver cured any late notice of assignment under Real Estate Settlement Procedures Act (REPSA). Pramco, LLC v. Torres, D.Puerto Rico 2003, 286 F.Supp.2d 164. United States ☜ 53(8)

Real Estate Settlement Procedures Act (RESPA) provision requiring residential mortgage lender to provide advance notice to borrower before assignment of loan servicing did not apply to lender's assignment of mortgage to guarantors who had paid off defaulted loan; no servicing rights were assigned. Daw v. Peoples Bank & Trust Co., C.A.7 (Ind.) 2001, 5 Fed.Appx. 504, 2001 WL 195077, Unreported, rehearing and rehearing en banc denied. Mortgages ☜ 220

Successor in interest to borrower failed to state claim against lender under Real Estate Settlement Procedures Act (RESPA), for alleged failure to notify borrower in writing of any assignment, sale, or transfer of servicing of loan to another person, since statute governed rights and duties of borrowers and mortgage servicers, not successors in interest. Louis Fink Realty Trust v. Harrison, S.D.N.Y.2003, 2003 WL 22595555, Unreported. Consumer Credit ☜ 64.1

   8. Transfer of cancelled loans

Real Estate Settlement Procedures Act (RESPA) did not preclude bank from transferring debtor's cancelled loan to another lender. Fraley v. Ocwen Federal Bank FSB, C.A.6 (Ohio) 2001, 8 Fed.Appx. 509, 2001 WL 493408, Unreported. Consumer Credit ☜ 30

12 U.S.C.A. § 2605, 12 USCA § 2605


Current through P.L. 110-16 approved 03-28-07


                    Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



END OF DOCUMENT

Westlaw.

12 USCA § 2614                                                                                          Page 1
12 U.S.C.A. § 2614

**C**

**Effective: September 30, 1996**

UNITED STATES CODE ANNOTATED
TITLE 12. BANKS AND BANKING
**CHAPTER 27--REAL ESTATE SETTLEMENT PROCEDURES**
    **§ 2614. Jurisdiction of courts; limitations**

Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

CREDIT(S)

(Pub. L. 93-533, § 16, Dec. 22, 1974, 88 Stat. 1731; Pub. L. 98-181, Title IV, § 461(d), Nov. 30, 1983, 97 Stat. 1232; Pub.L. 104-208, Div. A, Title II, § 2103(e), Sept. 30, 1996, 110 Stat. 3009-400.)

<General Materials (GM) - References, Annotations, or Tables>

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

1974 Acts. Senate Report No. 93-866 and House Conference Report No. 93- 1526, see 1974 U.S. Code Cong. and Adm. News, p. 6546.

1983 Acts. Senate Report No. 98-275, House Conference Report No. 98-551, and Two Related Reports, see 1983 U.S. Code Cong. and Adm. News, p. 1768.

Amendments

1996 Amendments. Pub.L. 104-208, § 2103(e), substituted "section 2605, 2607, or 2608 of this title" for "section 2607 or 2608 of this title" and "within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title" for "within one year".

1983 Amendments. Pub.L. 98-181 struck out a reference to section 2605 of this title, added provision allowing action in district where violation is alleged to have occurred, and provision relating to time limitations in actions brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any State.

Effective and Applicability Provisions

1983 Acts. Amendment by Pub.L. 98-181 effective Jan. 1, 1984, see section 461(f) of Pub.L. 98-181, set out as a note under section 2602 of this title.

1974 Acts. Section effective 180 days after Dec. 22, 1974, see § 20 of Pub.L. 93-533, set out as a note under section 2601 of this title.

LIBRARY REFERENCES

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ALL-STATE LEGAL®
APPENDIX
FOUR

American Digest System

    Consumer Credit ☞64.

    Key Number System Topic No. 92B.

## RESEARCH REFERENCES

ALR Library

142 ALR, Fed. 511, Construction and Application of Real Estate Settlement Procedures Act of 1974 (12 U.S.C.A. § § 2601).

89 ALR, Fed. 514, Modern Status of Federal Civil Procedure Rule 54(B) Governing Entry of Judgment on Multiple Claims.

27 ALR, Fed. 407, Construction and Application of Provision of Rule 9(B), Federal Rules of Civil Procedure, that Circumstances Constituting Fraud or Mistake be Stated With Particularity.

