PLAINTIFF

EXHIBITS

&

APPENDIX

Page 1

12 U.S.C.A. § 2605

C

**Effective: September 30, 1996**

UNITED STATES CODE ANNOTATED
TITLE 12. BANKS AND BANKING
**CHAPTER 27--REAL ESTATE SETTLEMENT PROCEDURES**
→ **§ 2605. Servicing of mortgage loans and administration of escrow accounts**

(a) Disclosure to applicant relating to assignment, sale, or transfer of loan servicing

Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding.

(b) Notice by transferor of loan servicing at time of transfer

  (1) Notice requirement

Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.

  (2) Time of notice

    (A) In general

Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

    (B) Exception for certain proceedings

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

      (i) termination of the contract for servicing the loan for cause;

      (ii) commencement of proceedings for bankruptcy of the servicer; or

      (iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

    (C) Exception for notice provided at closing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

(3) Contents of notice

The notice required under paragraph (1) shall include the following information:

**(A)** The effective date of transfer of the servicing described in such paragraph.

**(B)** The name, address, and toll-free or collect call telephone number of the transferee servicer.

**(C)** A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(D)** The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.

**(E)** The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

**(F)** Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage.

**(G)** A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

(c) Notice by transferee of loan servicing at time of transfer

(1) Notice requirement

Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer.

(2) Time of notice

(A) In general

Except as provided in subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).

(B) Exception for certain proceedings

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

  (i) termination of the contract for servicing the loan for cause;

  (ii) commencement of proceedings for bankruptcy of the servicer; or

  (iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

 (C) Exception for notice provided at closing

The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.

 (3) Contents of notice

Any notice required under paragraph (1) shall include the information described in subsection (b)(3) of this section.

(d) Treatment of loan payments during transfer period

During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

(e) Duty of loan servicer to respond to borrower inquiries

 (1) Notice of receipt of inquiry

  (A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

  (B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 U.S.C.A. § 2605

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure; and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

(2) Class actions

In the case of a class action, an amount equal to the sum of--

**(A)** any actual damages to each of the borrowers in the class as a result of the failure; and

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member of the class, except that the total amount of damages under this subparagraph in any class action may not exceed the lesser of--

   **(i)** $500,000; or

   **(ii)** 1 percent of the net worth of the servicer.

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

(4) Nonliability

A transferor or transferee servicer shall not be liable under this subsection for any failure to comply with any requirement under this section if, within 60 days after discovering an error (whether pursuant to a final written examination report or the servicer's own procedures) and before the commencement of an action under this subsection and the receipt of written notice of the error from the borrower, the servicer notifies the person concerned of the error and makes whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid.

(g) Administration of escrow accounts

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

(h) Preemption of conflicting State laws

Notwithstanding any provision of any law or regulation of any State, a person who makes a federally related mortgage loan or a servicer shall be considered to have complied with the provisions of any such State law or regulation requiring notice to a borrower at the time of application for a loan or transfer of the servicing of a loan if such person or servicer complies with the requirements under this section regarding timing, content, and procedures for notification of the borrower.

(i) Definitions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

For purposes of this section:

(1) Effective date of transfer

The term "effective date of transfer" means the date on which the mortgage payment of a borrower is first due to the transferee servicer of a mortgage loan pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan.

(2) Servicer

The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan). The term does not include--

(A) the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold, or transferred pursuant to section 1823(c) of this title or as receiver or conservator of an insured depository institution; and

(B) the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Resolution Trust Corporation, or the Federal Deposit Insurance Corporation, in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--

(i) termination of the contract for servicing the loan for cause;

(ii) commencement of proceedings for bankruptcy of the servicer; or

(iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(3) Servicing

The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

(j) Transition

(1) Originator liability

A person who makes a federally related mortgage loan shall not be liable to a borrower because of a failure of such person to comply with subsection (a) of this section with respect to an application for a loan made by the borrower before the regulations referred to in paragraph (3) take effect.

