IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| George D. McCarley | |
|     Plaintiff | Civil Action No. 3:06-CV-0091-MEF |
| v. | Lead Case[1] |
| Household Finance Corporation III | |
|     Defendant | |

ORAL ARGUMENT MOTION RE: DEFENSE SUMMARY JUDGMENT MOTION
AS RESULT OF ERRONEOUS, INCORRECT FACTS, CASES CITED BY DEFENSE

1. Plaintiff respectfully requests this court order Oral Argument prior to ruling on Defense Summary Judgment Motion. This request is the result of incorrect facts reported and outdated cases cited by defense in their final reply dated October 19, 2007, (received by mail on October 23).

2. Plaintiff provides two key cases to demonstrate the defense argument relies upon outdated/superceded cases that fail *stare decisis*. Defense presents other erroneous points, however, two key cases plaintiff cites provide cause for oral argument; Ellis (1998), 3rd Circuit Class Action (2005); (all indicating governance of *Ramadan* (1998)see McCarley rebuttal of Oct 11).

3. Defense final reply is wholly premised on the case of <u>Pedraza v. United Guaranty Corporation</u>, 114 F.Supp. 2d 1347, 1351-52 (S.D. Ga. 2000). There are in fact, two stronger cases that provide *stare decisis* for purposes of *"equitable tolling"* in consumer protection cases. The defense brief (beginning page 5) actually cites one of the cases, <u>Ellis v. General Motors Acceptance Corp.</u>, 160 F.3d 703 (11th Cir.1998).[2] *(salient discussion from Ellis 11th Circuit opinion page 2:)*

> The issue of whether TILA is subject to equitable tolling is one of first impression in this circuit. **Every other circuit that has considered the issue has held that TILA is subject to equitable tolling.** (emphasis added) *See Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3rd Cir.1998) (under facts virtually identical to those here, court found § 1640(e) subject to equitable tolling); *Jones v. TransOhio Savings Ass'n.*, 747 F.2d 1037, 1041 (6th Cir.1984) (§ 1640(e) subject to equitable tolling);

---

[1] 3:06 cv 00091 (lead case) includes Household Finance Corporation, III (00093), HSBC-Gr. Corp. (00102), HSBC Mortgage Services, Inc. (00104), HSBC Finance Corporation (00101), and, Household International, Inc. (00103).
[2] See defense fn 1, page 3 of their final reply – alleging 11th Circuit has not addressed equitable tolling for RESPA.

1

*King v. California,* 784 F.2d 910, 914-15 (9th Cir.1986) (accord with *TransOhio* ); *Kerby v. Mortgage Funding Corp.,* 992 F.Supp. 787 (D.Md.1998); *see also Lawyers Title Ins. Corp. v. Dearborn Title Corp.,* 118 F.3d 1157, 1166-67 (7th Cir.1997) (citing *King* and *TransOhio* with approval).   [3] *Ellis* 11th Circuit opinion page 7 footnote citing RESPA analysis.

We ask, "if all the other circuits uphold "equitable tolling" why not the 11th Circuit?" The "Full Faith and Credit Statute demands 11th Circuit and this defendant comply with other circuit opinion.

4. Of great interest is the *Ellis* court application of *Ramadan*. In Summary Judgment Rebuttal, (October 11) McCarley provided this court a copy of *Ramadan*[4] opinion (invoked herein) discussing the similarity between TILA and RESPA. While we do not believe a legitimate question of statute of limitations exists, we must insure we inject an abundance of caution. The *Ellis* quote supra page 1, along with footnotes 3 and 4 indicate this issue requires Oral Argument to insure facts and precedent are correctly stated. We suggest to the *McCarley* court that other issues present in *Pedraza* (S.D. Ga.) prevent *Pedraza* application to TILA or RESPA in *stare decisis* manner, and that the many courts opinion contained herein make it clear that *Ramadan* governs "tolling."

---

[3] We note in passing that the D.C. Circuit addressed this issue in dicta in Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039-40 & n. 4 (D.C.Cir.1986). Hardin did not involve TILA at all, but was rather about the limitations provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et. seq.(RESPA). In a digression discussing TILA, the Hardin court opined that the 1980 amendments to TILA providing a recoupment defense to collection actions brought more than one year from the date of the violation indicate Congress' intent that TILA be jurisdictional. See Hardin, 797 F.2d at 1039-40. However, among other things, the Hardin court assumed that recoupment was always permitted prior to the 1980 amendment, when there was actually considerable disagreement on this issue. See Kerby 992 F.Supp. at 796-97 (discussing Hardin and listing pre-1980 cases on both sides of the recoupment issue). See also Lawyers Title Ins. Corp., 118 F.3d at 1166-67 (RESPA case citing reasoning of King and TransOhio and declining to follow Hardin ).