4 ALR 6th 509, Estoppel of Insurer to Assert Statute-Of-Limitations Defense--Homeowners' Insurers.

37 ALR 927, Title of Statutes as an Element Bearing Upon Their Construction.

Encyclopedias

18 Am. Jur. Proof of Facts 3d 559, Mortgage Broker Liability.

19 Am. Jur. Proof of Facts 3d 477, Lender Liability for Negligent Misrepresentation Made to Business Loan Applicant.

62 Am. Jur. Proof of Facts 3d 197, Proof of Incompetency.

4 Am. Jur. Trials 441, Solving Statutes of Limitation Problems.

44 Am. Jur. Trials 613, Defense of Lender Liability Litigation.

Am. Jur. 2d Consumer and Borrower Protection § 234, Jurisdiction; Limitations.

Forms

Federal Procedural Forms § 61:1, Statutes of Limitation, and Other Time Limits, Within United States Code.

Treatises and Practice Aids

Federal Procedure, Lawyers Edition § 15:61, Enforcement; Limitation of Actions; Jurisdiction.

NOTES OF DECISIONS

   **Bankruptcy court jurisdiction 7**
   **Class actions 13**
   **Equitable tolling 4**
   **Fraud, pleadings 6**
   **Injunction 11**

   **Limitations 3**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 USCA § 2614
12 U.S.C.A. § 2614

**Personal jurisdiction 8**
**Persons entitled to maintain action 12**
**Pleadings 5, 6**
    **Pleadings - Generally 5**
    **Pleadings - Fraud 6**
**Questions considered 9**
**Removal of actions 2**
**Summary judgment 10**
**Transactions within section 1**

**1. Transactions within section**

District Court had subject matter jurisdiction, pursuant to RESPA, over action brought by former owners of a house for which mortgage brokers allegedly fraudulently induced them to transfer title to the property to certain others, against purchaser of home at a mortgage foreclosure sale, mortgagee, mortgagors, and mortgage broker, seeking a temporary restraining order and preliminary injunction enjoining purchaser from commencing eviction proceedings against them in state court, although the acts that allegedly violated RESPA occurred beyond RESPA's one year statute of limitations; statute of limitations was an affirmative defense that went to the merits of the case, and did not divest the court of subject matter jurisdiction. Calvagno v. Bisbal, E.D.N.Y.2006, 430 F.Supp.2d 95. Federal Courts ☜ 192

Upon dismissal of majority of borrower's federal claims under Real Estate Settlement Procedures Act (RESPA) and Home Owner's Equity Protection Act (HOEPA), court would decline to exercise supplemental jurisdiction, as matter of comity and promotion of justice, over state law claims that substantially predominated over claims upon which jurisdiction was originally invoked. Morrison v. Brookstone Mortg. Co., Inc., S.D.Ohio 2005, 415 F.Supp.2d 801. Federal Courts ☜ 18

Federal district court had jurisdiction over subject matter arising from mortgage transaction, in that the principal use and purpose of the federally related mortgage loan was to obtain a residential dwelling, and thus the transaction was within jurisdiction provisions of this section and section 1640 of Title 15. McCarrick v. Polonia Federal Sav. and Loan Ass'n, E.D.Pa.1980, 502 F.Supp. 654. Federal Courts ☜ 192

**2. Removal of actions**

Where action was removed to federal court on the basis of claim under this chapter but plaintiff subsequently admitted that complaint did not assert expressly or impliedly cause of action under this chapter and where no other basis of federal jurisdiction affirmatively appeared, matter had to be remanded to state court for lack of jurisdiction, despite defendants' argument that court should contrive cause of action under this chapter and then dismiss it. Commonwealth Land Title Ins. Co. v. Berks Title Ins. Co., E.D.Pa.1981, 508 F.Supp. 921. Removal Of Cases ☜ 102

Suit brought under this chapter was subject to removal from state to federal court. Sicinski v. Reliance Funding Corp., S.D.N.Y.1978, 461 F.Supp. 649.