(2) Servicer liability

A servicer of a federally related mortgage loan shall not be liable to a borrower because of a failure of the servicer to perform any duty under subsection (b), (c), (d), or (e) of this section that arises before the regulations

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 U.S.C.A. § 2605

referred to in paragraph (3) take effect.

(3) Regulations and effective date

The Secretary shall, by regulations that shall take effect not later than April 20, 1991, establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2) of this section.

Current through P.L. 110-83 approved 09-20-07

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12 U.S.C.A. § 2614

**Effective: September 30, 1996**

UNITED STATES CODE ANNOTATED
TITLE 12. BANKS AND BANKING
**CHAPTER 27--REAL ESTATE SETTLEMENT PROCEDURES**
→ **§ 2614. Jurisdiction of courts; limitations**

Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

Current through P.L. 110-83 approved 09-20-07

Copr. © 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://caselaw.lp.findlaw.com/scripts/getcase.pl?court=3rd&navby=case&no=981972p

## U.S. 3rd Circuit Court of Appeals

## RAMADAN v CHASE MANHATTAN CORP

Filed September 22, 1998

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
No. 97-5282
SUSANNE H. RAMADAN, on her own behalf and on behalf of all others similarly situated,
Appellant

v.

THE CHASE MANHATTAN CORPORATION; HYUNDAI MOTOR FINANCE CO.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 96-03791)
Argued June 8, 1998
Before: SCIRICA and NYGAARD, Circuit Judges, and KATZ, District Judge* (Opinion Filed: September 22, 1998)
Andrea Bierstein, Esq. (Argued) Kaufman Malchman Kirby & Squire 919 Third Avenue, 11th Floor New York, NY 10022
*Honorable Marvin Katz, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Robert J. Berg Bernstein, Leibhard & Lifshitz One Bridge Plaza, Suite 400 Fort Lee, NJ 07024

Counsel for Appellant
Andrew P. Napolitano, Esq. (Argued) Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross One Riverfront Plaza Newark, NJ 07102
Counsel for Appellee Chase Manhattan Corp.
Walter J. Fleischer, Jr., Esq. (Argued) Shanley & Fisher 131 Madison Avenue Morristown, NJ 07962-1979
Counsel for Appellee Hyundai Motor Finance Co.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

Susanne H. Ramadan brought a federal claim under the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., and pendent state law claims against Chase Manhattan Corp. and Hyundai Motor Finance Co. alleging that she was given false financing disclosures when she purchased an automobile. The district court granted defendants' motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(l). We will reverse.

I.

The essential facts are undisputed. On May 6, 1993, Ramadan purchased a 1990 Hyundai Excel automobile from Bob Ciasulli Hyundai, Inc., for $4,041.04. She also purchased an extended warranty contract for $998. Ramadan financed the entire sum through a Retail Install Contract with Ciasulli. Ciasulli immediately assigned the loan to defendants Hyundai Motor Finance Co. and Chemical Bank, N.A.1

Ramadan signed three copies of the Retail Install Contract. Each copy itemized the $998 charge for the warranty as being paid to a third party. This breakdown is mandated by 15 U.S.C. § 1638(a)(2)(B)(iii),

1

which requires a creditor to disclose to a borrower "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person." Ramadan alleges that only a portion of the $998 charge for the warranty went to the third party to pay for the warranty, while Ciasulli pocketed the rest as a commission or finder's fee. Because of the inflated warranty charge, Ramadan alleges she overpaid for the warranty and paid additional interest on the commensurately inflated loan principal.