[4] (page 4, Ramadan) [sic] The Seventh Circuit recently declined to follow Hardin, concluding that it was inconsistent with Supreme Court precedent and the "particular[ly] relevan[t]" cases of Jones and King. Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F. 3d 1157, 1166-1167 7th Cir 1997) (allowing equitable tolling in RESPA case); see also Kerby v. Mortgage Funding Corp., 992 F.Supp. 787 (D.Md. 1998) (allowing equitable tolling in RESPA and § 1640(e) case); Moll v. U.S. Life Title Ins. Co. of N.Y. 700 F. Supp 1284 (S.D.N.Y.1988) (allowing equitable tolling in RESPA case). Indeed, as Lawyers Title indicated, although states are more likely to treat their statutes of limitations as jurisdictional, "periods of limitations in federal statutes . . . are universally regarded as nonjurisdictional . . . . Only rules limiting the commencement of actions against the United States have been given the 'jurisdictional treatment." Lawyers Title, 118 F.3d at 1166.

5. Continuing with yet the most recent (2005) case dealing with the full range of consumer protections found in TILA and RESPA (upholding *Ramadan* as *stare decisis* is the class action of[5] :

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-4220, 03-4221, 03-4275, 03-4294, 03-4316,
03-4319, 03-4504, 03-4732, 03-4837, 04-4838, 03-4862,
04-1002, and 04-1039

IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA
AND GUARANTY NATIONAL BANK OF TALLAHASSEE
SECOND MORTGAGE LOAN LITIGATION

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 03-cv-00425, 02-cv-01201, 02-cv-01563,
02-cv-01616, 02-cv-01999, 02-cv-02000)
District Judge: Honorable Gary L. Lancaster
Argued February 17, 2005
Before: SLOVITER, AMBRO, and ALDISERT, Circuit Judges
(Filed: August 11, 2005)

6. The 3rd Circuit opinion goes to 72 pages published, and makes it clear W.D. Penn has applied and 3rd Circuit has upheld the principles of equitable tolling in a class action settlement in which defendant banks admitted violation of TILA, RESPA, RICO, and others. We invoke this opinion by reference, and direct the court to the page 45 discussion of *Ramadan* and "tolling". We also request the court take note of the many discussions of RESPA throughout. (page 45)

> "An affirmative action under HOEPA must be brought within one year of the violation, id. at § 1640(e), and an action for rescission must be brought within three years, 12 C.F.R. § 226.23. However, these provisions are subject to equitable tolling. See Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 504 (3d Cir. 1998); cf. Mullinax v. Radian Guar. Inc., 199 F.Supp. 2d 311, 328 (M.D.N.C. 2002). No statute of limitations applies to a borrower asserting a violation of TILA or HOEPA as a defense (by recoupment or set-off) in a foreclosure action. Id. at § 1640(e)."

---

[5] We provided case styling, have reproduced salient portions of text, and request The Court obtain a copy of 3rd Cir. 2005 class action. 72 pages is prohibitively expensive for an IPF to copy and post.

3

(page 70) [sic] Further, we find that the District Court's own Memorandum accompanying the December 4, 2003 Order (among the few documents drafted by the Court itself), reflects poorly on the Court's familiarity with the facts and substantive nature of the case before it. The first two sentences of the Memorandum state that: "This is a complex commercial fraud case. Plaintiffs, on behalf of themselves and all others similarly situated, allege in their consolidated amended complaint that defendants . . . acted in violation of . . . [HOEPA, RESPA, and RICO] . . . , as well as related state laws." JA at 174. Not only is this consumer fraud case (not a commercial case), but more importantly, *the gravamen of the Appellants' objections to the fairness of the settlement,* and an undisputed fact reflected in the Consolidated Amended Complaint, see App at 637-711, is that class counsel did not assert or seek remuneration for potentially valuable HOEPA and TILA claims.

7. In 3rd Circuit 2005 class action, the word *repose* does not appear. In *Ellis,* 11th Circuit contradicts itself on discussion of *repose*. *Ellis* court holds throughout, that "tolling" should apply, and then on page 6, declare that *repose* governs (despite 7 pages of case analysis to the contrary).