**3. Limitations**

Real estate purchasers' action against title insurer for alleged violations of the anti-kickback and fee-splitting provisions of the Real Estate Settlement Procedures Act (RESPA) in connection with their purchase of title insurance accrued, for limitations purposes, on date of real estate closing, which was date on which purchasers paid for title insurance, rather than on date that insurer paid agent for credit earned at closing generated by sale of insurance; both provisions provided that action could be brought within one-year of date of occurrence of the violation, indicating a single triggering date, provisions were designed to remedy potential for unnecessarily high closing charges, allowing suit based upon later payment to agents could permit double recovery for single violation, accrual at date of payment would allow statute of limitations to regenerate itself, and date of payment to agent would be unknown to purchasers. Snow v. First American Title Ins. Co., C.A.5 (Miss.) 2003, 332 F.3d 356. Limitation Of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Actions ☞ 58(1)

Statute of limitations under Real Estate Settlement Procedures Act (RESPA) applied to restitution action brought by escrow agent's judgment creditor to recover funds that agent paid to mortgage lender for purported debt, arising from rental fees for use of lender's office which creditor claimed were improper kickbacks under RESPA. Lawyers Title Ins. Corp. v. Dearborn Title Corp., C.A.7 (Ill.) 1997, 118 F.3d 1157, on remand 22 F.Supp.2d 820. Consumer Credit ☞ 65

Claim under Real Estate Settlement Procedures Act, which accrued more than three years prior to commencement of action, was jurisdictionally barred by one-year time limitation applicable to Act. Hardin v. City Title & Escrow Co., C.A.D.C.1986, 797 F.2d 1037, 254 U.S.App.D.C. 370. Consumer Protection ☞ 37

#### 4. Equitable tolling

Whether statute of limitations applicable to mortgagors' claims under TILA and RESPA against purchaser of their second mortgage notes was equitably tolled or whether acts of purchaser justified equitable estoppel could not be resolved on motion to dismiss mortgagors' claims for failure to state a claim. Reiser v. Residential Funding Corp., C.A.7 (Ill.) 2004, 380 F.3d 1027, on remand 2005 WL 3934728, certiorari denied 125 S.Ct. 1301, 543 U.S. 1147, 161 L.Ed.2d 107. Federal Civil Procedure ☞ 1831

Filing of original complaint as both a plaintiff and defendant class action did not toll running of one-year statute of limitations for RESPA claims as to new defendants, where new defendants were not named defendants until more than a year after the alleged RESPA violations occurred and did not receive any notice of the action until they were served over three years after the alleged violation date. Robinson v. Fountainhead Title Group Corp., D.Md.2006, 447 F.Supp.2d 478. Limitation Of Actions ☞ 126.5

Statute of limitations for bringing suit pursuant to Real Estate Settlement Procedures Act's (RESPA) anti-kickback provision did not create jurisdictional bar, and thus statutory period was subject to claim of equitable tolling against party asserting statute of limitations defense. Mullinax v. Radian Guar. Inc., M.D.N.C.2002, 199 F.Supp.2d 311. Limitation Of Actions ☞ 104.5

Statute of limitations for Real Estate Settlement Procedures Act (RESPA) was subject to equitable tolling. Pedraza v. United Guar. Corp., S.D.Ga.2000, 114 F.Supp.2d 1347. Limitation Of Actions ☞ 104.5

Statute of limitations under Real Estate Settlement Procedures Act (RESPA) was subject to equitable tolling, even though statute did not expressly so provide; allowing statute to run during period of fraudulent concealment would be inconsistent with Congressional purpose of encouraging greater disclosure in real estate closings. Kerby v. Mortgage Funding Corp., D.Md.1998, 992 F.Supp. 787. Limitation Of Actions ☞ 104(1); Limitation Of Actions ☞ 104.5

Title insurance company's failure to affirmatively disclose existence of alleged kickbacks to attorneys for referral services was insufficient alone to be fraudulent concealment and invoke equitable tolling for a claim under the Real Estate Settlement Procedures Act. Moll v. U.S. Life Title Ins. Co. of New York, S.D.N.Y.1988, 700 F.Supp. 1284, reconsideration denied. Limitation Of Actions ☞ 104(2)

Purchasers of real estate who applied for title insurance failed to show any continuous tortious conduct of insurer related to Real Estate Settlement Procedures Act so as to toll applicable one-year statute of limitations, even assuming that statute was subject to equitable tolling. Moll v. US Life Title Ins. Co. of New York, S.D.N.Y.1987, 654 F.Supp. 1012, on reconsideration 700 F.Supp. 1284, reconsideration denied. Limitation Of Actions ☞ 55(6)