Ramadan did not commence this action until August 2, 1996. She claims that the inaccurate disclosure of amounts paid for the warranty violated the Truth in Lending Act ("TILA"). Hyundai and Chase filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (6), arguing that the district court lacked subject matter jurisdiction over the claim because Ramadan had filed her complaint after the applicable one-year time limit contained within TILA. See 15 U.S.C. § 1640(e). Ramadan contended that her complaint was timely because the limitation period was tolled during the time when the defendants concealed the true cost of the warranty. The district court granted the motion to dismiss solely under Rule 12(b)(1), finding that the one-year limitation period in § 1640(e) is a jurisdictional provision, and therefore not subject to equitable tolling. See Ramadan v. Chase Manhattan Corp., 973 F. Supp. 456 (D.N.J. 1997). Our review of federal jurisdiction is plenary. See Stehney v. Perry, 101 F.3d 925, 929 (3d Cir. 1996).

II.

The sole issue on appeal is whether equitable principles can apply to toll the limitation period contained in § 1640(e) of TILA. The answer turns on a determination of whether the limitation period is jurisdictional or merely an ordinary statute of limitations engrafted upon a separate jurisdictional grant. A limitation period is not subject to equitable tolling if it is jurisdictional in nature. See, e.g., Shendock v. Director, Office of Workers' Compensation, 893 F.2d 1458, 1466-67 (3d Cir. 1990).

TILA requires lenders to make certain disclosures to borrowers and gives borrowers a civil cause of action against creditors who violate these disclosure provisions. See 15 U.S.C. § 1640. Subsection (e) grants jurisdiction over such claims to federal and state courts and imposes a one-year time limitation for bringing actions:

**(e) Jurisdiction of courts; limitation on actions;**

**State attorney general enforcement**

Any action under this section may be brought in any

United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

Id. § 1640(e).

The Courts of Appeals for the Sixth and Ninth Circuits have held that the statute of limitation under § 1640(e) is not jurisdictional and can be equitably tolled. See King v. California, 784 F.2d 910 (9th Cir. 1986); Jones v. TransOhio Savings Ass'n, 747 F.2d 1037 (6th Cir. 1984). The Court of Appeals for the District of Columbia Circuit, however, has indicated a contrary view in dicta. See Hardin v. City Title & Escrow Co., 797 F.2d 1037 (D.C. Cir. 1986).

When determining whether a limitation period is jurisdictional, the Supreme Court has stated that while several factors must be examined, the main purpose of the inquiry is to discover "whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." Burnett v. New York Central R.R. Co., 380 U.S. 424, 427, 85 S. Ct. 1050, 1054 (1965). As we have previously recognized, "attachment of the label 'jurisdiction' to a statute's filing requirements without examination of its language and structure, as well as the congressional policy underlying it, would be an abdication of our duty to interpret the language of a statute in accordance with Congress's intent in passing it." Shendock, 893

2

F.2d at 1462; see also Zipes v. Trans World Airlines, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982); Burnett, 380 U.S. at 427, 85 S. Ct. at 1054.

The King and Jones decisions followed the analytical framework contained in Burnett. In Burnett, the plaintiff brought a timely claim against a railroad in state court under the Federal Employers' Liability Act. However, the plaintiff filed the action in the wrong venue, and his claim was dismissed. When the plaintiff refiled the claim eight days later in the proper federal court, it was dismissed again because the suit was filed after the three-year statute of limitation contained in 45 U.S.C. § 56 had passed. The Court of Appeals for the Sixth Circuit affirmed the dismissal on the grounds that the time limitation was "substantive," not "procedural." The Supreme Court reversed and held that the timely filing in the state court tolled the statute of limitations as to the federal action. The Court stated,

The basic question to be answered in determining whether . . . a statute of limitations is to be tolled, is one "of legislative intent whether the right shall be enforceable . . . after the prescribed time." Classification of such a provision as "substantive" rather than "procedural" does not determine whether or under what circumstances the limitation period may be extended.

Burnett, 380 U.S. at 426-27, 85 S. Ct. at 1053-54 (citations and footnote omitted). To determine congressional intent, the Court looked to "the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act." Id. at 427, 85 S. Ct. at 1054.