8. As a direct result of defense failure to recognize the governing *Ramadan*, as upheld by 3rd Circuit (2005), and by *Ellis,* and as noted and discussed by *Pedraza* we respectfully recommend this Court order Oral Argument, unless the Court has decided to deny summary judgment.

Respectfully submitted

George D. McCarley, Pro Se
216B Chestnut Street
Roanoke, Al 36274
334-863-6489

PROOF OF SERVICE

I, George D. McCarley, do swear or affirm that on October 24, 2007, I have served the enclosed ACTION on each party to the above or that party's counsel, and on every other person required to be served, by depositing envelope containing the above documents in the United States Mail properly addressed, and with first class postage prepaid, for delivery within 3 calendar days.

The Clerk
Middle District of Alabama, Eastern Division
One Church Street, PO Box 711
Montgomery, Al 36101-0711
334-954-3600

Defendant Attorney
Mr. George Parker
Bradley Arant Rose and White
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, Al 36104
334-956-7671, 956-7700

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 24, 2007

George D. McCarley

4

United States Court of Appeals,
Eleventh Circuit.
No. 97-6963.

Paul R. ELLIS, Peggy Ann Ellis, on their own and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, d.b.a. General Motors Acceptance Corporation, Defendant-Appellee.

Nov. 13, 1998.

Appeal from the United States District Court for the Northern District of Alabama. (No. 97-P-96-S), Sam C. Pointer, Jr., Judge.

Before ANDERSON and BARKETT, Circuit Judges, and HILL, Senior Circuit Judge.

BARKETT, Circuit Judge:

Plaintiffs Paul and Peggy Ellis ("Ellises") appeal the dismissal of their suit against the General Motors Acceptance Corporation ("GMAC") alleging violations of the Truth in Lending Act, 15 U.S.C. § 1640(e) (1997) ("TILA"). The district court dismissed the complaint on the grounds that the statute of limitations had expired and, alternatively, that under 15 U.S.C. § 1641, GMAC was exempted from liability under TILA. On appeal the Ellises argue that the statute of limitations was suspended by the doctrine of equitable tolling and that, by writing and signing the contract, GMAC voluntarily agreed to expanded liability. We find that TILA is subject to equitable tolling but that GMAC, as an assignee, is not liable for the TILA violations alleged.

*Background*

The Ellises' claim derives from their purchase of a 1993 Saturn SL-2 from Royal Oldsmobile ("Royal") on May 22, 1995. At the same time that they bought the car, the Ellises purchased an extended warranty for an additional $1,195. They financed the car and warranty through a Retail Installment Contract ("RIC") and the loan was assigned to GMAC simultaneously with the contract's execution. In the section itemizing the amount financed, the RIC listed $1,195 as being paid to "Mechanic" for the extended warranty. The Ellises allege that this listed payment constituted misrepresentation because substantially less than $1,195 was paid to this third party. They claim that only a small portion of this amount was paid to "Mechanic" and that Royal retained the rest. The Ellises brought suit against GMAC on January 14, 1997, eighteen months after purchasing the car and warranty, and the district court subsequently granted GMAC's motion to dismiss the suit for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6).

The Ellises recognize that, under TILA, they had only one year from the time they purchased the car and warranty to bring an action. They argue, however, that because they were prevented from learning that the total amount paid by Royal to Mechanic was misrepresented on the disclosure document, equitable tolling applies to suspend the statute of limitations. The Ellises further argue that, notwithstanding the language of 15 U.S.C. § 1641(a) holding assignees liable under TILA only for violations apparent on the face of the disclosure statement, GMAC contractually obligated itself to assume liability for any cause of action that could have been

1

brought against the seller, including this claim for misrepresentation. Thus, they assert that the district court erred in dismissing their complaint.