#### 5. Pleadings—Generally

Complaint against mortgagor and substitute trustees on applicable deed of trust failed to satisfy federal civil rule's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 USCA § 2614
12 U.S.C.A. § 2614

requirement of short and plain statement of claim, where complaint lacked any factual allegations supporting asserted federal and state causes of action and did not specify which provisions of multifaceted federal statutes were violated by defendants, although complaint alleged violations of the Real Estate Settlement Procedures Act (RESPA), the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, and several common law claims. Booker v. Washington Mut. Bank, FA, M.D.N.C.2005, 375 F.Supp.2d 439. Federal Civil Procedure ☜ 1801

Home purchasers' complaint, alleging injury as result of vendor's undisclosed referral agreements with providers of real estate settlement services, was sufficient to state cause of action for violation of Real Estate Settlement Procedures Act. Miller v. Weitzer Panache Ltd., S.D.Fla.1990, 751 F.Supp. 980. Consumer Protection ☜ 8

Allegations that mortgage lender failed to make written disclosures to borrowers of broker fees stated claim for lender's violation of Washington's Consumer Loan Act (CLA), TILA, and the Real Estate Settlement Procedures Act (RESPA), regardless of whether verbal disclosures of the fees were made. Pierce v. Novastar Mortg., Inc., W.D.Wash.2006, 2006 WL 3422064. Consumer Credit ☜ 51

6. ---- Fraud, pleadings

Mortgagor's complaint in action against loan officer for fraud, conspiracy, and violations of Kansas Consumer Protection Act, and Real Estate Settlement Procedures Act (RESPA) properly itemized mortgagor's alleged damages per claim, and put loan officer on notice of mortgagor's claim for damages; although complaint did not state particular damage amount per claim, each claim contained prayer for judgment of amount in excess of $75,000. Welch v. Centex Home Equity Co., LLC, D.Kan.2003, 262 F.Supp.2d 1263. Conspiracy ☜ 18; Consumer Credit ☜ 66; Consumer Protection ☜ 38; Fraud ☜ 47

Consumers' allegations that mortgage insurer's kickback scheme could not have reasonably been discovered and that insurer prevented them from discovering facts giving rise to their Real Estate Settlement Procedures Act (RESPA) claim failed to satisfy requirement to plead with particularity the circumstances of fraudulent concealment, so as to warrant equitable tolling of limitations period; consumers did not identify insurer's conduct justifying equitable tolling and provided no basis for conclusion that they were reasonably ignorant of insurer's conduct. Pedraza v. United Guar. Corp., S.D.Ga.2000, 114 F.Supp.2d 1347. Federal Civil Procedure ☜ 636

Home purchasers' complaint, alleging injury as result of vendors' undisclosed referral agreements with providers of real estate settlement services, pled fraud with sufficient specificity. Miller v. Weitzer Panache Ltd., S.D.Fla.1990, 751 F.Supp. 980. Federal Civil Procedure ☜ 636

7. Bankruptcy court jurisdiction

Cause of action brought by Chapter 13 debtor under the Real Estate Settlement Procedures Act (RESPA), based on mortgagee's postpetition servicing of second mortgage loan, was not one over which bankruptcy court could exercise even "related to" jurisdiction, as postpetition dispute between debtor and mortgagee that did not impact or impair administration of bankruptcy case. In re Tomasevic, Bkrtcy.M.D.Fla.2002, 279 B.R. 358.

8. Personal jurisdiction

Nonresident holding company, which owned stock in various companies, including in-state title and guaranty company, did not have sufficient minimum contacts with Arkansas to support exercise of specific personal jurisdiction over it, under due process clause, in action alleging violations of RESPA; holding company was neither present, nor doing business, in Arkansas, and it had no place of business, mailing address, bank accounts, or personal property in Arkansas. Epps v. Stewart Information Services Corp., C.A.8 (Ark.) 2003, 327 F.3d 642. Constitutional Law ☜ 305(6); Federal Courts ☜ 82

9. Questions considered

Court would not consider borrower's claim that Small Business Administration (SBA) violated notice provisions of Real Estate Settlement Procedures Act (RESPA), for failure to put SBA on notice of claim, since claim was not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

introduced to court as part of complaint, and claim was presented for first time in borrower's opposition to SBA's motion to dismiss. Pramco, LLC v. Torres, D.Puerto Rico 2003, 286 F.Supp.2d 164. Consumer Credit ⊂⟶ 66