Based on the reasoning in Burnett, the Courts of Appeals in Jones and King held that equitable tolling would further the congressional purpose underlying TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. Those courts found that the time period was not jurisdictional and allowed the use of equitable principles to toll the limitations period in § 1640(e).

In Jones, the court noted that several factors supported its conclusion. First, the court argued that TILA, as a remedial statute, should be construed liberally in favor of the consumer. See Jones, 747 F.2d at 1040. Second, the court noted that the remedial scheme of the Act was to create a system of private attorneys general and that, therefore, a technical reading would be "particularly inappropriate." Id. (citations omitted). Third, the court observed that § 1640(e) is not the sole provision granting jurisdiction to the district courts, but that it must be read together with 28 U.S.C. § 1337. Id. at 1040-41. The Jones court concluded that "[o]nly if Congress clearly manifests its intent to limit the federal court's jurisdiction will [the court] be precluded from addressing allegations of fraudulent concealment which by their very nature, and if true, serve to make compliance with the limitations period imposed by Congress an impossibility." Id. at 1041.

This methodology is supported by the analysis used in a post-Burnett Supreme Court case, Zipes v. Trans World Airlines, 455 U.S. at 385. Zipes concerned alleged sex discrimination by TWA against female flight attendants. The Court of Appeals for the Seventh Circuit held that since the flight attendants had not filed a complaint with the Equal Employment Opportunity Commission within the statutory time limit, and since that time limitation was a jurisdictional prerequisite, approximately ninety-two percent of the female flight attendants were barred from suing. The Supreme Court reversed, holding that timely filing was not a jurisdictional prerequisite, "but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393, 102 S. Ct. at 1132. Like the Court in Burnett, the Zipes Court examined several factors when making its determination. It looked to the structure of the act, the underlying policy of the act, and prior federal case law. Id. at 392-98, 102 S. Ct. at 1132-35.

A.

The purpose underlying TILA is "to assure meaningful disclosure of credit terms . . . and to protect the consumer against inaccurate and unfair" practices. 15 U.S.C. § 1601. Thus Congress enacted TILA to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or otherwise confusing practices. As the Burnett Court noted, the main inquiry is whether allowing tolling of the statute of limitations is consistent with this policy. We believe that it is.

First, it must be noted that TILA is a remedial statute and should be construed liberally in favor of the consumer. See Johnson v. McCrackin-Sturman Ford, Inc., 527 F.2d 257, 262 (3d Cir. 1975). Allowing lenders to violate TILA, but avoid liability if they successfully concealed the violation from the debtor for a year, would undermine the core remedial purpose of TILA. As the Supreme Court recognized years ago, "[t]o hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make

3

http://caselaw.lp.findlaw.com/scripts/getcase.pl?court=3rd&navby=case&no=981972p

the law which was designed to prevent fraud the means by which it is made successful and secure." Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349 (1874) (applying equitable tolling to Bankruptcy Act of 1874). Disallowing equitable tolling in § 1640(e) would allow lenders to avoid liability through intentionally fraudulent actions using a statute designed to prohibit that same conduct.
B.
The structure and language of the statute also provide insight into the intent of Congress. In Zipes, the Supreme Court's examination revealed that the provision granting district courts jurisdiction . . . contain[ed] no reference to the timely-filing requirement. The provision specifying the time for filing charges with the EEOC appear[ed] as an entirely separate provision, and it [did] not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.
Id. at 394, 102 S. Ct. at 1133 (footnotes omitted). Unlike in Zipes, the limitation here is contained in the same statutory provision as the grant of jurisdiction. In Burnett, the Court downplayed the importance of this distinction, stating, "[T]he fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled."2 380 U.S. at 427 n.2, 85 S. Ct. at 1054 n.2.
In Hardin v. City Title & Escrow, the Court of Appeals for the District of Columbia Circuit determined whether a time limitation within the Real Estate Settlement Procedures Act ("RESPA") was jurisdictional in nature. The court examined § 1640(e) of TILA for comparison, concentrating on the language of the statute to discern the intent of Congress.3