We review dismissals pursuant to Rule 12(b)(6), *de novo,* taking all the material allegations of the complaint as true while liberally construing the complaint in favor of the plaintiff. *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir.1998). A court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

*Discussion*

1. *Statute of Limitations*

Because the district court determined that TILA's statute of limitations is jurisdictional and that its expiration deprived the court of subject matter jurisdiction, we must first address this threshold issue. When Congress enacts statutes creating public rights or benefits, it can impose time limits on their availability. These time limits can either completely extinguish the right or simply bar the remedy for enforcement. In the former case, jurisdiction does not exist because the cause of action has been totally extinguished. In the latter case, the court continues to have jurisdiction and has the discretion to consider particular circumstances affecting the ability of a party seeking review to comply with the time limits, which can be tolled when principles of equity render their rigid application unfair. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Holmberg v. Armbrecht,* 327 U.S. 392, 395-96, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

"Equitable tolling" is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances. *See Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 347, 22 L.Ed. 636 (1874) (where a party injured by another's fraudulent conduct "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered ..."). *See also Osterneck v. E.T. Barwick Indus.,* 825 F.2d 1521, 1535 (11th Cir.1987), *aff'd, Osterneck v. Ernst & Whinney,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (if third party is in privity, or a principal-agent relationship with the defendant exists, defendant's approval of the concealment may be sufficient to toll the statute). Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations. *Holmberg,* 327 U.S. at 394-96, 66 S.Ct. 582.

In this case, the district court concluded that TILA was a jurisdictional statute and that the Ellises' claim was therefore time-barred. The Ellises maintain that 15 U.S.C. § 1640(e) is not a jurisdictional statute but rather a statute of limitations subject to equitable tolling.

The issue of whether TILA is subject to equitable tolling is one of first impression in this circuit. Every other circuit that has considered the issue has held that TILA is subject to equitable tolling. *See Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499 (3rd Cir.1998) (under facts virtually identical to those here, court found § 1640(e) subject to equitable tolling); *Jones v. TransOhio Savings Ass'n.,* 747 F.2d 1037, 1041 (6th Cir.1984) (§ 1640(e) subject to equitable tolling); *King*

2

v. *California*, 784 F.2d 910, 914-15 (9th Cir.1986) (accord with *TransOhio* ); *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787 (D.Md.1998); *see also Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166-67 (7th Cir.1997) (citing *King* and *TransOhio* with approval).

GMAC contends, however, that we should not follow the other circuits because our own precedent in *Hill v. Texaco, Inc.*, 825 F.2d 333 (11th Cir.1987) forecloses a finding that equitable tolling applies here. We find *Hill* to be inapposite. *Hill* did not involve TILA, but rather the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2802(b)(3)(D)(iii). Plaintiff, a Texaco franchisee, sued Texaco alleging that Texaco had acted in bad faith when offering him right of first refusal on the sale of his leased property. Texaco had offered to sell Hill the property for $326,000 even though the land had been appraised at $225,000. Hill refused and seventeen months later Texaco sold the property to a third party for $240,000. Hill then sued, claiming that Texaco's offer to him was not bona fide and therefore violated the PMPA. *Id.* at 334. The statute of limitations in PMPA is one year. Hill filed suit after more than a year had elapsed arguing that, because fraudulent concealment prevented his learning of the violation until after the statute had tolled, equitable tolling should apply.

The *Hill* court disagreed, recognizing that, while equitable tolling *is* typically read into federal statutes of limitation, it cannot apply in the face of contrary congressional intent. *Id.* "[T]he basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R. Co.*, 380 U.S. 424, 427, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). To determine whether equitable tolling applies, courts "examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the ... Act." *Id.*

PMPA has a very specific purpose--protecting franchisees from wrongful termination of their franchises.  It begins to run from the time of a specific event of which the claimant would have certain knowledge, i.e., the termination or nonrenewal of his/her franchise. Although Congress wished to shield franchisees from unfair business practices by giving them the right of first refusal on the sale of their leased property, it clearly did not intend to create an indefinite right of action in the event the franchiser decides at a later date to part with the property at a lower price. *See Hill*, 825 F.2d at 334 (noting that when Congress enacted PMPA, it was aware of abusive practices by some oil franchisers yet deliberately chose a short statute of limitations). In light of the statute's stated purpose and language, the *Hill* court concluded that PMPA represents a narrow exception to the general rule that equitable tolling applies to all federal statutes of limitation. *See id.* at 334-35.

In this case, we examine TILA, a consumer protection statute which, though possessing a limitations period similar to PMPA, is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent. *See McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. Mar.15, 1978).  The section of TILA addressing Congressional findings and the statute's declaration of purpose states in relevant part:

(a) Informed use of credit

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms ... would be strengthened by the informed use of consumer credit. The informed use of credit results from an awareness of the cost thereof by

3

consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601.