### 10. Summary judgment

Summary judgment was still premature on Real Estate Settlement Procedures Act (RESPA) claim arising from lender's alleged failure to timely and properly respond to consumer's inquiry letter, pending completion of discovery, given potential overlap between RESPA claim and Truth in Lending Act (TILA) claim that depended upon disputed factual issue of whether consumer's account ever had credit balance in excess of $1.00. Mazzei v. Money Store, S.D.N.Y.2004, 349 F.Supp.2d 651. Federal Civil Procedure ⊂⟶ 2553

Issue of whether mortgage loan was federally related involved fact question that could not be resolved on motion to dismiss borrowers' claim against lender for violation of Real Estate Settlement Procedures Act (RESPA). Smith v. Argent Mortg. Co., LLC., D.Colo.2006, 237 F.R.D. 436. Federal Civil Procedure ⊂⟶ 1831

### 11. Injunction

Former owners of a house, of which mortgage brokers allegedly fraudulently induced them to transfer title to certain others, showed likelihood of success on the merits in action against purchaser of house at a mortgage foreclosure sale, and others, as required for preliminary injunction to enjoin purchaser from commencing eviction proceedings against former owners in state court, where former owners alleged a widespread fraud perpetrated by not only the mortgage brokers, but also by banks and other mortgage and real estate entities that had a hand in the suspect transaction, that the fraudulent acts also may have violated federal law under RESPA, and that the purchaser may not have been a bona fide or good faith purchaser. Calvagno v. Bisbal, E.D.N.Y.2006, 430 F.Supp.2d 95. Mortgages ⊂⟶ 544(2)

### 12. Persons entitled to maintain action

Mortgagor had standing to bring claim against title company for violation of RESPA section which prohibited acceptance of a fee, kickback, or thing of value incident to or a part of a real estate settlement service, based on mortgagor's payment to business affiliated with title company for title insurance binder preparation and title insurance, where mortgagor alleged that she was overcharged for settlement services, and that the challenged fee presented the possibility for other harm, including a lack of impartiality in the referral and a reduction of competition between settlement service providers. Robinson v. Fountainhead Title Group Corp., D.Md.2006, 447 F.Supp.2d 478. Consumer Credit ⊂⟶ 64.1

### 13. Class actions

Typicality requirement for class certification was satisfied in suit by mortgagors alleging that provider of mortgage loan closing services and mortgage brokerage violated the Real Estate Settlement Procedures Act (RESPA) by using illegitimate affiliated business arrangements (ABAs) to overcharge borrowers and to pay kickbacks in exchange for settlement service referrals, provided class was limited to those mortgagors who whose loan documents included a charge for or payment to particular ABA involved in named plaintiffs' loan transaction. Benway v. Resource Real Estate Services, LLC, D.Md.2006, 2006 WL 3832803. Federal Civil Procedure ⊂⟶ 182.5

12 U.S.C.A. § 2614, 12 USCA § 2614

Current through P.L. 110-16 approved 03-28-07

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

George D. McCARLEY,      )
                                )

      Plaintiff,       )

                                )   Civil Action No. 3:06-cv-00091-MEF

v.                          )       Lead Case

                                )

HOUSEHOLD FINANCE     )
CORPORATION III, et al.,     )

                                )

      Defendants.    )

### AFFIDAVIT

**STATE OF FLORIDA**      )
                                )
**HILLSBOROUGH COUNTY**  )

      The undersigned, Dana J. St.Clair-Hougham, being first duly sworn, deposes and says as follows:

      1.    I am a compliance officer for HSBC Mortgage Services, Inc. I have reviewed the records of HSBC Mortgage Services, Inc. concerning George McCarley and I have personal knowledge of the matters stated herein.

      2.    In 2000, HSBC Mortgage Services, Inc., whose name was then Household Financial Services, Inc., began to service the mortgage (the "Mortgage") that secured the loan (the "Loan"), which is the subject of the above



styled action. The Loan was made to George McCarley by HomeSense Financial Corp. of Alabama.

3.    HSBC    Finance    Corporation,    Household    Finance Corporation III, Household International, Inc., and HSBC-GR Corp. did not make the Loan and have never owned or serviced the Loan or Mortgage.

Further affiant saith not.

_Dana J. St.Clair-Hougham_

Sworn to and subscribed before me on this the _10_ day of April, 2007.

VOSHA C WATKINS-JONES
MY COMMISSION # DD569398
EXPIRES: June 28, 2010
(407) 398-0153    Florida Notary Service.com

[NOTARIAL SEAL]

Notary Public
My commission expires: _June 28, 2010_