In doing so, the court concluded that "[b]ecause the time limitation . . . is an integral part of the same sentence that creates federal and state court jurisdiction, it is reasonable to conclude that Congress intended thereby to create a jurisdictional time limitation." Hardin, 797 F.2d at 1039. The court concluded that since "jurisdictional provisions in federal statutes are to be strictly construed, . . .[and w]here a time limitation is jurisdictional, it must be strictly construed and will not be tolled or extended on account of fraud[ulent concealment]." Id. at 1040.

The Seventh Circuit recently declined to follow Hardin, concluding that it was inconsistent with Supreme Court precedent and the "particular[ly] relevan[t]" cases of Jones and King. Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1166-1167 (7th Cir. 1997) (allowing equitable tolling in RESPA case); see also Kerby v. Mortgage Funding Corp., 992 F. Supp. 787 (D. Md. 1998) (allowing equitable tolling in RESPA and § 1640(e) case); Moll v. U.S. Life Title Ins. Co. of N.Y., 700 F. Supp. 1284 (S.D.N.Y. 1988) (allowing equitable tolling in RESPA case). Indeed, as Lawyers Title indicated, although states are more likely to treat their statutes of limitations as jurisdictional, "periods of limitations in federal statutes . . . are universally regarded as nonjurisdictional. . . . Only rules limiting the commencement of actions against the United States have been given the `jurisdictional' treatment." Lawyers Title, 118 F.3d at 1166.
Appellee Chase also argues that by excluding recoupment and set-off claims from the operation of § 1640(e), Congress demonstrated its intention not to allow any other exceptions to the time period. We think Houghton v. Insurance Crime Prevention Institute, 795 F.2d 322 (3d Cir. 1986), a case construing a very similar provision of the Fair

Credit Reporting Act, is instructive. The section at issue there provided in pertinent part:

An action to enforce any liability . . . may be brought within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this subchapter, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.
15 U.S.C. § 1681p. In Houghton, we determined that the discovery rule, which tolls the running of statutes of limitation while a plaintiff is duly unaware of a violation did not apply to § 1681p. We noted that statutes of limitation, whether substantive or procedural, could be tolled by the discovery rule. See Houghton, 795 F.2d at 324-25. Citing Burnett, we reiterated our obligation to determine whether tolling was consistent with the congressional purpose. See id. at 325 (citing Burnett, 380 U.S. at 426, 85 S. Ct. at 1053). We then concluded that since Congress explicitly provided for one exception to the statute of

4

limitations, we would not presume the intent to allow others. See id. We did not construe the time period as jurisdictional.

Chase points to the similarity between § 1640(e) and § 1681p to argue that Congress knew how to create equitable exceptions to the time period. By not doing so in § 1640(e), Chase asserts, Congress did not intend equitable tolling principles to apply. This argument, however, contradicts a well-established principle of law that equitable tolling doctrines are "read into every federal statute of limitation." Holmberg v. Armbrecht, 327 U.S. 392, 396-97, 66 S. Ct. 582, 585 (1946). This strong presumption may only be rebutted if "Congress expressly provides to the contrary in clear and unambiguous language." Atlantic City Elec. Co. v. General Elec. Co., 312 F.2d 236, 241 (2d Cir. 1962). Therefore, by not explicitly limiting the allowable equitable tolling exceptions as they did in § 1681p, it is much more likely that Congress anticipated that courts would apply traditional equitable tolling principles as they do in all other statutes where there is no explicit limitation to their application.

Although the structure of § 1640(e) could support an argument that the time limitation is jurisdictional, when looked at in light of the underlying policy of TILA and case law, it becomes clear that the time limitation is not intended to operate jurisdictionally. If Congress had intended otherwise, they could have explicitly linked the expiration of jurisdiction to the expiration of the statute of limitation. They did not, therefore, we will read equitable tolling into the statute.