Despite TILA's clearly remedial purpose, if we were to read its time limit literally, consumers whose cause of action was fraudulently concealed from them until after a year had passed could not pursue a cause of action under TILA. That would lead to the anomalous result that a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their victims' remedy. We cannot believe this was Congress' intent. Rather, in these circumstances we apply the general rule that equitable tolling applies to all federal statutes unless the statute states otherwise. *Holmberg,* 327 U.S. at 394-95, 66 S.Ct. 582. We therefore agree with the Third, Sixth, and Ninth Circuits that the statute of limitations in TILA is subject to equitable tolling. Consequently, the district court erred in dismissing the Ellises' claim for lack of jurisdiction.

2. *Assignee Liability*

Although we find that TILA is subject to equitable tolling, thus giving the district court jurisdiction, we need not reach the question of whether equitable tolling applies to the facts of this case because we conclude that, as an assignee, GMAC is not liable for the alleged TILA violations. The Act applies to every consumer credit contract, including those between buyers and sellers as well as those between buyers and third-party financing agents including mortgage brokers, credit card companies and the like. In this lawsuit, the seller, Royal, was not sued. Thus, we are concerned only with whether GMAC, the assignee of the contract between Royal and the Ellises, is liable under the statute.

TILA has specifically addressed the liability of assignees under the Act and provides that:

[e]xcept as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary.... [A] violation apparent on the face of the disclosure statement includes but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

15 U.S.C. § 1641(a). At the same time, in regulations set forth in 16 C.F.R. § 433.2 (1998), the Federal Trade Commission ("FTC") requires that every consumer credit contract treating the sale or lease of goods or services contain the following language in bold type:

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE

4

PROCEEDS HEREOF. RECOVERY OF THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

GMAC was clearly a "holder" of the Ellises' credit contract, which would seem to suggest that a TILA cause of action could lie against GMAC. GMAC contends, however, that the holder notice language appears in the contract only because it is required by the FTC and therefore is subordinate to the statutory limitation of liability set forth in 15 U.S.C. § 1641(a). Consequently, because the alleged violation was not apparent on the face of the disclosure document, GMAC is not liable under § 1641(a).

The Ellises concede that "[r]egulations cannot trump the plain language of statutes." *Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir.1994). They maintain, however, that even if § 1641(a) limits liability, parties can still agree to waive the protections of the statute and assume greater liability than the law requires. They assert that in this case GMAC's intent to assume greater liability is manifested by the above quoted language in the contract and argue that this interpretation is the only way to give any meaning to the language in the contract.

While it is certainly true that parties can waive statutory protections and assume liabilities not required by law, we cannot conclude that GMAC has done so here. The only evidence of GMAC's purported intent to relinquish TILA's protections is the language that the FTC mandates be inserted into every consumer credit contract. *See* 16 C.F.R. § 433.2. We agree with the Seventh Circuit in *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir.1998) that this holder notice language is part of the contract by force of law and "must be read in light of other laws that modify its reach." *Id.* at 693. Adhering to this principle does not render the contract language meaningless. As the *Taylor* court recognized, the provision continues to fill a valuable role by reiterating the right of buyers to withhold payment from sellers *or* assignees, if the cars they purchased turn out to be lemons. *Taylor*. *See also Maberry v. Said*, 911 F.Supp. 1393, 1402 (D.Kan.1995) ( FTC holder language permits consumers to defend against a creditor suit for payment of an obligation by raising a valid claim against the seller as a setoff); *Hoffman v. Grossinger Motor Corp.*, No. 96 C 5362 (N.D.Ill. June 27, 1997). Like *Taylor*, we conclude that the language required by the FTC regulation cannot override the express language of TILA in which Congress specifically decided that assignee creditors will only be liable for TILA violations that are apparent on the face of the disclosure statement.

Thus, the language in the contract required by the FTC regulation standing alone does not suffice to subject GMAC to liability. Although GMAC *could* contract, as the Ellises suggest, to assume greater liability than the statute requires, there is no evidence in this case to suggest or indicate that the insertion of the regulatory language into the contract resulted from bargaining or agreement by the parties to reflect such a voluntary and intentional assumption of liability. Accordingly, we conclude that under § 1641(a), GMAC can be liable only for violations that are apparent on the face of the disclosure statement.