C.

Finally, the language and analysis of our prior case law is consistent with the conclusion that § 1640(e) is not a jurisdictional limitation but rather in the nature of a statute of limitations and amenable to tolling.

In Smith v. Fidelity Consumer Discount Co., 898 F.2d 896 (3d Cir. 1988), the parties whose claims were asserted past the time limit did not argue for the application of any equitable tolling principles under TILA. We did, however, refer to the time limit in § 1640(e) as a "statute of limitation." Id. at 903 & n.6. While informative, this unexplained reference in dicta is by no means dispositive. In Zipes, the Supreme Court noted that its previous decisions describing the time limitation for filing EEOC charges as jurisdictional were not dispositive because the nature of the time limit was not at issue in those cases and other decisions had identified the provision as a statute of limitation.

Our decision in Bartholomew v. Northampton National Bank of Easton, 584 F.2d 1288 (3d Cir. 1978), provides more guidance. In Bartholomew, the plaintiff claimed that two equitable tolling doctrines applied. 584 F.2d 1288, 1296-97 (3d Cir. 1978). We reviewed the record and held that there was "no arguable basis . . . for plaintiff's . . . contention" and that the facts did "not, as a matter of law, constitute such conduct that would estop the banks from raising the bar of the statute of limitations." Id. at 1297. Although we held that equitable tolling did not apply, the simple fact that we analyzed whether equitable principles would apply is important. In Zipes, the Court buttressed its conclusion that the time limitation was not jurisdictional by noting that prior cases had actually reached the merits of arguments concerning whether the limitation period should be tolled. 455 U.S. at 397, 102 S. Ct. at 1134-35. The Court asserted that to pursue such an examination in the face of a jurisdictional prerequisite would have been "gratuitous." Id., 102 S. Ct. at 1134. It follows that if the time limitation is jurisdictional, we would not have examined the record in Bartholomew to determine whether a factual basis existed for the application of equitable tolling principles. That investigation would also have been "gratuitous" because even if a sufficient factual basis existed, equitable tolling would not have been possible.

D.

In Beach v. Ocwen Federal Bank, 118 S. Ct. 1408 (1998), the Supreme Court held that the time limit for rescinding a loan transaction under a separate provision of TILA extinguishes the right itself, as opposed to the right to a remedy, and thus is not a typical statute of limitations. Although the Court did cite to Burnett, it did so to provide an example of a rule of statutory construction not actually utilized in Beach: "the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy." Id. at 1412. It observed that the " `ultimate question' is whether Congress intended that `the right shall be enforceable in any event after the prescribed time.' " Id. (quoting Midstate Horticultural Co. v. Pennsylvania R.R. Co., 320 U.S. 356, 360, 64 S. Ct. 128, 130 (1943)). The Beach Court found its answer in the language of the statute itself. Section 1635 states that "[an] obligor's right of rescission shall expire three years after the date of consummation of the transaction." 15 U.S.C. § 1635(f). The Court held that Congress had explicitly linked the right and the remedy in this section, and therefore the right to sue expired at the end of the period. As discussed above, that is not the case here.

5

http://caselaw.lp.findlaw.com/scripts/getcase.pl?court=3rd&navby=case&no=981972p

III.

In sum, based on the structure and purpose of TILA, we hold that the statute of limitations contained in § 1640(e) is not jurisdictional and is therefore subject to equitable tolling. Accordingly, we will reverse the district court's order and remand the cause to the district court.

A True Copy: Teste:
Clerk of the United States Court of Appeals for the Third Circuit 13

**FOOTNOTES**

1. Chase Manhattan Corp. has since acquired Chemical Bank, the parent company of Chemical Bank, N.A., and has merged its auto financing division with Chemical Bank, N.A.'s.