The Ellises maintain, nonetheless, that the misrepresentation of the warranty cost was sufficiently "apparent on the face" of the disclosure statement to warrant liability. We find this contention equally unconvincing. The Ellises argue that since GMAC issued the checks and credits to "Mechanic" in payment for the warranty and that related loan documents reveal the true cost of the warranty as well as the amounts paid to the parties, the discrepancy between the amount

5

supposedly paid to "Mechanic" and the amount actually paid by GMAC reflected a violation apparent on the face of the documents. Under the Ellises' own argument, however, we would need to resort to evidence or documents extraneous to the disclosure statement. This the plain language of the statute forbids us to do. As the Seventh Circuit noted, such an interpretation of TILA would: "impose a duty of inquiry on financial institutions that serve as assignees. Yet this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can be ascertained from the face of the documents themselves." *Taylor*.

For the foregoing reasons, we hold that the statute of limitations set forth in TILA, 15 U.S.C. § 1640(e) is not jurisdictional and therefore may be subject to equitable tolling. However, because GMAC, as an assignee, is not liable under TILA for the violations alleged here, the district court's dismissal of the complaint is AFFIRMED.

HILL, Senior Circuit Judge, specially concurring:

I concur in the judgment of the panel in that it affirms the dismissal of the complaint by the district court. I write specially for the following reasons.

The district court dismissed the complaint on two grounds: (1) that it was time-barred by the jurisdictional limitation period of Section 1640(e); and, (2) that it failed to state a claim of assignee liability under Section 1641(a). If the liability of the assignee issue can be affirmed, in my view, we need not reach the jurisdiction question.

Let us assume, however, that we must decide the jurisdictional issue of equitable tolling. In my opinion, we are bound by the precedential authority of *Hill v. Texaco*, 825 F.2d 333 (1987), unless and until told otherwise by an *en banc* panel of this circuit or the Supreme Court of the United States. Unlike the panel's opinion, I do not read *Hill* to be "inapposite" to the circumstances here.

Furthermore, I adhere to the reasoning of *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1039-40 & n. 4 (D.C.Cir.1986), premised upon an analysis of congressional intent surrounding a 1980 amendment to the TILA, that Section 1640(e) is jurisdictional in nature and cannot be equitably tolled. In short, the TILA is a statute of repose.

I would affirm on the basis of the judgment of the district court. I think it got it right all the way.

FOOTNOTES

1. U.S.C. § 1640(e) states in relevant part: "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."

2. We note in passing that the D.C. Circuit addressed this issue in dicta in *Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1039-40 & n. 4 (D.C.Cir.1986). *Hardin* did not involve TILA at all,

6

but was rather about the limitations provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et. seq.*(RESPA). In a digression discussing TILA, the *Hardin* court opined that the 1980 amendments to TILA providing a recoupment defense to collection actions brought more than one year from the date of the violation indicate Congress' intent that TILA be jurisdictional. *See Hardin*, 797 F.2d at 1039-40. However, among other things, the *Hardin* court assumed that recoupment was always permitted prior to the 1980 amendment, when there was actually considerable disagreement on this issue. *See Kerby* 992 F.Supp. at 796-97 (discussing *Hardin* and listing pre-1980 cases on both sides of the recoupment issue). *See also Lawyers Title Ins. Corp.*, 118 F.3d at 1166-67 (RESPA case citing reasoning of *King* and *TransOhio* and declining to follow *Hardin* ).

3. U.S.C. § 2802(a) of the PMPA states:

Except as provided in subsection (b) ... and section 2803 of this title, no franchiser engaged in the sale, consignment, or distribution of motor fuel in commerce may--

(1) terminate any franchise ... prior to the conclusion of the term, or the expiration date, stated in the franchise; or

(2) fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed).

4. This court adopted as binding precedent the decisions of the former Fifth Circuit prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

5. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 825, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (agency interpretation of statute cannot supersede language chosen by Congress); *S.J. Groves & Sons, Co. v. Fulton County*, 920 F.2d 752, 764 (11th Cir.1991) (regulations must not be unauthorized, or inconsistent with the statute that authorizes them); *United States v. Gordon*, 638 F.2d 886, 888 (5th Cir., Mar.5, 1981) ("Whatever effect [an] agency regulation may have under other circumstances, it cannot supersede a statute applicable to those present here.").

6. *See, e.g., Northside Iron & Metal Co., Inc. v. Dobson & Johnson, Inc.*, 480 F.2d 798, 800 (5th Cir. July 5, 1973) (bank may waive protections offered by statute, but to do so it must demonstrate voluntary and intentional relinquishment or abandonment of privilege).

7