2. The Burnett Court indicated that placing the time limitation in the same section as the jurisdictional grant may be important when dealing with choice of law. It stated, "the embodiment of a limitations provision in the statute creating the right which it modifies might conceivably indicate a legislative intent that the right and limitations be applied together when the right is sued upon in a foreign forum." Burnett, 380 U.S. at 427 n.2, 85 S. Ct. at 1054 n.2. That is not the case here.

3. The court in Hardin also engaged in a lengthy discussion of the legislative history of TILA. It pointed to the 1980 Amendments that added the recoupment and set-off exceptions to § 1640(e) as evidence that the provision was intended to be jurisdictional. The court argued that since defensive actions in recoupment are never barred by a statute of limitations, by amending the limitation to except these actions from the time limit, Congress must have been treating it as a jurisdictional limitation. Otherwise, the amendment would have been unnecessary. See Hardin, 797 F.2d at 1039-40 & n.4. In fact, it appears that whether defensive actions were barred or not was far from clear at the time of the amendments. The court in Kerby v. Mortgage Funding Corp., 992 F. Supp. 787, 796-97 (D. Md. 1998), presents a compelling counterargument to Hardin concerning the legitimacy of its analysis of the legislative history of the 1980 amendments. We will not rehash these arguments here, except to agree with Kerby that it appears that Congress enacted the 1980 amendments in response to conflicting applications of § 1640(e). This conclusion would be consistent with a reference, overlooked in Hardin, to the time limit as a "statute of limitation" in the legislative history of the 1980 amendment. S. Rep. No. 96-368, at 32 (1979), reprinted in 1980 U.S.C.C.A.N. 236, 268.


http://www.illinoisprobono.org/index.cfm?fuseaction=home.dsp_Content&contentID=1536

Real Estate Settlement Procedures Act (RESPA)

Purpose

To "effect certain changes in the settlement process for residential real estate that will result: 1) in more effective advance disclosure to home buyers and sellers of settlement costs; 2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; 3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and 4) in significant reform and modernization of local recordkeeping of land title information." 12 U.S.C. § 2601(b).

**Sources of Law**

- 12 U.S.C. § 2601, et seq.

6

http://caselaw.lp.findlaw.com/scripts/getcase.pl?court=3rd&navby=case&no=981972p

- HUD Regulation X (24 C.F.R. § 3500, et seq.)

### Coverage

RESPA covers all federally related mortgages, including loans (both purchase-money mortgages and others) secured by the family home. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

### Statute of Limitations

- 1 year for affirmative (kickback and fee-splitting) claims. 12 U.S.C. § 2614;
- Unlimited as a defense to foreclosure in the nature of a recoupment or setoff. 735 ILCS 5/13-207. *Bank of New York v. Heath*, 2001 WL 1771825, at *1 (Ill. Cir. Oct. 26, 2001).

## Truth in Lending Act (TILA)

### Purpose

"It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

### Sources of Law

- 15 U.S.C. § 1601, et seq.
- Regulation Z (12 C.F.R. 226).
- The Federal Reserve Board's Official Staff Commentary on Regulation Z (12 C.F.R. 226.36, Supplement I). *Ford Motor Credit v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive").

### Substantive Requirements

There must be clear, conspicuous, and accurate disclosures of loan terms as set forth in 12 C.F.R. 226.18 ("Content of Disclosures"). *In re Ralls*, 230 B.R. 508 (Bankr. E.D.Pa. 1999); *In re Cook*, 76 B.R. 661 (Bankr. C.D.Ill. 1987).

### Statute of Limitations

- 1 year for affirmative claims. 15 U.S.C. § 1640(e);
- 3 years for rescission. *Beach v. Ocwen*, 523 U.S. 410 (1998);
- Unlimited as a defense to foreclosure in the nature of a recoupment or setoff. 735 ILCS 5/13-207. *Bank of New York v. Heath*, 2001 WL 1771825, at *1 (Ill. Cir. Oct. 26, 2001).

7